BRUCE L. SIMON (Bar No. 96241)
  bsimon@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone:  (415) 433-9000
Facsimile:   (415) 433-9008

DANIEL L. WARSHAW (Bar No. 185365)
  dwarshaw@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

MARC L. GODINO (Bar No. 182689)
  info@glancylaw.com
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160

Interim Co-Lead Counsel for Plaintiffs and the
Proposed Class

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

STACY SCIORTINO, *et al.*, on behalf of
themselves and all others similarly situated,

        Plaintiffs,

      v.

PEPSICO, INC., a North Carolina
Corporation,

        Defendant.

CASE NO. C 14-0478-EMC

*Consolidated with* Nos. 14-0713, 14-1099, 14-1105, 14-1192, 14-1193, 14-1316, 14-2020, 14-2023

**CLASS ACTION**

**PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

860370.3

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

Plaintiffs Mary Hall, Kent Ibusuki, and Kelly Ree (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, allege as follows:

## INTRODUCTION

1.      Defendant PepsiCo, Inc. ("PepsiCo" or "Defendant") is the manufacturer, marketer, and distributor of some of the world's most popular soft drinks, including Pepsi, Diet Pepsi, and Pepsi One.  This action concerns PepsiCo's intentional concealment and/or failure to warn consumers in California that Pepsi, Diet Pepsi, and Pepsi One (hereinafter, the "Pepsi Beverages") contain a harmful and carcinogenic chemical called 4-Methylimidazole ("4-MeI") at levels above the safety threshold set by the State of California in Proposition 65.[1]

2.      The threshold set by California for exposure to 4-MeI that does not cause a significant cancer risk is 29 micrograms per day.  Recent testing has revealed that the Pepsi Beverages contain more than 29 micrograms of 4-MeI in a single twelve-ounce serving.  Given consumers' purchase and consumption habits of soft drinks in general – and the Pepsi Beverages in particular – this poses a dangerous and unnecessary risk to consumers.

3.      PepsiCo has acknowledged through public statements and documents that it is subject to Proposition 65.  In August 2012, it promised consumers that its work to comply with the requirements of Proposition 65 "has been completed in California."[2]  However, despite its knowledge that the Pepsi Beverages contain excess levels of 4-MeI and its promise to consumers to remove this harmful chemical from the products, PepsiCo continues to sell the Pepsi Beverages in California with prohibited levels of 4-MeI.

4.      PepsiCo has knowingly and intentionally exposed consumers in California to 4-MeI without providing any warning, as required by Proposition 65.  In fact, PepsiCo's public position on the matter is that "[i]f we were required to add warning labels to any of our products or

---

[1] Safe Drinking Water and Toxic Enforcement Act of 1986 (Cal. Health & Safety Code § 25249.5 *et seq.*) (more commonly known as "Proposition 65").

[2] PepsiCo Caramel Coloring Press Release, *available at* http://www.pepsico.com/Download/Caramel_Coloring.pdf.

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  place warnings in certain locations where our products are sold, sales of those products could

2  suffer not only in those locations but elsewhere."[3]

3      5.     The failure to warn consumers pursuant to Proposition 65 about the presence of 4-

4  MeI in the Pepsi Beverages constitutes concealment and/or omission of a material fact that

5  induced Plaintiffs and Class members to purchase the Pepsi Beverages.

6      6.     The fact that the Pepsi Beverages contain excess levels of 4-MeI is undeniably

7  material to reasonable consumers.  The legislature has recognized the materiality of the existence

8  of 4-MeI in consumer products by listing 4-MeI on the Proposition 65 list of chemicals known to

9  the State to cause cancer and by requiring businesses to warn consumers before exposing them to

10  4-MeI.  Reasonable consumers would not have purchased or paid as much for the Pepsi Beverages

11  had they known that they contained 4-MeI in excess of California's safety threshold.  Even

12  PepsiCo has recognized that "[c]onsumers are clearly changing their habits, preferences and

13  consumption patterns.  Food safety and security are now front and center in the minds of

14  governments and consumers."[4]

15      7.     Plaintiffs and Class members did not know and could not have reasonably known

16  that the Pepsi Beverages contained excess levels of 4-MeI.  Reasonable consumers purchased the

17  Pepsi Beverages believing those products were in compliance with all relevant California

18  regulations and safe according to California regulatory thresholds.

19      8.     Plaintiffs bring this case in the public interest pursuant to Proposition 65 and as a

20  class action on behalf of themselves and all similarly situated California purchasers of the Pepsi

21  Beverages.  Through this lawsuit, Plaintiffs seek statutory penalties, an injunction prohibiting the

22  sale of the Pepsi Beverages as formulated without legally mandated warnings, and restitutionary

23  and monetary relief for the thousands of Class members who purchased the Pepsi Beverages and

24  were unwittingly exposed to excess levels of 4-MeI as a result of PepsiCo's conduct.  Plaintiffs do

25  _____

26  [3] PepsiCo 2012 Annual Report, *available at* http://www.pepsico.com/Investors/Annual-Reports-
and-Proxy-Information.

27  [4] *Id.*

28

1   not assert any claims for personal injuries and do not seek medical monitoring as a remedy.

2   **JURISDICTION AND VENUE**

3   9.      This Court has subject matter jurisdiction over this action pursuant to the Class

4   Action Fairness Act, 28 U.S.C. §§ 1332(d), because the aggregate claims of the Class exceed the

5   sum or value of $5,000,000, and there is diversity of citizenship between proposed Class members

6   and Defendant.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant

7   to 28 U.S.C. § 1367(a).

8   10.     This Court has personal jurisdiction over Defendant because it is licensed to do

9   business in California, has designated an agent for service of process in California, and otherwise

10  conducts substantial business in California.

11  11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (d).

12  **THE PARTIES**

13  12.     Plaintiff Mary Hall resides in Concord, California.  During the Class Period,[5] Ms.

14  Hall purchased Pepsi, Diet Pepsi, and Pepsi One for her own consumption.  Ms. Hall purchased

15  the Pepsi Beverages with the reasonable belief that PepsiCo was compliant with all relevant legal

16  regulations in selling the products.  Ms. Hall did not know and could not have reasonably known

17  that the Pepsi Beverages she purchased contained 4-MeI in excess of the safety threshold in

18  California.  Ms. Hall would not have purchased the Pepsi Beverages and suffered economic harm

19  had she known they contained 4-MeI in excess of the safety threshold in California.

20  13.     Plaintiff Kent Ibusuki resides in Arleta, California.  During the Class Period, Mr.

21  Ibusuki purchased Diet Pepsi and Pepsi One for his own consumption.  Mr. Ibusuki purchased the

22  Pepsi Beverages with the reasonable belief that PepsiCo was compliant with all relevant legal

23  regulations in selling the products.  Mr. Ibusuki did not know and could not have reasonably

24  known that the Pepsi Beverages he purchased contained 4-MeI in excess of the safety threshold in

25  California.  Mr. Ibusuki would not have purchased the Pepsi Beverages and suffered economic

26

27  [5] The Class Period in this case is January 23, 2010 (four years prior to the date of the first-filed case in this litigation) to the present.

28

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1    harm had he known they contained 4-MeI in excess of the safety threshold in California.

2         14.    Plaintiff Kelly Ree resides in Tustin, California.  During the Class Period, Ms. Ree

3    purchased Diet Pepsi and Pepsi One for her own consumption.  Ms. Ree purchased the Pepsi

4    Beverages with the reasonable belief that PepsiCo was compliant with all relevant legal

5    regulations in selling the products.  Ms. Ree did not know and could not have reasonably known

6    that the Pepsi Beverages she purchased contained 4-MeI in excess of the safety threshold in

7    California.  Ms. Ree would not have purchased the Pepsi Beverages and suffered economic harm

8    had she known they contained 4-MeI in excess of the safety threshold in California.

9         15.    Defendant PepsiCo, Inc. is a North Carolina Corporation with its principal place of

10   business located in Purchase, New York.  PepsiCo, which describes itself as one of the world's

11   leading food and beverage companies, generated over $66 billion in net revenue in 2013.[6]  32

12   percent, or approximately $21.2 billion, of that amount came from the sale of beverages in the

13   Americas alone.  PepsiCo's roster of name-brand snacks and beverages includes, but is not limited

14   to, Pepsi, Diet Pepsi, Pepsi Max, Pepsi One, Tropicana, Lay's, Ruffles, Gatorade, Doritos, 7-Up,

15   Mountain Dew, Sierra Mist, and Fritos.  During the Class Period, Defendant has conducted

16   substantial business in the State of California.

## FACTUAL ALLEGATIONS

**A.    Pepsi Beverages and 4-MeI**

19        16.    The Pepsi Beverages manufactured, marketed, and sold by PepsiCo are

20   characterized as dark sodas, as they contain caramel coloring that gives them their distinctive

21   brown color familiar to consumers.

22        17.    Caramel coloring is one of the most widely used food colorings in the world.  It is

23   found in numerous foods and beverages, such as beer, bakery products, coffee, custards, potato

24   chips, fruit preserves, sauces, dressings, and more.

25        18.    Caramel coloring is produced by heating carbohydrates with certain reactants.

---

[6] PepsiCo 2013 Annual Report, *available at* http://www.pepsico.com/Investors/Annual-Reports-and-Proxy-Information.

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   There are four different types, or classes, of caramel coloring based on the process (and

2   compounds) used in its production.  Only two of those types are created using ammonium

3   compounds – Class III, which is created using an ammonia process, and Class IV, which is created

4   using an ammonia-sulfate process.

5   19.   The ammonia and ammonia-sulfate process used to create Class III and Class IV

6   caramel coloring produces, as a byproduct, the chemical 4-MeI.  Class IV caramel coloring is the

7   type found in the Pepsi Beverages.

8   20.   4-MeI is a harmful and toxic chemical that is often used in the manufacture of

9   pharmaceuticals, photographic chemicals, dyes, and pigments, cleaning and agricultural supplies,

10  and rubber.

11  21.   4-MeI has been linked to cancer in certain animals.  In 2007, the National

12  Toxicology Program ("NTP") concluded a two-year study that evaluated the effects of long-term

13  exposure to 4-MeI in mice and female rats.  The study found "clear evidence" of increased cancer

14  in the mice and "equivocal evidence" of increased cancer in the rats.

15  22.   According to the International Agency for Research on Cancer ("IARC"), 4-MeI

16  does not occur in nature, and human exposure results from caramel coloring in food and

17  beverages, inhalation or contact during its presence in manufacturing, and cigarette smoke.  The

18  IARC contends that "there is sufficient evidence in experimental animals for the carcinogenicity

19  of 4-methylimidazole" and that "4-methylimidazole is possibly carcinogenic to humans."[7]

20  **B.   4-MeI is a Listed Chemical Under Proposition 65**

21  23.   Proposition 65, passed by California voters in 1986, requires the State of California

22  to publish a list of chemicals known to cause cancer or birth defects or other reproductive harm.

23  The list contains a wide range of naturally occurring and synthetic chemicals, including additives

24  or ingredients in pesticide, common household products, food, drugs, and dyes or solvents.[8]

25  _____

26  [7] IARC, 101 IARC MONOGRAPHS ON THE EVALUATION OF CARCINOGENIC RISKS TO HUMANS 447,

27  457 (2012).

28  [8] OEHHA, *Proposition 65 in Plain Language*,
(footnote continued)

24.     The California Environmental Protection Agency's Office of Environmental Health Hazard Assessment ("OEHHA") listed 4-MeI as a chemical known to the State of California to cause cancer under Proposition 65 on January 7, 2011.  The listing of 4-MeI was "based on NTP's findings of clear evidence of carcinogenicity in its studies showing the development of lung cancer in male mice and female mice from 4-MeI exposure."[9]

25.     Following the listing of 4-MeI, the American Beverage Association, among others, sued OEHHA to have 4-MeI removed from the Proposition 65 list, but were unsuccessful.

26.     For listed chemicals, Proposition 65 establishes a "no significant risk level" ("NSRL"), which is defined as the level of exposure that would result in no more than one excess case of cancer in 100,000 individuals exposed to the chemical over a 70-year lifetime.  In other words, a person exposed to the chemical at the NSRL for 70 years would have no more than a 1 in 100,000 chance of developing cancer as a result of the exposure.[10]

27.     Under Proposition 65, businesses must provide a "clear and reasonable" warning if they manufacture or sell products in California that cause exposure to a listed chemical that exceeds the NSRL.  "Businesses that do not provide a warning when required . . . risk civil lawsuits brought by state or local prosecutors or members of the public."[11]

28.     Consumers, including Plaintiffs and Class members, have the reasonable expectation that the products they purchase in California will either not contain chemicals that expose them to levels which exceed the NSRL, or that businesses will provide a warning "before knowingly and intentionally exposing anyone to a listed chemical," in compliance with Proposition 65.[12]

---

http://oehha.ca.gov/prop65/background/p65plain.html.

[9] OEHHA, *No Significant Risk Level (NSRL) For the Proposition 65 Carcinogen 4-Methylimidazole* (2011), *available at* http://www.catagle.com/106-1/100711_4MEIfindings.htm.

[10] OEHHA, *supra* note [8].

[11] OEHHA, *4-Methylimidazole (4-MEI) Fact Sheet*, http://oehha.ca.gov/public_info/facts/4MEIfacts_021012.html.

[12] OEHHA, *supra* note [8].

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

29.     The State of California has determined that the NSRL for 4-MeI is 29 micrograms per day.[13]

**C.     PepsiCo's Knowledge Regarding 4-MeI and Proposition 65**

30.     In its Annual Reports from at least 2010 to 2013, PepsiCo specifically and expressly recognized that it must comply with Proposition 65 in California.  Indeed, in its 2012 Annual Report, PepsiCo stated:

> We are also subject to Proposition 65 in California, a law which requires that a specific warning appear on any product sold in California that contains a substance listed by that State as having been found to cause cancer or birth defects.  ***If we were required to add warning labels to any of our products or place warnings in certain locations where our products are sold, sales of those products could suffer not only in those locations but elsewhere***.[14]

31.     Following the listing of 4-MeI on the Proposition 65 list of chemicals known to the State to cause cancer, and acutely aware of the negative impact a warning label could have on its sales, PepsiCo feigned action and released a public statement on August 22, 2012, which stated in relevant part:

> [W]hen the regulatory requirements on 4-MEI changed in California, PepsiCo moved immediately to meet the new requirements and in order to maintain a harmonized supply chain globally committed to rolling out the changes across the rest of the U.S. and internationally.  ***The work has been completed in California*** and several other U.S. states, and we are on track to complete the roll out by February 2014.[15]

32.     Despite its stated position, PepsiCo's promise that as of August 22, 2012, the Pepsi Beverages no longer contained 4-MeI in excess of the NSRL in California was false and misleading.  PepsiCo knowingly and intentionally concealed the material fact that the Pepsi Beverages sold in California still contained—and continue to contain up until the time of this lawsuit—4-MeI at levels in excess of the NSRL.

33.     As acknowledged in its 2012 Annual Report, PepsiCo knew that warning

---

[13] OEHHA, *supra* note [9].

[14] PepsiCo 2012 Annual Report, *supra* note [3] (emphasis added).

[15] PepsiCo Caramel Coloring Press Release, *supra* note [2] (emphasis added).

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1 | consumers that the Pepsi Beverages contained elevated levels of 4-MeI would hurt its sales of the

2 | Pepsi Beverages in California and elsewhere.  Thus, despite its knowledge that the Pepsi

3 | Beverages contained elevated levels of 4-MeI, PepsiCo intentionally concealed and/or omitted that

4 | material fact from consumers.

5 | **D.**   **Consumer Reports Reveals that the Pepsi Beverages Contain 4-MeI in Excess of the NSRL**

6

7 | 34.   On January 23, 2014, Consumer Reports published the results of tests it conducted

8 | in April-September 2013 and December 2013 on the presence of 4-MeI in Pepsi, Diet Pepsi, and

9 | Pepsi One in California.  Consumer Reports found the amount of 4-MeI contained in the Pepsi

10 | Beverages to be in excess of the 29 micrograms allowed per can or bottle and concluded that the

11 | results present serious health risks to consumers.

12 | 35.   Specifically, Consumer Reports found that Pepsi contained 29.1 micrograms of 4-

13 | MeI in December 2013.  It found that Diet Pepsi contained 30.5 micrograms of 4-MeI in April-

14 | September 2013.  And it found that Pepsi One contained 43.5 micrograms of 4-MeI in April-

15 | September 2013 and 39.5 micrograms of 4-MeI in December 2013.[16]

16 | 36.   The results, combined with the widespread use of caramel coloring in foods and

17 | beverages, prompted toxicologist and executive director of Consumer Reports' Food Safety &

18 | Sustainability Center, Urvashi Rangan, Ph.D., to comment, "There's no reason why consumers

19 | should be exposed to an avoidable and unnecessary risk that can stem from coloring food brown.

20 | Manufacturers have lower 4-MeI alternatives available to them."

21 | 37.   In fact, these alternatives are evident from Consumer Reports' test results

22 | themselves.  The amounts of 4-MeI found in the Pepsi Beverages were considerably higher than

23 | other soft drinks tested by Consumer Reports, including PepsiCo's primary competitor, Coca-

24 | Cola.  Coca-Cola's comparable Coke, Diet Coke, and Coke Zero brand soft drinks all tested at 4.3

25

26 | [16] Consumer Reports, *Caramel color: The health risk that may be in your soda*, available at http://www.consumerreports.org/cro/news/2014/01/caramel-color-the-health-risk-that-may-be-in-your-soda/index.htm.  All quotes in Section D herein are to the Consumer Reports article, unless otherwise noted.

27

28

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   micrograms or less, well below California's "safe harbor" level of 29 micrograms.

2        38.     Studies show that consumers who drink soda consume, on average, more than one

3   twelve-ounce serving per day.  This makes Consumer Reports' finding that the Pepsi Beverages

4   contain more than 29 micrograms per twelve-ounce serving even more troubling.  As Dr. Rangan

5   commented, "No matter how much consumers drink they don't expect their beverages to have a

6   potential carcinogen in them.  And we don't think 4-MeI should be in foods at all.  Our tests of

7   Coke samples show that it is possible to get to much lower levels."

8        39.     Indeed, the fact that PepsiCo's primary competitor, Coca-Cola, produces

9   comparable soft drinks with substantially less amounts of 4-MeI renders the Pepsi Beverages

10  unnecessarily and avoidably dangerous.

11       40.     Plaintiffs are informed and believe, and based thereon allege, that PepsiCo had

12  actual and constructive knowledge that the Pepsi Beverages contained 4-MeI in excess of the

13  levels permitted by Proposition 65, in direct contravention of its public statements to consumers.

14  Despite this knowledge, PepsiCo actively concealed the presence of 4-MeI in the Pepsi Beverages

15  and failed to include a clear and reasonable warning about the presence of 4-MeI in the Pepsi

16  Beverages, as required by Proposition 65.

17       41.     Proposition 65 provides guidance as to a reasonable consumer's purchasing

18  decisions in California.  Reasonable consumers, including Plaintiffs and Class members,

19  purchased the Pepsi Beverages believing they complied with all relevant California regulations

20  and were safe according to California regulatory thresholds.  As a result of PepsiCo's conduct,

21  reasonable consumers in California, including Plaintiffs and Class members, were not aware that

22  the Pepsi Beverages they purchased contained 4-MeI in excess of the levels permitted by

23  Proposition 65.  Had Plaintiffs and Class members been aware of this fact, they would not have

24  purchased or paid as much for the Pepsi Beverages.  Thus Plaintiffs and Class members have

25  suffered injuries in fact and lost money as a result of PepsiCo's conduct.

26       42.     Plaintiffs and Class members will continue to suffer injury if PepsiCo's deceptive

27  conduct is not enjoined.  Based on PepsiCo's concealment and/or omissions of material fact,

28  Plaintiffs and Class members will be unable to determine the truthfulness of PepsiCo's labeling

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   and compliance with Proposition 65 in the future.  Accordingly, absent enjoinment of Defendant's

2   conduct, members of the Class will continue to be misled regarding the presence of 4-MeI in the

3   Pepsi Beverages.

4                                    **RULE 9(b) ALLEGATIONS**

5           43.     Federal Rule of Civil Procedure ("Rule") 9(b) provides that "[i]n alleging fraud or

6   mistake, a party must state with particularity the circumstances constituting fraud or mistake."

7   Fed. R. Civ. P. 9(b).  To the extent necessary, as detailed in the paragraphs above and below,

8   Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with

9   sufficient particularity in this Complaint:

10          44.     WHO:  Defendant PepsiCo failed to disclose material facts regarding the presence

11  and amount of 4-MeI in the Pepsi Beverages.

12          45.     WHAT:  Defendant failed to disclose material facts regarding the presence and

13  amount of 4-MeI in the Pepsi Beverages as detailed herein.  Defendant's omissions of material

14  fact were intentional and made with knowledge as to the presence of 4-MeI in levels that exceed

15  the NSRL in California.  Defendant's omissions were material because a reasonable consumer

16  would not have purchased or paid as much for the Pepsi Beverages if he knew that they contained

17  excess levels of 4-MeI.

18          46.     WHEN:  Defendant failed to disclose the material facts detailed herein

19  continuously throughout the Class Period.

20          47.     WHERE:  Defendant's omissions of material fact were made, *inter alia*, on the

21  labeling of the Pepsi Beverages, and in public statements distributed on Defendant's website as

22  well as other media.

23          48.     HOW:  Defendant failed to disclose the material facts detailed herein in its

24  advertising and labeling of the Pepsi Beverages and in public statements on Defendant's website

25  as well as other media.

26          49.     WHY:  Defendant failed to disclose the material facts detailed herein for the

27  express purpose of inducing Plaintiffs and other reasonable consumers to purchase the Pepsi

28  Beverages.  Defendant profited by selling the Pepsi Beverages to thousands of unsuspecting

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   California consumers.  Defendant knew that California consumers would not have purchased or

2   paid as much for the Pepsi Beverages had they been warned that they contained 4-MeI in excess of

3   the levels permitted by Proposition 65.

4   **CLASS ALLEGATIONS**

5         50.    Plaintiffs bring this action individually and on behalf of the following Class

6   pursuant to Rule 23(a) and 23(b)(2) and (3):

> All individuals residing in the State of California who purchased Pepsi, Diet Pepsi,
> or Pepsi One for personal use and not for resale any time after January 23, 2010.
> Excluded from the class are any claims for personal injuries or any medical
> monitoring remedies.  Further excluded from the Class are Defendant, its parent
> companies, subsidiaries, and affiliates, its officers, directors, legal representatives,
> and employees, any co-conspirators, all governmental entities, and any judge,
> justice, or judicial officer presiding over this matter.

11         51.    Plaintiffs reserve the right to re-define the Class prior to certification.

12         52.    This action is brought and may properly be maintained as a class action pursuant to

13   Federal Rule of Civil Procedure 23.  This action satisfies the numerosity, typicality, adequacy,

14   predominance, and superiority requirements of those provisions.

15         53.    The Class is so numerous that the individual joinder of all of its members is

16   impracticable.  Due to the nature of the trade and commerce involved, Plaintiffs believe that the

17   total number of Class members is in the thousands and that members of the Class are

18   geographically dispersed across California.  While the exact number and identities of the Class

19   members are unknown at this time, such information can be ascertained through appropriate

20   investigation and discovery.

21         54.    Common questions of law and fact exist as to all Class members, and these

22   common questions predominate over any questions that many affect only individual Class

23   members.  These common legal and factual questions, which do not vary from Class member to

24   Class member, and which may be determined without reference to the individual circumstances of

25   any Class member, include, but are not limited to, the following:

26               a.    Whether Defendant concealed that the Pepsi Beverages contained levels of

27                    4-MeI in excess of the levels set forth by Proposition 65;

28               b.    Whether Defendant knowingly and intentionally failed to disclose that the

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

Pepsi Beverages contained levels of 4-MeI in excess of the levels set forth by Proposition 65;

    c.    Whether Defendant's concealment or omissions were material to reasonable consumers;

    d.    Whether Defendant's conduct constitutes a violation of Proposition 65 (Cal. Health & Safety Code § 25249.7 *et seq.*);

    e.    Whether Defendant's conduct constitutes a violation of the Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*) ("CLRA");

    f.    Whether Defendant's conduct constitutes an unfair, unlawful, and/or fraudulent business practice in violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) ("UCL");

    g.    Whether Plaintiffs and the Class are entitled to compensatory damages, and if so, the nature of such damages;

    h.    Whether Plaintiffs and the Class are entitled to restitutionary relief; and

    i.    Whether Plaintiffs and the Class are entitled to injunctive relief.

55.    Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs and all Class members have been similarly affected by Defendant's common course of conduct since they all relied on Defendant's omissions of material fact.  Plaintiffs and all Class members have suffered the same or substantially similar injury as a result of Defendant's conduct alleged herein.

56.    Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained counsel with substantial experience in handling complex class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the resources to do so.

57.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  As stated above, individual joinder of all Class members is impracticable.  Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

the controversies engendered by Defendant's common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the Class members' rights.

58.    The prosecution of separate actions by individual Class members would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for Defendant.

59.    Adjudication of individual Class members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudication, and could substantially impair or impede the ability of such non-party Class members to protect their interests.

60.    Defendant has acted or refused to act on grounds that apply generally to the Class, thereby making appropriate final and injunctive relief respecting the Class as a whole, as requested herein.

61.    Pursuant to California Code of Civil Procedure § 1021.5, Plaintiffs and the Class seek reasonable attorneys' fees as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATION OF PROPOSITION 65

### (Cal.  Health & Safety Code § 25249.7, *et seq.*)

### (By Plaintiffs Mary Hall and Kent Ibusuki and the Class Against Defendant)

62.    Plaintiffs[17] incorporate by reference the allegations contained in the paragraphs above as though fully set forth herein.

---

[17] For purposes of Plaintiffs' Proposition 65 claim, the term "Plaintiffs" shall refer only to Plaintiffs Mary Hall and Kent Ibusuki.

63.    The Pepsi Beverages are contaminated with 4-MeI, which is included on the Proposition 65 list of "Chemicals Known to the State to Cause Cancer or Reproductive Toxicity." The amount of 4-MeI contained in the Pepsi Beverages is in excess of any applicable "safe harbor" level set forth by OEHHA and the NSRL.  The Pepsi Beverages are therefore subject to the warning and liability provisions of Proposition 65.

64.    In violation of Proposition 65, Defendant packaged and sold the Pepsi Beverages in California without the warnings required by California Code of Regulations Title 27 § 25601 *et seq.*, which would have provided persons who purchased and consumed the Pepsi Products and suffered exposure to 4-MeI with important health information required under California law. These exposures took place off of Defendant's property and away from any source of conspicuous warning such as a sign at the point of sale or a warning on the labels of the Pepsi Beverages.

65.    By committing the acts alleged above, Defendant is a person who, in the course of doing business, knowingly and intentionally exposed individuals in California to chemicals known by the State of California to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individuals, as required by Health & Safety Code § 25249.6.

66.    Plaintiffs' allegations concern a "consumer products exposure," which is an exposure that results from a person's acquisition, purchase, storage, consumption or other reasonably foreseeable use of a consumer good, or any exposure that results from receiving a consumer service.  *See* Cal. Code Regs. Title 27 § 25602(c).  The method of exposure is through ingestion.

67.    More than sixty days prior to filing this Complaint, in compliance with Health & Safety Code § 25249.7(d) and 27 C.C.R. § 25903(b), Plaintiffs provided notice of the alleged violations to Defendant, the California Attorney General, and the applicable district attorneys and city attorneys in whose jurisdictions the alleged exposures occurred.  Also more than sixty days prior to filing this Complaint, in compliance with Health & Safety Code § 25249.7(d) and 11 C.C.R. § 3101, Plaintiffs sent a Certificate of Merit along with their notice to Defendant, the California Attorney General, and the applicable district attorneys and city attorneys in whose jurisdictions the alleged exposures occurred.

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

68.   To Plaintiffs' knowledge, none of the public prosecutors with the authority to prosecute violations of Proposition 65 has commenced and/or is diligently prosecuting a cause of action against Defendant based on the claims asserted herein.

69.   Pursuant to Health & Safety Code § 25249.7(a), Plaintiffs seek an injunction on behalf of the public interest, requiring Defendant to institute a recall of the Pepsi Beverages in California; discontinue the manufacture, distribution, and sale of the Pepsi Beverages in California; and/or provide a clear and reasonable warning to consumers concerning the presence of 4-MeI in the Pepsi Beverages.

70.   Pursuant to Health & Safety Code § 25249.7(b), the above violations render Defendant liable for civil penalties not to exceed $2,500 per day for each violation, in addition to any other penalty established by law.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT

### (Cal. Civ. Code § 1750, *et seq.*)

### (By Plaintiffs and the Class Against Defendant)

71.   Plaintiffs incorporate by reference the allegations contained in the paragraphs above as though fully set forth herein.

72.   Each of the Plaintiffs and each proposed Class member is a "consumer," as that term is defined in Cal. Civ. Code § 1761(d).

73.   The Pepsi Beverages are "goods," as that term is defined in Cal. Civ. Code § 1761(a).

74.   Defendant is a "person," as that term is defined in Cal. Civ. Code § 1761(c).

75.   Each of the Plaintiffs' and each proposed Class Member's purchase of the Pepsi Beverages constituted a "transaction," as that term is defined in Cal. Civ. Code § 1761(e).

76.   Defendant has engaged in and continues to engage in business practices in violation of California Civil Code § 1750 *et seq.* (the CLRA) by actively concealing and failing to warn that the Pepsi Beverages contain 4-MeI in excess of the levels permitted by Proposition 65.  Defendant has actively concealed and failed to disclose this information knowing that such information is

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  material to a reasonable consumer's purchasing decision, and thereby misrepresented the safety,

2  composition, and quality of the Pepsi Beverages.  Defendant's business practices are unfair and/or

3  deceptive and should be enjoined.

4      77.    Defendant has engaged in unfair or deceptive acts or practices intended to result in

5  the sale the Pepsi Beverages in violation of California Civil Code § 1770.  Defendant knew and/or

6  should have known that its concealment and/or omissions of material fact concerning the

7  characteristics, composition, and quality of the Pepsi Beverages were material and likely to

8  mislead the public.

9      78.    Defendant's conduct alleged herein violates the CLRA, including but not limited

10  to, the following provisions: (1) representing that goods or services have sponsorship, approval,

11  characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of Cal.

12  Civ. Code § 1770(a)(5); (2) representing that goods or services are of a particular standard,

13  quality, or grade if they are of another in violation of Cal. Civ. Code § 1770(a)(7); and/or (3)

14  advertising goods or services with intent not to sell them as advertised in violation of Cal. Civ.

15  Code § 1770(a)(9).  As a direct and proximate result of Defendant's conduct, as set forth herein,

16  Defendant has received ill-gotten gains and/or profits.  Therefore, Defendant has been unjustly

17  enriched.

18      79.    There is no other adequate remedy at law, and Plaintiffs and the Class will suffer

19  irreparable harm unless Defendant's conduct is enjoined.

20      80.    Pursuant to California Civil Code § 1780(a) and (e), Plaintiffs and members of the

21  Class seek: (1) an order enjoining Defendant's unlawful business practices as alleged herein; (2)

22  actual damages; (3) restitution; (4) ancillary relief; and (5) attorneys' fees and costs to the full

23  extent allowed by law.

24  Plaintiffs provided Defendant with written notice that its conduct is in violation of the CLRA at

25  least thirty days prior to the filing of this Complaint.  Thus, pursuant to California Civil Code §

26  1782, Plaintiffs may maintain this action for damages.

27  / / /

28  / / /

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

## THIRD CAUSE OF ACTION

## UNLAWFUL, UNFAIR, AND FRAUDULENT BUSINESS PRACTICES

### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

### (By Plaintiffs and the Class Against Defendant)

81.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above as though fully set forth herein.

82.     Defendant's conduct as described herein constitutes unfair competition within the meaning of California Business and Professions Code § 17200, *et seq.* (the UCL) insofar as the UCL prohibits "any unlawful, unfair or fraudulent business act or practice" or "unfair, deceptive, untrue or misleading advertising."

83.     Defendant's concealment and/or omissions of material fact as alleged herein constitute unlawful, unfair, and fraudulent business practices in that they deceived Plaintiffs and the Class into believing the Pepsi Beverages did not contain 4-MeI in excess of the levels permitted by Proposition 65.

84.     Defendant's conduct constitutes an unlawful business practice within the meaning of the UCL because it violates the CLRA and Proposition 65.

85.     Defendant's conduct constitutes an unfair business practice within the meaning of the UCL because it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.  Reasonable consumers purchased the Pepsi Beverages believing they were in compliance with all relevant California regulations and safe according to California regulatory thresholds.  They were not aware and could not have reasonably been aware that the Pepsi Beverages contained excess levels of 4-MeI.  Defendant's conduct in failing to warn consumers of this material fact has no utility or countervailing benefit and consumers could not have reasonably avoided their injury.

86.     Defendant's conduct constitutes a fraudulent business practice within the context of the UCL insofar as Defendant's concealment and omissions of material fact regarding the safety, composition, and quality of the Pepsi Beverages were and are likely to deceive members of the public.

87.     As a direct and proximate result of Defendant's wrongful business practices in violation of the UCL, Plaintiffs and Class members have suffered injury in fact and lost money or property as a result of purchasing the Pepsi Beverages.  Plaintiffs and Class members would not have purchased or paid as much for the Pepsi Beverages had they known that they contained excess levels of 4-MeI.

88.     Defendant's wrongful business practices constitute a continuing course of conduct of unfair competition since Defendant is marketing and selling the Pepsi Beverages in a manner likely to deceive the public.

89.     Pursuant to California Business and Professions Code § 17203, Plaintiffs and the Class seek an order of this Court enjoining Defendant from continuing to engage in unlawful, unfair, and fraudulent business practices and any other act prohibited by law, including those set forth in this Complaint.  Plaintiffs and the Class also seek an order requiring Defendant to make full restitution of all moneys it wrongfully obtained from Plaintiffs and the Class.

90.     Pursuant to California Code of Civil Procedure § 1021.5, Plaintiffs and the Class seek reasonable attorneys' fees as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and members of the Class pray for relief and judgment against Defendant, as follows:

1.     For an order certifying the Class, and appointing Plaintiffs and their counsel to represent the Class;

2.     For civil penalties in the amount of $2,500 per day for each violation of law pursuant to Health & Safety Code § 25249.7(b);

3.     For damages suffered by Plaintiffs and the Class;

4.     For restitution to Plaintiffs and the Class of all monies wrongfully obtained by Defendant;

5.     For injunctive relief requiring Defendant to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in this Complaint;

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

6.    For Plaintiffs' reasonable attorneys' fees, as permitted by law;

7.    For Plaintiffs' costs incurred;

8.    For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

9.    For such other and further relief that this Court deems just and proper.

DATED: August 25, 2014                    **PEARSON, SIMON & WARSHAW, LLP**


By:  _____*/s/ Daniel L. Warshaw*_____
             DANIEL L. WARSHAW

DANIEL L. WARSHAW (Bar No. 185365)
BOBBY POUYA (Bar No. 245527)
ALEXANDER R. SAFYAN (Bar No. 277856)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone:  (818) 788-8300
Facsimile:   (818) 788-8104
dwarshaw@pswlaw.com
bpouya@pswlaw.com
asafyan@pswlaw.com

BRUCE L. SIMON (Bar No. 96241)
**PEARSON, SIMON & WARSHAW, LLP**
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone:  (415) 433-9000
Facsimile:   (415) 433-9008
bsimon@pswlaw.com

MARC L. GODINO (Bar No. 182689)
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160
info@glancylaw.com

Interim Co-Lead Counsel for Plaintiffs and the Proposed Class

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby request a jury trial on the claims so triable.

DATED: August 25, 2014                        **PEARSON, SIMON & WARSHAW, LLP**


By: _____/s/ Daniel L. Warshaw_____
                        DANIEL L. WARSHAW


DANIEL L. WARSHAW (Bar No. 185365)
BOBBY POUYA (Bar No. 245527)
ALEXANDER R. SAFYAN (Bar No. 277856)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone:  (818) 788-8300
Facsimile:   (818) 788-8104
dwarshaw@pswlaw.com
bpouya@pswlaw.com
asafyan@pswlaw.com

BRUCE L. SIMON (Bar No. 96241)
**PEARSON, SIMON & WARSHAW, LLP**
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone:  (415) 433-9000
Facsimile:   (415) 433-9008
bsimon@pswlaw.com

MARC L. GODINO (Bar No. 182689)
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
info@glancylaw.com

Interim Co-Lead Counsel for Plaintiffs and the
Proposed Class