DANIEL L. WARSHAW (Bar No. 185365)
 dwarshaw@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

MARC L. GODINO (Bar No. 182689)
 info@glancylaw.com
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160

*Interim Co-Lead Counsel for Plaintiffs and the
Proposed Class*

*[Additional counsel listed on signature page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| STACY SCIORTINO, *et al.*, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>PEPSICO, INC., a North Carolina Corporation,<br><br>        Defendant. | CASE NO. C 14-0478-EMC<br><br>*Consolidated with* Nos. 14-0713, 14-1099, 14-1105, 14-1192, 14-1193, 14-1316, 14-2020, 14-2023<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT PURSUANT TO FED. R. CIV. P. 23(B)(2); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     May 26, 2016<br>Time:    1:30 p.m.<br>Crtrm.:  5D |

869161.2

C 14-0478-EMC

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 26, 2016 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5D of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable Edward M. Chen, Plaintiff Mary Hall ("Plaintiff") will, and hereby does, move the Court for an Order Granting Preliminary Approval of Class Action Settlement Pursuant to Fed. R. Civ. P. 23(b)(2), granting class certification for settlement purposes only, and granting the appointment of Plaintiff as the Class Representative and her counsel, Pearson, Simon & Warshaw, LLP and Glancy Prongay & Murray LLP, as Class Counsel.  The Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Daniel L. Warshaw, the Declaration of Marc L. Godino, the Declaration of the Honorable Ronald M. Sabraw (Ret.), the pleadings and all documents on file in this action, and such other matters as may be presented at or before the hearing.

DATED: April 21, 2016                    Respectfully submitted,

**PEARSON, SIMON & WARSHAW, LLP**


By:     */s/ Daniel L. Warshaw*

DANIEL L. WARSHAW (Bar No. 185365)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California  91403
Telephone:  (818) 788-8300
Facsimile:  (818) 788-8104
dwarshaw@pswlaw.com

MARC L. GODINO (Bar No. 182689)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California  90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
info@glancylaw.com

*Attorneys for Interim Co-Lead Counsel for Plaintiff and the Proposed Class*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    PROCEDURAL SUMMARY .....................................................................................2

III.   TERMS OF THE PROPOSED SETTLEMENT .......................................................4

    A.    The Class Definition.......................................................................................4

    B.    Class Benefits – Stipulated Injunction .........................................................4

    C.    Class Notice....................................................................................................5

    D.    Release ...........................................................................................................5

    E.    Attorneys' Fees and Costs .............................................................................5

    F.    Payment to Class Representative ...................................................................6

IV.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ...............6

    A.    Class Certification Standards .........................................................................6

        1.    The Requirements of Rule 23(a) are Satisfied. .................................6

            (a)    The Class Is So Numerous that Joinder of All Members Is Impracticable .........................................................6

            (b)    There Are Questions of Law and Fact Common to the Class ...........6

            (c)    The Claims of the Representative Plaintiff Are Typical of the Claims of the Class...........................................................7

            (d)    The Representative Plaintiff and Her Counsel Will Fairly and Adequately Protect the Interest of the Class............................8

        2.    The Requirements of Rule 23(b)(2) are Satisfied. ...........................8

V.    PRELIMINARY APPROVAL IS APPROPRIATE..................................................9

    A.    The Settlement Approval Process ..................................................................9

    B.    The Proposed Settlement is Presumptively Fair and Easily Meets the Requirements for Preliminary Approval ..................................................10

        1.    The Settlement is the product of well-informed, vigorous, and thorough arm's-length negotiation. ..............................................10

        2.    The Settlement bears no obvious deficiencies. ..............................11

3.      The Settlement falls within the range of possible approval. ........................13

VI.     SINCE THE SETTLEMENT PROVIDES FOR INJUNCTIVE RELIEF ONLY, AND SETTLEMENT CLASS MEMBERS DO NOT RELEASE ANY MONETARY CLAIMS, NOTICE NOT IS REQUIRED ....................................................16

VII.    CONCLUSION .............................................................................................17

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1
2
### <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3

CASES

4

5
*Amchem v. Windsor,*
   521 U.S. 591 (1997) ................................................................................................ 6

6

7
*Beck-Ellman v. Kaz USA, Inc.,*
   283 F.R.D. 558 (S.D. Cal. 2012) ......................................................................... 8

8
*Burden* v. *Selectquote Ins. Services,*
   2013 WL 1190634 (.N.D. Cal. Mar. 21, 2013) ............................................. 11, 14

9

10
*Center for Environmental Health v. Pepsi Beverages Company*
   Case No. RG 14-711020 ................................................................................ 4, 15

11
*Chao v. Aurora Loan Servs., LLC,*
   2014 WL 4421308 (N.D. Cal. Sept. 5, 2014) .................................................. 12

12

13
*Chin v. RCN Corp.,*
   2010 WL 1257583 (S.D.N.Y. Mar. 12, 2010) ................................................ 13

14

15
*Comcast Corp. v. Behrend,*
   133 S. Ct. 1426 (2013) ...................................................................................... 15

16
*Consumer Advocacy Grp. v. ExxonMobil Corp.,*
   168 Cal. App. 4th 675 (2008) ........................................................................... 15

17

18
*Environmental Law Foundation v. Beech-Nut Nutrition Corp.,*
   235 Cal. App. 4th 307 (2015) ..................................................................... 14, 15

19

20
*Foti, et al. v. NCO Financial Systems, Inc.,*
   Case No. 04 Civ. 00707, 2008 U.S. Dist. LEXIS 16511 (S.D. N.Y. Feb. 19, 2008) ............. 17

21
*Freedman v. Louisiana-Pacific Corp.,*
   922 F. Supp. 377 (D. Or. 1996) .......................................................................... 6

22

23
*Green v. Am. Express Co.,*
   200 F.R.D. 211 (S.D.N.Y. 2001) ...................................................................... 17

24

25
*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) .................................................................... passim

26
*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (9th Cir. 1992) ............................................................................... 7

27

28
*In re Ferrero Litig.,*
   278 F.R.D. 552 (S.D. Cal. 2011) ........................................................................ 8

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015)..................................................................................12

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................................13

*In re THQ, Inc. Sec. Litig.*,
  Case No. CV 00-1783 AHM, 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) .........7

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
  2012 WL 5055810 (D. Minn. Oct. 18, 2012).........................................................12

*Jermyn v. Best Buy Stores*,
  Case No. 08 Civ. 214, 2012 U.S. Dist. LEXIS 90289 (S.D. N.Y. June 27, 2012) ................16

*Jordan v. Cnty. of L.A.*,
  669 F.2d 1311 (9th Cir. 1982)...................................................................................7

*Kim v. Space Pencil, Inc.*,
  No. 11-cv-03796-LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ....................16

*Lilly v. Jamba Juice Co.*,
  No. 13-cv-02998-JST, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ...................16

*Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco*,
  688 F.2d 615 (9th Cir. 1982)...................................................................................10

*Ries v. Ariz. Bev. USA, LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ..............................................................................9

*Riva v. PepsiCo, Inc.*,
  82 F. Supp. 3d 1045 ................................................................................................16

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003)......................................................................................8

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976)......................................................................................9

*Vasquez v. Coast Valley Roofing, Inc.*,
  670 F. Supp. 2d 1114 (E.D. Cal. 2009) ..................................................................13

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998)....................................................................................9

*Wal–Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ..........................................................................................6, 7

*Weeks v. Kellogg Co.*,
  2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) .......................................................12

*Wren v. RGIS Inventory Specialists*,
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ...................................................... 12

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ............................................................................ 6

**STATUTES AND RULES**

California Business & Professions Code § 17200 *et seq.* ......................................... 3

California Civil Code § 1750 *et seq.* ......................................................................... 3

27 Cal. Code Regs. § 25721(d)(4) .......................................................................... 15

Cal. Health & Safety Code § 25249.10(c) ............................................................. 15

Fed. R. Civ. P. 23 ................................................................................................ 1, 6

Fed. R. Civ. P. 23(a)(3) ........................................................................................... 7

Fed. R. Civ. P. 23 (a)(4) .......................................................................................... 8

Fed. R. Civ. P. 23(b) ............................................................................................... 6

Fed. R. Civ. P. 23(b)(2) ........................................................................................... 6

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 9

Fed. R. Civ. P. 23(c)(2)(A) .................................................................................... 16

Fed. R. Civ. P. 23(g)(1)(B) ...................................................................................... 8

Fed. R. Civ. P. 23(e)(1)(A) ...................................................................................... 9

Food Drug and Cosmetics Act ................................................................................. 3

Safe Drinking Water and Toxic Enforcement Act of 1986 (Cal. Health & Safety Code §§
    25249.5, *et seq.*) ............................................................................................ 1, 3

**OTHER AUTHORITIES**

7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FED. PRAC. &
    PROC. § 1763 (2d ed. 1986) ............................................................................... 7

NEWBERG ON CLASS ACTIONS § 13.15 .......................................................... 10, 12

NEWBERG ON CLASS ACTIONS § 13.44 (5th ed. 2015) ......................................... 9

NEWBERG ON CLASS ACTIONS § 13.45 ............................................................... 11

MANUAL FOR COMPLEX LITIGATION §§ 21.632-635 (4th ed. 2004) ................. 9, 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.       INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff Mary Hall ("Plaintiff"), on behalf of herself and the proposed Settlement Class she represents, hereby moves for preliminary approval of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") reached with Defendant PepsiCo, Inc. ("PepsiCo" or "Defendant").  The Settlement Agreement is attached as Exhibit 1 to the accompanying Declaration of Daniel L. Warshaw ("Warshaw Decl.").  In connection with this motion, Plaintiff also seeks class certification for settlement purposes only and an order appointing Plaintiff as the Class Representative and her counsel, Pearson, Simon & Warshaw, LLP and Glancy Prongay & Murray LLP, as Class Counsel.

Between January and March 2014, several consumers, including Plaintiff, filed substantially similar class action suits alleging that PepsiCo failed to warn consumers that its Pepsi, Diet Pepsi, and Pepsi One soft drinks (the "Covered Products") contain elevated levels of the dangerous chemical 4-Methylimidazole ("4-MeI") in violation of California consumer protection statutes and common law.  4-MeI, a compound formed during the manufacturing of caramel coloring used in the Covered Products, is recognized by the State of California as a chemical known to cause cancer.[1]

Throughout the litigation of this case, PepsiCo has vigorously denied liability, arguing that the Covered Products did not contain unsafe levels of 4-MeI or violate Proposition 65.  Since consolidation, and after two years of hard-fought litigation, Plaintiff and Defendant (collectively, the "Parties") reached a nationwide Settlement with the assistance of the Honorable Ronald M. Sabraw (Ret.), a well-respected JAMS mediator with experience resolving class action litigation.  The Settlement provides for the following meaningful injunctive relief:  (1) ensuring PepsiCo's caramel coloring suppliers meet certain 4-MeI levels in products shipped for sale in the United States; (2) ensuring the 4-MeI levels in the Covered Products shipped for sale in the United States

---

[1] Safe Drinking Water and Toxic Enforcement Act of 1986 (Cal. Health & Safety Code §§ 25249.5, *et seq.*) ("Proposition 65").

1   will not exceed the level of 100 parts per billion; and (3) testing of the Covered Products pursuant

2   to an agreed protocol.  The Settlement was negotiated at arm's-length by lawyers with significant

3   experience in class action procedure and food labeling claims.  As demonstrated below, the

4   Parties' Settlement is worthy of the Court's approval.  Accordingly, Plaintiff respectfully requests

5   that the Court grant preliminary approval of the proposed Settlement Agreement, certify the

6   requested nationwide Settlement Class, appoint Plaintiff as class representative, appoint Pearson,

7   Simon & Warshaw, LLP and Glancy Prongay & Murray LLP as Class Counsel, and enter a

8   schedule for the final approval process and for Plaintiff's Motion for Attorneys' Fees and

9   Expenses and Incentive award.[2]

10   **II.     <u>PROCEDURAL SUMMARY</u>**

11      On January 23, 2014, *Consumer Reports* published the results of tests it conducted in

12   April-September of 2013 and December of 2013 on the presence of 4-MeI in the Covered

13   Products in California.  The California Environmental Protection Agency's Office of

14   Environmental Health Hazard Assessment ("OEHHA") listed 4-MeI as a chemical known to the

15   State of California to cause cancer under Proposition 65 on January 7, 2011.  The listing of 4-MeI

16   was based on the National Toxicology Program's findings of clear evidence of carcinogenicity in

17   its studies showing the development of lung cancer in male and female mice from 4-MeI exposure.

18      Nine class action lawsuits were filed between January and March 2014, alleging that

19   Defendant violated Proposition 65 and various California consumer fraud statutes.[3]  The Court

20   consolidated the separate actions under the caption *Sciortino v. PepsiCo, Inc.* ("Consolidated

21   Action") and appointed Pearson, Simon & Warshaw, LLP and Glancy Prongay & Murray LLP as

22   lead counsel.  (Dkt. No. 65).  The Court later severed and then dismissed the *Riva v. PepsiCo, Inc.*

_____

24   [2] All capitalized terms used herein that are not otherwise defined shall have the same meaning as used in the Settlement Agreement.  (Warshaw Decl., Ex. 1).

25   [3] The filed actions were: *Sciortino v. PepsiCo, Inc.*, No. 14-0478-EMC; *Cortina v. PepsiCo, Inc.*, No. 14-2023-EMC; *Granados v. PepsiCo, Inc.*, No. 14-1316-EMC; *Ibusuki v. PepsiCo, Inc.*, No. 14-1193-EMC; *Ree v. PepsiCo, Inc.*, No. 14-1192-EMC; *Aourout v. PepsiCo, Inc.*, No. 14-1105-EMC; *Hall v. PepsiCo, Inc.,* No. 14-1099-EMC; *Langley v. PepsiCo, Inc.*, No. 14-713-EMC; and *Riva v. PepsiCo, Inc.*, No. 14-2020-EMC.

28

1    action (Dkt. No. 62), leaving eight consolidated cases in the Consolidated Action.

2           On August 25, 2014, Plaintiffs Hall, Ibusuki, and Ree[4] filed a Consolidated Amended

3    Complaint ("CAC") against Defendant for violations of Proposition 65, California's Consumers

4    Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), and California's Unfair

5    Competition Law, Cal. Bus. & Prof. § 17200 *et seq.* ("UCL").  *See* CAC (Dkt. No. 68).  Defendant

6    subsequently moved to dismiss the CAC, arguing that:  (1) Plaintiffs Hall and Ibusuki failed to

7    comply with Proposition 65's mandatory notice provisions before filing suit; (2) the federal Food,

8    Drug, and Cosmetic Act ("FDCA") and the Food and Drug Administration's ("FDA") regulations

9    preempted Plaintiffs' state law claims; and (3) the Court should not adjudicate the Consolidated

10   Action because (a) the FDA has primary jurisdiction over the subject matter of this lawsuit and (b)

11   there is a pending Proposition 65 action in state court.  On June 5, 2015, the Court denied

12   Defendant's motion to dismiss Plaintiff Hall's claims on Proposition 65 grounds, finding that

13   adequate pre-suit notice was provided.  The Court also denied Defendant's motion to dismiss

14   Plaintiffs' state law claims—holding that the state law claims were not preempted by federal

15   law—and denied Defendant's request to dismiss or stay the action under a primary jurisdiction or

16   abstention theory.  The Court dismissed Plaintiff Ibusuki's Prop. 65 claim, but noted that the

17   dismissal had little practical effect.  *See* Order Granting in Part and Denying in Part Defendant's

18   Motion to Dismiss (Dkt. No. 105).

19          Although the Court largely denied the Motion to Dismiss, the parties continued to discuss

20   Proposition 65 compliance and whether a consensual resolution was possible.  As part of this

21   process, the parties met in person on July 13, 2015, with the assistance of experts to discuss data

22   that PepsiCo believed established its compliance with Proposition 65.  Over the next few months,

23   counsel for the Parties continued to discuss alternative dispute resolution and reached a joint

24   stipulation on September 15, 2015 to vacate all deadlines and stay the action for 90 days pending

25   settlement efforts.  On September 18, 2015, the Court issued an Order approving the stipulation

26   _____

27   [4] On January 4, 2016, this Court granted Defendant's motion to dismiss Plaintiff Ree.  (Dkt. No. 137).

28

1  (Dkt. No. 124).

2  On November 3, 2015, the Parties participated in a mediation before the Honorable Ronald

3  M. Sabraw (Ret.).  (Warshaw Decl. ¶ 9).  At the conclusion of the mediation, the Parties were at

4  an impasse.  (*Id.*)  However, with Judge Sabraw's assistance, the Parties continued having

5  settlement discussions over the next several months and ultimately reached the proposed

6  Settlement.  (*Id.*; *see also* Declaration of the Hon. Ronald M. Sabraw ("Sabraw Decl.") ¶ 4).

7  **III.    TERMS OF THE PROPOSED SETTLEMENT**

8  **A.    The Class Definition**

9  For settlement purposes only, the Parties have agreed to the certification of an injunctive

10  relief only class pursuant to Fed. R. Civ. P. 23(b)(2) defined as follows:

> All individuals in the United States and all U.S. territories (including, but not
> limited to, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, Guam,
> American Samoa, the Northern Mariana Islands, and the other territories and
> possessions of the United States), who purchased one or more of the Products from
> January 1, 2010, until the date of the preliminary approval of the settlement of this
> litigation.[5]   ["Settlement Class"]

11
12
13
14

15  (Settlement Agreement ¶ 4.3).

16  **B.    Class Benefits – Stipulated Injunction**

17  Prior to the Settlement in this case, PepsiCo agreed to a stipulated injunction entered by the

18  Superior Court of California for the County of Alameda in the Proposition 65 case *Center for*

19  *Environmental Health v. Pepsi Beverages Company, et al.,* Case No. RG 14-711020 ("*CEH*").

20  However, as a result of the efforts by the Parties to resolve the instant matter, Defendant

21  has agreed to enhance the CEH settlement by: (1) *expanding the geographic scope of the*

22  *stipulated injunction from California to nationwide;* (2) *increasing the duration of the injunctive*

23  *relief from three years to five years.*

24  [5] Excluded from the Settlement Class are: (a) persons or entities who purchased the Covered
25  Products for the purpose of resale or distribution; (b) persons who are employees, directors,
    officers, and agents of Defendant or its parent or subsidiary companies; (c) governmental entities;
26  (d) persons who timely and properly exclude themselves from the Settlement Class as provided in
    the Settlement Agreement; and (e) any judicial officer hearing this Action, as well as their
27  immediate family members and employees.  (Settlement Agreement ¶ 4.4).

28

Consistent with the CEH settlement, and in consideration for the releases provided in the Settlement Agreement, PepsiCo will provide the Settlement Class with the following nationwide injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2):

- Ensuring PepsiCo's caramel coloring suppliers meet certain 4-MeI levels in products shipped for sale in the United States;

- Ensuring the 4-MeI concentration levels in the caramel coloring in each of the Covered Products shipped for sale in the United States will not exceed the level of 100 parts per billion; and

- Testing of the Covered Products pursuant to an agreed protocol.

(Settlement Agreement ¶ 5.1.1).

### C.    Class Notice

Since the Settlement Agreement provides for injunctive relief only and requires no release of any monetary or personal injury claims by any member of the Settlement Class, the Parties agree that notice and opt-out rights are not necessary.  (Settlement Agreement ¶ 8.3.1).

### D.    Release

The Settlement Release provides that Settlement Class Members are enjoined only from taking any future action seeking injunctive and/or declaratory relief against PepsiCo based on the Released Claims.  (Settlement Agreement ¶ 8.3.2).  There is no release of damages claims.

### E.    Attorneys' Fees and Costs

Since the inception of this litigation, Interim Co-Lead Counsel, Pearson, Simon & Warshaw, LLP and Glancy Prongay & Murray LLP, have worked on this case on a purely contingency basis.  Defendant has agreed to pay the total sum of $500,000 to Pearson, Simon & Warshaw, LLP and Glancy Prongay & Murray LLP for all of Plaintiff's attorneys' fees and costs, subject to court approval.  (Settlement Agreement ¶ 11.1).  This amount represents a negative multiplier on Interim Co-Lead Counsel's lodestar,[6] which totals $717,391.25 as of the date of this

---

[6] This excludes the lodestar of additional counsel who worked on the case at the direction of Interim Co-Lead Counsel, as authorized by the Court.  (*See* Dkt. No. 65; Dkt. No.  70 at 2).

1  filing.  (Warshaw Decl. ¶ 20).

2                  **F.**      **Payment to Class Representative**

3        In exchange for the release of her individual claims and for her efforts in prosecuting the

4  matter on behalf of the Settlement Class, Defendant has agreed to pay Plaintiff an amount not to

5  exceed $4,000, subject to court approval.  (Settlement Agreement ¶ 11.5).

6  **IV.**    **CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**

7                  **A.**    **Class Certification Standards**

8        The party seeking class certification bears the burden of showing that each of Rule 23(a)'s

9  requirements and at least one of the requirements of Rule 23(b) are satisfied.  *Hanlon v. Chrysler*

10  *Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998); *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

11  2548 (2011).  To certify a class under Rule 23(a), the court must find (1) numerosity, (2) common

12  questions of law or fact, (3) that the named plaintiff's claims are typical of the claims of the class,

13  and (4) that the named plaintiff and plaintiff's counsel can adequately protect the interests of the

14  class.  *Amchem v. Windsor*, 521 U.S. 591, 613 (1997); *Zinser v. Accufix Research Inst., Inc.*, 253

15  F.3d 1180, 1186 (9th Cir. 2001).  In addition, the case must fit into one or more of the categories

16  set forth in Rule 23(b).  Fed. R. Civ. P.  23(b); *Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp.

17  377, 398 (D. Or. 1996).  As shown below, this case meets the requirements of Fed. R. Civ. P.

18  23(a) and (b)(2).

19              **1.**     **The Requirements of Rule 23(a) are Satisfied.**

20        Each of the four basic prerequisites enumerated in Rule 23 of the Federal Rules of Civil

21  Procedure—numerosity, commonality, typicality, and adequacy—are satisfied in this case.

22                         (a)    **The Class Is So Numerous that Joinder of All Members Is**

23                              **Impracticable**

24        Here, the Parties agree that the Settlement Class satisfies the numerosity requirement.

25  While the exact number of Class members is undetermined, PepsiCo sold millions of individual

26  units of the Covered Products.  This is sufficient to satisfy the numerosity requirement.

27                         (b)    **There Are Questions of Law and Fact Common to the Class**

28        Commonality requires the plaintiff to demonstrate that the class members "have suffered

the same injury." *Wal–Mart Stores*, 131 S. Ct. at 2551.  The commonality requirement has been construed permissively.  *Hanlon*, 150 F.3d at 1019.  "All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id.*; 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FED. PRAC. & PROC. § 1763 (2d ed. 1986) ("It is important to note that this provision does not require that all the questions of law and fact raised by the dispute be common.").  Indeed, for the commonality requirement to be met, a ***single*** issue common to the proposed class is sufficient.  *Wal–Mart Stores*, 131 S. Ct. at 2556; *In re THQ, Inc. Sec. Litig.*, Case No. CV 00-1783 AHM, 2002 WL 1832145, at *3 (C.D. Cal. Mar. 22, 2002).  Here, the claims of the Plaintiff and the Class significantly depend on a common issue:  whether PepsiCo violated California law by failing to warn consumers that the Covered Products contain elevated levels of 4-MeI.  Other questions common to Plaintiff and all Class members include the proper exposure methodology for the Covered Products under Proposition 65 and whether reasonable consumers are likely to be deceived by PepsiCo's conduct.  These factual and legal questions are common to the proposed Settlement Class and are sufficient to meet the commonality requirement.

(c)     The Claims of the Representative Plaintiff Are Typical of the Claims of the Class

Rule 23(a)(3) requires the representative party to have claims that are "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The purpose of the "typicality" requirement of Rule 23(a)(3) is to ensure that the named representative's interests "align" with those of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  Thus, typicality is satisfied as long as the named plaintiff's claims stem from the "same event, practice, or course of conduct that forms the basis of the class claims and is based upon the same legal or remedial theory."  *Jordan v. Cnty. of L.A.*, 669 F.2d 1311, 1321 (9th Cir. 1982) (reversed on other grounds).  Plaintiff's claims in this case are typical of those of the Class because she, like all Class

1    members, alleges that she bought Covered Products that did not bear a proper Proposition 65

2    warning, making them illegal for Defendant to sell and deliver in California.

3                    (d)      The Representative Plaintiff and Her Counsel Will Fairly

4                             and Adequately Protect the Interest of the Class

5              Finally, Rule 23(a)(4) requires that the class representative "fairly and adequately protect

6    the interests of the class." Fed. R. Civ. P. 23(a)(4).  The Ninth Circuit has established a two-prong

7    test for this requirement:  "(1) Do the representative plaintiffs and their counsel have any conflicts

8    of interest with other class members, and (2) will the representative plaintiffs and their counsel

9    prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957

10   (9th Cir. 2003).  As noted above, Plaintiff's and each Class member's claims arise under the same

11   legal theories.  Thus, Plaintiff's interests align perfectly with the interests of absent Class

12   members, and no conflict is anticipated.  *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 567 (S.D.

13   Cal. 2012); *In re Ferrero Litig.,* 278 F.R.D. 552, 559 (S.D. Cal. 2011).  Plaintiff has also shown

14   her desire and ability to monitor her counsel and participate in the vigorous prosecution of the

15   case.  Plaintiff reviewed the operative complaints before filing, provided relevant information to

16   counsel, and at all times was prepared to go to trial on this matter.  (Warshaw Decl. ¶ 21).

17            In addition, Plaintiff's counsel is more than adequate and should be appointed as Class

18   Counsel.  Class counsel must have the ability to fairly and adequately represent the interests of the

19   Class.  *See* Fed. R. Civ. P. 23(g)(1)(B).  Here, Plaintiff has retained experienced legal counsel to

20   represent the Class, as set forth in her counsel's resume.  (Warshaw Decl., Ex. 2 and the

21   Declaration of Marc L. Godino ("Godino Decl."), Ex. A).  Plaintiff's counsel vigorously litigated

22   this matter, including but not limited to, performing independent testing of the Covered Products,

23   drafting and filing the complaints, successfully opposing Defendant's motion to dismiss, and

24   ultimately negotiating a resolution that delivers the exact relief complained of in the case.  Based

25   on the performance of Plaintiff's counsel to date, and their commitment to this litigation, together

26   with Plaintiff they will continue to fairly and adequately represent the Class.

27                    **2.        The Requirements of Rule 23(b)(2) are Satisfied.**

28            Under Rule 23(b)(2), a class action is properly certified where the party against whom

1    relief is sought "has acted or refused to act on grounds that apply generally to the class, so that

2    injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

3    Under this standard, for a Rule 23(b)(2) class to be certified, "[i]t is sufficient if class members

4    complain of a pattern or practice that is generally applicable to the class as a whole. Even if some

5    class members have not been injured by the challenged practice[.]" *Walters v. Reno*, 145 F.3d

6    1032, 1047 (9th Cir. 1998). Further, "[a]lthough common issues must predominate for class

7    certification under Rule 23(b)(3), no such requirement exists under 23(b)(2)." *Id.* As shown

8    above, Plaintiff, on behalf of herself and the proposed Settlement Class, complains of standard and

9    uniform illegal practices that are generally applicable to the class as a whole. Moreover,

10   Defendant has maintained that it has fully complied with all applicable laws with regard to the

11   labeling of the Covered Products. Accordingly, Rule 23(b)(2) certification is appropriate. *See*

12   *Ries v. Ariz. Bev. USA, LLC*, 287 F.R.D. 523, 542 (N.D. Cal. 2012) (granting class certification for

13   injunctive relief claims related to beverages falsely advertised as "all natural").

14          **V.     PRELIMINARY APPROVAL IS APPROPRIATE**

15                 **A.     The Settlement Approval Process**

16          The law favors settlement, particularly in class actions and complex cases where

17   substantial resources can be conserved by avoiding the time, costs, and rigors of prolonged

18   litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); CONTE &

19   NEWBERG, NEWBERG ON CLASS ACTIONS § 13.44 (5th ed. 2015) ("By their very nature, because of

20   the uncertainties of outcome, difficulties of proof, [and] length of litigation, class action suits lend

21   themselves readily to compromise.").

22          Where, as here, the parties propose to resolve the claims of a certified class through

23   settlement, they must obtain the court's approval. Fed. R. Civ. Proc. 23(e)(1)(A). The typical

24   process for approving class action settlements is described in the MANUAL FOR COMPLEX

25   LITIGATION §§ 21.632-635 (4th ed. 2004): (1) preliminary approval of the proposed settlement at

26   an informal hearing; (2) dissemination of mailed and/or published notice of the settlement to all

27   affected class members; and (3) a "formal fairness hearing," or final approval hearing, at which

28   evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is

1  presented.  *Id.*  This procedure, commonly employed by federal courts, serves the dual function of

2  safeguarding class members' procedural due process rights and enabling the court to fulfill its role

3  as the guardian of class members' interests.

4          At the preliminary approval stage, the Court "must make a preliminary determination on

5  the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation

6  of notice of the certification, proposed settlement, and date of the final fairness hearing."

7  MANUAL FOR COMPLEX LITIGATION § 21.632.  The Court should grant preliminary approval if the

8  settlement has no obvious deficiencies and "falls within the range of possible approval."

9  NEWBERG ON CLASS ACTIONS § 13.15.

10         At the next stage of the approval process, the formal fairness hearing, courts consider

11 arguments in favor of and in opposition to the settlement.  According to the Ninth Circuit, the

12 fairness hearing should not be turned into a "trial or rehearsal for trial on the merits."  *Officers for*

13 *Justice v. Civil Serv. Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir.

14 1982).  "Neither the trial court nor [the Ninth Circuit] is to reach any ultimate conclusions on the

15 contested issues of fact and law which underlie the merits of the dispute . . . ."  *Id.*  Rather, the

16 inquiry ". . . must be limited to the extent necessary to reach a reasoned judgment that the

17 agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

18 parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all

19 concerned."  *Id.*

20                    **B.    The Proposed Settlement is Presumptively Fair and Easily**

21                    **Meets the Requirements for Preliminary Approval**

22                         **1.    The Settlement is the product of well-informed, vigorous,**

23                              **and thorough arm's-length negotiation.**

24         In contemplating preliminary approval, one of the Court's duties is to ensure that "the

25 agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

26 parties."  *Hanlon*, 150 F.3d at 1027 (internal quotes and citations omitted).  The negotiations

27 leading to the Settlement were hard-fought and overseen by the Honorable Ronald M. Sabraw

28 (Ret.).  (Warshaw Decl. ¶ 9).  Given the extensive motion practice on Defendant's motion to

dismiss, the parties' substantive discussions and discovery conducted, and the mediation briefs submitted, both parties were able to articulate the strengths of their claims and defenses and the weaknesses of each other's position, ultimately reaching the Settlement after weighing the facts and applicable law and the risks of continued litigation.  (Warshaw Decl. ¶¶ 9-13; Godino Decl. ¶¶ 7 and 12; Sabraw Decl. ¶¶ 5-6).  These facts support a presumption of fairness.  NEWBERG ON CLASS ACTIONS § 13.45.

The Parties had sufficient discovery to make an informed judgment on the claims.  For example, Plaintiff's counsel conducted testing on the Covered Products, reviewed Defendant's product labels, and engaged in informal discovery, which included a review of product information, print advertising, and other relevant information related to compliance with Proposition 65.  (Warshaw Decl. ¶ 11).

Plaintiff's counsel is highly experienced in class action litigation involving claims for violations of California's consumer fraud statutes.  (Warshaw Decl., Ex. 2 and Godino Decl., Ex. A (firm resumes)).  As reflected in the firms' resumes, they have been appointed as lead or co-lead class counsel in a number of other class action cases, including cases involving claims for false food labeling against some of the most resourceful corporations in the country.  On the other side, Defendant is represented by Gibson Dunn & Crutcher LLP, a national defense firm with lawyers experienced in class action procedure.

In light of the factors discussed above, Plaintiff's counsel were well situated to evaluate the strength and weakness of Plaintiff's case.  Far from being the product of anything inappropriate, the Settlement at issue is the result of hard-fought, adversarial work, such that it is worthy of preliminary approval by the Court.  *Cf. Hanlon*, 150 F.3d at 1027 (no basis to disturb settlement where there was no evidence suggesting that the settlement was negotiated in haste or in the absence of information).

### 2.    The Settlement bears no obvious deficiencies.

Furthermore, the Settlement bears no obvious deficiencies.  *See Burden* v. *Selectquote Ins. Services*, 2013 WL 1190634, at *3.  There are no patent defects that would preclude its approval by the Court, such that proceeding to a formal fairness hearing would be a waste of time.  *See*

1   NEWBERG ON CLASS ACTIONS § 13.15 (referring to the Court's inquiry as to, *inter alia*, "obvious

2   deficiencies").  An examination of the Settlement will reveal no apparent unfairness, and no

3   "unduly preferential treatment of a class representative or segments of the Settlement Class, or

4   excessive compensation for attorneys."  *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL

5   5055810, at *6 (D. Minn. Oct. 18, 2012) ("There are no grounds to doubt the fairness of the

6   Settlement, or any other obvious deficiencies, such as unduly preferential treatment of a class

7   representative or segments of the Settlement Class, or excessive compensation for attorneys.").

8           To the contrary, the Settlement provides significant injunctive relief to Class members.

9   Under the Settlement, there is no preferential treatment of Class members or segments of the class.

10  As for the Class Representative service award of up to $4,000, such an award is supported by

11  precedent and by the attention that Plaintiff devoted to this matter.  For example, Plaintiff assisted

12  with the drafting of complaints, helped to prepare initial disclosures, provided counsel with

13  relevant information, monitored the course of the litigation, and consulted with counsel regarding

14  proposed terms of settlement.  (Warshaw Decl. ¶ 21).  *See, e.g.*, *Chao v. Aurora Loan Servs., LLC*,

15  2014 WL 4421308, at *4 (N.D. Cal. Sept. 5, 2014) (noting that $5,000 incentive awards to

16  representative plaintiffs are "presumptively reasonable" in this judicial district) (citing *Jacobs v.*

17  *California State Auto. Ass'n Inter–Ins. Bureau*, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27,

18  2009)); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015)

19  (approving $5,000 incentive awards where class members would receive $12); *Weeks v. Kellogg*

20  *Co.*, 2013 WL 6531177, at *3, *34-37 (C.D. Cal. Nov. 23, 2013) (approving incentive awards of

21  $5,000 per named plaintiff where settlement provided for the recovery by class members of $5 per

22  box of cereal purchased during the class period, up to a maximum of $15 per class member, all

23  subject to proportional reduction if all eligible claims exceeded the settlement fund); *Wren v. RGIS*

24  *Inventory Specialists*, 2011 WL 1230826, at *31-37 (N.D. Cal. Apr. 1, 2011) (making $5,000

25  service awards to 20 named plaintiffs "where average award to class members was $207.69").

26          Finally, with respect to attorneys' fees, negotiations over attorneys' fees were separate

27  from, and took place after, negotiations regarding relief to the Class.  The $500,000 amount

28  negotiated for fees and expenses is fair in light of the significant time spent by counsel on this

1  matter, their experience, and the results achieved for the class.  (Warshaw Decl. ¶ 20).  In fact, as

2  stated above, the negotiated attorneys' fee and expense award represents a negative multiplier on

3  Interim Co-Lead Counsel's lodestar.  (Warshaw Decl. ¶ 20).

### 3.      The Settlement falls within the range of possible approval.

6  According to the Ninth Circuit, when evaluating a class action settlement, the Court should

7  consider whether "the settlement, taken as a whole, is fair, reasonable and adequate to all

8  concerned."  *Hanlon*, 150 F.3d at 1027 (internal quotes and citations omitted).  However, at

9  preliminary approval the Court does not conduct the fuller analysis that occurs upon the motion

10 for final approval.  *Chin v. RCN Corp.*, 2010 WL 1257583, at *2 (S.D.N.Y. Mar. 12, 2010) ("In

11 fact, 'a full fairness analysis is neither feasible nor appropriate' when evaluating a proposed

12 settlement agreement for preliminary approval.") (citation omitted).  Rather, the Court need only

13 find that the settlement is within "the range of reasonableness" to justify sending notice to class

14 members (where necessary) and scheduling final approval proceedings.  *See In re Tableware*

15 *Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007).  Here, the Parties' Settlement,

16 which resulted in significant nationwide injunctive relief in compromise of hotly contested claims,

17 falls within the range of reasonableness, such that preliminary approval is warranted.  (*See*

18 Warshaw Decl. ¶ 13).

19 "To evaluate the 'range of possible approval' criterion, which focuses on 'substantive

20 fairness and adequacy,' 'courts primarily consider plaintiffs' expected recovery balanced against

21 the value of the settlement offer.'"  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114,

22 1125 (E.D. Cal. 2009) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080).  In this

23 case, while certain evidence pointed in Plaintiff's view to violations of state consumer protection

24 laws and Proposition 65, Plaintiff's success was not without doubt.  (Warshaw Decl. ¶ 12).

25 For example, there is no case law addressing the issue of determining exposure levels of 4-

26 MeI for purposes of determining a violation of Proposition 65.  In this case, Plaintiff was

27 advocating that a daily exposure to 4-MeI that exceeds the Proposition 65 threshold of 29

28 micrograms constitutes a violation of Proposition 65.  However, cases dealing with determining

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    exposure levels of other chemicals listed in Proposition 65 have used an averaging exposure

2    methodology, which PepsiCo advocates, as opposed to daily exposure.  PepsiCo would likely rely

3    heavily on *Environmental Law Foundation v. Beech-Nut Nutrition Corp.*, et al., 235 Cal. App. 4th

4    307 (2015).  In that decision, the court of appeal affirmed the trial court's ruling that the level of

5    exposure to lead could properly be calculated by averaging exposures over time and over multiple

6    products, rather than by using a maximum exposure from a single product on a single day.  *Id.* at

7    328-29.  Although Plaintiff contends that *Beech-Nut* is distinguishable because it deals with lead,

8    which produces acute adverse reproductive effects as opposed to 4-MeI's cancer risk, there would

9    be a battle between the Parties as to the applicable measurement for determining a Proposition 65

10   violation.  In addition, Defendant would vigorously contest class certification, raising issues such

11   as ascertainability and a classwide damages model.

12          At every stage of this case, Plaintiff advocated for the strength of her own positions while

13   recognizing the risk with protracted litigation.  (Warshaw Decl. ¶ 12).  Ultimately, after

14   considering the significant injunctive relief offered by Defendant, and taking into account the risk,

15   expense, complexity, and likely duration of further litigation, see *Burden*, 2013 WL 1190634, at

16   *3 (citation omitted), Plaintiff and her experienced counsel, with the aid of Judge Sabraw, were

17   able to achieve an excellent result for the Settlement Class.  (Warshaw Decl. ¶ 13).

18          The significant injunctive relief achieved in this case is substantial in light of the above-

19   stated risks, together with the risk that ultimately a jury could find *no liability* or award *no*

20   *damages*, or less in damages, should the case have proceeded to trial.  (Warshaw Decl. ¶ 12).  In

21   particular, among other arguments, PepsiCo had raised the following dispositive defenses:

22          •      *First*, PepsiCo maintained consistently throughout the history of this litigation that

23   it is—and always has been—in full compliance with Proposition 65, and that Plaintiff would face

24   significant challenges in attempting to demonstrate any non-compliance.  In particular, PepsiCo

25   argued that Proposition 65 requires exposure to be calculated *not* on a "per can" serving basis, but

26   on *lifetime* consumption patterns using the average rate of intake or exposure for average users of

27

28

1    the consumer product.  *See* Cal. Health & Safety Code § 25249.10(c); 27 Cal. Code Regs.

2    § 25721(d)(4).[7]  Recognizing this fact, PepsiCo repeatedly cited *Consumer Reports*' disclaimer

3    that it could neither assert nor conclude that PepsiCo violated Proposition 65:  "***we cannot say that***

4    ***[the levels reported] violates California's Prop. 65***."  (*Is there a health risk in your soft drink?*,

5    Consumer Reports (Jan. 2014), *available at* http://www.consumerreports.org/cro/2014/

6    01/regulations-needed-against-risky-caramel-coloring-in-foods/index.htm (emphasis added).)

7    (*See, e.g.*, Dkt. No. 82 at 1.)  Accordingly, if this case were to be litigated further, the parties

8    would have disputed the proper measure of exposure and the variation of those exposure levels

9    across the putative class and relevant time periods.  Nevertheless, through this settlement, PepsiCo

10   has voluntarily agreed as a compromise to levels even lower than those required by Proposition 65

11   to resolve this dispute.

12          •    *Second*, PepsiCo argued that the binding consent judgment in the *CEH* case

13   foreclosed this lawsuit in its entirety.  *See, e.g.*, *Consumer Advocacy Grp. v. ExxonMobil Corp.*,

14   168 Cal. App. 4th 675, 680, 689 (2008) (holding that a consent judgment is a final judgment on

15   the merits for purposes of *res judicata*, and there is privity if both parties sought to "represent[] the

16   interests of the general public, not just [their] own interests.").  Thus, there was a substantial risk

17   that Plaintiff and the putative class would not be able to recover anything if this litigation

18   proceeded.  Nonetheless, PepsiCo agreed to resolve this dispute and provide meaningful benefits

19   to the putative class.

20          •    *Third*, even if Plaintiff overcame the foregoing hurdles to liability, PepsiCo

21   maintained that they would not be able to establish a basis for classwide damages in this case

22   because of the difficulty in developing a workable model of classwide consumption patterns and

23   exposure.  *See, e.g.*, *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-33 (2013) (holding that

24   _____

25      [7]   Further, PepsiCo maintained that this methodology of calculating consumption levels was
      confirmed by a recent Proposition 65 case, *Environmental Law Foundation v. Beech-Nut Nutrition*

26   *Corp.*, 235 Cal. App. 4th 307 (2015).  Although Plaintiff maintained her objections to this method,
      she would have had to establish an alternative basis for measuring consumption, and then

27   established that PepsiCo's beverages exceeded Prop. 65 limits.

28

1  plaintiffs must demonstrate "through evidentiary proof" a damages model linked to their theory of

2  liability and "capable of measurement on a classwide basis"); *Riva v. PepsiCo, Inc.*, 82 F.

3  Supp. 3d 1045, 1053 n.3 (N.D. Cal. 2015) (noting the difficulty of proving that the PepsiCo

4  products consumed by plaintiffs was the cause of any injury given the ubiquity of 4-MEI in

5  everyday food products); *see also id.* at 1057-58 ("The cited studies fail to support any reasonable

6  inference that the Riva Plaintiffs experienced significant exposure of 4-MEI.").  Thus, although

7  Plaintiff does not concede that she would have had no chance of recovering monetary relief, a

8  significant risk existed.  The relief provided through this settlement will ensure that consumers

9  throughout the United States will not be ingesting unsafe levels of the carcinogen 4-MeI by

10  drinking the Covered Products.  (Warshaw Decl. ¶ 15).  In addition, putative class members are

11  not surrendering claims for damages.

12      In sum, the Settlement at bar falls within the range of possible approval.  For this reason,

13  too, the Court should grant preliminary approval.

14  **VI.    SINCE THE SETTLEMENT PROVIDES FOR INJUNCTIVE**

15  **RELIEF ONLY, AND SETTLEMENT CLASS MEMBERS DO NOT**

16  **RELEASE ANY MONETARY CLAIMS, NOTICE NOT IS**

17  **REQUIRED**

18      In a class action settled pursuant to Rule 23(b)(2) providing only injunctive relief, notice is

19  not required. Fed. R. Civ. P. 23(c)(2)(A) (stating that under Rule 23(b)(2) the court "***may*** direct

20  appropriate notice to the class") (emphasis added).  This is especially true where the settlement

21  expressly preserves the individual rights of class members to pursue monetary claims against the

22  defendant.  *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 1248027, at *9 (N.D. Cal.

23  Mar. 18, 2015); *Kim v. Space Pencil, Inc.*, No. 11-cv-03796-LB, 2012 WL 5948951, at *4(N.D.

24  Cal. Nov. 28, 2012).[8]

25

26  _____

27  [8] *See also Jermyn v. Best Buy Stores*, Case No. 08 Civ. 214, 2012 U.S. Dist. LEXIS 90289, at *32 (S.D. N.Y. June 27, 2012) ("Because this injunctive relief settlement specifically preserves and does not release the class members' monetary claims, notice to the class members is not

28  (footnote continued)

1    Here, the Settlement Agreement preserves the rights of Settlement Class Members to bring

2   claims for monetary relief against the Defendant, and the Settlement Class Members are receiving

3   excellent benefits they would not otherwise receive without the Settlement.  (Settlement

4   Agreement ¶ 8.3.1.)  Additionally, since Defendant does not sell the Covered Products directly to

5   consumers, the Parties agree that notice is cost-prohibitive.  Accordingly, notice should not be

6   required.

7    **VII.**   **CONCLUSION**

8    For the reasons set forth above, Plaintiff requests that this Court enter the accompanying

9   [Proposed] Order Granting Preliminary Approval of Class Action Settlement Pursuant to Fed. R.

10   Civ. P. 23(b)(2), which:  (1) approves the Settlement; (2) certifies this Consolidated Action as a

11   class action for settlement purposes; (3) appoints Plaintiff Mary Hall as Class Representative and

12   the firms of Pearson, Simon & Warshaw, LLP and Glancy Prongay & Murray LLP as Class

13   Counsel; and (4) sets a date for the final approval hearing.

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   _____

23   required"); *Foti, et al. v. NCO Financial Systems, Inc.*, Case No. 04 Civ. 00707, 2008 U.S. Dist.
LEXIS 16511, at *14 (S.D. N.Y. Feb. 19, 2008) ("Because the Agreement explicitly preserves the

24   individual rights of class members to pursue statutory damages against the defendant, and because
the relief in this Rule 23(b)(2) class is injunctive in nature, notice was not required."); *Green v.*

25   *Am. Express Co.*, 200 F.R.D. 211, 212-13 (S.D.N.Y. 2001) (no notice is required under several
circumstances, such as "when the settlement provides for only injunctive relief, and therefore,

26   there is no potential for the named plaintiffs to benefit at the expense of the rest of the class, . . .

27   when there is no evidence of collusion between the parties, and . . . when the cost of notice would
risk eviscerating the settlement agreement.").

28

1   DATED: April 21, 2016                    Respectfully submitted,

2                                            **PEARSON, SIMON & WARSHAW, LLP**

3

4                                            By:    */s/ Daniel L. Warshaw*

5                                                    DANIEL L. WARSHAW
                                            DANIEL L. WARSHAW (Bar No. 185365)
6                                            BOBBY POUYA (Bar No. 245527)
                                            ALEXANDER R. SAFYAN (Bar No. 277856)
7                                            **PEARSON, SIMON & WARSHAW, LLP**
                                            15165 Ventura Boulevard, Suite 400
8                                            Sherman Oaks, California  91403
                                            Telephone:  (818) 788-8300
9                                            Facsimile:  (818) 788-8104
                                            dwarshaw@pswlaw.com
10                                           bpouya@pswlaw.com
                                            asafyan@pwlaw.com
11

12                                           MARC L. GODINO (Bar No. 182689)
                                            **GLANCY PRONGAY & MURRAY LLP**
13                                           1925 Century Park East, Suite 2100
                                            Los Angeles, California  90067
14                                           Telephone:  (310) 201-9150
                                            Facsimile:  (310) 201-9160
15                                           info@glancylaw.com

16
                                            Attorneys for Interim Co-Lead Counsel for Plaintiff
17                                           and the Proposed Class

18

19

20

21

22

23

24

25

26

27

28