DANIEL L. WARSHAW (Bar No. 185365)
  dwarshaw@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone:     (818) 788-8300
Facsimile:      (818) 788-8104

MARC L. GODINO (Bar No. 182689)
  info@glancylaw.com
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:     (310) 201-9150
Facsimile:      (310) 201-9160

*Interim Co-Lead Counsel for Plaintiff and the
Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| STACY SCIORTINO, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PEPSICO, INC., a North Carolina Corporation,<br><br>Defendant. | CASE NO. C 14-0478-EMC<br><br>*Consolidated with* Nos. 14-0713, 14-1099, 14-1105, 14-1192, 14-1193, 14-1316, 14-2020, 14-2023<br><br>**CLASS ACTION**<br><br>**DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  May 26, 2016<br>Time: 1:30 p.m.<br>Courtroom: 5D<br>Judge: The Hon. Edward M. Chen |

*Left margin (vertical text):* PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

I, Daniel L. Warshaw, declare as follows:

1.     I am an attorney duly admitted to practice law in the State of California and before this Court.  I am a partner in the firm of Pearson, Simon & Warshaw, LLP ("PSW"), attorneys of record for Plaintiff Mary Hall ("Plaintiff") and the putative class in this case.

2.     I am one of the attorneys principally responsible for the handling of this matter.  I am personally familiar with the facts set forth in this declaration, and if called as a witness I could and would competently testify to the matters stated herein.

3.     The *Hall* action, filed by my firm on March 7, 2014, was one of nine class action lawsuits filed against Defendant PepsiCo, Inc. ("PepsiCo" or "Defendant") alleging that PepsiCo failed to warn consumers that its Pepsi, Diet Pepsi, and Pepsi One soft drinks contain elevated levels of the dangerous chemical 4-Methylimidazole ("4-MeI") in violation of California consumer protection statutes and common law.

4.     On August 6, 2014, this Court consolidated the nine class action lawsuits under the caption *Sciortino v. PepsiCo, Inc.* ("Consolidated Action") and appointed PSW and Glancy Prongay & Murray LLP as Interim Co-Lead Counsel.  (Dkt. No. 65).  The Court later severed and then dismissed the *Riva v. PepsiCo, Inc.* action, *see* Case No. C-14-2020 EMC (Order Granting Defendant's Motion to Dismiss (Dkt. No. 52)), leaving eight consolidated cases in the Consolidated Action.

5.     On August 25, 2014, Plaintiffs Mary Hall, Kent Ibusuki, and Kelly Ree filed a Consolidated Amended Complaint ("CAC") against PepsiCo for violations of California's Proposition 65, Cal. Health & Safety Code § 25249.7, *et seq.*, California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), and California's Unfair Competition Law, Cal. Bus. & Prof. § 17200 ("UCL").  (Dkt. No. 68).

6.     Defendant filed a motion to dismiss the CAC on October 24, 2014.  (Dkt. No. 82). The basis for Defendant's motion was:  (1) Plaintiffs failed to comply with Proposition 65's mandatory notice provisions before filing suit; (2) the federal Food, Drug, and Cosmetic Act ("FDCA") and the Food and Drug Administration's ("FDA") regulations preempted Plaintiffs' state law claims; and (3) the Court should refrain from adjudicating the Consolidated Action

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

because (a) the FDA has primary jurisdiction over the subject matter of the lawsuit and (b) there was a pending Proposition 65 action in state court.  (Dkt. No. 82).

7.      On June 5, 2015, the Court issued an Order Granting in Part and Denying in Part Defendant's Motion to Dismiss.  (Dkt. No. 105).  In sum, the Court denied Defendant's motion to dismiss Plaintiff Hall's claims on Proposition 65 grounds, finding that adequate pre-suit notice was provided.  The Court also denied Defendant's motion to dismiss Plaintiffs' state law claims—holding that the state law claims were not preempted by federal law—and denied Defendant's request to dismiss or stay the action under a primary jurisdiction theory.  The Court dismissed Plaintiff Ibusuki's claims, but noted that the dismissal had little practical effect.[1]

8.      Following the Court's Order on Defendant's motion to dismiss, counsel for Defendant and Plaintiff met and conferred to discuss alternative dispute resolution.  The Parties[2] reached a joint stipulation on September 15, 2015 to vacate all deadlines and stay the action 90 days pending settlement efforts, and the Court granted the stipulation on September 18, 2015. (Dkt. No. 124).

9.      On November 3, 2015, the Parties participated in a mediation before the Honorable Ronald M. Sabraw (Ret.) at JAMS.  At the conclusion of the mediation, the Parties were at an impasse.  However, with Judge Sabraw's assistance, the Parties continued having settlement discussions over the next several months and ultimately entered into the Settlement Agreement currently before the Court.

10.      The negotiations leading to the Settlement were hard-fought and overseen by Judge Sabraw.  Given the extensive motion practice on Defendant's motion to dismiss, the informal discovery conducted, and the mediation briefs submitted, the Parties were able to articulate the strengths of their claims and defenses and the weaknesses of each other's position, ultimately

---

[1] On January 4, 2016, the Court separately granted Defendant's motion to dismiss Plaintiff Ree. (Dkt. No. 137).

[2] All capitalized terms used herein that are not otherwise defined shall have the same meaning as used in the Class Action Settlement Agreement ("Settlement Agreement"), a true and correct copy of which is attached hereto as Exhibit 1.

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

1   reaching the Settlement after weighing the facts and applicable law and the risks of continued

2   litigation.

3           11.     The Parties conducted sufficient discovery in order to make an informed decision

4   regarding the Settlement.  For example, Plaintiff's counsel conducted testing on the Covered

5   Products, reviewed Defendant's product labels, and engaged in informal discovery, which

6   included a review of product information, print advertising, and other relevant information related

7   to compliance with Proposition 65.  Ultimately, after considering the significant injunctive relief

8   offered by Defendant in the Settlement, and taking into account the risk, expense, complexity, and

9   likely duration of further litigation, Plaintiff and her counsel, with the aid of Judge Sabraw,

10   decided that the Settlement was in the putative class's best interests.

11           12.     At every stage of this case, Plaintiff advocated for the strength of her own positions

12   while recognizing the risk with protracted litigation.  While certain evidence pointed in Plaintiff's

13   view to violations of state consumer protection laws and Proposition 65, Plaintiff's success was

14   not without doubt.  Indeed, since the inception of this litigation, Defendant vigorously denied

15   Plaintiff's allegations and continues to deny them to this day.  Plaintiff's counsel genuinely

16   believed there was a real risk that a jury could find *no liability* or award *no damages*, or less in

17   damages, should the case have proceeded to trial.

18           13.     In light of the risks associated with continuing the litigation and the significant

19   nationwide injunctive relief provided by the Settlement, I believe the Settlement is an excellent

20   result for the Settlement Class and easily falls within the range of reasonableness, justifying

21   preliminary approval.

22           14.     A true and correct copy of the Settlement Agreement is attached hereto as Exhibit

23   1. Under the Settlement, PepsiCo has agreed to expand nationwide the stipulated injunction—

24   previously limited to California—entered by the Superior Court of California for the County of

25   Alameda in the state Proposition 65 action *Center for Environmental Health v. Pepsi Beverages*

26   *Company, et al.*, Case No. RG 14-711020 ("*CEH*").  In addition, PepsiCo has agreed to expand

27   the duration of the injunctive relief from three years to five years.  All told, the Settlement

28   provides for the following meaningful injunctive relief:  (1) ensuring PepsiCo's caramel coloring

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

1  suppliers meet certain 4-MeI levels in products shipped for sale in the United States; (2) ensuring

2  the 4-MeI levels in the Covered Products shipped for sale in the United States will not exceed the

3  level of 100 parts per billion; and (3) testing of the Covered Products pursuant to an agreed

4  protocol.

5       15.    Importantly, the injunctive relief provided by the Settlement will ensure that

6  consumers throughout the United States will not be ingesting unsafe levels of the carcinogen 4-

7  MeI by drinking the Covered Products.

8       16.    Interim Co-Lead Counsel have significant experience in complex class action

9  litigation, have negotiated numerous other substantial settlements, and have the ability to litigate

10 this case on a classwide basis if a fair settlement were not offered.  In negotiating and evaluating

11 the Settlement Agreement, Interim Co-Lead Counsel relied on their investigation and prosecution

12 of the factual and legal issues raised in this case and drew on their considerable experience, skill,

13 and expertise in determining that the Settlement Agreement was fair, reasonable and adequate.

14      17.    The attorneys at my firm, PSW, have represented a wide range of clients in

15 complex litigation and class actions and have obtained *billions* of dollars in settlements and

16 verdicts on behalf of their clients.  I personally have extensive experience in complex litigation

17 and class actions and have represented numerous parties in dozens of complex cases involving

18 fraud, consumer protection, and unfair competition.

19      18.    I have served as lead or co-lead counsel in a number of such cases, including, for

20 example, *In re Carrier IQ, Inc. Consumer Privacy Litigation*, No. C 12-md-2330-EMC (N.D.

21 Cal.), pending before this court; *Wolph v. Acer America Corp.*, No. C 09-1314 (N.D. Cal.), a

22 nationally certified class action involving defective Acer computers that resulted in a classwide

23 settlement; *In re Warner Music Group Corp. Digital Downloads Litigation*, No. CV 12-559-RS

24 (N.D. Cal.) and *James v. UMG Recordings, Inc.*, No. CV 11-1613-SI (N.D. Cal.), cases involving

25 allegations of underpaid royalties to recording artists and producers for digital downloads of their

26 music; and *Nasseri v. CytoSport, Inc.*, No. BC439181 (L.A. Super. Ct.), a nationally certified class

27 action involving claims that CytoSport, Inc. failed to adequately disclose facts regarding some of

28 its products in violation of Proposition 65 and state consumer statutes.

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

19.     These are just a few of the examples of me and my firm serving in a leadership role in complex litigation and class actions.  Additional examples and information about me and the attorneys at my firm are contained in PSW's firm resume, a true and correct copy of which is attached hereto as Exhibit 2.

20.     The Parties' negotiations over attorneys' fees were separate from, and took place after, negotiations regarding relief to the Settlement Class.  The Parties agreed that Plaintiff's request for attorneys' fees and expenses will not exceed $500,000.00.  I believe this amount is fair and reasonable in light of the significant time spent by counsel on this matter, their experience, and the results achieved for the Settlement Class.  As of April 21, 2016, PSW's lodestar is approximately $522,635.50.  The amount represents a negative multiplier on Interim Co-Lead Counsel's combined lodestar (not to mention other counsel who worked on this case under their direction), is $717,391.25 as of the date of this filing.

21.     The Settlement also provides for a class representative incentive award of up to $4,000 to reward Plaintiff for her time and service to the Settlement Class.  At all times, Plaintiff demonstrated her desire and ability to monitor her counsel and participate in the prosecution of this case, including going to trial if necessary.  She assisted with the drafting of complaints, helped to prepare initial disclosures, provided counsel with relevant information, monitored the course of the litigation, and consulted with counsel regarding proposed terms of settlement.

22.     Plaintiff and her counsel have pursued this litigation vigorously, engaged in well-informed, hard-fought, and arm's-length negotiations, and remain committed to advancing and protecting the common interests of all members of the proposed Settlement Class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 21, 2016, at Sherman Oaks, California.


_/s/ Daniel L. Warshaw_____
Daniel L. Warshaw

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STACY SCIORTINO, *et al.*,<br><br>            Plaintiffs,<br><br>      v.<br><br>PEPSICO, INC.,<br>                  Defendant. | Case No. 14-CV-478-EMC, *consolidated for pretrial purposes with* Case Nos. 14-713, 14-1099, 14-1105, 14-1192, 14-1193, 14-1316, 14-2023<br><br>**CLASS ACTION SETTLEMENT AGREEMENT** |

This Class Action Settlement Agreement (the "Settlement Agreement") is made and entered into by and between Plaintiff Mary Hall ("Plaintiff") on behalf of herself and the Settlement Class defined herein, and Defendant PepsiCo, Inc. ("PepsiCo") to settle, resolve, and discharge the Released Claims, as defined below, in consideration for and subject to the promises, terms, and conditions contained herein, subject to Court approval pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## RECITALS

WHEREAS, on January 23, 2014, the Center for Environmental Health ("CEH") filed the first lawsuit on behalf of all California consumers that raised Proposition 65 challenges to the levels of 4-methylimidazole ("4-MEI") in certain PepsiCo beverages and sought civil penalties as well as injunctive relief.  *Ctr. for Envtl. Health v. Pepsi Beverages Co.*, No. RG14-11020 (Alameda Super. Ct. Jan. 23, 2014) (hereinafter the "*CEH* action").

WHEREAS, several plaintiffs filed nine separate putative class action lawsuits in federal courts throughout California, each alleging that certain PepsiCo beverages contained 4-MEI at levels that violated California's Safe Drinking Water and Toxic Enforcement Act of 1986, Health and Safety Code section 25249.6 *et seq.* ("Proposition 65") and that PepsiCo should have warned consumers about the presence of 4-MEI in its products.

WHEREAS, eight of the putative class actions were consolidated into one action and assigned to Judge Edward M. Chen, and the ninth (*Riva v. PepsiCo, Inc.*, No. 14-cv-2020-EMC) was dismissed with prejudice.

WHEREAS, the plaintiffs in these consolidated actions, captioned *Sciortino v. PepsiCo, Inc.*, Case No. 14-cv-00478-EMC (N.D. Cal.), filed a Consolidated Amended Complaint ("CAC") in the Northern District of California on August 25, 2014, alleging claims on behalf of a putative statewide class of California consumers who purchased PepsiCo beverages after January 23, 2010, based on violations of Proposition 65, the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*; "UCL"), and the Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*; "CLRA"), and seeking civil penalties, damages, restitution, injunctive relief, and attorneys' fees and costs.

WHEREAS, on October 24, 2014, PepsiCo filed a motion to dismiss, which plaintiffs

opposed, and which was granted in part and denied in part by the Court on June 5, 2015.

WHEREAS, on September 17, 2015, CEH and PepsiCo finalized a binding consent judgment, resolving the *CEH* action, in which PepsiCo, while maintaining that it fully complied with Proposition 65 at all relevant times, agreed to the following injunctive relief, effective on or after January 1, 2016:  (1) ensuring its caramel coloring suppliers meet certain 4-MEI levels in products shipped for sale in California; (2) ensuring the 4-MEI levels in PepsiCo products shipped for sale in California will not exceed the level of 100 parts per billion; and (3) conducting testing of its products pursuant to an agreed protocol.

WHEREAS, following the Court's order on PepsiCo's Motion to Dismiss and preliminary discovery, the parties met in person to discuss PepsiCo's compliance with Proposition 65, including data that PepsiCo maintains establishes its compliance throughout the relevant time period.  The parties were assisted in these discussions by their respective experts, and had several follow-up settlement discussions.

WHEREAS, following these substantive in-person discussions, the parties engaged in arms-length settlement negotiations supervised by Judge Ronald M. Sabraw (Ret.) serving as mediator.

WHEREAS, throughout their settlement discussions, the parties engaged in an extensive evaluation of the relevant facts and law, including PepsiCo's stated compliance with Proposition 65, the issues surrounding consumers' consumption of 4-MEI, as well as the settlement of the *CEH* action, and the parties carefully considered the risks and uncertainties of continued litigation and all factors bearing on the merits of settlement.

**NOW THEREFORE**, subject to the final approval of the Court as required herein and by applicable law and rules, the parties hereby agree, in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, that any and all claims for injunctive and/or declaratory relief of any kind or character, at law or in equity, based on or relating in any way to the alleged presence of, or labeling for, 4-MEI and/or caramel color in any PepsiCo product shall be settled, compromised and forever released upon the following terms and conditions.

Gibson, Dunn &
Crutcher LLP

## **TERMS AND CONDITIONS OF THE SETTLEMENT**

**1.**     **DEFINITIONS**

As used herein, the following terms have the meanings set forth below:

1.1     "Action" means the consolidated action *Sciortino v. PepsiCo, Inc.*, No. 3:14-cv-00478-EMC (N.D. Cal.), which includes and encompasses the following lawsuits:

- *Cortina v. PepsiCo, Inc.*, No. 14-cv-00168-H-JMA (S.D. Cal. Jan. 23, 2014);
- *Langley v. PepsiCo, Inc.*, No. 14-cv-00713-EMC (N.D. Cal. Feb. 14, 2014);
- *Aourout v. PepsiCo, Inc.*, No. 14-cv-01289-RGK (C.D. Cal. Feb. 20, 2014);
- *Ree v. PepsiCo, Inc.*, No. 14-cv-00328-DOC-AN (C.D. Cal. Mar. 4, 2014);
- *Hall v. PepsiCo, Inc.*, No. 14-cv-01099-EMC (N.D. Cal. Mar. 7, 2014);
- *Ibusuki v. PepsiCo, Inc.*, No. 14-cv-01724-MWF-PJW (C.D. Cal. Mar. 7, 2014); and
- *Granados v. PepsiCo, Inc.*, No. 14-cv-01917-BRO (C.D. Cal. Mar. 13, 2014).

1.2     "Attorneys' Fees and Expenses" means such funds as may be awarded by the Court to Class Counsel to compensate Class Counsel for their fees and expenses in connection with the Action, as described in Paragraphs 11.1-11.6 of this Settlement Agreement.

1.3     "Class Counsel" means Plaintiff's Interim Co-Lead Counsel in the Action, the law firms of Pearson, Simon & Warshaw, LLP, and Glancy, Prongay & Murray LLP.

1.4     "Class Period" means January 23, 2010, until the Effective Date defined in Paragraph 1.7.

1.5     "Court" means the United States District Court for the Northern District of California, Judge Edward M. Chen.

1.6     "Defense Counsel" means PepsiCo's counsel of record, Gibson, Dunn & Crutcher LLP and Arnold & Porter LLP.

1.7     "Effective Date" means the date by which the Judgment entered pursuant to this Settlement Agreement becomes Final.

1.8     "Fairness Hearing" means a hearing scheduled by the Court to determine the final fairness, reasonableness, and adequacy of the settlement embodied in this Settlement Agreement,

provided that it grants preliminary approval.

1.9     "Final" means, with respect to any judicial ruling or order, that:  (1) if no appeal, motion for reargument, motion for rehearing, petition for writ of certiorari, or other writ has been filed, the time has expired to file such an appeal, motion for reargument, motion for rehearing, petition for writ of certiorari, or other writ; or (2) if an appeal, motion for reargument, motion for rehearing, petition for a writ of certiorari, or other writ has been filed, the judicial ruling or order has been affirmed with no further right of review, or such appeal, motion, petition, or writ has been denied or dismissed with no further right of review.  Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to any application for attorneys' fees or expenses will not in any way delay or preclude the Judgment from becoming Final.

1.10    "Final Judgment and Order" means the order finally approving the terms of this Settlement Agreement and a separate judgment to be entered by the Court, pursuant to Federal Rule of Civil Procedure 58(a), dismissing the Action with prejudice, substantially in the form attached hereto as Exhibit "A."

1.11    "Parties" means Plaintiff and Defendant PepsiCo.

1.12    "Plaintiff" means the named plaintiff in this Action, Mary Hall.

1.13    "Preliminary Approval Order" means an order, providing for, among other things, preliminary approval of the Settlement.

1.14    "Products" or "Covered Products" means carbonated soft drinks containing caramel coloring manufactured, distributed, and/or sold by PepsiCo and its subsidiaries (including, but not limited to, Pepsi, Pepsi One, and Diet Pepsi) both prior to and following the Effective Date.  Each flavor or variety of carbonated soft drink containing caramel color shall be considered an Individual Covered Product.  Group I shall mean those Individual Covered Products that are not reduced calorie, while Group II shall mean those Individual Covered Products that are reduced calorie.

1.15    "Release" means the release and waiver set forth in Section 8 of this Settlement Agreement.

1.16    "Released Claims" means any and all claims for injunctive and/or declaratory relief of any kind or character—whether matured or unmatured, now known or unknown, liquidated or

unliquidated, preliminary or final, at law or in equity, whether before a local, state, or federal court, or state or federal administrative agency, commission, arbitrator(s) or otherwise—that the Settlement Class Members now have or may have, from the beginning of the Class Period up until and including the Effective Date, based on or relating in any way to the alleged presence of, or labeling for, 4-MEI and/or caramel color in any Products.

1.17    "Released Persons" means PepsiCo, its parents, divisions, affiliates, subsidiary companies, joint venturers, directors, officers, employees, and attorneys, and each entity to which they directly or indirectly distribute or sell Products, including but not limited to distributors, wholesalers, customers, retailers, franchisees, cooperative members, licensors, and licensees.

1.18    "Sampling Methodology" means the testing of representative samples of each of the ten units of Individual Covered Products for purposes of demonstrating compliance with the Target Level as set forth in Paragraph 1.26.  This testing must be taken daily over no less than a ten-day (10) period from such Covered Products produced at locations that supply such Covered Products in the United States or purchased from ten (10) different locations spread over at least five different zip codes nationwide.

1.19    "Settlement" means the settlement set forth and reflected in this Settlement Agreement.

1.20    "Settlement Agreement" means this agreement and its Exhibit, attached hereto and incorporated herein, including all subsequent amendments agreed to in writing by the Parties and any exhibits to such amendments.

1.21    "Settlement Class" has the meaning set forth in Paragraph 4.3 of this Settlement Agreement.

1.22    "Settlement Class Member(s)" means any person who falls within the definition of the Settlement Class set forth in Paragraph 4.3.

1.23    "Settling Parties" means, collectively, PepsiCo, Plaintiff, and all Settlement Class Members and Released Persons.

1.24    "Shipped for sale in the United States" means Covered Products that PepsiCo manufactures and either directly ships in the United States for sale in the United States, or sells to a

distributor who PepsiCo knows will sell the Covered Products to consumers in the United States.

1.25    "Target Date" means one-hundred and eighty (180) days from the Effective Date. Upon the Target Date, the level of 4-MEI in the Covered Products shipped for sale in the United States will be no more than the level of 100 parts per billion, measured by the weighted average pursuant to the protocol described in Paragraph 5.1.3.

1.26    "Target Level" means 100 parts per billion, measured by the weighted average pursuant to the protocol described in Paragraph 5.1.3.

1.27    The plural of any defined term includes the singular, and the singular of any defined term includes the plural, as the case may be.

## 2.    DENIAL OF WRONGDOING AND LIABILITY

2.1    PepsiCo denies the material factual allegations and legal claims asserted by the Plaintiff in the Action, including any and all charges of wrongdoing or liability arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action. Similarly, this Settlement Agreement provides for no admission of wrongdoing or liability by any of the Released Persons.  This Settlement is entered into solely to eliminate the uncertainties, burdens, and expenses of protracted litigation.

2.2    The Parties further recognize that:

2.2.1    4-MEI is formed as a byproduct when certain foods, beverages, and ingredients, such as the caramel color used as an ingredient in the Products, are heated or otherwise processed; and

2.2.2    Variations in levels of 4-MEI formation are due to a wide variety of factors in the raw material and may vary significantly from batch to batch.

2.3    PepsiCo further notes that:

2.3.1    As of the date of this Settlement Agreement, the U.S. Food & Drug Administration's current position on 4-MEI is as follows:  "Based on the available information, FDA has no reason to believe that there is any immediate or short-term danger presented by 4-MEI at the levels expected in food from the use of caramel coloring."; and

2.3.2    As of the date of this Settlement Agreement, the European Food Safety

Gibson, Dunn & Crutcher LLP

Authority (EFSA) has concluded that it has no concerns about Europeans being exposed to 4-MEI from the use of caramel coloring in food.

**3.**     **THE BENEFITS OF SETTLEMENT**

3.1     Class Counsel believes that the proposed settlement set forth in this Settlement Agreement confers substantial benefits upon the Settlement Class.

3.2     Class Counsel and Plaintiff recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendant through trial and appeals.

3.3     Class Counsel also has taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation. Class Counsel is mindful of possible defenses related to the claims asserted in the Action under both Rule 23(b)(2) and Rule 23(b)(3). Based on their evaluation of all of these factors, Plaintiff and Class Counsel have determined that the Settlement Agreement is in the best interests of Plaintiff and the Settlement Class.

3.4     PepsiCo further asserts that: (1) provisional approval of a Rule 23(b)(3) damages class would not be appropriate given the likely difficulty in maintaining a damages class under Rule 23(b)(3); (2) were Plaintiff to seek certification of a Rule 23(b)(3) damages class, she would face challenges that include, but are not limited to, the difficulties caused by the fact that individual consumption of PepsiCo products varies, the difficulty in establishing a violation of Proposition 65, the difficulty of proving economic injury on a class-wide basis, and the difficulties created by the absence of any affirmative statements by PepsiCo on the Products containing 4-MEI during the Class Period; and (3) Plaintiff cannot establish any statutory violation because PepsiCo complies with Proposition 65.

**4.**     **SETTLEMENT CLASS CERTIFICATION**

4.1     For purposes of settlement only, the Parties agree to seek provisional certification of the Settlement Class, pursuant to Federal Rule of Civil Procedure 23(b)(2).

4.2     The Parties further agree that the Court should make preliminary findings and enter the Preliminary Approval Order granting provisional certification of the Settlement Class subject to the final findings and approval in the Final Judgment and Order, and appointing Plaintiff as the

representative of the Settlement Class and Class Counsel as counsel for the Settlement Class.

4.3     For purposes of the provisional certification, and consistent with the Amended Consolidated Complaint Plaintiff shall seek leave to file concurrently with her motion for preliminary approval of the Settlement Agreement, the Settlement Class shall be defined as follows:

> All individuals in the United States and all U.S. territories (including, but not limited to, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, the Northern Mariana Islands, and the other territories and possessions of the United States), who purchased one or more of the Products from January 23, 2010, until the date of the preliminary approval of the settlement of this litigation.

4.4     Excluded from the Settlement Class are:  (a) persons or entities who purchased the Products for the purpose of resale or distribution; (b) persons who are employees, directors, officers, and agents of Defendant or its parent or subsidiary companies; (c) governmental entities; and (d) any judicial officer hearing this Action, as well as their immediate family members and employees.

4.5     PepsiCo does not consent to certification of the Settlement Class (or to the propriety of class treatment) for any purpose other than to effectuate the settlement of this Action.  PepsiCo's agreement to provisional certification does not constitute an admission of wrongdoing, fault, liability, or damage of any kind to Plaintiff or any of the provisional Settlement Class Members.

4.6     If this Settlement Agreement is terminated pursuant to its terms, disapproved by any court (including any appellate court), and/or not consummated for any reason, or the Effective Date for any reason does not occur, the order certifying the Settlement Class for purposes of effectuating the Settlement, and all preliminary and/or final findings regarding that class certification order, shall be automatically vacated upon notice of the same to the Court, the Action shall proceed as though the Settlement Class had never been certified pursuant to this Settlement Agreement and such findings had never been made, and the Action shall return to the procedural posture on December 21, 2015, in accordance with this paragraph.  Neither party nor counsel shall refer to or invoke the vacated findings and/or order relating to class settlement or Rule 23 of the Federal Rules of Civil Procedure if this Settlement Agreement is not consummated and the Action is later litigated and contested by Defendant under Rule 23 of the Federal Rules of Civil Procedure.

Gibson, Dunn &
Crutcher LLP

**5.**     **SETTLEMENT CONSIDERATION AND INJUNCTIVE RELIEF**

5.1     PepsiCo will provide the Settlement Class with mandatory, non-opt-out, nationwide injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2) by way of modification of the ingredients for the Products as set forth in this Settlement Agreement.  In consideration for the releases provided in this Settlement Agreement, PepsiCo will implement the following injunctive relief:

5.1.1   <u>Specification Levels</u>:  On or before May 5, 2016, PepsiCo shall ensure that the specifications it provides to its supplier(s) of caramel coloring require that, in order for any individual shipment to be accepted by PepsiCo for use in the Covered Products shipped for sale in the United States on or after July 5, 2016, the level of 4-MEI in the caramel coloring must fall within a minimum and maximum range such that the midpoint of that range shall be a level of 4-MEI that—taking into account the caramel color content in the formulation of each Individual Covered Product—results in a 4-MEI concentration of no more than 81 parts per billion for all Covered Products, measured by the weighted average pursuant to the protocol described below in Paragraph 5.1.3.  PepsiCo shall continue its program of research, development, and implementation of technologies and methods intended to reduce the presence of 4-MEI in the Covered Products shipped for sale in the United States.

5.1.2   <u>Target Level and Target Date</u>:  PepsiCo shall ensure that the level of 4-MEI in its Covered Products shipped for sale in the United States on or after the Target Date is no more than the level of 100 parts per billion, measured by the weighted average pursuant to the protocol described below in Paragraph 5.1.3.  PepsiCo shall not be considered to have achieved the Target Level if, as of the Target Date:

a)     The weighted average (pursuant to the protocol described in Paragraph 5.1.3(e)) of the 4-MEI in Group I of the Covered Products exceeds the Target Level; or

b)     The weighted average (pursuant to the protocol described in Paragraph 5.1.3(e)) of the 4-MEI in Group II of the Covered Products exceeds the Target Level; or

Gibson, Dunn &
Crutcher LLP

c)    The average of the 4-MEI concentration in any Individual Covered Product, as determined in accordance with the protocol described in Paragraph 5.1.3, exceeds the Target Level by more than 15 percent; or

d)    The 4-MEI concentration in any single unit of any Individual Covered Product exceeds the Target Level by more than 50 percent.

5.1.3   <u>Testing</u>:

a)    Testing for 4-MEI shall be performed using High-Performance Liquid Chromatography coupled with Tandem Mass Spectrometry (HPLC-MS/MS).  To compensate for matrix effects, the test method shall use deuterated 4-MEI surrogate, solid phase extraction (SPE) to isolate 4-MEI and the deuterated surrogate from the carbonated soft drink matrix, and standard addition calibration.  The parties agree that the test methodology described in "Simultaneous Quantitation of 2-Acetyl-4-tetrahydroxybutylimidazole, 2- and 4-Methylimidazoles, and 5-Hydroxymethylfurfural in Beverages by Ultrahigh-Performance Liquid Chromatography-Tandem Mass Spectrometry" by Jinyuan Wang and William C. Schnute (60 J. Agric. Food Chem. 917-921 (2012)) is satisfactory under this Settlement Agreement.

b)    Representative samples of each of the ten units of Individual Covered Products to be tested for purposes of demonstrating compliance with the Target Level must be taken pursuant to the Sampling Methodology.

c)    The weighted average for all Covered Products is to be calculated by the following formula:  Multiply the unweighted average of the 4-MEI concentration (established by the Sampling Methodology) of all Individual Covered Products within a Group by that Group's fraction of total sales volume (net of returns) for both Groups to be included in the weighted average of the Covered Products, and thereafter sum the two adjusted concentrations for both.

d)     The weighted average for a Group of Covered Products is to be calculated by the following formula:  Multiply the average of the 4-MEI concentration (established by the Sampling Methodology) of each Individual Covered Product within a Group by that Individual Covered Product's fraction of the total sales volume (net of returns) for all Individual Covered Products within the Group, and thereafter sum the adjusted concentrations for each Individual Covered Product.

e)     The average for an Individual Covered Product is to be calculated by the following formula:  Sum the 4-MEI concentration (established by the Sampling Methodology) of each sample of the Individual Covered Product and divide by the number of samples.

f)     For purposes of determining the concentration in a single unit of any Individual Covered Product, the testing protocol set forth in Paragraph 5.1.3 shall be used on one single-size can or bottle in a case containing 24 such units, with the remaining 23 units in such case retained for no less than 60 days following communication of the test result to the opposing Party so that, should a dispute arise concerning the validity of the testing, the opposing Party, on request, may test up to 12 of such units at its own expense.

g)     For the purposes of computing weighted averages, sales volume for each Group and for total sales volume for the Covered Products shall be based upon the most current 52-week IRI InfoScan data (in dollars, net of returns) for the United States available to PepsiCo as of the date of sampling.

h)     All specifications, formulations, and test results of 4-MEI concentrations, including sales volumes of any or all of the Covered Products, shall be considered confidential information that is proprietary to PepsiCo and not subject to public disclosure.

Gibson, Dunn &
Crutcher LLP

11

i)      Testing of Covered Products to demonstrate compliance with this Paragraph shall be conducted and/or supervised by either (i) a third party under contract to and paid by PepsiCo, or (ii) PepsiCo itself under a protocol previously agreed upon by the Parties.

j)      A weighted average of the samples that is at or below the Target Level with a 95% confidence level, i.e., $p<0.05$, using stratified random sampling, shall be deemed in compliance with the terms of this Settlement Agreement.

        5.1.4   <u>Extension of Target Date</u>:  PepsiCo shall endeavor in good faith, using commercially and technologically reasonable efforts to achieve the Target Level in the Products shipped for sale in the United States by the Target Date.  However, at least 60 days prior to the Target Date, PepsiCo may initiate a meet and confer session with Class Counsel and Plaintiff regarding a possible extension of the Target Date.  Upon timely application to the Court prior to the passing of the Target Date, and for good cause shown based on PepsiCo's diligence and good faith efforts as well as reported progress to date, this Settlement Agreement shall be then modified to extend the Target Date by no more than two (2) months.

        5.2     Nothing in this Settlement Agreement shall prevent PepsiCo from implementing the changes referenced in Paragraph 5.1 (or other product changes) prior to the Effective Date.  The terms and requirements of the injunctive relief described in Paragraph 5.1 shall expire on the earliest of the following dates: (a) five (5) years after the Effective Date; or (b) the date upon which there are changes to any state and/or federal statute, regulation, policy, and/or code in the future that would impose other, further, different and/or conflicting obligations or duties on PepsiCo with respect to the Products.

        5.3     Plaintiff and Class Counsel agree, on behalf of themselves and all Settlement Class Members, that this Settlement Agreement does not preclude PepsiCo from making further changes to its products:  (a) that PepsiCo reasonably believes are necessary to comply with any statute, regulation, or other law of any kind; and/or (b) that are necessitated by product and/or ingredient changes, and/or that are necessary to ensure that PepsiCo provides accurate descriptions of its

Gibson, Dunn &
Crutcher LLP

products.

5.4     Within 60 days following the Target Date, PepsiCo shall provide Class Counsel with a verification that PepsiCo has achieved the Target Level for the Products by the Target Date.  During the remaining term of this Settlement Agreement (as provided in Paragraph 5.2), Class Counsel shall have the right to request two (2) additional verifications that PepsiCo has complied with its obligations to meet the Target Level for the Products.

6.     **JURISDICTION**

6.1     The Parties consent to exclusive jurisdiction and venue for any claim relating to this Settlement Agreement (including all claims for enforcement of this Settlement Agreement and/or all claims arising out of a breach of this Settlement Agreement) as well as any future claims by any Settlement Class Member relating in any way to the Released Claims, in the U.S. District Court for the Northern District of California, before the Hon. Edward M. Chen.

7.     **SUBMISSION OF THE SETTLEMENT TO THE COURT FOR REVIEW AND APPROVAL**

7.1     As soon as practicable but no later than fourteen (14) days following the signing of this Settlement Agreement, Class Counsel shall apply to the Court for entry of the Preliminary Approval Order.  The Preliminary Approval Order shall, among other things:

7.1.1     Find that the requirements for provisional certification of the Settlement Class have been satisfied, appointing Plaintiff as the representative of the provisional Settlement Class and Class Counsel as counsel for the provisional Settlement Class;

7.1.2     Find that the Court will retain jurisdiction over all claims based on or relating in any way to the alleged presence of, or labeling for, 4-MEI and/or caramel color in any PepsiCo product, including those not covered under the Settlement Agreement;

7.1.3     Schedule the Fairness Hearing on a date ordered by the Court, provided in the Preliminary Approval Order, and in compliance with applicable law, to determine whether the Settlement should be approved as fair, reasonable, adequate, and to determine whether a Final Judgment and Order should be entered dismissing the Action with prejudice;

7.1.4     Provide that all Settlement Class Members will be bound by the Final

Judgment and Order dismissing the Action with prejudice;

7.1.5    Establish dates by which the Parties shall file and serve all papers in support of the application for final approval of the Settlement; and

7.1.6    Pending the Fairness Hearing, stay all proceedings in the Action, other than the proceedings necessary to carry out or enforce the terms and conditions of this Settlement Agreement and Preliminary Approval Order.

7.2    At the Fairness Hearing, the Parties shall seek to obtain from the Court the Final Judgment and Order in the form substantially similar to Exhibit "A."  The Final Judgment and Order shall, among other things:

7.2.1    Find that the Court has personal jurisdiction over all Settlement Class Members, that the Court has subject matter jurisdiction over the claims asserted in the Action, and that the venue is proper;

7.2.2    Finally approve this Settlement Agreement and the Settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure;

7.2.3    Certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(2) for purposes of settlement only;

7.2.4    Find that notice to the Rule 23(b)(2) class is not necessary;

7.2.5    Incorporate the Releases set forth in this Settlement Agreement and make the Releases effective as of the Effective Date;

7.2.6    Issue the injunctive relief described in Paragraph 5 of this Settlement Agreement;

7.2.7    Authorize the Parties to implement the terms of the Settlement;

7.2.8    Dismiss the Action with prejudice and enter a separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure;

7.2.9    Retain exclusive jurisdiction over the Parties and anyone giving or receiving a release under the Settlement for all matters relating to the Settlement, including the administration, interpretation, effectuation or enforcement of the Settlement.  The Parties and Settlement Class Members and their counsel submit to the jurisdiction of the Court for the purposes of implementing

and enforcing the Settlement, as well as for consideration of any future claims not covered under the Settlement Agreement as provided in Paragraph 6.1; and

7.2.10  Find that there are inherent risks in certifying a Rule 23(b)(3) damages class and that were Plaintiff to seek certification of a Rule 23(b)(3) damages class, she would face challenges that include, but are not limited to, the difficulties caused by individual variances in the consumption of PepsiCo products, proving a violation of Proposition 65 on a class-wide basis, proving economic injury on a class-wide basis, and the absence of any affirmative statements by PepsiCo on the Product labels about 4-MEI during the Class Period.

**8.      RELEASES AND DISMISSAL OF ACTION**

8.1      Releases are a material part of the settlement for PepsiCo.  The Releases will be in favor of PepsiCo and its parents, divisions, subsidiaries, affiliates, directors, officers, employees, and attorneys, and each entity to whom they directly or indirectly distribute or sell Products, including but not limited to distributors, wholesalers, customers, retailers, franchisees, cooperative members, licensors, and licensees (the "Released Persons").  The Released Claims shall be construed as broadly as possible to effect complete finality over this Action involving claims based on or relating in any way to the alleged presence of, or labeling for, 4-MEI and/or caramel color in any Products.

8.2      Upon the Effective Date, Plaintiff will be deemed to have, and by operation of the Final Judgment and Order will have fully, finally, and forever released any and all claims, including personal injury and damages, known and unknown, as well as provided a waiver under California Civil Code Section 1542.  Plaintiff is forever enjoined from taking any action seeking injunctive and/or declaratory relief against PepsiCo based on the Released Claims.

8.3      Upon the Effective Date, the Settlement Class Members will be deemed to have, and by operation of the Final Judgment and Order will have fully, finally, and forever released any and all claims for injunctive and/or declaratory relief of any kind or character, at law or equity, known or unknown, preliminary or final, under Federal Rule of Civil Procedure 23(b)(2) or any other federal or state law or rule of procedure, from the beginning of the Class Period until and including the Effective Date, based on or relating in any way to the alleged presence of, or labeling for, 4-MEI and/or caramel color in any Products.

8.3.1    Settlement Class Members will not release claims for personal injury, wrongful death, or damages, and for that reason no notice or opt-out right is required.

8.3.2    Settlement Class Members are forever enjoined from taking any action seeking injunctive and/or declaratory relief against PepsiCo based on the Released Claims.

8.4    PepsiCo will release, waive, and discharge, on the Effective Date, all legal claims, causes of action, cross-claims, or counter-claims against Plaintiff, the Settlement Class Members, Class Counsel, and the attorneys of record in any of the actions consolidated in the Action, arising from or related to the Products and claims at issue in the Action, or in any of the actions consolidated into the Action.

8.5    After entering into this Settlement Agreement, the Parties may discover facts other than, different from, or in addition to, those that they know or believe to be true with respect to the claims released by this Settlement Agreement, but they intend to release fully, finally and forever the Released Claims, and in furtherance of such intention, the Releases will remain in effect notwithstanding the discovery or existence of any such additional or different facts.  With respect to the Released Claims, Plaintiff (on behalf of herself and the Settlement Class Members), through her counsel, expressly, knowingly, and voluntarily waives any and all provisions, rights, and benefits conferred by California Civil Code Section 1542 and any statute, rule, and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

8.6    Notwithstanding the preceding paragraph, Settlement Class Members are not releasing any known or unknown claims for personal injury, wrongful death, or damages.  The Parties acknowledge, and by operation of law shall be deemed to have acknowledged, that the waiver of the provisions of Section 1542 of the California Civil Code (and any similar State laws) with respect to the claims released by this Settlement Agreement was separately bargained for and was a key element of the Settlement.

8.7    For the avoidance of doubt, the mutual releases above in this section include only

Gibson, Dunn &
Crutcher LLP

16

claims related to the Products.

8.8     By operation of the Final Judgment and Order, the Action will be dismissed with prejudice.

8.9     Upon the Effective Date:  (a) this Settlement Agreement shall be the exclusive remedy for any and all Released Claims of Plaintiff and Settlement Class Members; and (b) Plaintiff and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting against Released Persons in any federal or state court or tribunal any and all Released Claims.

9.      **ACKNOWLEDGEMENT AND STATEMENT OF NO PENDING CLAIMS**

9.1     As inducement to PepsiCo to enter into this Agreement, Class Counsel, including the undersigned law firms of Pearson, Simon & Warshaw, LLP, and Glancy, Prongay & Murray LLP, represent and warrant that they do not presently have clients who are intending to advance any other charges, lawsuits, or claims of any kind against the Released Persons based on the same or similar issues as those presented in the Action, or that otherwise relate to the alleged presence of, or labeling for, 4-MEI and/or caramel color in any PepsiCo product.  Further, Class Counsel represent and warrant that they are aware of no person or entity (other than Plaintiff) who has currently expressed intent to assert or file claims based on the Released Claims or that otherwise relate to the alleged presence of, or labeling for, 4-MEI and/or caramel color in any PepsiCo product.

10.     **NOTICE**

10.1     The Parties also agree that notice would be cost prohibitive.  Further, pursuant to Federal Rule of Civil Procedure 23(c)(2), notice is discretionary for a settlement class certified under Federal Rule of Civil Procedure 23(b)(2) that provides for injunctive relief only and includes no damages release.  *See*, *e.g.*, *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 1248027, at *9 (N.D. Cal. Mar. 18, 2015); *Kim v. Space Pencil, Inc.*, No. 11-cv-03796-LB, 2012 WL 5948951, at *4 (N.D. Cal. Nov. 28, 2012).

10.2     In the event that there is any order requiring notice (either by the Court or by any other court of competent jurisdiction), each Party shall have the unilateral option to withdraw from this Settlement Agreement, without prejudice, within thirty (30) days of such order.  Upon withdrawal,

Gibson, Dunn & Crutcher LLP

the Settlement proposed herein shall become null and void and shall have no force or effect, the Parties shall not be bound by this Settlement Agreement, and the Parties will be returned to their respective positions existing on December 21, 2015.

10.3    PepsiCo shall serve notice of the Settlement Agreement that meets the requirements of 28 U.S.C. § 1715, on the appropriate federal and state officials no later than ten (10) days following the filing of this Settlement Agreement with the Court.

**11.    ATTORNEYS' FEES AND EXPENSES**

11.1    In accord with Federal Rule of Civil Procedure 23(h) and relevant case law, Plaintiff will petition the Court for Attorneys' Fees and Expenses in the amount of $500,000.  PepsiCo agrees to pay the amount of Attorneys' Fees and Expenses (if any) determined by the Court.  The amount ordered by the Court (if any) shall be the sole monetary obligation paid by PepsiCo pursuant to this Settlement Agreement.

11.2    Upon a Court order so providing, any attorneys' fees and costs awarded to Class Counsel by the Court shall be paid by PepsiCo within the later of (a) thirty (30) calendar days of the Effective Date, or (b) ten (10) business days after Class Counsel, following the Effective Date, has transmitted to PepsiCo instructions for payment.

11.3    PepsiCo shall bear its own attorneys' fees and costs.

11.4    Class Counsel shall have the sole and absolute discretion to allocate the Attorneys' Fees and Expenses amongst Class Counsel and any other attorneys for Plaintiff.  PepsiCo shall have no liability or other responsibility for allocation of any such Attorneys' Fees and Expenses awarded, and, in the event that any dispute arises amongst Class Counsel and any other attorneys for Plaintiff relating to the allocation of fees, Class Counsel agree to hold PepsiCo harmless from any and all such liabilities, costs, and expenses of such dispute.

11.5    The Parties agree that Plaintiff may apply to the Court for a monetary payment (not to exceed $4,000) for Plaintiff's services as class representative, and the Parties agree that the decision whether or not to award any such payment, and the amount of that payment, rests in the exclusive discretion of the Court.  PepsiCo agrees to pay the amount (if any) determined by the Court.  Plaintiff understands and acknowledges that she may receive no monetary payment, and her agreement to the

Settlement is not conditioned on the possibility of receiving monetary payment.  Any payment ordered by the Court shall be payable by PepsiCo to Class Counsel by delivery of check(s) or by ACH wire transfer(s) within the later of (a) ten (10) business days after the Effective Date, or (b) ten (10) business days after Class Counsel, following the Effective Date, has transmitted to PepsiCo instructions for payment.

11.6    The procedure for and the allowance or disallowance by the Court of any application for attorneys' fees, costs, expenses, and/or reimbursement to be paid to Class Counsel, and the procedure for any payment to Plaintiff, are not part of the settlement of the Released Claims as set forth in this Settlement Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement of the Released Claims as set forth in this Settlement Agreement.  Any such separate order, finding, ruling, holding, or proceeding relating to any such applications for Attorneys' Fees and Expenses and/or payment to Plaintiff, or any separate appeal from any separate order, finding, ruling, holding, or proceeding relating to them or reversal or modification of them, shall not operate to terminate or cancel this Settlement Agreement or otherwise affect or delay the finality of the Final Judgment and Order approving the Settlement.  The Parties did not negotiate the Attorneys' Fees and Expenses to be sought by Class Counsel and/or the procedure for requesting a payment to Plaintiff until after reaching an agreement upon the relief provided to the Settlement Class.

**12.    MODIFICATION OR TERMINATION OF THE SETTLEMENT**

12.1    This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest and approval of the Court; provided, however that, after entry of the Final Judgment and Order, the Parties may by written agreement effect such amendments, modifications, or expansions of this Settlement Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Final Judgment and Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Settlement Agreement.

12.2    This Settlement Agreement and any Exhibits attached hereto constitute the entire

agreement among the Parties, and no representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties, and covenants covered and memorialized in such documents.  Except as otherwise provided herein, the Parties will bear their own respective fees and costs.

12.3    In the event the terms or conditions of this Settlement Agreement are modified by any court, either party in its sole discretion to be exercised within thirty (30) days after such modification may declare this Settlement Agreement null and void.  For purposes of this paragraph, modifications include but are not limited to any modifications to the definitions of the Settlement Class, Settlement Class Members, Released Persons, or Released Claims, any modifications to the terms of the settlement consideration described in Paragraphs 5.1-5.4, and/or any requirement of notice to the Settlement Class.

12.4    In the event that a party exercises his/her/its option to withdraw from and terminate this Settlement Agreement, then the Settlement proposed herein shall become null and void and shall have no force or effect, the Parties shall not be bound by this Settlement Agreement, and the Parties will be returned to their respective positions existing on December 21, 2015.

12.5    If this Settlement Agreement is not approved by the Court or the Settlement Agreement is terminated or fails to become effective in accordance with the terms of this Settlement Agreement, the Parties will be restored to their respective positions in the Action on December 21, 2015.  In such event, the terms and provisions of this Settlement Agreement and the preliminary term sheet will have no further force and effect with respect to the Parties and will not be used in this Action or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Settlement Agreement will be treated as vacated.

12.6    Any application by Class Counsel for attorneys' fees, costs, and expenses is to be considered by the Court separately and apart from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceeding relating to the award of fees and expenses, or any appeal of any order or proceeding relating to the award of Attorneys' Fees and Expenses, or any appeal of any order relating thereto, shall not be grounds, or operate, to terminate or cancel this Settlement Agreement.

**13.**    **MISCELLANEOUS PROVISIONS**

13.1    The Parties acknowledge that it is their intent to consummate this Settlement Agreement, and they agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Settlement Agreement.

13.2    The Parties intend the Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Action.  The Settlement Agreement compromises claims that are contested and will not be deemed an admission by PepsiCo or Plaintiff as to the merits of any claim or defense.

13.3    The Parties agree that the consideration provided to the Settlement Class and the other terms of the Settlement Agreement were negotiated at arm's length, in good faith by the Parties, and reflect a settlement that was reached voluntarily, after consultation with competent legal counsel, and with the assistance of an independent, neutral mediator, former California state court Judge Ronald M. Sabraw.  This Settlement Agreement is entered into solely to eliminate the uncertainties, burdens, and expenses of protracted litigation.

13.4    Neither this Settlement Agreement, nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement is, or may be deemed to be, or may be used as, an admission or evidence of the validity of any Released Claims, or of any wrongdoing or liability of PepsiCo or any other Released Person; or is or may be deemed to be or may be used as an admission or evidence of, any presumption, concession, or admission by a Party of the truth of any fact alleged by Plaintiff or defense asserted by PepsiCo, or any fault or omission of PepsiCo or any other Released Person in any civil, criminal, or administrative proceeding in any court, administrative agency or other tribunal; or is or may be deemed to be or may be offered or received by or against any Party as evidence of a presumption, concession, or admission with respect to a decision by any court regarding the certification of a class, or construed as an admission or concession by Plaintiff, the Settlement Class, or PepsiCo that the consideration to be given in this Settlement Agreement represents the relief that could or would have been obtained through trial in the Action.

13.5    Any party to this Action or any other Released Person may file this Settlement

Agreement in any action that may be brought against it in order to support any defense or counterclaim, including without limitation those based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.6    All agreements made and orders entered during the course of the Action relating to the confidentiality of information will survive this Settlement Agreement.

13.7    Any and all Exhibits to this Settlement Agreement, which are identified in the Settlement Agreement and attached hereto, are material and integral parts hereof and are fully incorporated herein by this reference.

13.8    This Settlement Agreement and its accompanying Exhibits set forth the entire understanding of the Parties.  No change or termination of this Settlement Agreement shall be effective unless in writing and signed by Class Counsel and Defense Counsel.  No extrinsic evidence or parol evidence shall be used to interpret this Settlement Agreement.  Any and all previous agreements and understandings between or among the Parties regarding the subject matter of this Settlement Agreement, whether written or oral, are superseded and hereby revoked by this Settlement Agreement.  The Parties expressly agree that the terms and conditions of this Settlement Agreement will control over any other written or oral agreements.

13.9    Each Counsel or other person executing this Settlement Agreement or any of its Exhibits on behalf of any Party hereby warrants that such person has the full authority to do so.  Class Counsel, on behalf of the Settlement Class, is expressly authorized by Plaintiff to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Settlement Agreement to effectuate its terms, and is expressly authorized to enter into any modifications or amendments to this Settlement Agreement on behalf of the Settlement Class that Class Counsel deems appropriate.

13.10   All of the Parties warrant and represent that they are agreeing to the terms of this Settlement Agreement based upon the legal advice of their respective attorneys, that they have been afforded the opportunity to discuss the contents of this Settlement Agreement with their attorneys and that the terms and conditions of this document are fully understood and voluntarily accepted.

13.11   This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. A complete set of original counterparts will be filed with the Court.

13.12   This Settlement Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

13.13   None of the Parties, or their respective counsel, shall be deemed the drafter of this Settlement Agreement or its Exhibits for purposes of construing the provisions thereof. The language in all parts of this Settlement Agreement and its Exhibits will be interpreted according to its fair meaning and will not be interpreted for or against any of the Parties as the drafter thereof.

13.14   Except in connection with any legal proceeding or court filing, Plaintiff and Class Counsel will not issue any press release or communicate with the media regarding the Settlement or the Action without the prior approval of PepsiCo. However, if Plaintiff or Class Counsel receive an inquiry from any third party (excluding Settlement Class Members who identify themselves as such), they may decline to comment, refer to the complaint, make accurate statements regarding the status of the settlement approval process, or defer to the Court file.

13.15   The provisions of the confidentiality agreement entered into with respect to the mediation process concerning this matter are waived for the limited purpose of permitting the Parties to confirm that they participated in the mediation, the identity of the mediator, and that the mediation process was successful.

IN WITNESS WHEREOF, the Parties have executed and caused this Settlement Agreement to be executed, dated as of April 19, 2016.

By: _____
PLAINTIFF MARY HALL

By: _____
*On Behalf of Defendant PepsiCo, Inc.*

1    13.11   This Settlement Agreement may be executed in one or more counterparts. All

2    executed counterparts and each of them will be deemed to be one and the same instrument. A

3    complete set of original counterparts will be filed with the Court.

4    13.12   This Settlement Agreement will be binding upon, and inure to the benefit of, the

5    successors and assigns of the Parties.

6    13.13   None of the Parties, or their respective counsel, shall be deemed the drafter of this

7    Settlement Agreement or its Exhibits for purposes of construing the provisions thereof. The language

8    in all parts of this Settlement Agreement and its Exhibits will be interpreted according to its fair

9    meaning and will not be interpreted for or against any of the Parties as the drafter thereof.

10    13.14   Except in connection with any legal proceeding or court filing, Plaintiff and Class

11    Counsel will not issue any press release or communicate with the media regarding the Settlement or

12    the Action without the prior approval of PepsiCo. However, if Plaintiff or Class Counsel receive an

13    inquiry from any third party (excluding Settlement Class Members who identify themselves as such),

14    they may decline to comment, refer to the complaint, make accurate statements regarding the status

15    of the settlement approval process, or defer to the Court file.

16    13.15   The provisions of the confidentiality agreement entered into with respect to the

17    mediation process concerning this matter are waived for the limited purpose of permitting the Parties

18    to confirm that they participated in the mediation, the identity of the mediator, and that the mediation

19    process was successful.

20    IN WITNESS WHEREOF, the Parties have executed and caused this Settlement Agreement

21    to be executed, dated as of April __, 2016.

22

23    By: _____

24                PLAINTIFF MARY HALL

25    By: _____

26    On Behalf of Defendant PepsiCo, Inc.

27

28

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PEARSON, SIMON & WARSHAW, LLP

By: _____
    DANIEL L. WARSHAW

*Interim Co-Lead Counsel for Plaintiff and the Proposed
Class*

GLANCY PRONGAY & MURRAY LLP

By: _____
    MARC L. GODINO

*Interim Co-Lead Counsel for Plaintiff and the Proposed
Class*

GIBSON, DUNN & CRUTCHER LLP

By: _____
    CHRISTOPHER CHORBA

*On Behalf of Defendant PepsiCo, Inc.*

102054610.28

Gibson, Dunn &
Crutcher LLP

PEARSON, SIMON & WARSHAW, LLP

By: _____
         DANIEL L. WARSHAW

*Interim Co-Lead Counsel for Plaintiff and the Proposed Class*

GLANCY PRONGAY & MURRAY LLP

By: _____
         MARC L. GODINO

*Interim Co-Lead Counsel for Plaintiff and the Proposed Class*

GIBSON, DUNN & CRUTCHER LLP

By: _____
         CHRISTOPHER CHORBA

*On Behalf of Defendant PepsiCo, Inc.*

102054610.28

# EXHIBIT A

1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT

13

NORTHERN DISTRICT OF CALIFORNIA

14

SAN FRANCISCO DIVISION

15

STACY SCIORTINO, *et al.*,

16

Plaintiffs,

17

v.

18

PEPSICO, INC.,

19

Defendant.

20

21

22

23

24

25

26

27

28

Case No. 14-CV-478-EMC, *consolidated for pretrial purposes with* Case Nos. 14-713, 14-1099, 14-1105, 14-1192, 14-1193, 14-1316, 14-2023

**[PROPOSED] ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT**

Gibson, Dunn &
Crutcher LLP

The Court has considered the Class Action Settlement Agreement ("Settlement Agreement"), dated April __, 2016, the Parties' motion for an order finally approving the Settlement Agreement, the record in this Action, the arguments and recommendations made by counsel, and the requirements of the law.  The Court finds and orders as follows:

## I.      FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

1.      The Settlement Agreement is approved under Rule 23 of the Federal Rules of Civil Procedure.  The Court finds that the Settlement Agreement and the Settlement it incorporates appear fair, reasonable, and adequate, and its terms are within the range of reasonableness.  The Settlement Agreement was entered into at arm's-length by experienced counsel after extensive negotiations spanning months, including with the assistance of a third-party mediator, the Hon. Ronald M. Sabraw (Ret.).  The Court finds that the Settlement Agreement is not the result of collusion.

## II.      DEFINED TERMS

2.      For purposes of this Final Judgment and Order ("Order"), the Court adopts all defined terms as set forth in the Settlement Agreement.

## III.      NO ADMISSIONS

3.      Neither this Order nor the Settlement Agreement constitutes or shall be used as an admission of wrongdoing by any of the Released Persons or to establish a violation of any law or duty, nor shall it constitute an admission that the 4-methylimidazole ("4-MEI") in the Covered Products (or in other foods or beverages) poses any risk to human health or requires any disclosure or warning to consumers.

## IV.      JURISDICTION

4.      For purposes of the Settlement of the Action, the Court finds it has subject matter and personal jurisdiction over the Parties, including all Settlement Class Members, and venue is proper.

## V.      CLASS CERTIFICATION OF RULE 23(B)(2) CLASS FOR SETTLEMENT PURPOSES ONLY

5.      The Court finds and concludes that, for the purposes of approving this Settlement only, the proposed Rule 23(b)(2) Settlement Class meets the requirements for certification under Rule 23 of the Federal Rules of Civil Procedure:  (a) the Settlement Class is so numerous that joinder of all

members is impracticable; (b) there are questions of law or fact common to the Settlement Class; (c) the claims or defenses of Plaintiff are typical of the claims or defenses of the Settlement Class; (d) Plaintiff and Class Counsel will fairly and adequately protect the interests of the Settlement Class because Plaintiff has no interests antagonistic to the Settlement Class, and has retained counsel who are experienced and competent to prosecute this matter on behalf of the Settlement Class; and (e) the Defendant has acted on grounds that apply generally to the Settlement Class, so that final injunctive relief is appropriate respecting the Settlement Class as a whole.

6.     The Settlement Agreement was reached after extensive investigation and motion practice in the Action, and was the result of protracted negotiations conducted by the Parties, over the course of several months, including with the assistance of a mediator, the Hon. Ronald M. Sabraw (Ret.).  Plaintiff and Class Counsel maintain that the Action and the claims asserted therein are meritorious and that Plaintiff and the Class would have prevailed at trial.  Defendant denies the material factual allegations and legal claims asserted by Plaintiff in this Action, maintains that a class would not be certifiable under any Rule, and that Plaintiff would not prevail at trial.  Notwithstanding the foregoing, the Parties have agreed to settle the Action pursuant to the provisions of the Settlement Agreement, after considering, among other things:  (a) the substantial benefits to Plaintiff and the Settlement Class under the terms of the Settlement Agreement; (b) the uncertainty of being able to prevail at trial; (c) the uncertainty relating to Defendant's defenses and the expense of additional motion practice in connection therewith; (d) the issues relating to proving damages on an individual Class Member basis; (e) the attendant risks of litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (f) the desirability of consummating the Settlement promptly in order to provide effective relief to Plaintiff and the Settlement Class.

7.     The Court accordingly certifies, for settlement purposes only, a Class under Rule 23(b)(2), consisting of all individuals in the United States and all U.S. territories (including, but not limited to, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, the Northern Mariana Islands, and the other territories and possessions of the United States), who purchased one or more of the Covered Products from January 23, 2010, until the date of the preliminary approval of the settlement of this litigation.  Excluded from the Class are:  (a) persons or

entities who purchased the Covered Products for the purpose of resale or distribution; (b) persons who are employees, directors, officers, and agents of Defendant or its parent or subsidiary companies; (c) governmental entities; and (d) any judicial officer hearing this Action, as well as their immediate family members and employees.

8. Additionally, the Court finds that there are inherent risks in certifying a Rule 23(b)(3) damages class and that were Plaintiff to seek certification of a Rule 23(b)(3) damages class, she would face challenges that include, but are not limited to, the difficulties caused by individual variances in the consumption of PepsiCo products, proving a violation of Proposition 65 on a class-wide basis, proving economic injury on a class-wide basis, and the absence of any affirmative statements by PepsiCo on the Product labels about 4-MEI during the Class Period.

## VI.   NOTICE

9. Because the provision of notice is discretionary for a settlement class certified under Rule 23(b)(2) and because Settlement Class Members are not releasing claims for personal injury, wrongful death, or damages, no notice is required for the Class.  *See*, *e.g.*, *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 1248027, at *9 (N.D. Cal. Mar. 18, 2015); *Kim v. Space Pencil, Inc.*, No. 11-cv-03796-LB, 2012 WL 5948951, at *4 (N.D. Cal. Nov. 28, 2012).

## VII.   CLAIMS COVERED AND RELEASES

10. This Order constitutes a full, final and binding resolution between Plaintiff on behalf of herself and the Settlement Class Members and PepsiCo, and its parents, subsidiaries, affiliates, joint venturers, directors, officers, employees, and attorneys and each entity to whom they directly or indirectly distribute or sell the Covered Products, including but not limited to distributors, wholesalers, customers, retailers, franchisees, cooperative members, licensors, and licensees (together, "Released Persons") of any claims based on or relating in any way to the alleged presence of, or labeling for, 4-MEI and/or caramel color in any Covered Products that could have been brought prior to the Effective Date.  This Release shall be applied to the maximum extent permitted by law.

11. Upon the Effective Date and by operation of this Order, Plaintiff will fully, finally, and forever release any and all claims, including personal injury and damages, known and unknown, as well as provide a waiver under California Civil Code Section 1542.  Plaintiff is forever enjoined

from taking any action seeking injunctive and/or declaratory relief against PepsiCo based on the Released Claims.

12.     Upon the Effective Date and by operation of this Order, the Settlement Class Members will fully, finally, and forever release any and all claims for injunctive and/or declaratory relief of any kind or character, at law or equity, known or unknown, preliminary or final, under Federal Rule of Civil Procedure 23(b)(2) or any other federal or state law or rule of procedure, from the beginning of the Class Period until and including the Effective Date, based on or relating in any way to the alleged presence of, or labeling for, 4-MEI and/or caramel color in any Covered Products.  Settlement Class Members do not release claims for personal injury, wrongful death, or damages.

13.     Upon the Effective Date and by operation of this Order, PepsiCo will release, waive, and discharge all legal claims, causes of action, cross-claims, or counter-claims against Plaintiff, the Settlement Class Members, Class Counsel, the attorneys of record in any of the actions consolidated in the Action, arising from or related to the Covered Products and claims at issue in the Action or in any of the actions consolidated into the Action.

14.     Compliance with the terms of this Order, including the Target Levels, resolves any issue during the Class Period concerning compliance by the Released Persons with any law relating in any way to the alleged presence of, or labeling for, 4-MEI and/or caramel color in any Covered Products.  The Settlement Agreement and this Order shall be the exclusive remedy for any and all Released Claims of Plaintiff and Settlement Class Members.  Accordingly, Settlement Class Members shall be forever enjoined by this Order from initiating, asserting, or prosecuting against Released Persons in any federal or state court or tribunal any and all Released Claims.

## VIII.   <u>INJUNCTIVE RELIEF</u>

15.     <u>Specification Levels</u>.  On or before May 5, 2016, PepsiCo shall ensure that the specifications it provides to its supplier(s) of caramel coloring require that, in order for any individual shipment to be accepted by PepsiCo for use in the Covered Products shipped for sale in the United States on or after July 5, 2016, the level of 4-MEI in the caramel coloring must fall within a minimum and maximum range such that the midpoint of that range shall be a level of 4-MEI that—taking into account the caramel color content in the formulation of each Individual Covered Product—results in

a 4-MEI concentration of no more than 81 parts per billion for all Covered Products, measured by the weighted average pursuant to the protocol described below in paragraph 17.  PepsiCo shall continue its program of research, development, and implementation of technologies and methods intended to reduce the presence of 4-MEI in the Covered Products shipped for sale in the United States.

16.     <u>Target Level and Target Date</u>.  Specifically, PepsiCo shall ensure that the level of 4-MEI in its Covered Products shipped for sale in the United States on or after the Target Date is no more than the level of 100 parts per billion, measured by the weighted average pursuant to the protocol described below in paragraph 17.  PepsiCo shall not be considered to have achieved the Target Level if, as of the Target Date:

(a)     The weighted average (pursuant to the protocol described in paragraph 17(e)) of the 4-MEI in Group I of the Covered Products exceeds the Target Level; or

(b)     The weighted average (pursuant to the protocol described in paragraph 17(e)) of the 4-MEI in Group II of the Covered Products exceeds the Target Level; or

(c)     The average of the 4-MEI concentration in any Individual Covered Product, as determined in accordance with the protocol described in paragraph 17, exceeds the Target Level by more than 15 percent; or

(d)     The 4-MEI concentration in any single unit of any Individual Covered Product exceeds the Target Level by more than 50 percent.

17.     <u>Testing</u>.

(a)     Testing for 4-MEI shall be performed using High-Performance Liquid Chromatography coupled with Tandem Mass Spectrometry (HPLC-MS/MS).  To compensate for matrix effects, the test method shall use deuterated 4-MEI surrogate, solid phase extraction (SPE) to isolate 4-MEI and the deuterated surrogate from the carbonated soft drink matrix, and standard addition calibration.  PepsiCo shall utilize the test methodology described in "Simultaneous Quantitation of 2-Acetyl-4-tetrahydroxybutylimidazole, 2- and 4-Methylimidazoles, and 5-Hydroxymethylfurfural in Beverages by Ultrahigh-Performance Liquid Chromatography-Tandem Mass Spectrometry" by Jinyuan Wang and William C. Schnute (60 J. Agric. Food Chem. 917-921 (2012)).

Gibson, Dunn & Crutcher LLP

(b)     Representative samples of each of the ten units of Individual Covered Products to be tested for purposes of demonstrating compliance with the Target Level shall be taken pursuant to the Sampling Methodology.

(c)     The weighted average for all Covered Products shall be calculated by the following formula:  Multiply the unweighted average of the 4-MEI concentration (established by the Sampling Methodology) of all Individual Covered Products within a Group by that Group's fraction of total sales volume (net of returns) for both Groups to be included in the weighted average of the Covered Products, and thereafter sum the two adjusted concentrations for both.

(d)     The weighted average for a Group of Covered Products shall be calculated by the following formula:  Multiply the average of the 4-MEI concentration (established by the Sampling Methodology) of each Individual Covered Product within a Group by that Individual Covered Product's fraction of the total sales volume (net of returns) for all Individual Covered Products within the Group, and thereafter sum the adjusted concentrations for each Individual Covered Product.

(e)     The average for an Individual Covered Product shall be calculated by the following formula:  Sum the 4-MEI concentration (established by the Sampling Methodology) of each sample of the Individual Covered Product and divide by the number of samples.

(f)     For purposes of determining the concentration in a single unit of any Individual Covered Product, the testing protocol set forth in this paragraph 17 shall be used on one single-size can or bottle in a case containing 24 such units, with the remaining 23 units in such case retained for no less than 60 days following communication of the test result to the opposing Party so that, should a dispute arise concerning the validity of the testing, the opposing Party, on request, may test up to 12 of such units at its own expense.

(g)     For the purposes of computing weighted averages, sales volume for each Group and for total sales volume for the Covered Products shall be based upon the most current 52-week IRI InfoScan data (in dollars, net of returns) for the United States available to PepsiCo as of the date of sampling.

Gibson, Dunn &
Crutcher LLP

6

(h)     All specifications, formulations, and test results of 4-MEI concentrations, including sales volumes of any or all of the Covered Products, shall be considered confidential information that is proprietary to PepsiCo and not subject to public disclosure.

(i)     Testing of Covered Products to demonstrate compliance with this Paragraph shall be conducted and/or supervised by either (i) a third party under contract to and paid by PepsiCo, or (ii) PepsiCo itself under a protocol previously agreed upon by the Parties.

(j)     A weighted average of the samples that is at or below the Target Level with a 95% confidence level, i.e., p<0.05, using stratified random sampling, shall be deemed in compliance with the terms of this Order.

18.     <u>Extension of Target Date</u>.  PepsiCo shall endeavor in good faith, using commercially and technologically reasonable efforts to achieve the Target Level in the Covered Products shipped for sale in the United States by the Target Date.  However, at least 60 days prior to the Target Date, PepsiCo may initiate a meet and confer session with Class Counsel and Plaintiff regarding a possible extension of the Target Date.  Upon timely application to the Court prior to the passing of the Target Date, and for good cause shown based on PepsiCo's diligence and good faith efforts as well as reported progress to date, the Settlement Agreement shall be then modified to extend the Target Date by no more than 2 months.

19.     <u>Duration of Injunction</u>.  Nothing in this Order shall prevent PepsiCo from implementing the changes referenced in paragraphs 15-17 of this Order (or other product changes) prior to the Effective Date.  The terms and requirements of the injunctive relief described in paragraphs 15-17 of this Order shall expire on the earliest of the following dates:  (a) five (5) years after the Effective Date; or (b) the date upon which there are changes to any state and/or federal statute, regulation, policy, and/or code in the future that would impose other, further, different and/or conflicting obligations or duties on PepsiCo with respect to the Covered Products.

20.     <u>Additional Changes to Covered Products</u>.  This Order shall not preclude PepsiCo from making further changes to the Covered Products:  (a) that PepsiCo reasonably believes are necessary to comply with any statute, regulation, or other law of any kind; and/or (b) that are necessitated by

product and/or ingredient changes, and/or that are necessary to ensure that PepsiCo provides accurate descriptions of its products.

21.      Verification.  Within 60 days following the Target Date, PepsiCo shall provide Class Counsel with a verification that PepsiCo has achieved the Target Level for the Covered Products by the Target Date.  During the remaining term of this injunction as provided in Paragraph 19, Class Counsel shall have the right to request two (2) additional verifications that PepsiCo has complied with its obligations to meet the Target Level for the Covered Products.

## IX.      ATTORNEYS' FEES AND EXPENSES

22.      The Court's decision regarding the payment of attorneys' fees and expenses to Class Counsel is addressed in a separate order.

## X.      AUTHORIZATION TO PARTIES TO IMPLEMENT AGREEMENT AND MODIFICATIONS OF AGREEMENT

23.      By this Order, the Parties are hereby authorized to implement the terms of the Settlement Agreement.  After the date of entry of this Order, the Parties may by written agreement effect such amendments, modifications, or expansions of the Settlement Agreement and its implementing documents (including all exhibits thereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with terms of this Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under the Settlement Agreement.

## XI.      RETENTION OF JURISDICTION

24.      The Court shall retain jurisdiction over any claim relating to the Settlement Agreement (including all claims for enforcement of the Settlement Agreement and/or all claims arising out of a breach of the Settlement Agreement) as well as any future claims by any Settlement Class Member relating in any way to the Released Claims.

/ / /

/ / /

/ / /

/ / /

## XII.   <u>FINAL JUDGMENT AND DISMISSAL WITH PREJUDICE</u>

25.      By operation of this Order, this Action is hereby dismissed with prejudice.  A separate judgment shall be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED**.

DATED:_____, 2016      _____

The Honorable Edward M. Chen
UNITED STATES DISTRICT JUDGE

# EXHIBIT 2



**PEARSON | SIMON · WARSHAW LLP**

| | |
|---|---|
| **LOS ANGELES OFFICE** | **SAN FRANCISCO OFFICE** |
| 15165 VENTURA BOULEVARD, SUITE 400 | 44 MONTGOMERY STREET, SUITE 2450 |
| SHERMAN OAKS, CALIFORNIA 91403 | SAN FRANCISCO, CALIFORNIA 94104 |
| TEL (818) 788-8300 | TEL (415) 433-9000 |
| FAX (818) 788-8104 | FAX (415) 433-9008 |
| WWW.PSWLAW.COM | WWW.PSWLAW.COM |

Pearson, Simon & Warshaw, LLP ("PSW") is an AV-rated civil litigation firm with offices in Los Angeles and San Francisco. The firm specializes in complex litigation, including state coordination cases and federal multi-district litigation. Its attorneys have extensive experience in antitrust, securities, consumer protection, and unlawful employment practices. The firm handles national and multi-national class actions that present cutting edge issues in both substantive and procedural areas. PSW attorneys understand how to litigate difficult and large cases in an efficient and cost-effective manner, and they have used these skills to obtain outstanding results for their clients, both through trial and negotiated settlement. They are recognized in their field for excellence and integrity, and are committed to seeking justice for their clients.

## CASE PROFILES

PSW attorneys currently hold, or have held, a leadership role in the following representative cases:

- *In re Credit Default Swaps Antitrust Litigation*, Southern District of New York, MDL No. 2476. PSW attorneys serve as co-lead counsel and represent the Los Angeles County Employee Retirement Association ("LACERA") in a class action on behalf of all purchasers and sellers of Credit Default Swaps ("CDS") against twelve of the world's largest banks. The lawsuit alleges that the banks, along with other defendants who control the market infrastructure for CDS trading, have conspired for years to restrain the efficient trading of CDS, thereby inflating the cost to trade CDS. The alleged antitrust conspiracy has resulted in economic harm in the tens of billions of dollars to institutional investors such as pension funds, mutual funds, and insurance companies who use CDS to hedge credit risks on their fixed income portfolios. After nearly three years of litigation and many months of intensive settlement negotiations, PSW helped reach a settlement with the defendants totaling $1.86 billion plus injunctive relief. On April 18, 2016, the Honorable Denise L. Cote granted final approval to the settlement, which is one of the largest civil antitrust settlements in history.

PEARSON, SIMON & WARSHAW, LLP

- *In re Lithium Ion Batteries Antitrust Litigation,* Northern District of California, MDL No. 2420.  PSW attorneys serve as interim co-lead counsel for the direct purchaser plaintiffs and represent the Liquidating Trustee for the Circuit City Stores, Inc. Liquidating Trust in this multidistrict class action litigation arising from the price-fixing of lithium ion batteries.  The case involves allegations of collusive activity by a cartel made up of the world's largest manufacturers of lithium ion batteries, which are used in everything from cellular phones to cameras, laptops, and tablet computers. PSW filed one of the earliest cases on behalf of the direct purchasers and successfully argued before the Joint Panel on Multidistrict Litigation for consolidation of the cases in the Northern District of California.  PSW, along with its co-counsel, organized a leadership structure of three firms, winning appointment by Judge Gonzalez Rogers as co-lead counsel for the putative class of direct purchasers on May 17, 2013.

- *In re Keurig Green Mountain Single-Serving Coffee Antitrust Litigation*, Southern District of New York, MDL No. 2542.  In June 2014, Judge Vernon S. Broderick appointed PSW to serve as interim co-lead counsel on behalf of indirect purchaser plaintiffs in this multidistrict class action litigation.  The case arises from the alleged unlawful monopolization of the United States market for single-serve coffee packs by Keurig Green Mountain, Inc.  Keurig's alleged anticompetitive conduct includes acquiring competitors, entering into exclusionary agreements with suppliers and distributors to prevent competitors from entering the market, engaging in sham patent infringement litigation, and redesigning the single-serve coffee pack products in the next version of its brewing system to lock out competitors' products.

- *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Northern District of California, MDL No. 1827.  PSW partner Bruce L. Simon served as co-lead counsel for the direct purchaser plaintiffs in this multidistrict litigation arising from the price-fixing of thin film transistor liquid crystal display ("TFT-LCD") panels.  Worldwide, the TFT-LCD industry is a multi-billion dollar industry, and many believe that this was one of the largest price-fixing cases in the United States.  PSW helped collect over $405 million in settlements before the case proceeded to trial against the last remaining defendant, Toshiba Corporation and its related entities.  Mr. Simon served as co-lead trial counsel, successfully marshaled numerous witnesses, and presented the opening argument.  On July 3, 2012, PSW obtained a jury verdict of $87 million before trebling against Toshiba.  PSW later settled with Toshiba and AU Optronics to bring the total to $473 million in settlements.  In 2013, California Lawyer Magazine awarded Mr. Simon a California Lawyer of the Year Award for his work in the *TFT-LCD* case.

PEARSON, SIMON & WARSHAW, LLP

- *In re Potash Antitrust Litigation (No. II)*, Northern District of Illinois, MDL No. 1996. PSW partner Bruce L. Simon served as interim co-lead counsel for the direct purchaser plaintiffs in this multidistrict litigation arising from the price-fixing of potash sold in the United States. After the plaintiffs defeated a motion to dismiss, the defendants appealed, and the Seventh Circuit Court of Appeals agreed to hear the case *en banc*. Mr. Simon presented oral argument to the *en banc* panel and achieved a unanimous 8-0 decision in his favor. The case resulted in $90 million in settlements for the direct purchaser plaintiffs, and the Court's opinion is one of the most significant regarding the scope of international antitrust conspiracies. *See Minn-Chem, Inc. v. Agrium Inc.*, 683 F. 3d 845 (7th Cir. 2012).

- *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, Eastern District of New York, MDL No. 1720. PSW attorneys represented bankruptcy trustees for several large, national retailers who opted out of a class action settlement in this multi-district case arising from anticompetitive conduct in the credit and debit card markets. The case alleges that Visa, MasterCard, and their member banks conspired to fix the levels of default interchange fees and enforced other merchant restraints upon merchants who accept Visa and MasterCard payment cards. A number of large merchants, including Wal-Mart, Target, and Macy's, also opted out of the settlement, which was approved by Judge John Gleeson on December 13, 2013. It is believed to be the largest antitrust case in United States history.

- *Tripath Technology, Inc. Directors & Officers Litigation*, Northern District of California Bankruptcy Court, Adv. Case No. 09-5004. PSW acted as Special Litigation Counsel for the trustee of the Post-Effective Date Estate of Tripath Technology, Inc., a high-tech public company that filed for bankruptcy in 2007. PSW filed suit on behalf of the Estate in the United States Bankruptcy Court. Following two and a half years of litigation, including defeating the director and officer defendants' motion for summary judgment, PSW obtained for the Estate a settlement of $3.25 million from Tripath's former officers and directors. The United States Trustee for the Northern District of California described the result in the Tripath litigation as "spectacular." The amounts recovered for the Estate resulted in a payout to the unsecured creditors of Tripath of approximately 82 cents on every dollar of allowed claims.

- *In re Warner Music Group Corp. Digital Downloads Litigation*, Northern District of California, Case No. 12-cv-00559. PSW attorneys served as interim co-lead counsel, with partner Bruce L. Simon serving as chairman of a five-firm executive committee, in this putative nationwide class action on behalf of recording artists and music producers who alleged that they had been systematically underpaid royalties by the record company Warner Music Group.

3

PEARSON, SIMON & WARSHAW, LLP

- *James v. UMG Recordings, Inc.*, Northern District of California, Case No. 11-cv-01613.  PSW partner Daniel L. Warshaw served as interim co-lead counsel in this putative nationwide class action on behalf of recording artists and music producers who alleged that they had been systematically underpaid royalties by the record company UMG.

- *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation*, Northern District of California, MDL No. 2451.  PSW attorneys currently serve as interim co-lead counsel in this multidistrict litigation that alleges the NCAA and its member conferences violate the antitrust laws by capping the value of grant-in-aid athletic scholarships at far below the actual cost of attending school, and far below what the free market would bear.

- *Senne, et al. v. Office of the Commissioner of Baseball, et al.*, Northern District of California, Case No. 14-cv-0608.  PSW attorneys currently serve as interim co-lead counsel in this putative nationwide class action and FLSA collective action on behalf of minor league baseball players who allege that Major League Baseball and its member franchises violate the FLSA and state wage and hour laws by failing to pay minor league baseball players minimum wage and overtime.

- *In re Carrier IQ Consumer Privacy Litigation*, Northern District of California, MDL No. 2330.  PSW attorneys currently serve as interim co-lead counsel in this putative nationwide class action on behalf of consumers who allege privacy violations arising from software installed on their mobile devices that was logging text messages and other sensitive information.

- *Sciortino, et al. v. PepsiCo, Inc.*, Northern District of California, Case No. 14-cv-0478.  PSW attorneys currently serve as interim co-lead counsel in this putative California class action on behalf of consumers who allege that PepsiCo failed to warn them that certain of its sodas contain excess levels of a chemical called 4-Methylimidazole in  violation of Proposition 65 and California consumer protection statutes.

- *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation,* Northern District of California, MDL No. 1486.  PSW partner Bruce L. Simon served as co-chair of discovery and as a member of the trial preparation team in this multidistrict litigation arising from the price-fixing of DRAM, a form of computer memory.  Mr. Simon was responsible for supervising and coordinating the review of almost a terabyte of electronic documents, setting and taking depositions, establishing and implementing protocols for cooperation between the direct and indirect plaintiffs as well as the Department of Justice, presenting oral arguments on discovery matters,

PEARSON, SIMON & WARSHAW, LLP

working with defendants on evidentiary issues in preparation for trial, and preparation of a comprehensive pretrial statement. Shortly before the scheduled trial, class counsel reached settlements with the last remaining defendants, bringing the total value of the class settlements to over $325 million.

- *In re Methionine Antitrust Litigation*, Northern District of California, MDL No. 1311. PSW partner Bruce L. Simon served as co-lead counsel in this nationwide antitrust class action involving a conspiracy to fix prices of, and allocate the markets for, methionine. Mr. Simon was personally responsible for many of the discovery aspects of the case including electronic document productions, coordination of document review teams, and depositions. Mr. Simon argued pretrial motions, prepared experts, and assisted in the preparation of most pleadings presented to the Court. This action resulted in over $100 million in settlement recovery for the Class.

- *In re Sodium Gluconate Antitrust Litigation*, Northern District of California, MDL No. 1226. PSW partner Bruce L. Simon served as class counsel in this consolidated antitrust class action arising from the price-fixing of sodium gluconate. Mr. Simon was selected by Judge Claudia Wilken to serve as lead counsel amongst many other candidates for that position, and successfully led the case to class certification and settlement.

- *In re Citric Acid Antitrust Litigation*, Northern District of California, MDL No. 1092. PSW partner Bruce L. Simon served as class counsel in antitrust class actions against Archer-Daniels Midland Co. and others for their conspiracy to fix the prices of citric acid, a food additive product. Mr. Simon was one of the principal attorneys involved in discovery in this matter. This proceeding resulted in over $80 million settlements for the direct purchasers.

- *Olson v. Volkswagen of America, Inc.*, Central District of California, Case No. CV07-05334. PSW attorneys brought this class action lawsuit against Volkswagen alleging that the service manual incorrectly stated the inspection and replacement intervals for timing belts on Audi and Volkswagen branded vehicles equipped with a 1.8 liter turbo-charged engine. This case resulted in a nationwide class settlement.

- *Swain et al. v. Eel River Sawmills, Inc. et al.*, California Superior Court, DR-01-0216. George S. Trevor and Bruce L. Simon served as lead trial counsel for a class of former employees of a timber company whose retirement plan was lost through management's investment of plan assets in an Employee Stock Ownership Plan. Mr. Trevor and Mr. Simon negotiated a substantial settlement on the eve of trial resulting

PEARSON, SIMON & WARSHAW, LLP

in a recovery of approximately 40% to 50% of plaintiffs' damages after attorneys' fees and costs.

- *In re Digital Microwave Securities Litigation*, Northern District of California, C-90-20241. George S. Trevor was one of the principal attorneys for a plaintiff class alleging fraud in the financial reporting of a public company. Defendants included the accounting firm Arthur Andersen. Mr. Trevor negotiated a settlement of nearly $20 million, despite the absence of any director's and officer's liability insurance.

- *In re Hawaiian and Guamanian Cabotage Antitrust Litigation,* Western District of Washington, MDL No. 1972. PSW partner Bruce L. Simon served as interim co-lead counsel for the plaintiffs in this multidistrict litigation arising from violations of the federal antitrust laws with respect to domestic ocean shipping services between the continental United States and Hawaii and/or between the continental United States and the Territory of Guam.

- *In re Homestore Litigation*, Central District of California, Master File No. 01-11115. PSW attorneys served as liaison counsel and class counsel for plaintiff CalSTRS in this securities class action. The case resulted in over $100 million in settlements to the Class.

- *In re MP3.Com, Inc., Securities Litigation*, Southern District of California, Master File No. 00-CV-1873. PSW attorneys served as defense counsel in this class action involving alleged securities violations under Rule 10b-5.

- *In re Ivan F. Boesky Securities Litigation*, Southern District of New York, MDL No. 732. George S. Trevor, while at the firm of Gold & Bennett, was one of the principal attorneys representing a class of former shareholders of the Pacific Lumber Company. The case was consolidated with numerous other shareholder class actions before the Honorable Milton Pollack. Mr. Trevor personally took numerous depositions and examined Michael Milken pursuant to Mr. Milken's settlement agreement with the Pacific Lumber class. He was also part of the trial team in New York when the case settled the evening before trial. The resulting settlement of $144 million was estimated to be the fourth largest securities litigation settlement at the time.

- *In re Automotive Refinishing Paint Cases*, Alameda County Superior Court, Judicial Council Coordination Proceeding No. 4199. PSW attorneys served as class counsel with other law firms in this coordinated antitrust class action alleging a conspiracy by defendants to fix the price of automotive refinishing products.

PEARSON, SIMON & WARSHAW, LLP

- *In re Beer Antitrust Litigation*, Northern District of California, Case No. 97-20644 SW.  PSW partner Bruce L. Simon served as primary counsel in this antitrust class action brought on behalf of independent micro-breweries against Anheuser-Busch, Inc., for its attempt to monopolize the beer industry in the United States by denying access to distribution channels.

- *In re Commercial Tissue Products Public Entity Indirect Purchaser Antitrust Litigation*, San Francisco Superior Court, Judicial Counsel Coordination Proceeding No. 4027.  PSW partner Bruce L. Simon served as co-lead counsel for the public entity purchaser class in this antitrust action arising from the price-fixing of commercial sanitary paper products.

- *Hart v. Central Sprinkler Corporation*, Los Angeles County Superior Court, Case No. BC176727.  PSW attorneys served as class counsel in this consumer class action arising from the sale of nine million defective fire sprinkler heads.  This case resulted in a nationwide class settlement valued at approximately $37.5 million.

- *Rueda v. Schlumberger Resources Management Services, Inc*., Los Angeles County Superior Court, Case No. BC235471.  PSW attorneys served as class counsel with other law firms representing customers of the Los Angeles Department of Water & Power ("LADWP") who had lead leaching water meters installed on their properties. The Court granted final approval of the settlement whereby defendant would pay $1.5 million to a *cy pres* fund to benefit the Class and to make grants to LADWP to assist in implementing a replacement program to the effected water meters.

- *In re Louisiana-Pacific Corp. Inner-Seal OSB Trade Practices Litigation,* Northern District of California, MDL No. 1114.  PSW partner Bruce L. Simon worked on this nationwide product defect class action brought under the Lanham Act.  The proposed class was certified, and a class settlement was finally approved by Chief Judge Vaughn Walker.

- *In re iPod nano Cases*, Los Angeles County Superior Court, Judicial Counsel Coordination Proceeding No. 4469.  PSW attorneys were appointed co-lead counsel for this class action brought on behalf of California consumers who own defective iPod nanos.  The case resulted in a favorable settlement.

PEARSON, SIMON & WARSHAW, LLP

- *Unity Entertainment Corp. v. MP3.Com*, Central District of California, Case No. 00-11868.  PSW attorneys served as defense counsel in this class action alleging copyright infringement.

- *Vallier v. Jet Propulsion Laboratory*, Central District of California, Case No. CV97-1171.  PSW attorneys served as lead counsel in this toxic tort action involving 50 cancer victims and their families.

- *Nguyen v. First USA N.A.,* Los Angeles County Superior Court, Case No. BC222846.  PSW attorneys served as class counsel on behalf of approximately four million First USA credit card holders whose information was sold to third party vendors without their consent.  This case ultimately settled for an extremely valuable permanent injunction plus disgorgement of profits to worthy charities.

- *Morales v. Associates First Financial Capital Corporation*, San Francisco Superior Court, Judicial Council Coordination Proceeding No. 4197.  PSW attorneys served as class counsel in this case arising from the wrongful sale of credit insurance in connection with personal and real estate-secured loans.  This case resulted in an extraordinary $240 million recovery for the Class.

- *In re AEFA Overtime Cases*, Los Angeles County Superior Court, Judicial Council Coordination Proceeding No. 4321.  PSW attorneys served as class counsel in this overtime class action on behalf of American Express Financial Advisors, which resulted in an outstanding classwide settlement.

- *Khan v. Denny's Holdings, Inc.*, Los Angeles County Superior Court, Case No. BC177254.  PSW attorneys settled a class action lawsuit against Denny's for non-payment of overtime wages to its managers and general managers.

- *Kosnik v. Carrows Restaurants, Inc.*, Los Angeles County Superior Court, Case No. BC219809.  PSW attorneys settled a class action lawsuit against Carrows Restaurants for non-payment of overtime wages to its assistant managers and managers.

- *Castillo v. Pizza Hut, Inc.,* Los Angeles County Superior Court, Case No. BC318765.  PSW attorneys served as lead class counsel in this California class action brought by delivery drivers who claimed they were not adequately compensated for use of their personally owned vehicles.  This case resulted in a statewide class settlement.

PEARSON, SIMON & WARSHAW, LLP

- *Baker v. Charles Schwab & Co., Inc.,* Los Angeles County Superior Court, Case No. BC286131.  PSW attorneys served as class counsel for investors who were charged a fee for transferring out assets between June 1, 2002 and May 31, 2003.  This case resulted in a nationwide class settlement.

- *Eallonardo v. Metro-Goldwyn-Mayer, Inc.,* Los Angeles County Superior Court, Case No. BC286950.  PSW attorneys served as class counsel on behalf a nationwide class of consumers who purchased DVDs manufactured by defendants.  Plaintiffs alleged that defendants engaged in false and misleading advertising relating to the sale of its DVDs.  This case resulted in a nationwide class settlement.

- *Gaeta v. Centinela Feed, Inc.,* Los Angeles County Superior Court, Case No. BC342524.  PSW attorneys served as defense counsel in this class action involving alleged failures to pay wages, overtime, employee expenses, waiting time penalties, and failure to provide meal and rest periods and to furnish timely and accurate wage statements.

- *Leiber v. Consumer Empowerment Bv A/K/A Fasttrack,* Central District of California, Case No. CV 01-09923.  PSW attorneys served as defense counsel in this class action involving copyrighted music that was made available through a computer file sharing service without the publishers' permission.

- *Higgs v. SUSA California, Inc.,* Los Angeles County Superior Court Case No. BC372745.  PSW attorneys are serving as co-lead class counsel representing California consumers who entered into rental agreements for the use of self-storage facilities owned by defendants.  In this certified class action, plaintiffs allege that defendants wrongfully denied access to the self-storage facility and/or charged excessive pre-foreclosure fees.

- *Fournier v. Lockheed Litigation*, Los Angeles County Superior Court.  PSW attorneys served as counsel for 1,350 residents living at or near the Skunks-Works Facility in Burbank.  The case resolved with a substantial confidential settlement for plaintiffs.

- *Nasseri v. CytoSport, Inc.,* Los Angeles County Superior Court, Case No. 439181.  PSW attorneys are serving as class counsel on behalf of a nationwide class of consumers who purchase CytoSport's popular protein powders, ready to drink protein beverages, and other "supplement" products.  Plaintiffs allege that these supplements contain excessive amounts of lead, cadmium and arsenic in amounts that exceed Proposition 65 and negate CytoSport's health claims regarding the products.

PEARSON, SIMON & WARSHAW, LLP

## <u>ATTORNEY PROFILES</u>

## PARTNERS

### CLIFFORD H. PEARSON

Clifford H. Pearson is a civil litigator and business lawyer focusing on complex litigation, class actions, and business law.  In 2013, Mr. Pearson was named by the *Daily Journal* as one of the Top 100 lawyers in California.  He was instrumental in negotiating settlements that totaled $473 million in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, an antitrust case in the Northern District of California that alleged a decade-long conspiracy to fix the prices of TFT-LCD panels, and over $90 million in *In re Potash Antitrust Litigation*, an antitrust case in the Northern District of Illinois that alleged price fixing by Russian, Belarusian and North American producers of potash, a main ingredient used in fertilizer.

Before creating the firm in 2006, Mr. Pearson was a partner at one of the largest firms in the San Fernando Valley, where he worked for 22 years.  There, he represented aggrieved individuals, investors and employees in a wide variety of contexts, including toxic torts, consumer protection and wage and hour cases.  Over his 30-plus year career, Mr. Pearson has successfully negotiated substantial settlements on behalf of consumers, small businesses and companies.  In recognition of his outstanding work on behalf of clients, Mr. Pearson has been regularly selected by his peers as a Super Lawyer (representing the top 5% of practicing lawyers in Southern California).  He has also attained Martindale-Hubbell's highest rating (AV) for legal ability and ethical standards.

Mr. Pearson is an active member of the American Bar Association, Canadian Bar Association, Los Angeles County Bar Association, Consumer Attorneys of California, Consumer Attorneys Association of Los Angeles, Association of Business Trial Lawyers and a Practitioner of Foreign Law in British Columbia, Canada.

**Current Cases:**
- *In re Credit Default Swaps Antitrust Litigation* (S.D.N.Y.)
- *In re Lithium Ion Batteries Antitrust Litigation* (N.D. Cal.)
- *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation* (N.D. Cal.)

**Education:**
- Whittier Law School, Los Angeles, California – J.D. – 1981
- University of Miami, Miami, Florida – M.B.A. – 1978
- Carleton University, Ontario, Canada – B.A. – 1976

PEARSON, SIMON & WARSHAW, LLP

**Bar Admissions:**
- California
- Ninth Circuit Court of Appeals
- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California

**Professional Associations and Memberships:**
- American Bar Association
- Association of Business Trial Lawyers
- Canadian Bar Association
- Consumer Attorneys Association of Los Angeles
- Consumer Attorneys of California
- Los Angeles County Bar Association

## BRUCE L. SIMON

Bruce L. Simon has led Pearson, Simon & Warshaw, LLP to national prominence.  Mr. Simon specializes in complex cases involving antitrust, consumer fraud, and securities laws.  He has served as lead counsel in many business cases with national and global impact.

In 2013, Mr. Simon was chosen by the *Daily Journal* as one of the Top 100 attorneys in California.  He received the California Lawyer of the Year award from *California Lawyer Magazine* and was selected as one of seven finalists for Consumer Attorney of the Year by Consumer Attorneys of California for his work in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.).  That year, Mr. Simon was included in the Top 100 of California's "Super Lawyers" and has been named a "Super Lawyer" every year since 2003.  He has attained Martindale-Hubbell's highest rating (AV) for legal ability and ethical standards.

Mr. Simon was co-lead class counsel in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, a case that lasted over five years and resulted in $473 million recovered for the direct purchaser plaintiffs.  Mr. Simon served as co-lead trial counsel and was instrumental in obtaining an $87 million jury verdict (before trebling).  He presented the opening argument and marshalled numerous witnesses during the six-week trial.

More recently, Mr. Simon was co-lead class counsel in *In re Credit Default Swaps Antitrust Litigation*, a case alleging a conspiracy among the world's largest banks to maintain opacity of the credit default swaps market as a means of maintaining supracompetitive prices of bid/ask spreads.  After three years of litigation and many months of intensive settlement negotiations, the parties in *CDS* reached a landmark settlement amounting to $1.86 billion.  It is one of the largest civil antitrust settlements in history.

Mr. Simon was also co-lead class counsel in *In re Potash Antitrust Litigation (II)*, MDL No. 1996 (N.D. Ill.), where he successfully argued an appeal of the district court's order denying

Pearson, Simon & Warshaw, LLP

the defendants' motions to dismiss to the United States Court of Appeals for the Seventh Circuit. Mr. Simon presented oral argument during an *en banc* hearing before the Court and achieved a unanimous 8-0 decision in his favor. The case resulted in $90 million in settlements for the direct purchaser plaintiffs, and the Court's opinion is one of the most significant regarding the scope of international antitrust conspiracies.

**Current Cases**:

- *In re Credit Default Swaps Antitrust Litigation* (S.D.N.Y.)
- *In re Keurig Green Mountain Single-Serving Coffee Antitrust Litigation* (S.D.N.Y.)
- *In re Lithium Ion Batteries Antitrust Litigation* (N.D. Cal.)
- *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation* (N.D. Cal.)
- *Senne, et al. v. Office of the Commissioner of Baseball, et al.* (N.D. Cal.)

**Reported Cases**:
- *Minn-Chem, Inc. et al. v. Agrium Inc., et al.*, 683 F.3d 845 (7th Cir. 2012)

**Education:**
- University of California, Hastings College of the Law, San Francisco, California – J.D. – 1980
- University of California, Berkeley, California – A.B. – 1977

**Bar Admissions:**
- California
- Supreme Court of the United States
- Ninth Circuit Court of Appeals
- Seventh Circuit Court of Appeals
- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California

**Recent Publications:**
- Class Certification Procedure, Ch. V, ABA Antitrust Class Actions Handbook (3d ed.), with Alexander R. Safyan (forthcoming)
- Reverse Engineering Your Antitrust Case: Plan for Trial Even Before You File Your Case, Antitrust, Vol. 28, No. 2, Spring 2014
- *The Ownership/Control Exception to Illinois Brick in Hi-Tech Component Cases: A Rule That Recognizes the Realities of Corporate Price Fixing*, ABA International Cartel Workshop February 2014, with Aaron M. Sheanin
- *Matthew Bender Practice Guide: California Unfair Competition and Business Torts*, LexisNexis, with Justice Conrad L. Rushing and Judge Elia Weinbach (Updated 2013)

PEARSON, SIMON & WARSHAW, LLP

- *The Questionable Use of Rule 11 Motions to Limit Discovery and Eliminate Allegations in Civil Antitrust Complaints in the United States*, ABA International Cartel Workshop February 2012, with Aaron M. Sheanin

**Professional Associations and Memberships:**
- California State Bar Antitrust and Unfair Competition Section, Advisor and Past Chair
- ABA Global Private Litigation Committee, Co-Chair
- ABA International Cartel Workshop, Steering Committee
- American Association for Justice, Business Torts Section, Past Chair
- Business Torts Section of the American Trial Lawyers Association, Past Chair
- Hastings College of the Law, Board of Directors (2003-2015), Past Chair (2009-2011)

# DANIEL L. WARSHAW

Daniel L. Warshaw is a civil litigator and trial lawyer who focuses on complex litigation, class actions, and consumer protection. Mr. Warshaw has held a lead role in numerous state and federal class actions, and obtained significant recoveries for class members in many cases. These cases have included, among other things, antitrust violations, high-technology products, automotive parts and false and misleading advertising. Mr. Warshaw has also represented employees and employers in a variety of class actions, including wage and hour, misclassification and other Labor Code violations.

Mr. Warshaw played an integral role in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, where he negotiated the ESI protocol and managed a document review process that featured nearly 8 million documents in multiple languages and 136 reviewers. He currently serves as interim co-lead counsel in a series of groundbreaking class actions involving the alleged underpayment of royalties to artists, producers and directors in the music and film industries. These cases have received significant attention in the press, and Mr. Warshaw has been profiled by the *Daily Journal* for his work in the digital download music cases. In recognition of his outstanding work, Mr. Warshaw has been selected by his peers as a Super Lawyer (representing the top 5% of practicing lawyers in Southern California) every year since 2005. He has also attained Martindale-Hubbell's highest rating (AV) for legal ability and ethical standards.

Mr. Warshaw has assisted in the preparation of two Rutter Group practice guides: *Federal Civil Trials & Evidence* and *Civil Claims and Defenses*. Since 2012, Mr. Warshaw has served as the Chair of the Plaintiffs' Class Action Forum sponsored by Cambridge International Forums, Inc. The purpose of the Forum is to facilitate a high-level exchange of ideas and in-depth dialogue on class action litigation.

**Current Cases:**
- *In re Carrier IQ, Inc., Consumer Privacy Litigation* (N.D. Cal.)
- *In re Lithium Ion Batteries Antitrust Litigation* (N.D. Cal.)
- *Higgins v. Paramount Pictures Corp.* (and related cases) (LA Sup. Ct.)
- *Sciortino, et al. v. PepsiCo, Inc.* (N.D. Cal.)

PEARSON, SIMON & WARSHAW, LLP

**Education:**
- Whittier Law School, Los Angeles, California – J.D. – 1996
- University of Southern California – B.A. – 1992

**Bar Admissions:**
- California
- Ninth Circuit Court of Appeals
- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California

**Professional Associations and Memberships:**
- American Bar Association
- Association of Business Trial Lawyers
- Consumer Attorneys Association of Los Angeles
- Consumer Attorneys of California
- Los Angeles County Bar Association, Executive Committee of the Litigation Section
- Plaintiffs' Class Action Forum, Chair

PEARSON, SIMON & WARSHAW, LLP

## SENIOR COUNSEL

### GEORGE S. TREVOR

George S. Trevor has focused his practice for the past 26 years representing investors in securities class actions, securities arbitrations, and complex business litigation.  Since joining Pearson, Simon & Warshaw, LLP in 2009 as Senior Counsel, Mr. Trevor has been the senior attorney on a number of the firm's important cases.  Those include *In re Credit Default Swaps Antitrust Litigation*, where the firm helped secure a historic $1.86 billion settlement on behalf of purchasers and sellers of CDS, and *In re Lehman Securities and ERISA Litigation*, where the firm represented California public entities that purchased Lehman securities prior to its bankruptcy.

Mr. Trevor also represents bankruptcy trustees as special litigation counsel against former directors, professionals and financial institutions, and recently obtained a substantial settlement on behalf of an investor plaintiff class against a national bank alleged to have aided and abetted a Ponzi scheme.

Prior to joining Pearson, Simon & Warshaw, LLP, Mr. Trevor was managing partner of Trevor & Weixel LLP.  Mr. Trevor's significant cases at Trevor & Weixel included a class action brought on behalf of former employees of Eel River Sawmills.  Mr. Trevor was instrumental in obtaining a $5 million settlement for a class of approximately 400 workers who had lost significant amounts promised to them under the company's Employee Stock Ownership Plan.  Mr. Trevor was lead trial counsel in a multi-claimant securities arbitration against a brokerage firm tried in New Orleans in 2007-2008.  Following twenty days of hearing and immediately prior to the panel's decision, Mr. Trevor negotiated substantial settlements on behalf of all claimants.

Mr. Trevor also practiced for 11 years at Gold & Bennett.  Among his cases there was a class action brought on behalf of the former shareholders of the Pacific Lumber Company.  In 1985, Charles Hurwitz launched a hostile takeover of Pacific Lumber.  Mr. Hurwitz, assisted by Michael Milken and Ivan Boesky, succeeded in forcing a shareholder buyout at $40 per share.  The class action complaint alleged that the buyout was obtained through the dissemination of fraudulent offering materials to shareholders.  On the eve of trial, Mr. Hurwitz agreed to a $52 million settlement.  Combined with other settlements, the Pacific Lumber shareholders received over $140 million in additional compensation for their shares, one of the largest recoveries in securities litigation at the time.  Mr. Trevor was also instrumental in the recovery of $19.2 million by the shareholders of Digital Microwave Corporation.  Mr. Trevor has litigated cases against hedge funds, real estate limited partnerships, software and hardware companies, alternative energy companies and accounting firms, among others.

PEARSON, SIMON & WARSHAW, LLP

**Current Cases**:
- *In re Credit Default Swaps Antitrust Litigation* (S.D.N.Y.)

**Education:**
- University of California, Hastings College of the Law, San Francisco, California – J.D. – 1986
- University of California, Berkeley, California – A.B. – 1980  (Phi Beta Kappa, High Honors in Rhetoric and Distinction in General Scholarship).

**Bar Admissions**
- California
- Ninth Circuit Court of Appeals
- U.S. District Court, Central District of California
- U.S. District Court, Northern District of California
- U.S. District Court, District of Arizona

**Reported Cases**
- *Musick Peeler & Garrett v. Wausau Ins.*, 508 U.S. 286 (1993)
- *Lippitt v. Raymond James*, 340 F.3d 1033 (9th Cir. 2003)
- *Daniels v. Centennial Group*, 16 Cal.App.4th 467 (Cal. Ct. App. 1993)
- *Boston Telecommunications v. Deloitte Touche*, 278 F. Supp 2d 1041 (N.D. Cal. 2003)
- *In re Silicon Graphics*, 970 F.Supp 746 (N.D. Cal. 1997)
- *Lilley v. Charren*, 936 F.Supp 708 (N.D. Cal. 1996)
- *In re Digital Microwave Corp. Securities Litigation*, 1992 U.S. Dist. LEXIS 18469 (N.D. Cal. 1992)
- *In re Adobe Systems, Inc. Securities Litigation*, 767 F. Supp. 1023 (N.D. Cal. 1991)

**Professional Associations and Memberships**
- American Bar Association, Member, 1992 – present
- Committee of Business and Corporate Litigation
- Public Investors Bar Association, Member, 2000 – present

PEARSON, SIMON & WARSHAW, LLP

# OF COUNSEL

## AARON M. SHEANIN

Aaron M. Sheanin, Of Counsel to Pearson, Simon & Warshaw, LLP, has extensive experience in complex litigation matters in federal and state courts, including the prosecution of antitrust and consumer class actions.  He has litigated numerous securities fraud and corporate governance cases on behalf of individual and institutional investors, and has advised state pension funds and private institutions with respect to securities and antitrust matters.  Mr. Sheanin also has experience litigating telecommunications, employment discrimination, defective product, and bankruptcy matters.

Mr. Sheanin is responsible for leading the Direct Purchaser Plaintiff class action in *In re Lithium Ion Batteries Antitrust Litigation*.  He was actively involved in all aspects of *In re TFT-LCD (Flat Panel) Antitrust Litigation*, and was an integral member of the trial team.  For his work on that case, Mr. Sheanin was nominated by the Consumer Attorneys of California as a finalist for Consumer Attorney of the Year.  Mr. Sheanin served as co-lead counsel in *In re American Express Financial Advisors Securities Litigation* ($100 million settlement), as co-lead counsel on behalf of lead plaintiff the Kansas Public Employees' Retirement System in the securities class action *Scheiner v. i2 Technologies* ($84.85 million in settlements), and as co-chair of the discovery committee in *In re Natural Gas Antitrust Cases* ($160 million in settlements).

From 2002 to 2011, Mr. Sheanin gained extensive experience prosecuting class actions and other complex cases as an associate and a partner with Girard Gibbs LLP and as an associate with Lieff, Cabraser, Heimann & Bernstein, LLP.  From 1999 to 2001, Mr. Sheanin was a *pro se* law clerk for the United States Court of Appeals for the Second Circuit.

**Current Cases:**
- *In re Credit Default Swaps Antitrust Litigation* (S.D.N.Y.)
- *In re Lithium Ion Batteries Antitrust Litigation* (N.D. Cal.)
- *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation* (N.D. Cal.)
- *In re Optical Disc Drive Products Antitrust Litigation* (N.D. Cal.)

**Education:**
- Columbia University School of Law, New York, New York – J.D. – 1999
- University of California, Berkeley, Berkeley, California – A.B. – 1993

**Bar Admissions:**
- California
- New York
- New Jersey
- Ninth Circuit Court of Appeals
- Second Circuit Court of Appeals

PEARSON, SIMON & WARSHAW, LLP

- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California
- U.S. District Court, District of Colorado

**Publications and Presentations:**
- *Appellate Courts Grapple with the Foreign Trade Antitrust Improvements Act*, Competition: The Journal of the Antitrust and Unfair Competition Law Section of the State Bar of California, Vol. 23, No. 2 (Fall 2014), with Craig C. Corbitt.
- *The Ownership/Control Exception to Illinois Brick in Hi-Tech Component Cases:  A Rule That Recognizes the Realities of Corporate Price Fixing*, ABA International Cartel Workshop February 2014, with Bruce L. Simon.
- *The Questionable Use of Rule 11 Motions to Limit Discovery and Eliminate Allegations in Civil Antitrust Complaints in the United States*, ABA International Cartel Workshop February 2012, with Bruce L. Simon.
- American Bar Association, Task Force on Contingent Fees (Tort Trial and Insurance Practice Section)
- "California Class Actions Practice and Procedure" (Matthew Bender, 1st Ed. 2003), contributing author

**Professional Associations and Memberships:**
- California State Bar Antitrust and Unfair Competition Section, Executive Committee
- Antitrust Section of the San Francisco Bar Association, Executive Committee
- American Bar Association
- New York Bar Association

PEARSON, SIMON & WARSHAW, LLP

# ASSOCIATES

## BOBBY POUYA

Bobby Pouya is a civil litigator and trial lawyer in the firm's Los Angeles office, focusing on complex litigation, class actions, and consumer protection. Mr. Pouya has been an attorney with Pearson, Simon & Warshaw since 2006, and has extensive experience in representing clients in a variety of contexts. He has served as a primary member of the litigation team in multiple cases that resulted in class certification or a classwide settlement, including cases that involved high-technology products, consumer safety and false and misleading advertising. Mr. Pouya's success has earned him recognition by his peers as a Super Lawyers Rising Star (representing the top 2.5% of lawyers in Southern California age 40 or younger or in practice for 10 years or less) every year since 2008.

Mr. Pouya has served as one of the attorneys representing direct purchaser plaintiffs in several MDL antitrust cases, including *In re Polyurethane Foam Antitrust Litigation* (N.D. Ohio) and *In re Fresh and Processed Potatoes Antitrust Litigation* (D. Idaho). Mr. Pouya is actively involved in the prosecution of *Senne, et al. v. Office of the Commissioner of Baseball, et al.* (N.D. Cal.), and works closely with lead counsel on all aspects of litigation strategy. Mr. Pouya earned his Juris Doctorate from Pepperdine University School of Law in 2006, where he received a certificate in dispute resolution from the prestigious Straus Institute for Dispute Resolution and participated on the interschool trial and mediation advocacy teams, the Dispute Resolution Law Journal and the Moot Court Board.

**Current Cases:**
- *Senne, et al. v. Office of the Commissioner of Baseball, et al.* (N.D. Cal.)
- *Higgins v. Paramount Pictures Corp.* (and related cases) (L.A. Sup. Ct.)
- *Sciortino, et al. v. PepsiCo, Inc.* (N.D. Cal.)

**Education:**
- Pepperdine University School of Law, Malibu, California – J.D. – 2006
- University of California, Santa Barbara, California – B.A., with honors – 2003

**Recent Publications:**
- *Should Offers Moot Claims?*, Daily Journal, Oct. 10, 2014, with Alexander R. Safyan
- *Central District Local Rules Hinder Class Certification*, Daily Journal, April 9, 2013, with Alexander R. Safyan

**Bar Admissions:**
- California
- Ninth Circuit Court of Appeals
- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California

PEARSON, SIMON & WARSHAW, LLP

- U.S. District Court, Southern District of California

**Professional Associations and Memberships:**
- Consumer Attorneys Association of Los Angeles
- Consumer Attorneys of California
- Los Angeles County Bar Association
- San Fernando Valley Bar Association

## VERONICA W. GLAZE

Veronica W. Glaze is an associate in the firm's Los Angeles office, focusing on antitrust, consumer, and business litigation. Ms. Glaze was a member of the trial team in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, and was actively involved in representing the direct purchaser plaintiffs at all stages of the case. In 2013, Ms. Glaze was recognized by Consumer Attorneys of California as a finalist for its "Consumer Attorney of the Year" award for her work in the case. Ms. Glaze also worked on key aspects of the direct purchaser plaintiffs' case in *In re Potash Antitrust Litigation (II)*, an MDL antitrust case that alleged price fixing by Russian, Belarusian and North American producers of potash. While at Pearson, Simon, & Warshaw, Ms. Glaze has become particularly adept at managing the electronic review of documents at all stages of litigation. She has also gained extensive experience managing the review of foreign language documents and resolving discovery issues concerning the use of translations throughout the litigation process.

Ms. Glaze matriculated at Pomona College in Claremont, California and received her Bachelor of Arts in English Literature, with minors in Black Studies and Politics. She earned her Juris Doctorate in 2008 from Pepperdine University School of Law. While in law school, Mrs. Glaze was a member of Pepperdine's Moot Court Board and worked as a research assistant to Professor Carol A. Chase. Ms. Glaze is also a former law clerk for the Legal Aid Foundation of Los Angeles.

**Current Cases**:
- *In re Lithium Ion Batteries Antitrust Litigation* (N.D. Cal.)
- *In re Fresh and Processed Potatoes Antitrust Litigation* (D. Idaho)
- *In re Cathode Ray Tube (CRT) Antitrust Litigation* (N.D. Cal.)

**Education**:
- Pepperdine University School of Law, Malibu, California – J.D. – 2008
- Pomona College, Claremont, California – B.A. – 2004

**Bar Admissions**:
- California
- U.S. District Court, Northern District of California
- U.S. District Court, Central District of California

PEARSON, SIMON & WARSHAW, LLP

**Professional Associations and Memberships**:
- John M. Langston Bar Association, Board Member
- Black Women Lawyers Association of Los Angeles, Scholarship Committee Member
- Consumer Attorneys of California, Member
- Los Angeles County Bar Association, Member
- Consumer Attorneys Association of Los Angeles, Member
- San Fernando Valley Bar Association, Member

**Honors and Awards**:
- Consumer Attorneys of California's Consumer Attorney of the Year, award finalist, 2013
- John M. Langston Bar Association's President's Award, 2013

## ALEXANDER R. SAFYAN

Alexander R. Safyan is an associate in the firm's Los Angeles office, focusing on antitrust, consumer, and business litigation.  Mr. Safyan has worked on many of the firm's class actions, including drafting complex complaints, motions, and discovery.  Mr. Safyan has also served as the principal attorney on some of the firm's non-class cases, representing individuals and companies in contract disputes on both sides of the "v."  In recognition of his work on behalf of clients, Mr. Safyan has been selected by his peers as a Super Lawyers Rising Star (representing the top 2.5% of lawyers in Southern California age 40 or younger or in practice for 10 years or less) for 4 straight years.

Mr. Safyan is a prolific writer, having been published multiple times by the *Daily Journal* and co-authored papers and presentations with some of the firm's senior attorneys.  Further, Mr. Safyan published a law review comment titled *A Call for International Regulation of the Thriving "Industry" of Death Tourism*, which has been cited by multiple other publications.  Mr. Safyan earned his Bachelor of Arts degree, *cum laude*, in political science from the University of Southern California in 2008.  He earned his Juris Doctorate, *cum laude*, from Loyola Law School Los Angeles in 2011, graduating as a member of the Order of the Coif.

**Current Cases:**
- *In re Credit Default Swaps Antitrust Litigation* (S.D.N.Y.)
- *Senne, et al. v. Office of the Commissioner of Baseball, et al.* (N.D. Cal.)
- *Higgins v. Paramount Pictures Corp.* (and related cases) (L.A. Sup. Ct.)

**Education:**
- Loyola Law School Los Angeles, Los Angeles, California – J.D., *cum laude* – 2011
- University of Southern California, Los Angeles, California – B.A., *cum laude* – 2008

**Recent Publications:**
- Class Certification Procedure, Ch. V, ABA Antitrust Class Actions Handbook (3d ed.), with Bruce L. Simon (forthcoming)
- *Should Offers Moot Claims?*, Daily Journal, Oct. 10, 2014, with Bobby Pouya

PEARSON, SIMON & WARSHAW, LLP

- *Central District Local Rules Hinder Class Certification*, Daily Journal, April 9, 2013, with Bobby Pouya
- *Brantley v. NBC Uni: Tying Consumers' Hands in Bringing Antitrust Tying Claims*, Daily Journal, April 12, 2012, with Clifford H. Pearson
- *A Call for International Regulation of the Thriving "Industry" of Death Tourism*, 33 LOY. L.A. INT'L & COMP. L. REV. 287 (2011)

**Bar Admissions:**
- California
- Ninth Circuit Court of Appeals
- U.S. District Court, Central District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California

**Professional Associations and Memberships:**
- American Bar Association
- Association of Business Trial Lawyers, Young Lawyers Division
- Los Angeles County Bar Association (Serves as Liaison to the Executive Committee of the Antitrust and Unfair Business Practices Section)

## MICHAEL H. PEARSON

Michael H. Pearson is an associate in the firm's Los Angeles office, focusing on antitrust, personal injury, and business litigation. Mr. Pearson has represented clients in high-stakes personal injury, mass tort, and product liability cases.

Mr. Pearson received his Bachelor of Science degree from Tulane University in 2008, majoring in Finance with an Energy Specialization. He received his Juris Doctorate from Loyola Law School Los Angeles in 2011. Mr. Pearson is an active member in a number of legal organizations, including the American, Los Angeles County and San Fernando Valley Bar Associations, Consumer Attorneys of California, the Consumer Attorneys Association of Los Angeles and the Association of Business Trial Lawyers.

**Current Cases**:
- *In re Credit Default Swaps Antitrust Litigation* (S.D.N.Y.)
- *Senne, et al. v. Office of the Commissioner of Baseball, et al.* (N.D. Cal.)

**Education**:
- Loyola Law School Los Angeles, Los Angeles, California – J.D. – 2011
- Tulane University, New Orleans, Louisiana – B.S., *magna cum laude* – 2008

**Bar Admissions**:
- California
- Ninth Circuit Court of Appeals

PEARSON, SIMON & WARSHAW, LLP

- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California

**Professional Associations and Memberships:**
- American Bar Association
- Association of Business Trial Lawyers
- Consumer Attorneys Association of Los Angeles
- Consumer Attorneys of California
- Los Angeles County Bar Association
- San Fernando Valley Bar Association

## BENJAMIN E. SHIFTAN

Benjamin E. Shiftan is a litigator in the firm's San Francisco office. Since joining the firm in 2014, Mr. Shiftan has focused on complex class action litigation, including antitrust, product defect, and consumer protection cases.

Prior to joining the firm, Mr. Shiftan litigated complex bad faith insurance cases for a national law firm. Before that, Mr. Shiftan served as a law clerk to the Honorable Peter G. Sheridan, United States District Court for the District of New Jersey, and worked for a mid-sized firm in San Diego.

Mr. Shiftan graduated from the University of San Diego School of Law in 2009. While in law school, he served as Lead Articles Editor of the San Diego International Law Journal and competed as a National Team Member on the Moot Court Board. Mr. Shiftan won the school's Paul A. McLennon, Sr. Honors Moot Court Competition. At graduation, he was one of ten students inducted into the Order of the Barristers. Mr. Shiftan graduated from the University of Virginia in 2006.

**Current Cases**:
- *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation* (N.D. Cal.)
- *In re Lithium Ion Batteries Antitrust Litigation* (N.D. Cal.)
- *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation* (N.D. Cal.)

**Education**:
- University of San Diego School of Law, San Diego, CA – J.D. – 2009
- University of Virginia, Charlottesville, VA – B.A. – 2006

**Bar Admissions**:
- California
- Ninth Circuit Court of Appeals
- U.S. District Court, Central District of California

PEARSON, SIMON & WARSHAW, LLP

- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California

**Professional Associations and Memberships:**
- San Francisco County Bar Association

## MATTHEW A. PEARSON

Matthew A. Pearson is an associate in the firm's Los Angeles office focusing on antitrust, personal injury, and business litigation.  Mr. Pearson has represented clients in a variety of different matters, including toxic tort litigation, business litigation, products liability, and high-stakes personal injury matters.

Mr. Pearson received his Bachelor of Science degree from the University of Arizona in 2010, majoring in Business Management.  He received his Juris Doctorate from Whittier Law School in 2013.  Mr. Pearson is an active member in a number of legal organizations, including the American Bar Association, American Association for Justice, Association of Business Trial Lawyers, Consumer Attorneys Association of Los Angeles, Consumer Attorneys of California, and the Los Angeles County Bar Association.

**Current Cases:**
- *In re Credit Default Swaps Antitrust Litigation* (S.D.N.Y.)
- *L.A. Taxi Cooperative, Inc., et al. v. Uber Technologies, Inc., et al. (N.D. Cal.)*

**Education:**
- Whittier Law School, California – J.D. – 2013
- University of Arizona: Eller College of Management – B.S.– 2010

**Bar Admissions:**
- California
- Ninth Circuit Court of Appeals
- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California

**Professional Associations and Memberships:**
- American Bar Association
- American Association for Justice
- Association of Business Trial Lawyers
- Consumer Attorneys Association of Los Angeles
- Consumer Attorneys of California
- Los Angeles County Bar Association

PEARSON, SIMON & WARSHAW, LLP

## ALEXANDER L. SIMON

Alexander L. Simon is a litigator in the firm's San Francisco office.  Since joining the firm as a law clerk in 2013 and an attorney in 2015, Mr. Simon has focused on complex class action litigation, including antitrust, product defect, and consumer protection cases.

Mr. Simon graduated from Loyola Law School in 2015.  While in law school, he served as the Chief Production Editor of the *Loyola of Los Angeles Entertainment Law Review* from 2014-2015.  His comment titled *With Great Power Comes Great Responsibility: Gary Friedrich's Battle with Marvel For Artist Rights* was published by the law review that same year.  In 2014, Mr. Simon also participated in Loyola Law School's Copyright Moot Court.  Mr. Simon graduated from the University of California, Berkeley in 2009 where he was a member of Freshman Men's Crew during the 2005-2006 season.  During his senior year of high school, he was the "two" seat of the Saint Ignatius College Preparatory Varsity 8 boat that won the US Rowing Youth Invitational National Championship.

**Current Cases:**
- *Senne, et al. v. Office of the Commissioner of Baseball, et al.* (N.D. Cal.)
- *In re Lithium Ion Batteries Antitrust Litigation* (N.D. Cal.)
- *L.A. Taxi Cooperative, Inc., et al. v. Uber Technologies, Inc., et al.* (N.D. Cal.)

**Education:**
- Loyola Law School, Los Angeles, California – J.D. – 2015
- University of California, Berkeley, Berkeley, California – B.A. – 2009

**Recent Publications:**
- *With Great Power Comes Great Responsibility: Gary Friedrich's Battle with Marvel For Artist Rights*, 35 Loy. L.A. Ent. L. Rev. 211 (2015)

**Bar Admissions:**
- California
- U.S. District Court, Southern District of California
- U.S. District Court, Central District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Eastern District of California

**Professional Associations and Memberships:**
- San Francisco County Bar Association
- California Young Lawyers Association

**Community Service:**

PEARSON, SIMON & WARSHAW, LLP

- Prime Time Mock Trial Coach at Ralph Waldo Emerson Middle School in Los Angeles (2014)
- Volunteer at the Theatre of Terror (2013) and Raymond Hill Mortuary (2014) Haunted Houses benefiting the South Pasadena Arts Council and South Pasadena Educational Foundation

## MEREDITH C. DOYLE

Meredith C. Doyle is an associate in the firm's San Francisco office, focusing on antitrust, consumer, and business litigation.

Ms. Doyle earned her Bachelor of Arts degree, *cum laude*, from Claremont McKenna College in 2011, majoring in Government with a Leadership focus.  She was a member of the varsity women's soccer team all four years, and contributed to two SCIAC League Championship wins.  She received her Juris Doctorate from Pepperdine Law School in 2014.  In law school, Ms. Doyle served as an Executive Editor of Pepperdine's *Dispute Resolution Law Journal* from 2013 to 2014.  The Journal published her article, *Circles of Trust: Using Restorative Justice to Repair Organizations Marred by Sex Abuse*, in 2014.  Ms. Doyle was also co-chair of Pepperdine Law School's Honor Board from 2013 to 2014.  Ms. Doyle is an active member in a number of legal organizations, including the American Bar Association, Los Angeles County Bar Association, and the Association of Business Trial Lawyers.

**Current Cases**:
- *In re Credit Default Swaps Antitrust Litigation* (S.D.N.Y.)
- *Senne, et al. v. Office of the Commissioner of Baseball, et al.* (N.D. Cal.)
- *In re Lithium Ion Batteries Antitrust Litigation* (N.D. Cal.)

**Education**:
- Pepperdine University School of Law, Los Angeles, California – J.D. – 2014
- Claremont McKenna College, Claremont, California – B.A., *cum laude* – 2011

**Bar Admissions**:
- California
- U.S. District Court, Southern District of California (pending)
- U.S. District Court, Central District of California (pending)
- U.S. District Court, Northern District of California (pending)
- U.S. District Court, Eastern District of California (pending)

**Professional Associations and Memberships:**
- American Bar Association
- Association of Business Trial Lawyers
- Los Angeles County Bar Association
- San Francisco County Bar Association (forthcoming)