UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STACY SCIORTINO, et al.,

        Plaintiffs,

    v.

PEPSICO, INC.,

        Defendant.

Case No.  14-cv-00478-EMC

**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

Docket No. 142

## I.  INTRODUCTION

Plaintiff[1] Mary Hall brought the instant class action based on Defendant PepsiCo's alleged failure to warn consumers that its Pepsi, Diet Pepsi, and Pepsi One soft drinks (collectively, Pepsi products) contained elevated levels of 4-Methylimidazole (4-MeI), in violation of California consumer protection statutes and common law.  Docket No. 68 (First Amended Complaint) (FAC) at ¶¶ 1, 7.  4-MeI is a compound formed during the manufacturing of caramel coloring, and is recognized by California as a chemical known to cause cancer.  *Id.* at ¶¶ 16, 24.  Plaintiffs' suit was on behalf of all individuals residing in California who purchased Pepsi products.  *Id.* at ¶ 50.

Pending before the Court is Plaintiff's motion for preliminary approval of the settlement.  Docket No. 142 (Mot.).  As part of the settlement agreement, the parties have also stipulated to a second amended complaint to create a nationwide class for settlement purposes.  Docket No. 142

---

[1] The amended complaint was originally filed by three Plaintiffs: Mary Hall, Kent Ibusuki, and Kelly Ree.  *See* FAC at 2.  On January 4, 2016, the Court dismissed Ms. Ree as a plaintiff, although the ruling had no effect on Ms. Ree's status as a putative class member.  Docket No. 137.

Mr. Ibusuki has requested to be removed as a named plaintiff, and has been removed from the proposed Second Amended Complaint.  *See* Stip. at 3.  Mr. Ibusuki is not a party to the Settlement Agreement and the parties assert that his removal from the proposed Second Amended Complaint will have no impact on the proposed settlement.  *Id.*

United States District Court
For the Northern District of California

(Stip.) at 2.  For the reasons stated below, the Court **GRANTS** Plaintiff's motion for preliminary approval.

## II.   FACTUAL & PROCEDURAL BACKGROUND

A.   Litigation History

On January 23, 2014, Consumer Reports published test results on the presence of 4-MeI in Pepsi products, finding that the amount was in excess of the 29 micrograms allowed per can or bottle and concluding that the results presented health risks to consumers.  FAC at ¶ 34. Following the report, several consumers filed substantially similar class action suits alleging that PepsiCo failed to warn consumers of the elevated levels of 4-MeI.  The Court consolidated nine actions, and appointed the firms of Pearson, Simon & Warshaw (PSW) and Glancy Binkow & Goldberg (GBG) as interim lead counsel.  Docket No. 65 at 1-2.  On September 17, 2014, the Court severed from the consolidated cases the *Riva v. PepsiCo* case, which was a standalone case for personal injury and medical monitoring claims.[2]  Docket No. 75.

On August 25, 2014, Plaintiffs filed an amended complaint alleging violations of Proposition 65 (failure to provide warnings), the Consumers Legal Remedies Act (CLRA) (misrepresentation of the safety, composition, and quality of the Pepsi products), and the Unfair Competition Law (UCL) under the unlawful, unfair, and fraudulent business practice prongs. FAC at ¶¶ 62-90.  Plaintiffs sought civil penalties for violation of the Health & Safety Code, damages, restitution, and injunctive relief requiring PepsiCo to "cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in this Complaint."  *Id.* at 19.

PepsiCo moved to dismiss the amended complaint, arguing that: (1) Plaintiffs failed to comply with Proposition 65's mandatory notice provisions before filing suit; (2) the federal Food, Drug, and Cosmetic Act (FDCA) and the Food and Drug Administration's (FDA) regulations preempt the state law claims; and (3) the Court should not adjudicate the action because the FDA has primary jurisdiction over the subject matter of the suit and because there was a pending Proposition 65 action in state court.  Docket No. 105 (Order on Motion to Dismiss) (Ord.) at 3.

---

[2] The *Riva* case was dismissed with prejudice on March 4, 2015.  Case No. 14-cv-2020-EMC, Docket No. 62.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

The Court denied PepsiCo's motion to dismiss Plaintiff Hall's Proposition 65 claims, but granted the motion to dismiss Ibusuki's Proposition 65 claim, although it noted that the dismissal had little practical effect as Hall could proceed as the named plaintiff for the Proposition 65 claim. *Id.* at 14.  The Court also found that there was no preemption, and further declined to dismiss or stay the action under a theory of primary jurisdiction. *Id.* at 30-31, 37.  The Court declined to stay on the basis of abstention, finding that the pending state action *Center for Environmental Health v. Pepsi Beverages Co.* only alleged a Proposition 65 claim and sought civil penalties, but did not allege any UCL or CLRA claims or seek restitution and monetary damages. *Id.* at 42-43.

In September 2015, the parties stipulated to continuing the pending deadlines in order to pursue settlement.  Docket No. 124.  The parties participated in mediation before Judge Ronald M. Sabraw on November 3, 2015.  Docket No. 142-1 (Warshaw Dec.) at ¶ 9.  The parties did not settle the case at the time, but continued having settlement discussions over the next several months before entering into the Settlement Agreement now before the Court. *Id.*

B.    Settlement Agreement

The settlement class is defined as:

> All individuals in the United States and all U.S. territories (including, but not limited to, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, the Northern Mariana Islands, and the other territories and possessions of the United States), who purchased one or more of the Products from January 1, 2010, until the date of the preliminary approval of the settlement of this litigation.

Warshaw Dec., Exh. 1 (Settlement Agreement) at ¶ 4.3.

The settlement does not involve any monetary payment; instead, it consists of "mandatory, non-opt-out, nationwide injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2) by way of modification of the ingredients for the Products as set forth in this Settlement Agreement." Settlement Agreement at ¶ 5.1.  Primarily, PepsiCo agrees to require its caramel coloring suppliers to meet certain 4-MeI levels in products shipped for sale in the United States, ensuring the 4-MeI concentration levels will not exceed the level of 100 parts per billion, and to test the covered products pursuant to an agreed protocol.  Mot. at 5.  This injunctive relief is the same that PepsiCo already agreed to in the state court action, *Center for Environmental Health v. Pepsi Beverages*

3

*Co.*, which was settled in 2015  *Id.* at 4.  However, the Settlement Agreement will "enhance the CEH settlement by: (1) expanding the geographic scope of the stipulated injunction from California to nationwide; (2) increasing the duration of the injunctive relief from three years to five years."  *Id.* (original emphasis omitted). [3]

In exchange for the injunctive relief, the settlement class releases the following claims:

> any and all claims for injunctive and/or declaratory relief of any kind or character -- whether matured or unmatured, now known or unknown, liquidated or unliquidated, preliminary or final, at law or in equity, whether before a local, state, or federal court, or state or federal administrative agency, commission, arbitrator(s) or otherwise -- that the Settlement Class Members now have or may have, from the beginning of the Class Period up until and including the Effective Date, based on or relating in any way to the alleged presence of, or labeling for, 4-MEI and/or caramel color in any Products.

Settlement Agreement at ¶ 1.16.  There is no release of any damages claims.  *See* Settlement Agreement at ¶ 8.3.1 ("Settlement Class Members will not release claims for personal injury, wrongful death, or damages, and for that reason no notice or opt-out right is required."), ¶ 8.6.

## III.   DISCUSSION

A.   Certification of the Settlement Class

The Court's "threshold task is to ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  In addition, the Court must find that at least one of the requirements of Rule 23(b) is satisfied.  *Id.* at 1022.

The Court finds that the Rule 23(a) requirements are satisfied.  First, numerosity exists because the settlement class is made up of every person who has purchased one or more Pepsi product, which likely numbers in the millions.  Second, commonality exists because there are

---

[3] In addition to the injunctive relief, PepsiCo agrees to pay $500,000 to interim co-lead counsel, which reflects a negative multiplier on the co-lead counsel's lodestar ($717,391.25).  Settlement Agreement at ¶ 11.1; Warshaw Dec. at ¶ 20.  Plaintiff Hall will also receive $4,000 for acting as the class representative and for the release of her individual claims.  Settlement Agreement at ¶ 11.5.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

common questions of whether PepsiCo violated California law by failing to warn consumers that the Pepsi products contain elevated levels of 4-MeI, what methodology PepsiCo should use, and whether consumers were likely to be deceived.  Mot. at 7.  Third, typicality exists because like all members, Plaintiff Hill asserts that she bought the Pepsi product without a proper Proposition 65 warning, making it illegal for PepsiCo to sell and deliver the product in California.  *Id.* at 8.  Finally, adequacy exists because Plaintiff Hill has no apparent conflict of interest, and there is no indication that class counsel will not be able to fairly and adequately represent the class's interests.

The Court also finds that the Rule 23(b)(2) requirements are satisfied.  A Rule 23(b)(2) class may be certified when the party against whom relief is sought "has acted or refused to act on grounds that apply generally to the class, so that injunctive relief . . . is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Thus, "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole[, e]ven if some class members have not been injured by the challenged practice."  *Walters v. Reno*, 478 F.3d 1032, 1047 (9th Cir. 1998).  Here, Plaintiff contends that PepsiCo has engaged in a standard, uniform practice of not labeling its products with the Proposition 65 warning, even though its products allegedly contain problematic levels of 4-MeI.  Thus, the Court finds that conditional certification of the class for settlement purposes only is appropriate.

B.    Preliminary Approval

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  As the Ninth Circuit explained, "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Accordingly, before a court approves a settlement, it must conclude that the settlement is "fundamentally fair, adequate, and reasonable."  *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008); *see also Allen v. Bedolla*, 787 F.3d 118, 1222 (9th Cir. 2015).  This inquiry requires that the Court balance factors such as the strength of the plaintiffs' case, the risk and expense of further litigation, the risk of maintaining class action status, the amount offered in settlement, the extent of discovery completed and the stage of the

proceedings, the experience and views of counsel, the presence of a government participant, and the reaction of the class members of the proposed settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (listing factors to determine fairness and adequacy). Generally, the district court's review of a class action settlement is "extremely limited." *Hanlon*, 150 F.3d at 1026. The Court must consider "the settlement taken as a whole, rather than the individual component parts." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015).

At the preliminary approval stage, the Court may grant preliminary approval of a settlement if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *Harris v. Vector Mktng. Corp.*, Case No. C-08-5198-EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011); *Dudum v. Carter's Retail, Inc.*, Case No. 14-cv-00988-HSG, 2015 WL 5185933, at *3 (N.D. Cal. Sept. 4, 2015). Closer scrutiny is reserved for the final approval hearing.

1.   Settlement Process

The first factor the Court examines is the means by which the parties arrived at settlement. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris*, 2011 WL 1627973, at *8 (internal quotation omitted); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution").

Here, the Court should find that the settlement process was fair. The case was settled relatively early, prior to any ruling on the merits of the case. However, the settlement was the product of an arm's-length negotiation, which included mediation before Judge Ronald M. Sabraw at JAMS, as well as follow-up settlement discussions over the next several months, with Judge Sabraw's assistance. Warshaw Dec. at ¶ 9. During mediation, the parties submitted mediation briefs, through which the parties state they were able to articulate the strengths of their claims and defenses and assess the weaknesses of the other party's position. Mot. at 10-11. This is evidence

6

**United States District Court**
For the Northern District of California

1    that the parties reached the settlement in a procedurally sound manner and that it was not the result

2    of collusion or bad faith by the parties or counsel.  *See Satchell v. Fed. Exp. Corp.*, No. C 03-2659

3    SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced

4    mediator in the settlement process confirms that the settlement is non-collusive"); *Chun-Hoon v.*

5    *McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The arms-length negotiations,

6    including a day-long mediation before Judge Lynch, indicate that the settlement was reached in a

7    procedurally sound manner").  Furthermore, there is no evidence in the record indicating collusion

8    or bad faith by the parties.

9           2.      The Presence of Obvious Deficiencies

10          The Court finds that there are no obvious deficiencies.  First, the settlement class as a

11   whole will receive injunctive relief, and the parties have indicated that not only is there no other

12   law or regulation on 4-MeI that uses a more stringent standard than Proposition 65, but that

13   California is the only state that regulates 4-MeI at all.  *See* Docket No. 152 (Joint Supp. Briefing)

14   at 1-2.

15          Second, the settlement class will not be giving up any monetary claims for damages,

16   personal injury, or wrongful death; instead, the released claims will be limited to past claims for

17   injunctive or declaratory relief only.  Importantly, the Settlement Agreement does not attempt to

18   limit *future* claims for injunctive relief; thus, if an individual is unsatisfied with the 4-MeI limits

19   required by the Settlement Agreement, they are not precluded from bringing a claim challenging

20   those 4-MeI levels.

21          Finally, the Court has reviewed the proposed 4-MeI limit and the methodology underlying

22   the settlement for measuring compliance, and finds it adequate.  *See id.* at 5-9 (explaining that

23   proposed 4-MeI limit of 100 parts per billion will be significantly less than the default level of 29

24   micrograms per day under Proposition 65).

25          3.      Preferential Treatment

26          The Court finds that the Settlement Agreement does not provide preferential treatment to

27   any class member.  With the exception of the service award to the class representative, all

28   settlement class members will receive the same injunctive relief, but no monetary relief.

United States District Court
For the Northern District of California

4.     Whether the Settlement Falls Within the Range of Possible Approval

Finally, the Court considers whether the Settlement Agreement falls within the range of possible approval.  "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *Harris*, 2011 WL 1627973, at *9. Additionally, to determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.  *Churchill Vill.*, 361 F.3d at 575; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 944.

a.     Comparison of Expected Recovery with Settlement

The parties do not address this factor, as this is an injunction only settlement.  It appears that as to injunctive relief, the settlement obtains a favorable result as measured under Proposition 65.  The settlement class members are not giving up any of their monetary claims, and they are not receiving any monetary compensation (with the exception of the service award to Plaintiff Hill, who is also entering into a general release of her claims).

b.     Strength of the Plaintiff's Case

Plaintiff had three significant hurdles in succeeding on this case.  First, the parties disputed whether Plaintiff could show that PepsiCo actually violated Proposition 65, and how exposure should be calculated,  Specifically, PepsiCo argued that exposure should not be calculated on a "per can" serving basis, but on lifetime consumption, relying on the California Court of Appeal's decision in *Environmental Law Foundation v. Beech-Nut Nutrition Corp.*, 235 Cal. App. 4th 307 (2015) (affirming trial court's ruling that the level of exposure could be averaged over multiple days instead of evaluating exposure on the day the food was actually consumed).  Mot. at 14-15. Second, PepsiCo could have argued that the consent judgment in *Center for Environmental Health*

8

**United States District Court**
For the Northern District of California

1   *v. Pepsi Beverages Co.* foreclosed this lawsuit in its entirety, as it was on the same core issue of

2   whether PepsiCo had violated Proposition 65.  This created a risk that the putative class would not

3   be able to recover anything from the instant suit.  *Id.* at 15.  Third, with respect to damages,

4   Plaintiff note concerns regarding whether they could have developed a model for class-wide

5   damages given the difficulty in determining class-wide consumption patterns and exposure.  *Id.*

6           Taken together, there were multiple and substantial risks to Plaintiff if the litigation had

7   proceeded.

8                        c.      Risk, Expense, and Duration of Further Litigation

9           This factor focuses on the risk, expense, complexity, and projected duration of the

10   litigation.  *See Churchill Vill.*, 361 F.3d at 575.  As discussed, there were many risks to the

11   Plaintiff, and if the case was not dismissed on the basis of being foreclosed by the consent

12   judgment in the parallel state action, litigation was likely to continue for some time given the

13   relatively early stage of this case.

14                        d.      Risk of Maintaining Class Action Status

15           Based on the class certification factors discussed above, Plaintiff would have a reasonable

16   likelihood of maintaining the class action under Rule 23(b)(2).  However, it is not clear Plaintiff

17   could have maintained a class action under Rule 23(b)(3) for the damages and other monetary

18   relief originally sought, given the difficulty in creating a damages model and estimating class-wide

19   consumption and exposure patterns.

20                        e.      The Settlement Amount

21           The settlement amount is limited to injunctive relief, with the exception of attorney's fees

22   and a class representative award.  However, the settlement class members are not giving up any

23   monetary claims and are obtaining significant injunctive relief.

24                        f.      Extent of Discovery and Procedural Posture

25           This factor examines the extent of discovery the parties have completed and the current

26   stage of litigation to evaluate whether the parties have sufficient information to make an informed

27   decision about the settlement.  Here, the case was relatively early, with no rulings on the merits of

28   the case.  However, the parties did have the benefit of mediation briefs, and Plaintiff conducted

1    discovery including testing on the Pepsi products, review of product information, and other

2    relevant information to determine compliance with Proposition 65.  *See* Warshaw Dec. at ¶ 11.

3                        g.    Experience and Views of Counsel

4         The Court has previously found that Plaintiff's counsel "has extensive experience with

5    complex class action litigation, including trial experience," as well as a specific expertise in

6    Proposition 65-related litigation.  Docket No. 65 at 1.  Plaintiff's counsel in turn have expressed

7    their belief that the settlement is an excellent result, in light of the risks associated with continuing

8    the litigation.  Warshaw Dec. at ¶¶ 11, 13.

9                        h.    Government Participant

10        Because there is no government participant in this case, this factor is inapplicable.

11                       i.    Class Member Reaction

12        The final factor examines the class members' response to the proposed settlement.  *See*

13   *Churchill Vill.*, 361 F.3d at 575.  Because the class has not been notified the settlement, the Court

14   cannot evaluate the class's reaction to the settlement, including the number and substance of any

15   objections.

16                       j.    Summary

17        Taking each of the foregoing factors into consideration, the Court finds that parties have

18   made a sufficient showing that the Settlement Agreement provides a fair resolution of the class

19   members' injunctive relief claims against PepsiCo.  There are significant risks to continuing the

20   litigation, both on the merits and in maintaining class certification.  The injunctive relief from this

21   case will extend injunctive relief that has been issued in the state case, both in duration and in

22   geographic effect.  The Court concludes that the settlement falls within the range of preliminary

23   approval.  The Court therefore **GRANTS** Plaintiff's request for preliminary approval of the

24   Settlement Agreement.

25   C.    Appointment of Class Representative and Class Counsel

26        In its August 6, 2014 Order Appointing Lead Counsel, the Court previously determined

27   that PSW and GBG were competent to serve as Lead Class Counsel.  Based on the materials the

28   Court previously considered in conjunction with the motion to appoint counsel, the Court now

10

United States District Court
For the Northern District of California

1   appoints Ms. Hall as Class Representative for settlement purposes, and appoints PSW and GBG as

2   Class Counsel for purposes of settlement.

3   D.       Notice of Motion for Award of Attorneys' Fees and Costs

4           The parties have agreed not to issue formal notice to the settlement class.  Settlement

5   Agreement at ¶ 10.1.  Although the parties do not intend to provide formal notice to the settlement

6   class, the Court is satisfied that the settlement will make its way to the public domain in several

7   ways.  This includes Plaintiff's notice to the California Attorney General's office (which has

8   posted the Settlement Agreement in full, *see* 60 Day Notice 2014-00218, State of California

9   Department of Justice, Office of the Attorney General, https://oag.ca.gov/prop65/60-Day-Notice-

10  2014-00218 (last visited June 13, 2016)), Defendant's CAFA notice (*see* Docket No. 153), and the

11  expected announcement of the settlement on Plaintiff's counsel's website, *see* Joint Supp. Briefing

12  at 4, Exh. E.

13          Further, Section 11.1 of the Settlement Agreement states that class counsel will file a

14  motion seeking an award of attorneys' fees in the amount of $500,000.  *See* Settlement Agreement

15  at ¶ 11.1.  To enable class members to review class counsel's motion, class counsel shall post its

16  motion for attorney's fees on class counsel's website in an easily accessible location at the time

17  the motion for attorney's fees is filed with this Court.

18                          **IV.     CONCLUSION**

19          For the reasons stated above, the Court **GRANTS** Plaintiff's motion for preliminary

20  approval, and **GRANTS** the joint stipulation to amend Plaintiff's complaint to expand the

21  settlement class to a nation-wide class.  Plaintiffs' motion for attorney's fees and motion for final

22  approval of the settlement will be due on **July 21, 2016**, and the final approval hearing will be set

23  for **August 25, 2016** at 1:30 p.m.

24          This order disposes of Docket Nos. 142 and 143.

25          **IT IS SO ORDERED**.

26  Dated: June 28, 2016

27                                          _____

28                                          EDWARD M. CHEN
                                            United States District Judge

*United States District Court*
*For the Northern District of California*