DANIEL L. WARSHAW (Bar No. 185365)
  dwarshaw@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

MARC L. GODINO (Bar No. 182689)
  mgodino@glancylaw.com
**GLANCY BINKOW & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160

Co-Lead Counsel for Plaintiffs and the Proposed Class

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| STACY SCIORTINO, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PEPSICO, INC., a North Carolina Corporation,<br><br>Defendant. | CASE NO. C 14-0478-EMC<br><br>*Consolidated with* Nos. 14-0713, 14-1099, 14-1105, 14-1192, 14-1193, 14-1316, 14-2020, 14-2023<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     August 25, 2016<br>Time:    1:30 p.m.<br>Crtrm.:  5 |

TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 25, 2016, at 1:30 p.m. or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Edward M. Chen, United States District Court, Northern District of California, San Francisco Division, Plaintiff Mary Hall will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(e), for an order finally approving the class action settlement in this case.

This motion is made on the grounds that the proposed settlement is fair, adequate, and reasonable.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the declarations of Class Counsel, the pleadings and papers on file herein, and upon such additional evidence or argument as may be accepted by the Court at or prior to the hearing on this motion.

DATED: July 21, 2016             **PEARSON, SIMON & WARSHAW, LLP**

By:  */s/ Daniel L. Warshaw*
     DANIEL L. WARSHAW

*Co-Lead Counsel for Plaintiff and the Class*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................................1

II. BACKGROUND .........................................................................................................................2

    A. Negotiation of the Settlement ..................................................................................2

    B. Settlement Terms .....................................................................................................3

        1. Injunctive Relief ..........................................................................................3

        2. Limited Release ...........................................................................................3

    C. Notification of the Settlement .................................................................................4

III. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE .......................................4

    A. Standard for Final Approval ....................................................................................4

    B. The Settlement Was Not Procured by Fraud, Overreaching, or Collusion and Is Therefore Entitled to a Presumption of Fairness ............................................5

    C. The Settlement is Fair, Adequate and Reasonable ..................................................6

        1. The Strength of Plaintiffs' Case Compared to the Risk, Expense, Complexity, and Likely Duration of Further Litigation ..................................6

        2. The Risk of Maintaining Class Action Status Throughout the Trial .............8

        3. The Relief Obtained by Settlement ...............................................................9

        4. The Experience and Views of Counsel .........................................................9

        5. The Reaction of Class Members to the Settlement .....................................10

IV. THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 ..........11

V. CONCLUSION .........................................................................................................................12

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Burden v. SelectQuote Ins. Servs.*, No. C 10-05966 SBA, 2013 WL 1190634, at *3 (N.D. Cal. Mar. 21, 2013) ............................................................................................................ 9

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .................................................................................... 4, 5, 6

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................................................ 4

*Environmental Law Foundation v. Beech-Nut Nutrition Corp.*
   235 Cal. App. 4th 307 (2015) ............................................................................................ 8

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................................ 5

*Kirkorian v. Borelli*,
   695 F. Supp. 446 (N.D. Cal. 1988) .................................................................................... 9

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th. Cir. 2012) ........................................................................................ 1, 5

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) .......................................................................................... 10

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................. 2, 5, 10

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ............................................................................................... 5

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ............................................................................................. 4

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ................................................................................................ 9

**STATUTES AND RULES**

Cal. Bus. & Prof. §§ 17200 *et seq.* ........................................................................................... 7

Cal. Civ. Code §§ 1750, *et seq.* ................................................................................................ 7

Cal. Health & Safety Code § 25249.7(f)(4) ............................................................................... 4

Cal. Health & Safety Code § 25249.7(f)(4)(B) .......................................................................... 4

Fed. R. Civ. P. 23 ................................................................................................................ 1, 2, 4, 11

Fed. R. Civ. P. 23(a) .................................................................................................................... 8, 11

Fed. R. Civ. P. 23(b) ....................................................................................................................... 11

Fed. R. Civ. P. 23(b)(2) .................................................................................................................... 9

Fed. R. Civ. P. 23(e)(2) .................................................................................................................... 1

**OTHER AUTHORITIES**

Conte & Newberg, *Newberg on Class Actions*, §§ 11.41 and 13.45 (4th ed. 2011) .................... 5, 6

Manual For Complex Litig., § 21.632 (4th ed. 2004) ................................................................. 2, 11

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Motion represents the final threshold in resolving ongoing litigation between consumers, such as Plaintiff Mary Hall (collectively, "Plaintiffs"), and Defendant PepsiCo, Inc. ("Pepsi") involving Pepsi's alleged failure to warn consumers that its Pepsi, Diet Pepsi, and Pepsi One ("collectively, "Covered Products") soft drinks contained elevated levels of 4 Methylimidazole ("4-MeI"), in violation of California consumer protection statutes and common law.  Rather than spend valuable party and judicial resources litigating this case for an extended period into the future, the Parties to this action engaged in settlement negotiations to try to reach a class-wide settlement.  After over two years of hard fought, arm's-length negotiations featuring an in-person mediation session with the Honorable Ronald M. Sabraw (Ret.) and numerous telephonic conferences of counsel, the Parties reached the Settlement Agreement[1] on April 19, 2016.  (Settlement Agreement, Dkt. No. 142-1, Ex. 1.)

This Court granted preliminary approval to the Settlement Agreement on June 28, 2016. (Dkt. No. 154.)  The Court found that the Settlement Agreement fell within the necessary range of reasonableness and certified a Settlement Class defined as: "All individuals in the United States and all U.S. territories (including, but not limited to, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, the Northern Mariana Islands, and the other territories and possessions of the United States), who purchased one or more of the Products from January 1, 2010, until the date of the preliminary approval of the settlement of this litigation."  (*Id*.) Plaintiffs now move the Court to finally approve the Settlement and conclude this litigation.

The Settlement Agreement is fair, adequate, and reasonable, as required by Federal Rule of Civil Procedure 23.  Fed. R. Civ. P. 23(e)(2); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th. Cir. 2012).  As an initial matter, the settlement was not reached through fraud, overreaching, or

---

[1] The "Settlement Agreement" refers to the Settlement Agreement filed as Dkt. No. 142-1, Ex. 1. All capitalized terms herein shall have the definitions given to them in the Settlement Agreement, unless otherwise stated.

1  collusion by the negotiating Parties, and therefore is entitled to a presumption of fairness. *Nat'l*
2  *Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).  On the merits,
3  the settlement directly addresses the Class Members' concerns with Pepsi's alleged 4-MeI levels
4  by providing meaningful injunctive relief: (1) ensuring PepsiCo's caramel coloring suppliers meet
5  certain 4-MeI levels in products shipped for sale in the United States; (2) ensuring the 4-MeI
6  levels in the Covered Products shipped for sale in the United States will not exceed the level of
7  100 parts per billion; and (3) testing of the Covered Products pursuant to an agreed protocol.  By
8  agreeing to settle this litigation Plaintiffs are not releasing any damages claims they may have.
9  (Settlement Agreement, § 8.3.1.)
10        Plaintiff has posted notice of the settlement terms on Class Counsel's websites.  Further,
11  notice of the settlement was provided to the California Attorney General.  Class Counsel has not
12  received communications from any concerned consumers regarding the settlement.
13        Finally, in granting preliminary approval, the Court inherently found that the Class could
14  be certified for settlement purposes.  *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed.
15  2004).  Plaintiffs submit that the Class satisfies all the requirements for certification under Rule 23
16  and request that the Court grant final approval on behalf of the Class.

17  **II.**  **BACKGROUND**
18      **A.**  **Negotiation of the Settlement**
19        After this Court largely denied Pepsi's Motion to Dismiss, the Parties engaged in
20  substantive discussions regarding Pepsi's compliance with Proposition 65.  (Dkt. No. 154.)
21  Following these discussions in Summer 2015, the Parties stipulated to continue the pending
22  deadlines in order to pursue settlement discussions, which the Court granted.  (Dkt. No. 124.)  On
23  November 3, 2015, the Parties participated in a mediation before the Honorable Ronald M.
24  Sabraw (Ret.). (Declaration of Daniel L. Warshaw ("Warshaw Decl."), ¶ 16.)  At the conclusion
25  of the mediation, the Parties were at an impasse.  (*Id*.)  However, with Judge Sabraw's assistance,
26  the Parties continued having settlement discussions over the next several months and ultimately
27  reached the proposed Settlement.  (*Id.*)
28  / / /

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

**B.    Settlement Terms**

The Settlement Agreement provides meaningful injunctive relief to the Class. It consists of strict compliance with Proposition 65 terms for Pepsi regarding 4-MeI levels in products, as well as an expanded testing period to ensure compliance therewith. Further, the Settlement does *not* release Pepsi from any damages claims any Class Member may have. (Settlement Agreement, § 8.3.1.) The material terms of the Settlement Agreement are:

1.    Injunctive Relief

The Settlement provides for the following meaningful injunctive relief: (1) ensuring PepsiCo's caramel coloring suppliers meet certain 4-MeI levels in products shipped for sale in the United States; (2) ensuring the 4-MeI levels in the Covered Products shipped for sale in the United States will not exceed the level of 100 parts per billion; and (3) testing of the Covered Products pursuant to an agreed protocol. This injunctive relief is similar to that in the previously settled California state court action *Center for Environmental Health v. Pepsi Beverages Company, et al.*, Case No. RG 14-711020 ("*CEH*"). While the Proposition 65 injunctive relief does not have a specific end date, the instant settlement expands on the scope *CEH* settlement geographically (from California to nationwide) and temporally (permitting five years of Proposition 65 compliance testing rather than three years). (*See* Settlement Agreement, §§ 5.1, 5.2; *See also,* Order Granting Plaintiff's Motion for Preliminary Approval, Dkt. No. 154 p. 3-4.)

2.    Limited Release

The Settlement Release provides that Settlement Class Members are enjoined only from taking any future action seeking injunctive and/or declaratory relief against Pepsi based on the Released Claims. (Settlement Agreement, § 8.3.2.) In exchange for the injunctive relief, the settlement class releases the following claims:

> any and all claims for injunctive and/or declaratory relief of any kind or character -- whether matured or unmatured, now known or unknown, liquidated or unliquidated, preliminary or final, at law or in equity, whether before a local, state, or federal court, or state or federal administrative agency, commission, arbitrator(s) or otherwise -- that the Settlement Class Members now have or may have, from the beginning of the Class Period up until and including the Effective Date, based on or relating in any way to the alleged

**1  2**     presence of, or labeling for, 4-MEI and/or caramel color in any Products.

**3** (*Id.* at § 1.16.)  There is no release of any damages claims, including claims for personal injury,

**4** wrongful death, or general damages.  (*Id.* at § 8.3.1.)

**5**     **C.    Notification of the Settlement**

**6** Since the Settlement Agreement provides for injunctive relief only and requires no release

**7** of any monetary or personal injury claims by any member of the Settlement Class, notice and opt-

**8** out rights are not necessary.  (*Id.*)  However, per the Court's request, Class Counsel posted notice

**9** of the settlement on their respective websites[2], provided proper notice to the California Attorney

**10** General pursuant to Proposition 65, and posted the Settlement Agreement on the Attorney

**11** General's website[3].  (Warshaw Decl., ¶ 18.)  Class Counsel has received no communications from

**12** consumers regarding the settlement.  (*Id.*)

**13** **III.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

**14**     **A.    Standard for Final Approval[4]**

**15** The law favors the compromise and settlement of class action lawsuits.  *See Churchill*

**16** *Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*,

**17** 955 F.2d 1268, 1276 (9th Cir. 1992).  Indeed, "there is an overriding public interest in settling and

**18** quieting litigation" and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco*

---

[2] http://www.pswlaw.com/Notable-Cases/Pepsi-4-Mei-Class-Action.aspx
  https://www.glancylaw.com/case/pepsico-inc

[3] https://oag.ca.gov/prop65/60-Day-Notice-2014-00218

[4] There is a separate statute in California governing approval of Proposition 65 settlements.  See Cal. Health & Safety Code § 25249.7(f)(4).  Superior Court Judge George C. Hernandez, Jr. already considered and applied those factors when approving the *CEH* settlement, and Plaintiffs wish to make clear that they are not requesting that this Court should revisit Judge Hernandez's rulings.  In any event, two of the provisions—subsection (f)(4)(A) governing warnings and subsection (f)(4)(C) regarding penalties—are not applicable here because the settlement does not provide for this relief.  Rule 23 and Ninth Circuit precedent independently require this Court to consider the third and final factor—that "[t]he award of attorney's fees is reasonable under California law."  Cal. Health & Safety Code § 25249.7(f)(4)(B).

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  *Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  The decision to approve or reject a settlement is
2  committed to the sound discretion of the trial court because it "is exposed to the litigants and their
3  strategies, positions and proof."  *Lane*, 696 F.3d at 818 (9th. 2012) (quoting *Hanlon v. Chrysler*
4  *Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  However, in exercising such discretion, the trial
5  court should give "proper deference to the private consensual decision of the Parties."  *Hanlon*,
6  150 F.3d at 1027.  "[T]he court's intrusion upon what is otherwise a private consensual agreement
7  … must be limited to the extent necessary to reach a reasoned judgment that the agreement is not
8  the product of fraud or overreaching by, or collusion between, the negotiating Parties, and that the
9  settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Id.*

In determining whether a class action settlement is fair, adequate, and reasonable, district courts in the Ninth Circuit balance the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill.*, 361 F.3d at 575; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  This list is not exclusive, and different factors may predominate in different factual contexts.  *Torrisi*, 8 F.3d at 1375-76 (citing *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

**B.     The Settlement Was Not Procured by Fraud, Overreaching, or Collusion and Is Therefore Entitled to a Presumption of Fairness**

In addition to the above factors, the trial court must be satisfied that the agreement is not the product of fraud, overreaching, or collusion.  Where a settlement is reached following discovery and arm's-length negotiations, it is presumed to be fair.  Conte & Newberg, *Newberg on Class Actions*, § 11.41 (4th ed. 2011); *Nat'l Rural Telecomm.*, 221 F.R.D. at 528.

The negotiations leading to the Settlement were hard-fought and overseen by the Honorable Ronald M. Sabraw (Ret.).  (Warshaw Decl., ¶ 17.)  The settlement here was achieved

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

following numerous arm's-length negotiations between the Parties both in-person and telephonically in the months following the November 2015 mediation session. (*Id.* at ¶¶ 16-17.) The negotiations also included significant hours of independent discussions between experienced counsel. (*Id.* at ¶¶ 16-17, 19.) Given the extensive motion practice on Defendant's motion to dismiss, the Parties' substantive discussions and discovery conducted, and the mediation briefs submitted, both Parties were able to articulate the strengths of their claims and defenses and the weaknesses of each other's position, ultimately reaching the Settlement after weighing the facts and applicable law and the risks of continued litigation. (*Id.* at ¶ 17.) The Settlement Agreement was achieved only after many months of intensive work and corroboration by counsel. It was not the product of fraud, overreaching, or collusion by the Parties, and as a result, is presumptively fair. (*Id.* at ¶ 20.) These facts support a presumption of fairness. NEWBERG ON CLASS ACTIONS § 13.45.

      C. **The Settlement is Fair, Adequate and Reasonable**

In evaluating the Settlement Agreement, the Court must balance the factors set forth in *Churchill Village*, 361 F.3d at 575. As shown below, consideration of the relevant *Churchill* factors supports final approval of the Settlement Agreement in this case.

          1. The Strength of Plaintiffs' Case Compared to the Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Class Counsel were confident in their legal theories, Pepsi argued that it was in compliance with Proposition 65. Notably, to prevail in this case, Class Counsel would have had to establish specific facts and prove their legal theory both on the merits and on a class-wide basis. Based on Pepsi's argument and Class Counsel's experience, this would have been a difficult task.

Nine class action lawsuits[5] were filed between January and March 2014 alleging that

---

[5] The filed cases were: *Sciortino v. PepsiCo, Inc.*, No. 14-0478-EMC; *Cortina v. PepsiCo, Inc.*, No. 14-2023-EMC; *Granados v. PepsiCo, Inc.*, No. 14-1316-EMC; *Ibusuki v. PepsiCo, Inc.*, No. 14-1193-EMC; *Ree v. PepsiCo, Inc.*, No. 14-1192-EMC; *Aourout v. PepsiCo, Inc.*, No. 14-1105-EMC; *Hall v. PepsiCo, Inc.,* No. 14-1099-EMC; *Langley v. PepsiCo, Inc.*, No. 14-713-EMC; and *Riva v. PepsiCo, Inc.*, No. 14-2020-EMC.

Defendant violated Proposition 65 and various California consumer fraud statutes following a January 23, 2014 *Consumer Reports* report on the presence of 4-MeI in the Covered Products in California. The Court consolidated the separate actions under the caption *Sciortino v. PepsiCo, Inc.* and appointed Pearson, Simon & Warshaw, LLP and Glancy Prongay & Murray LLP as lead counsel. (Dkt. No. 65.) On August 25, 2014, Plaintiffs Hall, Ibusuki, and Ree[6] filed a Consolidated Amended Complaint ("CAC") against Defendant for violations of Proposition 65, California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. §§ 17200 *et seq.* (*See* CAC, Dkt. No. 68.) Defendant subsequently moved to dismiss the CAC, which the Court denied after extensive briefing and oral argument by the Parties on June 5, 2015. (*See* Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, Dkt. No. 105.) The Court denied Defendant's motion to dismiss Plaintiff Hall's claims on Proposition 65 grounds, finding that adequate pre-suit notice was provided. (*Id.*) The Court also denied Defendant's motion to dismiss Plaintiffs' state law claims—holding that the state law claims were not preempted by federal law—and denied Defendant's request to dismiss or stay the action under a primary jurisdiction or abstention theory. (*Id.*) The Court dismissed Plaintiff Ibusuki's Proposition 65 claim, but noted that the dismissal had little practical effect. (*Id.*)

That Class Counsel were able to achieve the results they did for the Class despite the risks they faced speaks to the level of skill and preparation they brought to this case. Defendant vigorously contest Plaintiff's claims. For example, liability would depend on whether the Court accepted Defendant's methodology of calculating 4-MeI exposure based on lifetime consumption as opposed to on a 'per can' basis as Plaintiff proposes. This important issue would likely become a battle of the experts resulting in substantial litigation costs for both Parties. In addition, this Court noted in its preliminary approval order that this case presented difficulty in determining class-wide consumption patterns and exposure." (Dkt. No. 154 at 9.) After evaluating the risks,

---

[6] On January 4, 2016, this Court granted Defendant's motion to dismiss Plaintiff Ree. (Dkt. No. 137.)

1  expenses and complexity contemplated by this litigation, Class Counsel determined that
2  proceeding with this litigation would not guarantee an increased benefit to the Class as compared
3  to the benefits provided by this Settlement.  Given the balance of the strength of Plaintiff's case
4  and the risks and expenses they faced in continuing to litigate, this factor weighs in favor of final
5  approval.

### 2. The Risk of Maintaining Class Action Status Throughout the Trial

As detailed in the Motion for Preliminary Approval, Plaintiff contends that this action could be maintained as a class action.  (Dkt. No. 142.)  Plaintiff believes this case satisfies the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and 23(b)(2) and (3)—appropriateness of injunctive relief and predominance.  At the same time, Plaintiff recognizes that there are challenges to all types of cases, including in this case.  Although Plaintiff is confident she could prevail on this issue, the risk of maintaining class action status in this case is significant.  Pepsi would vigorously contest class certification, raising issues such as ascertainability and a class-wide damages model.

Further, based on the conferences held between the Parties and their respective experts, it is evident that there would be critical merits disputes in addition to the class action requirements.  Specifically, Pepsi argues that it is in compliance with Proposition 65 and that its current testing of the Covered Products is proper.  This issue would likely be one of the most critical in the case.  There is no case law addressing the issue of determining exposure levels of 4-MeI for purposes of determining a violation of Proposition 65.  In this case, Plaintiff is advocating that a daily exposure to 4-MeI that exceeds the Proposition 65 threshold of 29 micrograms constitutes a violation of Proposition 65.  (*See* CAC, Dkt. No. 68.)  However, some cases dealing with determining exposure levels of other chemicals listed in Proposition 65 have used an average intake over a lifetime of exposure method, which Pepsi advocates.  *See Environmental Law Foundation v. Beech-Nut Nutrition Corp., et al.*, 235 Cal. App. 4th 307 (2015).  Although Plaintiff contends that the averaging methodology is distinguishable, there would undoubtedly be a battle between the Parties as to the applicable measurement for determining a Proposition 65 violation.  From Pepsi's perspective, one of the fundamental misconceptions about the Consumer Reports

article that led to the filing of this action, and the allegations that have been made in this case and the *CEH* action, is that compliance with Proposition 65 is measured on a "per can" basis. Pepsi has maintained that Proposition 65 requires an analysis of average consumption patterns.

At every stage of this case, Plaintiff advocated for the strength of her own positions while recognizing the risk with protracted litigation. (Warshaw Decl., ¶¶ 10-17.) Ultimately, after considering the significant injunctive relief offered by Defendant, and taking into account the risk, expense, complexity, and likely duration of further litigation, *see Burden v. SelectQuote Ins. Servs.*, No. C 10-05966 SBA, 2013 WL 1190634, at *3 (N.D. Cal. Mar. 21, 2013), Plaintiff and her experienced counsel, with the aid of Judge Sabraw, were able to achieve a favorable result for the Settlement Class. (Warshaw Decl., ¶¶ 10-17, 20.)

### 3. The Relief Obtained by Settlement

The settlement in this case provides meaningful injunctive relief in exchange for limited release by the Settlement Class. The significant injunctive relief achieved in this case is substantial in light of the above-stated risks. Consistent with the *CEH* settlement, and in consideration for the releases provided in the Settlement Agreement, Pepsi will provide the Settlement Class with the following nationwide injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2):

- Ensuring PepsiCo's caramel coloring suppliers meet certain 4-MeI levels in products shipped for sale in the United States;
- Ensuring the 4-MeI concentration levels in the caramel coloring in each of the Covered Products shipped for sale in the United States will not exceed the level of 100 parts per billion; and
- Testing of the Covered Products pursuant to an agreed protocol.

(Settlement Agreement, §§ 5.1.1-5.1.3.)

### 4. The Experience and Views of Counsel

When counsel recommending approval of a settlement is competent and experienced, their opinion should be given significant weight. *See Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Weinberger v. Kendrick*, 698 F.2d 61, 75-76 (2d Cir. 1982) (affording great weight to

1  opinion of competent and experienced counsel in favor of settlement approval).  In the instant
2  case, Class Members were represented by counsel with extensive experience in complex class
3  action litigation, who have negotiated numerous class action settlements in various courts across
4  the country.  (Warshaw Decl., ¶¶ 4-9; *See* Declaration of Marc L Godino).  Class Counsel in this
5  case include attorneys highly experienced in class action litigation.  *Id.*

6       Class Counsel were satisfied with the Settlement Agreement only after conducting
7  extensive negotiations and thorough investigation into the factual and legal issues raised in this
8  case.  (Warshaw Decl., ¶¶ 16-17, 20.)  They reviewed discovery throughout the case and internal
9  documentation provided by Pepsi as part of the mediation process.  (*Id.* at ¶¶ 16-17, 22.)  They
10 also engaged experts to provide consultation regarding the science surrounding Plaintiff's claims
11 and the different methodologies of testing for substances such as 4-MeI.  (*Id.* at ¶¶ 10, 17, 22)
12 Even after the Parties executed the settlement, Class Counsel continued to work diligently on the
13 case, and was prepared to respond to any and all questions or concerns either the public.  (*Id.* at ¶
14 18.)  Class Counsel worked tirelessly to achieve the best possible result for the Class and believe
15 that the Settlement Agreement was an excellent result.  Based on their experience and expertise,
16 Class Counsel view the Settlement Agreement as fair, adequate and reasonable.  (*Id.* at ¶ 20.)

17      5.    <u>The Reaction of Class Members to the Settlement</u>

18      A court may appropriately infer that a class action settlement is fair, adequate, and
19 reasonable when few class members object to it or opt out.  *See Marshall v. Holiday Magic, Inc.*,
20 550 F.2d 1173, 1178 (9th Cir. 1977); *Nat'l Rural Telecomm.*, 221 F.R.D. at 528.  Here, the
21 Settlement Agreement provides for injunctive relief only and requires no release of any monetary
22 or personal injury claims by any member of the Settlement Class, the Parties agree that notice and
23 opt-out rights are not necessary.  (Settlement Agreement, § 8.3.1.)  However, as previously
24 discussed, Class Counsel posted notice of the settlement on their respective websites and that of
25 the California Attorney General.  (Warshaw Decl., ¶ 18.)

26      There is little for a class member to be concerned about with respect to the settlement.
27 They receive the benefits of the injunctive relief, release only *limited* claims directly relating to
28 injunctive relief and as set forth in Plaintiff's Motion for Award of Attorneys' Fees and Expenses

and for Incentive Compensation Award, Class Counsel requested fee is less than their lodestar.

## IV. THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23

In the preliminary approval Order, this Court provisionally certified the Settlement Class as: "All individuals in the United States and all U.S. territories (including, but not limited to, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, the Northern Mariana Islands, and the other territories and possessions of the United States), who purchased one or more of the Products from January 1, 2010, until the date of the preliminary approval of the settlement of this litigation." (Dkt. No. 154.) In so doing, the Court made a preliminary determination that the Settlement Class satisfied the requirements of Rule 23. *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004). Plaintiffs now submit that the Settlement Class may finally be certified for settlement purposes, as it continues to meet all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

870523.1   11   C 14-0478-EMC
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## V. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval to the Settlement Agreement.

DATED: July 21, 2016

**PEARSON, SIMON & WARSHAW, LLP**

By: _____/s/ Daniel L. Warshaw_____

DANIEL L. WARSHAW (Bar No. 185365)
BOBBY POUYA (Bar No. 245527)
ALEXANDER R. SAFYAN (Bar No. 277856)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone:  (818) 788-8300
Facsimile:   (818) 788-8104
dwarshaw@pswlaw.com
bpouya@pswlaw.com
asafyan@pswlaw.com

BRUCE L. SIMON (Bar No. 96241)
**PEARSON, SIMON & WARSHAW, LLP**
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone:  (415) 433-9000
Facsimile:   (415) 433-9008
bsimon@pswlaw.com

MARC L. GODINO (Bar No. 182689)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
info@glancylaw.com

*Co-Lead Counsel for Plaintiff and the Class*