1   DANIEL L. WARSHAW (Bar No. 185365)
      dwarshaw@pswlaw.com
2   **PEARSON, SIMON & WARSHAW, LLP**
    15165 Ventura Boulevard, Suite 400
3   Sherman Oaks, California 91403
    Telephone: (818) 788-8300
4   Facsimile:  (818) 788-8104

5   MARC L. GODINO (Bar No. 182689)
      mgodino@glancylaw.com
6   **GLANCY BINKOW & MURRAY LLP**
    1925 Century Park East, Suite 2100
7   Los Angeles, California 90067
    Telephone: (310) 201-9150
8   Facsimile:  (310) 201-9160

9   Co-Lead Counsel for Plaintiffs and the Proposed
    Class
10
    [Additional counsel listed on signature page]
11

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14                **SAN FRANCISCO DIVISION**

15  STACY SCIORTINO, *et al.*, on behalf of      CASE NO. C 14-0478-EMC
    themselves and all others similarly situated,
16                                               *Consolidated with* Nos. 14-0713, 14-1099, 14-
                                                 1105, 14-1192, 14-1193, 14-1316, 14-2020,
17                Plaintiffs,                     14-2023

18         v.                                    **CLASS ACTION**

19  PEPSICO, INC., a North Carolina              **DECLARATION OF DANIEL L.**
    Corporation,                                 **WARSHAW IN SUPPORT OF**
20                                               **PLAINTIFF'S MOTION FOR FINAL**
                  Defendant.                     **APPROVAL OF CLASS ACTION**
21                                               **SETTLEMENT AND MOTION FOR**
                                                 **AWARD OF ATTORNEYS' FEES,**
22                                               **EXPENSES AND INCENTIVE AWARD**

23                                               Date:     August 25, 2016
                                                 Time:     1:30 p.m.
24                                               Crtrm.:   5

25

26

27

28

870524.1                                                              C 14-0478-EMC
────────────────────────────────────────────────────────
DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES,
EXPENSES AND INCENTIVE AWARD

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

I, Daniel L. Warshaw, declare as follows:

1.     I am an attorney duly admitted to practice law in the State of California and before this Court.  I am a partner in the firm of Pearson, Simon & Warshaw, LLP ("PSW"), attorneys of record for Plaintiff Mary Hall ("Plaintiff") and the putative class in this case.

2.     I am one of the attorneys principally responsible for the handling of this matter.  I am personally familiar with the facts set forth in this declaration, and if called as a witness I could and would competently testify to the matters stated herein.

3.     I make this declaration in support of Plaintiff's Motion for Final Approval of Class Action Settlement and Plaintiff's Motion for Award of Attorneys' Fees and Expenses and for Incentive Compensation Award.

## I.     THE WORK PERFORMED BY PSW

### A.     PSW's Experience

4.     PSW and its attorneys have been involved in litigating, trying, and settling hundreds of complex class action cases in California and elsewhere.  PSW has offices in Los Angeles and San Francisco, California, and handles national and multi-national class actions that present cutting-edge issues in both substantive and procedural areas.

5.     PSW has extensive experience in class action, multi-district, and complex litigation, and has the ability to litigate this case on a class-wide basis.  A complete profile of PSW's attorneys and a summary of the numerous complex litigation matters in which they have obtained successful results is set for in PSW's firm resume attached hereto as Exhibit "1."

6.     The attorneys at PSW have decades of experience handling complex consumer class actions, including cases that involve the types of claims asserted in this case.  PSW has represented a wide range of clients in complex litigation and class actions and have obtained well over *two billion* dollars in settlements and verdicts on behalf of their clients.  PSW currently serves, or has served, as lead counsel in some of the most advanced, cutting-edge, class actions in the country including, but not limited to: *In re Credit Default Swaps Antitrust Litigation*, MDL No. 2476 (S.D.N.Y.); *In re Lithium Ion Batteries Antitrust Litigation*, MDL No. 2420 (N.D. Cal.);

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

*In re Carrier IQ Consumer Privacy Litigation*, MDL No. 2330 (N.D. Cal.); *In re Warner Music Group Corp. Digital Downloads Litigation*, No. CV 12-0559 (N.D. Cal.); and *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 07-md-08127 (N.D. Cal.).  *See generally* Exhibit "1" (PSW firm resume).

      7.      In addition to the instant case, I have held a lead role in many of these cases, including but not limited to: *In re Carrier IQ, Inc. Consumer Privacy Litigation*, No. C-12-md-2330-EMC (N.D. Cal.), nationwide class action alleging that mobile phone diagnostics company, Carrier IQ, Inc., and numerous mobile phone manufacturers, improperly intercepted consumer information in violation of state and federal law; *Wolph v. Acer America Corp.*, No. C 09-1314 (N.D. Cal.), a nationally certified class action involving defective Acer computers that resulted in a class-wide settlement; *In re Warner Music Group Corp. Digital Downloads Litigation*, No. CV 12-559-RS (N.D. Cal.) and *James v. UMG Recordings, Inc.*, No. CV 11-1613-SI (N.D. Cal.), cases involving allegations of underpaid royalties to recording artists and producers for digital downloads of their music; and *Nasseri v. CytoSport, Inc.*, No. BC439181 (L.A. Super. Ct.), class action involving claims that CytoSport, Inc. failed to adequately disclose the amount of lead, mercury and arsenic contained in its protein supplements in violation of Proposition 65 and state consumer statutes.

      8.      PSW has demonstrated its commitment to protecting class members in significant matters, including *TFT-LCD*, in which my firm undertook tremendous risk and expense in prosecuting a large antitrust class action over a period of more than five years.  Under the co-leadership of my firm and Lieff, Cabraser, Heimann & Bernstein, LLP, we managed over 50 firms that had filed direct purchaser cases.  I personally helped manage discovery of nearly 8 million documents consisting of over 40 million pages, and oversaw as many as 136 document reviewers working concurrently.  The direct purchaser class served 184 sets of discovery requests and three written depositions, responded to 75 sets of requests propounded by defendants, and engaged in extensive discovery motion practice before a special master.  Class Counsel took and defended more than 130 depositions: 50 in San Francisco, 40 elsewhere across the country, and 41 outside

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARD

1    of the United States.  In all, counsel for the direct purchaser plaintiffs incurred in excess of $11

2    million in costs, and contributed well over 250,000 hours of work on the case, including

3    conducting a seven-week jury trial which resulted in a verdict for plaintiffs.  The *TFT-LCD* case

4    resulted in an approximate $473 million class recovery for direct purchaser plaintiffs.

5        9.    We have also demonstrated such commitment in other noteworthy matters,

6    including *In re Credit Default Swaps Antitrust Litigation*, MDL No. 2476 (S.D.N.Y.), which

7    alleged a conspiracy among the largest banks in the world to manipulate the credit default swaps

8    market.  Under the co-leadership of my firm and our co-counsel, over the course of more than

9    three years we helped manage the review of nearly 12 million documents, engaged in multiple

10   rounds of discovery requests, and took the depositions of key witnesses.  After months of intensive

11   settlement negotiations, the parties reached a landmark settlement amounting to $1.86 billion,

12   making it one of the largest civil antitrust settlements in history.  On April 15, 2016 the Honorable

13   Denise L. Cote granted final approval of the settlement and stated:

> "I think there is a public policy that is important in this land to
> encourage top-tiered litigators to pursue challenging cases like this.
> Antitrust violations go to the heart of our economy.  Our economic
> health and stability as a nation depend on the rule of law and trust in
> the fairness and transparency of our marketplace.  These issues are
> interwoven.  I think all of us can agree on that.  All of us want to
> live in a country where law is respected, where the court system can
> be effectively used to reach justice, and where our marketplaces are
> places that have investor confidence, so people, when they put their
> money down, can trust that they're in a level playing field." – Hon.
> Denise Cote, United States District Court, Southern District of New
> York, April 15, 2016.

22   **B.    PSW and Class Counsel's Work Litigating the Instant Case**

23       10.    The *Hall* action, filed by my firm on March 7, 2014, was one of nine class action

24   lawsuits filed against Defendant PepsiCo, Inc. ("Pepsi" or "Defendant") alleging that Pepsi failed

25   to warn consumers that its Pepsi, Diet Pepsi, and Pepsi One soft drinks contain elevated levels of

26   the dangerous chemical 4-Methylimidazole ("4-MeI") in violation of California consumer

27   protection statutes and common law.  Prior to filing the instant action, PSW conducted a detailed

28   independent investigation and analysis into the relevant facts, legal theories, and claims in this

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES,
EXPENSES AND INCENTIVE AWARD

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  lawsuit.  This independent investigation and analysis included independent testing and analysis of

2  Defendant's Covered Products to support the allegations of the complaint.  Further, PSW retained

3  and consulted with experts regarding the core allegations in the complaint and the requisite Prop.

4  65 pre-filing certifications.

5      11.     On August 6, 2014, this Court consolidated the nine class action lawsuits under the

6  caption *Sciortino v. PepsiCo, Inc.* ("Consolidated Action") and appointed PSW and Glancy

7  Prongay & Murray LLP as Interim Co-Lead Counsel.  (Dkt. No. 65.)  The Court later severed and

8  then dismissed the *Riva v. PepsiCo, Inc.* action, *see* Case No. C-14-2020 EMC (Order Granting

9  Defendant's Motion to Dismiss (Dkt. No. 52)), leaving eight consolidated cases in the

10  Consolidated Action.

11      12.     On August 25, 2014, Plaintiffs Mary Hall, Kent Ibusuki, and Kelly Ree filed a

12  Consolidated Amended Complaint ("CAC") against PepsiCo for violations of California's

13  Proposition 65, Cal. Health & Safety Code § 25249.7, *et seq.*, California's Consumers Legal

14  Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus.

15  & Prof. § 17200, *et seq.*  (Dkt. No. 68.)

16      13.     Defendant filed a motion to dismiss the CAC on October 24, 2014.  (Dkt. No. 82.)

17  The basis for Defendant's motion was: (1) Plaintiffs failed to comply with Proposition 65's

18  mandatory notice provisions before filing suit; (2) the federal Food, Drug, and Cosmetic Act and

19  the Food and Drug Administration's ("FDA") regulations preempted Plaintiffs' state law claims;

20  and (3) the Court should refrain from adjudicating the Consolidated Action because (a) the FDA

21  has primary jurisdiction over the subject matter of the lawsuit and (b) there was a pending

22  Proposition 65 action in state court.  (Dkt. No. 82.)

23      14.     On June 5, 2015, the Court issued an Order Granting in Part and Denying in Part

24  Defendant's Motion to Dismiss.  (Dkt. No. 105.)  In sum, the Court denied Defendant's motion to

25  dismiss Plaintiff Hall's claims on Proposition 65 grounds, finding that adequate pre-suit notice

26  was provided.  The Court also denied Defendant's motion to dismiss Plaintiffs' state law claims—

27  holding that the state law claims were not preempted by federal law—and denied Defendant's

28

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES,
EXPENSES AND INCENTIVE AWARD

1    request to dismiss or stay the action under a primary jurisdiction theory.  The Court dismissed

2    Plaintiff Ibusuki's claims, but noted that the dismissal had little practical effect.[1]

3        15.    Following the Court's Order on Defendant's motion to dismiss, counsel for

4    Defendant and Plaintiff met and conferred to discuss alternative dispute resolution.  The Parties[2]

5    reached a joint stipulation on September 15, 2015 to vacate all deadlines and stay the action 90

6    days pending settlement efforts, and the Court granted the stipulation on September 18, 2015.

7    (Dkt. No. 124.)

8        16.    On November 3, 2015, the Parties participated in a mediation before the Honorable

9    Ronald M. Sabraw (Ret.) at JAMS.  At the conclusion of the mediation, the Parties were at an

10   impasse.  However, with Judge Sabraw's assistance, the Parties continued having settlement

11   discussions over the next several months and ultimately entered into the Settlement Agreement

12   currently before the Court.  The Settlement Agreement was entered into by the parties on April 19,

13   2016.

14       17.    The negotiations leading to the Settlement were hard-fought and overseen by Judge

15   Sabraw.  Given the extensive motion practice on Defendant's motion to dismiss, the informal

16   discovery conducted, and the mediation briefs submitted, the Parties were able to articulate the

17   strengths of their claims and defenses and the weaknesses of each other's position, ultimately

18   reaching the Settlement after weighing the facts and applicable law and the risks of continued

19   litigation.

20       18.    Even after the parties executed the settlement, Class Counsel continued to work

21   diligently on the case.  Following settlement, Class Counsel posted notice of the settlement on

22   their respective websites[3], provided proper notice to the California Attorney General pursuant to

23   ──────────────────────

24   [1] On January 4, 2016, the Court separately granted Defendant's motion to dismiss Plaintiff Ree. (Dkt. No. 137.)

25   [2] All capitalized terms used herein that are not otherwise defined shall have the same meaning as

26   used in the Class Action Settlement Agreement ("Settlement Agreement"), a true and correct copy of which was filed as Docket Number 142-1, Exhibit 1.

27   [3] http://www.pswlaw.com/Notable-Cases/Pepsi-4-Mei-Class-Action.aspx

28   (footnote continued)

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES,
EXPENSES AND INCENTIVE AWARD

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  Proposition 65, and posted the Settlement Agreement on the Attorney General's website[4].  Since

2  posting the notice of the settlement, Class Counsel was prepared to respond to any and all

3  questions or concerns from the public.  Class Counsel has not received any communications from

4  consumers regarding the settlement.

5       19.    Class Counsel has significant combined experience in class action litigation, and

6  this experience and expertise helped inform the settlement negotiations in this case.  I believe it

7  was the skill and reputation of Class Counsel that facilitated an early settlement dialogue with

8  counsel for Pepsi.  This dialogue served as the catalyst for the mediation before Judge Sabraw and

9  discussions that resulted in the Settlement Agreement.

10      20.    I believe the Settlement Agreement is fair, reasonable, and adequate and represents

11  a favorable result for the Class.  The settlement provides substantial injunctive relief to the Class

12  while not requiring release of any claims for personal injury, wrongful death, or damages.

13  (Settlement Agreement, § 8.3.1.)

14      21.    On June 28, 2016, the Court granted Plaintiffs' Motion for Preliminary Approval.

15  **II.    PSW'S HOURS AND ATTORNEYS' FEES**

16      22.    From the outset, PSW assumed an active role in leading this litigation.  PSW

17  investigated the allegations in the *Hall* complaint prior to filing; drafted pleadings and motions

18  and attended court appearances; conducted significant discovery; engaged in settlement

19  discussions; and managed the instance case from its inception through the present by coordinating

20  with the other firms and defense counsel.  PSW's attorneys' time was spent on the following tasks:

21          a.    *Pre-Filing Investigation:*  Following a January 23, 2014 Consumer Reports

22  report on the presence of 4-MeI in the Covered Products in California, PSW retained and

23  consulted with an expert regarding the allegations in the Consumer Reports report, actively

24  investigated the legal aspects, and subsequently made the decision to pursue the *Hall* action after

25  _____

26      https://www.glancylaw.com/case/pepsico-inc

27  [4] https://oag.ca.gov/prop65/60-Day-Notice-2014-00218

28

1  being retained.  Additionally, PSW prepared and complied with all of the pre-litigation

2  Proposition 65 notices.  In total, PSW spent 38.50 hours working on pre-filing investigation

3  related activities.

4          b.      *Pleadings, Motions and Court Appearances:*  PSW expended significant

5  time and effort into drafting the pleadings, motions and respective oppositions, and other filings in

6  this case.  PSW worked on the *Hall* complaint, the CAC and the proposed Second Consolidated

7  Amended Complaint.  Further, PSW played a significant role, working with co-lead counsel from

8  Glancy, Binkow & Murray, LLP, in preparing the Motion for Lead Counsel, the Opposition to the

9  Motion to Dismiss, the Preliminary Approval Motion, the Final Approval Motion, and the Motion

10 for Attorneys' Fees and Costs.  Further, we were required to expend time and resources in

11 preparation of numerous court appearances.  In total, PSW spent 597.10 hours working on

12 pleading, motion and court appearance related activities.

13         c.      *Discovery:*  Class Counsel engaged formal discovery in this action.  Further,

14 significant information was exchanged as part of the mediation process.  For example, Class

15 Counsel requested and reviewed scientific and technical Pepsi documentation in order to evaluate

16 the strengths and weaknesses of Plaintiffs' claims and determine the fairness of the Settlement.

17 Specifically, Class Counsel retained the services of experts to analyze and opine on Pepsi's

18 compliance with Proposition 65.  In total, PSW spent 16.00 hours working on discovery related

19 activities.

20         d.      *Settlement:*  From November 2015 until the Settlement Agreement was

21 finalized and executed in April 2016, I and the attorneys at my firm participated in extensive,

22 hard-fought negotiations with defense counsel.  The attorneys at PSW spent many hours

23 participating in meetings, telephone conversations, and correspondence with defense counsel

24 trying to craft a settlement that was simultaneously beneficial to the Class Members and fair to

25 Pepsi.  I attended an in-person mediation session, multiple smaller meet and confer sessions with

26 defense counsel, and numerous informal telephonic meetings with defense counsel and Judge

27 Sabraw.  Additionally, we consulted with our expert regarding the proposed settlement.  Virtually

28

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES,
EXPENSES AND INCENTIVE AWARD

every term of the Settlement was hard fought and separately negotiated.  Even after executing the Settlement in April 2016, PSW attorneys continued to work diligently on behalf of the Class.  In total, PSW spent 116.60 hours working on settlement related activities.

e.    *Case Management:*  Class Counsel conducted significant resources to ensure the case was handled efficiently and no duplicative work was performed.  I was able to build consensus among Plaintiffs' counsel regarding a leadership structure, save two law firms and served as the primary liaison with defense counsel.  This included preparing for case management and status conferences with the Court, coordinating efforts among Class Counsel to move the case toward resolution, and making sure that deadlines and tasks were handled in an efficient and economical manner.  Further, we engaged in Rule 26(f) meet and confers, attorney conferences and numerous communications and conferences with Plaintiff Mary Hall throughout the case.  In total, PSW spent 178.30 hours working on case management related activities.

23.    Below is a comprehensive breakdown of the number of hours and attorneys' fees expended by PSW on various tasks in this case:

| **Category** | **Hours** | **Lodestar** |
| --- | --- | --- |
| Pre-Filing Investigation | 38.50 | $  30,604.50 |
| Pleadings, Motions and Court Appearances | 597.10 | $389,565.00 |
| Discovery | 16.00 | $  10,604.50 |
| Settlement | 116.60 | $  82,924.50 |
| Case Management | 178.30 | $117,103.00 |
| **Total** | **946.50** | **$630,801.50** |

24.    Attached hereto as Exhibit "2" is a true and correct summary of the total hours billed on this case and the hourly rates for PSW through July 20, 2016 ("Summary Report").  The Summary Report indicates a lodestar of $630,801.50, reflecting a total of 946.50 hours.  This summary was prepared from contemporaneous time records reflecting the current rates of PSW attorneys and timekeepers.  All work reported by attorneys and timekeepers on behalf of the Class

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARD

Members was performed on a wholly contingent basis.  My firm declined additional legal work as a result of its representation of Plaintiffs and the Class.

25.     PSW billed this case at its usual and customary hourly billing rates, which have been approved by other courts presiding over similar complex class action lawsuits, including cases adjudicated in district courts in the Northern and Central Districts of California.  *See In re Warner Music Group Corp. Digital Downloads Litigation*, No. CV 12-0559 (N.D. Cal.); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 07-md-08127 (N.D. Cal.); *Delarosa v. Boiron*, No. SACV 10-1569 (C.D. Cal.).

26.     Attached hereto as Exhibit "3" is a true and correct copy of the Amended Order Granting Direct Purchaser Class Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards in *TFT-LCD*.  The Court in *TFT-LCD* approved the application of PSW for a 30% fee award representing over $120 million in attorneys' fees and approved the hourly rates of attorneys Daniel L. Warshaw, Bobby Pouya, and Alexander R. Safyan.  These hourly rates were set forth and attached to the Declaration of PSW partner Bruce L. Simon, a true and correct copy of which is attached in relevant part hereto as Exhibit "4".[5]

27.     Attached hereto as Exhibit "5" is a true and correct copy of the Order as Modified by the Court Granting Plaintiffs' Motion for Attorney Fees, Litigation Costs, and Incentive Awards in *In re: Warner Music*.  The Court in *In re: Warner Music* approved the application of PSW for a 25% fee award of $2,875,000 in attorneys' fees and approved the hourly rates of attorneys Daniel L. Warshaw, Bobby Pouya, and Alexander R. Safyan.  These hourly rates were set forth and attached to my Declaration, a true and correct copy of which is attached in relevant part hereto as Exhibit "6".[6]

28.     Attached hereto as Exhibit "7" is a true and correct copy of the Order Granting Plaintiffs' Motion for Attorney Fees, Costs, and Incentive Awards in *Colin Higgins Productions,*

---

[5] Unrelated exhibits have been removed from the Declaration of Bruce L. Simon.

[6] Unrelated exhibits have been removed from the Declaration of Daniel L. Warshaw.

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARD

1  *Ltd. v. Universal City Studios, LLC* (Los Angeles Superior Court Case No. BC499180), which is a

2  California state court action.  The Court in *Colin Higgins* approved the application of PSW for a

3  fee award of $4,333,333.33 in attorneys' fees—which represents a lodestar multiplier of 3.39—

4  and approved the hourly rates of attorneys Daniel L. Warshaw, Bobby Pouya, and Alexander R.

5  Safyan.  These hourly rates were set forth and attached to my Declaration, a true and correct copy

6  of which is attached in relevant part hereto as Exhibit "8".[7]

7          29.      Based on my experience and practice, I believe the hourly rates charged by PSW

8  are consistent with the rates charged in the San Francisco and Los Angeles legal community for

9  attorneys of similar caliber and experience.

10  **III.**    **THE EXPENSES INCURRED BY PSW**

11          30.      Attached hereto as Exhibit "9" is a true and correct summary of expenses incurred

12  by PSW during the course of this litigation.  The expenses pertaining to this case are reflected in

13  the books and records of my firm.  This expense summary was prepared based on expense

14  vouchers, check records and other documents and are an accurate record of the expenses.  Exhibit

15  "9" indicates a total of $21,374.02 in costs and expenses by PSW to date in connection with the

16  prosecution of this litigation.  The $21,374.02 in litigation costs accounts for filing fees,

17  photocopying, travel related expenses, deposition related expenses, purchasing samples of the

18  Covered Products, and mediation fees.  Note that the expenses and costs incurred by PSW are in

19  compliance with the Order Re Plaintiffs' Proposed Guidelines to Limit Costs and Expenses.  (Dkt.

20  Nos. 70 and 78.)

21          31.      I believe the litigation expenses incurred were reasonable and necessary given the

22  complex nature and scope of the case.

23  **IV.**    **THE INCENTIVE AWARD SOUGHT BY PLAINTIFF MARY HALL**

24          32.      The requested incentive award of $4,000 for Class Representative Mary Hall is

25  reasonable.  Throughout the course of this litigation, Ms. Hall expended considerable time and

26  _____

27  [7] Unrelated exhibits have been removed from the Declaration of Daniel L. Warshaw.

28

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES,
EXPENSES AND INCENTIVE AWARD

effort in assisting PSW in the adjudication of this class action lawsuit.  See, Declaration of Mary Hall filed concurrently herewith.  Ms. Hall reviewed many of the pleadings and participated in settlement negotiations and ultimately reviewed and approved the Settlement Agreement.  Ms. Hall remained involved and dedicated to this case throughout its duration.  Furthermore, Ms. Hall has willingly associated her name with a class action lawsuit against a well-known beverage company and had her name publicized in connection with this lawsuit.

33.     Based on my professional experience, and taking into consideration the risks of continued litigation as compared to the relief granted by the Settlement, I believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the Class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 21, 2016, at Sherman Oaks, California.


*/s/ Daniel L. Warshaw*
Daniel L. Warshaw

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARD

# EXHIBIT 1



**PEARSON | SIMON · WARSHAW** LLP

**LOS ANGELES OFFICE**
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA  91403
TEL  (818) 788-8300
FAX  (818) 788-8104
WWW.PSWLAW.COM

**SAN FRANCISCO OFFICE**
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA  94104
TEL  (415) 433-9000
FAX  (415) 433-9008
WWW.PSWLAW.COM

Pearson, Simon & Warshaw, LLP ("PSW") is an AV-rated civil litigation firm with offices in Los Angeles and San Francisco.  The firm specializes in complex litigation, including state coordination cases and federal multi-district litigation.  Its attorneys have extensive experience in antitrust, securities, consumer protection, and unlawful employment practices.  The firm handles national and multi-national class actions that present cutting edge issues in both substantive and procedural areas.  PSW attorneys understand how to litigate difficult and large cases in an efficient and cost-effective manner, and they have used these skills to obtain outstanding results for their clients, both through trial and negotiated settlement.  They are recognized in their field for excellence and integrity, and are committed to seeking justice for their clients.

### CASE PROFILES

PSW attorneys currently hold, or have held, a leadership role in the following representative cases:

- *In re Credit Default Swaps Antitrust Litigation*, Southern District of New York, MDL No. 2476.  PSW attorneys recently served as co-lead counsel and represented the Los Angeles County Employee Retirement Association ("LACERA") in a class action on behalf of all purchasers and sellers of Credit Default Swaps ("CDS") against twelve of the world's largest banks.  The lawsuit alleged that the banks, along with other defendants who controlled the market infrastructure for CDS trading, conspired for years to restrain the efficient trading of CDS, thereby inflating the cost to trade CDS. The alleged antitrust conspiracy resulted in billions of dollars in economic harm to institutional investors such as pension funds, mutual funds, and insurance companies who used CDS to hedge credit risks on their fixed income portfolios.  After nearly three years of litigation and many months of intensive settlement negotiations, PSW helped reach a settlement with the defendants totaling $1.86 *billion* plus injunctive relief.  On April 15, 2016, the Honorable Denise L. Cote granted final approval to the settlement, which is one of the largest civil antitrust settlements in history.

PEARSON, SIMON & WARSHAW, LLP

- *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Northern District of California, MDL No. 1827.  PSW served as co-lead counsel for the direct purchaser plaintiffs in this multidistrict litigation arising from the price-fixing of thin film transistor liquid crystal display ("TFT-LCD") panels.  Worldwide, the TFT-LCD industry is a multi-billion dollar industry, and many believe that this was one of the largest price-fixing cases in the United States.  PSW helped collect over $405 million in settlements before the case proceeded to trial against the last remaining defendant, Toshiba Corporation and its related entities.  PSW partner Bruce L. Simon served as co-lead trial counsel, successfully marshaled numerous witnesses, and presented the opening argument.  On July 3, 2012, PSW obtained a jury verdict of $87 million (before trebling) against Toshiba.  PSW later settled with Toshiba and AU Optronics to bring the total to $473 million in settlements.  In 2013, California Lawyer Magazine awarded Mr. Simon a California Lawyer of the Year Award for his work in the *TFT-LCD* case.

- *In re Potash Antitrust Litigation (No. II)*, Northern District of Illinois, MDL No. 1996.  PSW partner Bruce L. Simon served as interim co-lead counsel for the direct purchaser plaintiffs in this multidistrict litigation arising from the price-fixing of potash sold in the United States.  After the plaintiffs defeated a motion to dismiss, the defendants appealed, and the Seventh Circuit Court of Appeals agreed to hear the case *en banc*.  Mr. Simon presented oral argument to the *en banc* panel and achieved a unanimous 8-0 decision in his favor.  The case resulted in $90 million in settlements for the direct purchaser plaintiffs, and the Court's opinion is one of the most significant regarding the scope of international antitrust conspiracies.  *See Minn-Chem, Inc. v. Agrium Inc.*, 683 F. 3d 845 (7th Cir. 2012).

- *In re Lithium Ion Batteries Antitrust Litigation,* Northern District of California, MDL No. 2420.  PSW attorneys serve as interim co-lead counsel for the direct purchaser plaintiffs and represent the Liquidating Trustee for the Circuit City Stores, Inc. Liquidating Trust in this multidistrict class action litigation arising from the price-fixing of lithium ion batteries.  The case involves allegations of collusive activity by a cartel made up of the world's largest manufacturers of lithium ion batteries, which are used in everything from cellular phones to cameras, laptops, and tablet computers.  PSW filed one of the earliest cases on behalf of the direct purchasers and successfully argued before the Joint Panel on Multidistrict Litigation for consolidation of the cases in the Northern District of California.  PSW, along with its co-counsel, organized a leadership structure of three firms, winning appointment by Judge Gonzalez Rogers as co-lead counsel for the putative class of direct purchasers on May 17, 2013.

PEARSON, SIMON & WARSHAW, LLP

- *In re Keurig Green Mountain Single-Serving Coffee Antitrust Litigation*, Southern District of New York, MDL No. 2542.  In June 2014, Judge Vernon S. Broderick appointed PSW to serve as interim co-lead counsel on behalf of indirect purchaser plaintiffs in this multidistrict class action litigation.  The case arises from the alleged unlawful monopolization of the United States market for single-serve coffee packs by Keurig Green Mountain, Inc.  Keurig's alleged anticompetitive conduct includes acquiring competitors, entering into exclusionary agreements with suppliers and distributors to prevent competitors from entering the market, engaging in sham patent infringement litigation, and redesigning the single-serve coffee pack products in the next version of its brewing system to lock out competitors' products.

- *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation*, Northern District of California, MDL No. 2451.  PSW attorneys currently serve as interim co-lead counsel in this multidistrict litigation that alleges the NCAA and its member conferences violate the antitrust laws by capping the value of grant-in-aid athletic scholarships at far below the actual cost of attending school, and far below what the free market would bear.

- *Senne, et al. v. Office of the Commissioner of Baseball, et al.*, Northern District of California, Case No. 14-cv-0608.  PSW attorneys currently serve as interim co-lead counsel in this putative nationwide class action and FLSA collective action on behalf of minor league baseball players who allege that Major League Baseball and its member franchises violate the FLSA and state wage and hour laws by failing to pay minor league baseball players minimum wage and overtime.

- *In re KIND LLC "Healthy and All Natural" Litigation*, Southern District of New York, MDL No. 2645.  PSW partner Daniel L. Warshaw currently serves as interim co-lead counsel in this putative nationwide class action on behalf of consumers who allege that they purchased KIND snack bars that were falsely advertised as "all natural," "non-GMO," and/or "healthy."

- *In re Carrier IQ Consumer Privacy Litigation*, Northern District of California, MDL No. 2330.  PSW attorneys currently serve as interim co-lead counsel in this putative nationwide class action on behalf of consumers who allege privacy violations arising from software installed on their mobile devices that was logging text messages and other sensitive information.

- *Sciortino, et al. v. PepsiCo, Inc.*, Northern District of California, Case No. 14-cv-0478.  PSW attorneys currently serve as interim co-lead counsel in this putative California class action on behalf of consumers who allege that PepsiCo failed to warn them that certain of its sodas contain excess levels of a chemical called 4-

PEARSON, SIMON & WARSHAW, LLP

Methylimidazole in violation of Proposition 65 and California consumer protection statutes.

- *James v. UMG Recordings, Inc.*, Northern District of California, Case No. 11-cv-01613. PSW partner Daniel L. Warshaw served as interim co-lead counsel in this putative nationwide class action on behalf of recording artists and music producers who alleged that they had been systematically underpaid royalties by the record company UMG.

- *In re Warner Music Group Corp. Digital Downloads Litigation*, Northern District of California, Case No. 12-cv-00559. PSW attorneys served as interim co-lead counsel, with partner Bruce L. Simon serving as chairman of a five-firm executive committee, in this putative nationwide class action on behalf of recording artists and music producers who alleged that they had been systematically underpaid royalties by the record company Warner Music Group.

- *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation,* Northern District of California, MDL No. 1486. PSW partner Bruce L. Simon served as co-chair of discovery and as a member of the trial preparation team in this multidistrict litigation arising from the price-fixing of DRAM, a form of computer memory. Mr. Simon was responsible for supervising and coordinating the review of almost a terabyte of electronic documents, setting and taking depositions, establishing and implementing protocols for cooperation between the direct and indirect plaintiffs as well as the Department of Justice, presenting oral arguments on discovery matters, working with defendants on evidentiary issues in preparation for trial, and preparation of a comprehensive pretrial statement. Shortly before the scheduled trial, class counsel reached settlements with the last remaining defendants, bringing the total value of the class settlements to over $325 million.

- *In re Methionine Antitrust Litigation*, Northern District of California, MDL No. 1311. PSW partner Bruce L. Simon served as co-lead counsel in this nationwide antitrust class action involving a conspiracy to fix prices of, and allocate the markets for, methionine. Mr. Simon was personally responsible for many of the discovery aspects of the case including electronic document productions, coordination of document review teams, and depositions. Mr. Simon argued pretrial motions, prepared experts, and assisted in the preparation of most pleadings presented to the Court. This action resulted in over $100 million in settlement recovery for the Class.

- *In re Sodium Gluconate Antitrust Litigation*, Northern District of California, MDL No. 1226. PSW partner Bruce L. Simon served as class counsel in this consolidated antitrust class action arising from the price-fixing of sodium gluconate. Mr. Simon

PEARSON, SIMON & WARSHAW, LLP

was selected by Judge Claudia Wilken to serve as lead counsel amongst many other candidates for that position, and successfully led the case to class certification and settlement.

- *In re Citric Acid Antitrust Litigation*, Northern District of California, MDL No. 1092. PSW partner Bruce L. Simon served as class counsel in antitrust class actions against Archer-Daniels Midland Co. and others for their conspiracy to fix the prices of citric acid, a food additive product.  Mr. Simon was one of the principal attorneys involved in discovery in this matter.  This proceeding resulted in over $80 million settlements for the direct purchasers.

- *Olson v. Volkswagen of America, Inc.*, Central District of California, Case No. CV07-05334.  PSW attorneys brought this class action lawsuit against Volkswagen alleging that the service manual incorrectly stated the inspection and replacement intervals for timing belts on Audi and Volkswagen branded vehicles equipped with a 1.8 liter turbo-charged engine.  This case resulted in a nationwide class settlement.

- *Swain et al. v. Eel River Sawmills, Inc. et al.*, California Superior Court, DR-01-0216. George S. Trevor and Bruce L. Simon served as lead trial counsel for a class of former employees of a timber company whose retirement plan was lost through management's investment of plan assets in an Employee Stock Ownership Plan.  Mr. Trevor and Mr. Simon negotiated a substantial settlement on the eve of trial resulting in a recovery of approximately 40% to 50% of plaintiffs' damages after attorneys' fees and costs.

- *In re Digital Microwave Securities Litigation*, Northern District of California, C-90-20241. George S. Trevor was one of the principal attorneys for a plaintiff class alleging fraud in the financial reporting of a public company.  Defendants included the accounting firm Arthur Andersen.  Mr. Trevor negotiated a settlement of nearly $20 million, despite the absence of any director's and officer's liability insurance.

- *In re Hawaiian and Guamanian Cabotage Antitrust Litigation,* Western District of Washington, MDL No. 1972.  PSW partner Bruce L. Simon served as interim co-lead counsel for the plaintiffs in this multidistrict litigation arising from violations of the federal antitrust laws with respect to domestic ocean shipping services between the continental United States and Hawaii and/or between the continental United States and the Territory of Guam.

PEARSON, SIMON & WARSHAW, LLP

- *In re Homestore Litigation*, Central District of California, Master File No. 01-11115. PSW attorneys served as liaison counsel and class counsel for plaintiff CalSTRS in this securities class action. The case resulted in over $100 million in settlements to the Class.

- *In re MP3.Com, Inc., Securities Litigation*, Southern District of California, Master File No. 00-CV-1873. PSW attorneys served as defense counsel in this class action involving alleged securities violations under Rule 10b-5.

- *In re Ivan F. Boesky Securities Litigation*, Southern District of New York, MDL No. 732. George S. Trevor, while at the firm of Gold & Bennett, was one of the principal attorneys representing a class of former shareholders of the Pacific Lumber Company. The case was consolidated with numerous other shareholder class actions before the Honorable Milton Pollack. Mr. Trevor personally took numerous depositions and examined Michael Milken pursuant to Mr. Milken's settlement agreement with the Pacific Lumber class. He was also part of the trial team in New York when the case settled the evening before trial. The resulting settlement of $144 million was estimated to be the fourth largest securities litigation settlement at the time.

- *In re Automotive Refinishing Paint Cases*, Alameda County Superior Court, Judicial Council Coordination Proceeding No. 4199. PSW attorneys served as class counsel with other law firms in this coordinated antitrust class action alleging a conspiracy by defendants to fix the price of automotive refinishing products.

- *In re Beer Antitrust Litigation*, Northern District of California, Case No. 97-20644 SW. PSW partner Bruce L. Simon served as primary counsel in this antitrust class action brought on behalf of independent micro-breweries against Anheuser-Busch, Inc., for its attempt to monopolize the beer industry in the United States by denying access to distribution channels.

- *In re Commercial Tissue Products Public Entity Indirect Purchaser Antitrust Litigation*, San Francisco Superior Court, Judicial Counsel Coordination Proceeding No. 4027. PSW partner Bruce L. Simon served as co-lead counsel for the public entity purchaser class in this antitrust action arising from the price-fixing of commercial sanitary paper products.

- *Hart v. Central Sprinkler Corporation*, Los Angeles County Superior Court, Case No. BC176727. PSW attorneys served as class counsel in this consumer class action

PEARSON, SIMON & WARSHAW, LLP

arising from the sale of nine million defective fire sprinkler heads.  This case resulted in a nationwide class settlement valued at approximately $37.5 million.

- *Rueda v. Schlumberger Resources Management Services, Inc*., Los Angeles County Superior Court, Case No. BC235471.  PSW attorneys served as class counsel with other law firms representing customers of the Los Angeles Department of Water & Power ("LADWP") who had lead leaching water meters installed on their properties. The Court granted final approval of the settlement whereby defendant would pay $1.5 million to a *cy pre*s fund to benefit the Class and to make grants to LADWP to assist in implementing a replacement program to the effected water meters.

- *In re Louisiana-Pacific Corp. Inner-Seal OSB Trade Practices Litigation,* Northern District of California, MDL No. 1114.  PSW partner Bruce L. Simon worked on this nationwide product defect class action brought under the Lanham Act.  The proposed class was certified, and a class settlement was finally approved by Chief Judge Vaughn Walker.

- *In re iPod nano Cases*, Los Angeles County Superior Court, Judicial Counsel Coordination Proceeding No. 4469.  PSW attorneys were appointed co-lead counsel for this class action brought on behalf of California consumers who own defective iPod nanos.  The case resulted in a favorable settlement.

- *Unity Entertainment Corp. v. MP3.Com*, Central District of California, Case No. 00-11868.  PSW attorneys served as defense counsel in this class action alleging copyright infringement.

- *Vallier v. Jet Propulsion Laboratory*, Central District of California, Case No. CV97-1171.  PSW attorneys served as lead counsel in this toxic tort action involving 50 cancer victims and their families.

- *Nguyen v. First USA N.A.,* Los Angeles County Superior Court, Case No. BC222846. PSW attorneys served as class counsel on behalf of approximately four million First USA credit card holders whose information was sold to third party vendors without their consent.  This case ultimately settled for an extremely valuable permanent injunction plus disgorgement of profits to worthy charities.

- *Morales v. Associates First Financial Capital Corporation*, San Francisco Superior Court, Judicial Council Coordination Proceeding No. 4197.  PSW attorneys served as class counsel in this case arising from the wrongful sale of credit insurance in

PEARSON, SIMON & WARSHAW, LLP

connection with personal and real estate-secured loans.  This case resulted in an extraordinary $240 million recovery for the Class.

- *In re AEFA Overtime Cases*, Los Angeles County Superior Court, Judicial Council Coordination Proceeding No. 4321.  PSW attorneys served as class counsel in this overtime class action on behalf of American Express Financial Advisors, which resulted in an outstanding classwide settlement.

- *Khan v. Denny's Holdings, Inc*., Los Angeles County Superior Court, Case No. BC177254.  PSW attorneys settled a class action lawsuit against Denny's for non-payment of overtime wages to its managers and general managers.

- *Kosnik v. Carrows Restaurants, Inc*., Los Angeles County Superior Court, Case No. BC219809.  PSW attorneys settled a class action lawsuit against Carrows Restaurants for non-payment of overtime wages to its assistant managers and managers.

- *Castillo v. Pizza Hut, Inc.,* Los Angeles County Superior Court, Case No. BC318765.  PSW attorneys served as lead class counsel in this California class action brought by delivery drivers who claimed they were not adequately compensated for use of their personally owned vehicles.  This case resulted in a statewide class settlement.

- *Baker v. Charles Schwab & Co., Inc.,* Los Angeles County Superior Court, Case No. BC286131.  PSW attorneys served as class counsel for investors who were charged a fee for transferring out assets between June 1, 2002 and May 31, 2003.  This case resulted in a nationwide class settlement.

- *Eallonardo v. Metro-Goldwyn-Mayer, Inc.,* Los Angeles County Superior Court, Case No. BC286950.  PSW attorneys served as class counsel on behalf a nationwide class of consumers who purchased DVDs manufactured by defendants.  Plaintiffs alleged that defendants engaged in false and misleading advertising relating to the sale of its DVDs.  This case resulted in a nationwide class settlement.

- *Gaeta v. Centinela Feed, Inc.,* Los Angeles County Superior Court, Case No. BC342524.  PSW attorneys served as defense counsel in this class action involving alleged failures to pay wages, overtime, employee expenses, waiting time penalties, and failure to provide meal and rest periods and to furnish timely and accurate wage statements.

PEARSON, SIMON & WARSHAW, LLP

- *Leiber v. Consumer Empowerment Bv A/K/A Fasttrack,* Central District of California, Case No. CV 01-09923.  PSW attorneys served as defense counsel in this class action involving copyrighted music that was made available through a computer file sharing service without the publishers' permission.

- *Higgs v. SUSA California, Inc.,* Los Angeles County Superior Court Case No. BC372745.  PSW attorneys are serving as co-lead class counsel representing California consumers who entered into rental agreements for the use of self-storage facilities owned by defendants.  In this certified class action, plaintiffs allege that defendants wrongfully denied access to the self-storage facility and/or charged excessive pre-foreclosure fees.

- *Fournier v. Lockheed Litigation*, Los Angeles County Superior Court.  PSW attorneys served as counsel for 1,350 residents living at or near the Skunks-Works Facility in Burbank.  The case resolved with a substantial confidential settlement for plaintiffs.

- *Nasseri v. CytoSport, Inc.,* Los Angeles County Superior Court, Case No. 439181.  PSW attorneys are serving as class counsel on behalf of a nationwide class of consumers who purchase CytoSport's popular protein powders, ready to drink protein beverages, and other "supplement" products.  Plaintiffs allege that these supplements contain excessive amounts of lead, cadmium and arsenic in amounts that exceed Proposition 65 and negate CytoSport's health claims regarding the products.

PEARSON, SIMON & WARSHAW, LLP

# ATTORNEY PROFILES

## PARTNERS

### CLIFFORD H. PEARSON

Clifford H. Pearson is a civil litigator and business lawyer focusing on complex litigation, class actions, and business law.  In 2013, Mr. Pearson was named by the *Daily Journal* as one of the Top 100 lawyers in California.  He was instrumental in negotiating settlements that totaled $473 million in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, an antitrust case in the Northern District of California that alleged a decade-long conspiracy to fix the prices of TFT-LCD panels, and over $90 million in *In re Potash Antitrust Litigation*, an antitrust case in the Northern District of Illinois that alleged price fixing by Russian, Belarusian and North American producers of potash, a main ingredient used in fertilizer.

Before creating the firm in 2006, Mr. Pearson was a partner at one of the largest firms in the San Fernando Valley, where he worked for 22 years.  There, he represented aggrieved individuals, investors and employees in a wide variety of contexts, including toxic torts, consumer protection and wage and hour cases.  Over his 30-plus year career, Mr. Pearson has successfully negotiated substantial settlements on behalf of consumers, small businesses and companies.  In recognition of his outstanding work on behalf of clients, Mr. Pearson has been regularly selected by his peers as a Super Lawyer (representing the top 5% of practicing lawyers in Southern California).  He has also attained Martindale-Hubbell's highest rating (AV) for legal ability and ethical standards.

Mr. Pearson is an active member of the American Bar Association, Canadian Bar Association, Los Angeles County Bar Association, Consumer Attorneys of California, Consumer Attorneys Association of Los Angeles, Association of Business Trial Lawyers and a Practitioner of Foreign Law in British Columbia, Canada.

**Current Cases:**
- *In re Lithium Ion Batteries Antitrust Litigation* (N.D. Cal.)
- *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation* (N.D. Cal.)

**Education:**
- Whittier Law School, Los Angeles, California – J.D. – 1981
- University of Miami, Miami, Florida – M.B.A. – 1978
- Carleton University, Ontario, Canada – B.A. – 1976

PEARSON, SIMON & WARSHAW, LLP

**Bar Admissions:**
- California
- Ninth Circuit Court of Appeals
- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California

**Professional Associations and Memberships:**
- American Bar Association
- Association of Business Trial Lawyers
- Canadian Bar Association
- Consumer Attorneys Association of Los Angeles
- Consumer Attorneys of California
- Los Angeles County Bar Association

## BRUCE L. SIMON

Bruce L. Simon has led Pearson, Simon & Warshaw, LLP to national prominence. Mr. Simon specializes in complex cases involving antitrust, consumer fraud, and securities laws. He has served as lead counsel in many business cases with national and global impact.

In 2013, Mr. Simon was chosen by the *Daily Journal* as one of the Top 100 attorneys in California. He received the California Lawyer of the Year award from *California Lawyer Magazine* and was selected as one of seven finalists for Consumer Attorney of the Year by Consumer Attorneys of California for his work in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.). That year, Mr. Simon was included in the Top 100 of California's "Super Lawyers" and has been named a "Super Lawyer" every year since 2003. He has attained Martindale-Hubbell's highest rating (AV) for legal ability and ethical standards.

Mr. Simon was co-lead class counsel in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, a case that lasted over five years and resulted in $473 million recovered for the direct purchaser plaintiffs. Mr. Simon served as co-lead trial counsel and was instrumental in obtaining an $87 million jury verdict (before trebling). He presented the opening argument and marshalled numerous witnesses during the six-week trial.

More recently, Mr. Simon was co-lead class counsel in *In re Credit Default Swaps Antitrust Litigation*, a case alleging a conspiracy among the world's largest banks to maintain opacity of the credit default swaps market as a means of maintaining supracompetitive prices of bid/ask spreads. After three years of litigation and many months of intensive settlement negotiations, the parties in *CDS* reached a landmark settlement amounting to $1.86 billion. It is one of the largest civil antitrust settlements in history.

Mr. Simon was also co-lead class counsel in *In re Potash Antitrust Litigation (II)*, MDL No. 1996 (N.D. Ill.), where he successfully argued an appeal of the district court's order denying

Pᴇᴀʀsᴏɴ, Sɪᴍᴏɴ & Wᴀʀsʜᴀᴡ, LLP

the defendants' motions to dismiss to the United States Court of Appeals for the Seventh Circuit. Mr. Simon presented oral argument during an *en banc* hearing before the Court and achieved a unanimous 8-0 decision in his favor. The case resulted in $90 million in settlements for the direct purchaser plaintiffs, and the Court's opinion is one of the most significant regarding the scope of international antitrust conspiracies.

**Current Cases**:

- *In re Keurig Green Mountain Single-Serving Coffee Antitrust Litigation* (S.D.N.Y.)
- *In re Lithium Ion Batteries Antitrust Litigation* (N.D. Cal.)
- *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation* (N.D. Cal.)
- *Senne, et al. v. Office of the Commissioner of Baseball, et al.* (N.D. Cal.)

**Reported Cases**:
- *Minn-Chem, Inc. et al. v. Agrium Inc., et al.*, 683 F.3d 845 (7th Cir. 2012)

**Education:**
- University of California, Hastings College of the Law, San Francisco, California – J.D. – 1980
- University of California, Berkeley, California – A.B. – 1977

**Bar Admissions:**
- California
- Supreme Court of the United States
- Ninth Circuit Court of Appeals
- Seventh Circuit Court of Appeals
- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California

**Recent Publications:**
- Class Certification Procedure, Ch. V, ABA Antitrust Class Actions Handbook (3d ed.), with Alexander R. Safyan (forthcoming)
- Reverse Engineering Your Antitrust Case: Plan for Trial Even Before You File Your Case, Antitrust, Vol. 28, No. 2, Spring 2014
- *The Ownership/Control Exception to Illinois Brick in Hi-Tech Component Cases: A Rule That Recognizes the Realities of Corporate Price Fixing*, ABA International Cartel Workshop February 2014, with Aaron M. Sheanin
- *Matthew Bender Practice Guide: California Unfair Competition and Business Torts*, LexisNexis, with Justice Conrad L. Rushing and Judge Elia Weinbach (Updated 2013)

PEARSON, SIMON & WARSHAW, LLP

- *The Questionable Use of Rule 11 Motions to Limit Discovery and Eliminate Allegations in Civil Antitrust Complaints in the United States*, ABA International Cartel Workshop February 2012, with Aaron M. Sheanin

**Professional Associations and Memberships:**
- California State Bar Antitrust and Unfair Competition Section, Advisor and Past Chair
- ABA Global Private Litigation Committee, Co-Chair
- ABA International Cartel Workshop, Steering Committee
- American Association for Justice, Business Torts Section, Past Chair
- Business Torts Section of the American Trial Lawyers Association, Past Chair
- Hastings College of the Law, Board of Directors (2003-2015), Past Chair (2009-2011)

# DANIEL L. WARSHAW

Daniel L. Warshaw is a civil litigator and trial lawyer who focuses on complex litigation, class actions, and consumer protection.  Mr. Warshaw has held a lead role in numerous state and federal class actions, and obtained significant recoveries for class members in many cases. These cases have included, among other things, antitrust violations, high-technology products, automotive parts and false and misleading advertising.  Mr. Warshaw has also represented employees and employers in a variety of class actions, including wage and hour, misclassification and other Labor Code violations.

Mr. Warshaw played an integral role in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, where he negotiated the ESI protocol and managed a document review process that featured nearly 8 million documents in multiple languages and 136 reviewers.  He currently serves as interim co-lead counsel in a series of groundbreaking class actions involving the alleged underpayment of royalties to artists, producers and directors in the music and film industries. These cases have received significant attention in the press, and Mr. Warshaw has been profiled by the *Daily Journal* for his work in the digital download music cases.  In recognition of his outstanding work, Mr. Warshaw has been selected by his peers as a Super Lawyer (representing the top 5% of practicing lawyers in Southern California) every year since 2005.  He has also attained Martindale-Hubbell's highest rating (AV) for legal ability and ethical standards.

Mr. Warshaw has assisted in the preparation of two Rutter Group practice guides: *Federal Civil Trials & Evidence* and *Civil Claims and Defenses*.  Since 2012, Mr. Warshaw has served as the Chair of the Plaintiffs' Class Action Forum sponsored by Cambridge International Forums, Inc.  The purpose of the Forum is to facilitate a high-level exchange of ideas and in-depth dialogue on class action litigation.

**Current Cases:**
- *In re KIND LLC "Healthy and All Natural" Litigation* (S.D.N.Y.)
- *In re Carrier IQ, Inc., Consumer Privacy Litigation* (N.D. Cal.)
- *Higgins v. Paramount Pictures Corp.* (and related cases) (LA Sup. Ct.)
- *Sciortino, et al. v. PepsiCo, Inc.* (N.D. Cal.)

PEARSON, SIMON & WARSHAW, LLP

**Education:**
- Whittier Law School, Los Angeles, California – J.D. – 1996
- University of Southern California – B.A. – 1992

**Bar Admissions:**
- California
- Ninth Circuit Court of Appeals
- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California

**Professional Associations and Memberships:**
- American Bar Association
- Association of Business Trial Lawyers
- Consumer Attorneys Association of Los Angeles
- Consumer Attorneys of California
- Los Angeles County Bar Association, Executive Committee of the Litigation Section
- Plaintiffs' Class Action Forum, Chair

PEARSON, SIMON & WARSHAW, LLP

## SENIOR COUNSEL

### GEORGE S. TREVOR

George S. Trevor has focused his practice for the past 26 years representing investors in securities class actions, securities arbitrations, and complex business litigation.  Since joining Pearson, Simon & Warshaw, LLP in 2009 as Senior Counsel, Mr. Trevor has been the senior attorney on a number of the firm's important cases.  Those include *In re Credit Default Swaps Antitrust Litigation*, where the firm helped secure a historic $1.86 billion settlement on behalf of purchasers and sellers of CDS, and *In re Lehman Securities and ERISA Litigation*, where the firm represented California public entities that purchased Lehman securities prior to its bankruptcy.

Mr. Trevor also represents bankruptcy trustees as special litigation counsel against former directors, professionals and financial institutions, and recently obtained a substantial settlement on behalf of an investor plaintiff class against a national bank alleged to have aided and abetted a Ponzi scheme.

Prior to joining Pearson, Simon & Warshaw, LLP, Mr. Trevor was managing partner of Trevor & Weixel LLP.  Mr. Trevor's significant cases at Trevor & Weixel included a class action brought on behalf of former employees of Eel River Sawmills.  Mr. Trevor was instrumental in obtaining a $5 million settlement for a class of approximately 400 workers who had lost significant amounts promised to them under the company's Employee Stock Ownership Plan.  Mr. Trevor was lead trial counsel in a multi-claimant securities arbitration against a brokerage firm tried in New Orleans in 2007-2008.  Following twenty days of hearing and immediately prior to the panel's decision, Mr. Trevor negotiated substantial settlements on behalf of all claimants.

Mr. Trevor also practiced for 11 years at Gold & Bennett.  Among his cases there was a class action brought on behalf of the former shareholders of the Pacific Lumber Company.  In 1985, Charles Hurwitz launched a hostile takeover of Pacific Lumber.  Mr. Hurwitz, assisted by Michael Milken and Ivan Boesky, succeeded in forcing a shareholder buyout at $40 per share.  The class action complaint alleged that the buyout was obtained through the dissemination of fraudulent offering materials to shareholders.  On the eve of trial, Mr. Hurwitz agreed to a $52 million settlement.  Combined with other settlements, the Pacific Lumber shareholders received over $140 million in additional compensation for their shares, one of the largest recoveries in securities litigation at the time.  Mr. Trevor was also instrumental in the recovery of $19.2 million by the shareholders of Digital Microwave Corporation.  Mr. Trevor has litigated cases against hedge funds, real estate limited partnerships, software and hardware companies, alternative energy companies and accounting firms, among others.

PEARSON, SIMON & WARSHAW, LLP

**Current Cases**:
- *In re CytRx Corporation Securities Litigation* (and related cases) (C.D. Cal.)
- *L.A. Taxi Cooperative, Inc., et al. v. Uber Technologies, Inc., et al.* (N.D. Cal.)

**Education:**
- University of California, Hastings College of the Law, San Francisco, California – J.D. – 1986
- University of California, Berkeley, California – A.B. – 1980  (Phi Beta Kappa, High Honors in Rhetoric and Distinction in General Scholarship).

**Bar Admissions**
- California
- Ninth Circuit Court of Appeals
- U.S. District Court, Central District of California
- U.S. District Court, Northern District of California
- U.S. District Court, District of Arizona

**Reported Cases**
- *Musick Peeler & Garrett v. Wausau Ins.*, 508 U.S. 286 (1993)
- *Lippitt v. Raymond James*, 340 F.3d 1033 (9th Cir. 2003)
- *Daniels v. Centennial Group*, 16 Cal.App.4th 467 (Cal. Ct. App. 1993)
- *Boston Telecommunications v. Deloitte Touche*, 278 F. Supp 2d 1041 (N.D. Cal. 2003)
- *In re Silicon Graphics*, 970 F.Supp 746 (N.D. Cal. 1997)
- *Lilley v. Charren*, 936 F.Supp 708 (N.D. Cal. 1996)
- *In re Digital Microwave Corp. Securities Litigation*, 1992 U.S. Dist. LEXIS 18469 (N.D. Cal. 1992)
- *In re Adobe Systems, Inc. Securities Litigation*, 767 F. Supp. 1023 (N.D. Cal. 1991)

**Professional Associations and Memberships**
- American Bar Association, Member, 1992 – present
- Committee of Business and Corporate Litigation
- Public Investors Bar Association, Member, 2000 – present

PEARSON, SIMON & WARSHAW, LLP

## OF COUNSEL

### AARON M. SHEANIN

Aaron M. Sheanin, Of Counsel to Pearson, Simon & Warshaw, LLP, has extensive experience in complex litigation matters in federal and state courts, including the prosecution of antitrust and consumer class actions.  He has litigated numerous securities fraud and corporate governance cases on behalf of individual and institutional investors, and has advised state pension funds and private institutions with respect to securities and antitrust matters.  Mr. Sheanin also has experience litigating telecommunications, employment discrimination, defective product, and bankruptcy matters.

Mr. Sheanin is responsible for leading the Direct Purchaser Plaintiff class action in *In re Lithium Ion Batteries Antitrust Litigation*.  He was actively involved in all aspects of *In re TFT-LCD (Flat Panel) Antitrust Litigation*, and was an integral member of the trial team.  For his work on that case, Mr. Sheanin was nominated by the Consumer Attorneys of California as a finalist for Consumer Attorney of the Year.  Mr. Sheanin served as co-lead counsel in *In re American Express Financial Advisors Securities Litigation* ($100 million settlement), as co-lead counsel on behalf of lead plaintiff the Kansas Public Employees' Retirement System in the securities class action *Scheiner v. i2 Technologies* ($84.85 million in settlements), and as co-chair of the discovery committee in *In re Natural Gas Antitrust Cases* ($160 million in settlements).

From 2002 to 2011, Mr. Sheanin gained extensive experience prosecuting class actions and other complex cases as an associate and a partner with Girard Gibbs LLP and as an associate with Lieff, Cabraser, Heimann & Bernstein, LLP.  From 1999 to 2001, Mr. Sheanin was a *pro se* law clerk for the United States Court of Appeals for the Second Circuit.

**Current Cases:**
- *In re Lithium Ion Batteries Antitrust Litigation* (N.D. Cal.)
- *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation* (N.D. Cal.)
- *In re Optical Disc Drive Products Antitrust Litigation* (N.D. Cal.)

**Education:**
- Columbia University School of Law, New York, New York – J.D. – 1999
- University of California, Berkeley, Berkeley, California – A.B. – 1993

**Bar Admissions:**
- California
- New York
- New Jersey
- Ninth Circuit Court of Appeals
- Second Circuit Court of Appeals
- U.S. District Court, Central District of California

Pearson, Simon & Warshaw, LLP

- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California
- U.S. District Court, District of Colorado

**Publications and Presentations:**
- *Appellate Courts Grapple with the Foreign Trade Antitrust Improvements Act*, Competition: The Journal of the Antitrust and Unfair Competition Law Section of the State Bar of California, Vol. 23, No. 2 (Fall 2014), with Craig C. Corbitt.
- *The Ownership/Control Exception to Illinois Brick in Hi-Tech Component Cases:  A Rule That Recognizes the Realities of Corporate Price Fixing*, ABA International Cartel Workshop February 2014, with Bruce L. Simon
- *The Questionable Use of Rule 11 Motions to Limit Discovery and Eliminate Allegations in Civil Antitrust Complaints in the United States*, ABA International Cartel Workshop February 2012, with Bruce L. Simon
- American Bar Association, Task Force on Contingent Fees (Tort Trial and Insurance Practice Section)
- "California Class Actions Practice and Procedure" (Matthew Bender, 1st Ed. 2003), contributing author

**Professional Associations and Memberships:**
- California State Bar Antitrust and Unfair Competition Section, Executive Committee
- Antitrust Section of the San Francisco Bar Association, Executive Committee
- American Bar Association
- New York Bar Association

PEARSON, SIMON & WARSHAW, LLP

# ASSOCIATES

## BOBBY POUYA

Bobby Pouya is a civil litigator and trial lawyer in the firm's Los Angeles office, focusing on complex litigation, class actions, and consumer protection.  Mr. Pouya has been an attorney with Pearson, Simon & Warshaw since 2006, and has extensive experience in representing clients in a variety of contexts.  He has served as a primary member of the litigation team in multiple cases that resulted in class certification or a classwide settlement, including cases that involved high-technology products, consumer safety and false and misleading advertising.  Mr. Pouya's success has earned him recognition by his peers as a Super Lawyers Rising Star (representing the top 2.5% of lawyers in Southern California age 40 or younger or in practice for 10 years or less) every year since 2008.

Mr. Pouya has served as one of the attorneys representing direct purchaser plaintiffs in several MDL antitrust cases, including *In re Polyurethane Foam Antitrust Litigation* (N.D. Ohio) and *In re Fresh and Processed Potatoes Antitrust Litigation* (D. Idaho).  Mr. Pouya is actively involved in the prosecution of *Senne, et al. v. Office of the Commissioner of Baseball, et al.* (N.D. Cal.), and works closely with lead counsel on all aspects of litigation strategy.  Mr. Pouya earned his Juris Doctorate from Pepperdine University School of Law in 2006, where he received a certificate in dispute resolution from the prestigious Straus Institute for Dispute Resolution and participated on the interschool trial and mediation advocacy teams, the Dispute Resolution Law Journal and the Moot Court Board.

**Current Cases:**
- *Senne, et al. v. Office of the Commissioner of Baseball, et al.* (N.D. Cal.)
- *Higgins v. Paramount Pictures Corp.* (and related cases) (L.A. Sup. Ct.)
- *Sciortino, et al. v. PepsiCo, Inc.* (N.D. Cal.)

**Education:**
- Pepperdine University School of Law, Malibu, California – J.D. – 2006
- University of California, Santa Barbara, California – B.A., with honors – 2003

**Recent Publications:**
- *Should Offers Moot Claims?*, Daily Journal, Oct. 10, 2014, with Alexander R. Safyan
- *Central District Local Rules Hinder Class Certification*, Daily Journal, April 9, 2013, with Alexander R. Safyan

**Bar Admissions:**
- California
- Ninth Circuit Court of Appeals
- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California

Pearson, Simon & Warshaw, LLP

- U.S. District Court, Southern District of California

**Professional Associations and Memberships:**
- Consumer Attorneys Association of Los Angeles
- Consumer Attorneys of California
- Los Angeles County Bar Association
- San Fernando Valley Bar Association

## Veronica W. Glaze

Veronica W. Glaze is an associate in the firm's Los Angeles office, focusing on antitrust, consumer, and business litigation. Ms. Glaze was a member of the trial team in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, and was actively involved in representing the direct purchaser plaintiffs at all stages of the case. In 2013, Ms. Glaze was recognized by Consumer Attorneys of California as a finalist for its "Consumer Attorney of the Year" award for her work in the case. Ms. Glaze also worked on key aspects of the direct purchaser plaintiffs' case in *In re Potash Antitrust Litigation (II)*, an MDL antitrust case that alleged price fixing by Russian, Belarusian and North American producers of potash. While at Pearson, Simon, & Warshaw, Ms. Glaze has become particularly adept at managing the electronic review of documents at all stages of litigation. She has also gained extensive experience managing the review of foreign language documents and resolving discovery issues concerning the use of translations throughout the litigation process.

Ms. Glaze matriculated at Pomona College in Claremont, California and received her Bachelor of Arts in English Literature, with minors in Black Studies and Politics. She earned her Juris Doctorate in 2008 from Pepperdine University School of Law. While in law school, Mrs. Glaze was a member of Pepperdine's Moot Court Board and worked as a research assistant to Professor Carol A. Chase. Ms. Glaze is also a former law clerk for the Legal Aid Foundation of Los Angeles.

**Current Cases**:
- *In re Lithium Ion Batteries Antitrust Litigation* (N.D. Cal.)
- *In re Cathode Ray Tube (CRT) Antitrust Litigation* (N.D. Cal.)

**Education**:
- Pepperdine University School of Law, Malibu, California – J.D. – 2008
- Pomona College, Claremont, California – B.A. – 2004

**Bar Admissions**:
- California
- U.S. District Court, Northern District of California
- U.S. District Court, Central District of California

PEARSON, SIMON & WARSHAW, LLP

**Professional Associations and Memberships**:
- John M. Langston Bar Association, Board Member
- Black Women Lawyers Association of Los Angeles, Scholarship Committee Member
- Consumer Attorneys of California, Member
- Los Angeles County Bar Association, Member
- Consumer Attorneys Association of Los Angeles, Member
- San Fernando Valley Bar Association, Member

**Honors and Awards**:
- Consumer Attorneys of California's Consumer Attorney of the Year, award finalist, 2013
- John M. Langston Bar Association's President's Award, 2013

## ALEXANDER R. SAFYAN

Alexander R. Safyan is an associate in the firm's Los Angeles office, focusing on antitrust, consumer, and business litigation.  Mr. Safyan has worked on many of the firm's class actions, including drafting complex complaints, motions, and discovery.  Mr. Safyan has also served as the principal attorney on some of the firm's non-class cases, representing individuals and companies in contract disputes on both sides of the "v."  In recognition of his work on behalf of clients, Mr. Safyan has been selected by his peers as a Super Lawyers Rising Star (representing the top 2.5% of lawyers in Southern California age 40 or younger or in practice for 10 years or less) for 4 straight years.

Mr. Safyan is a prolific writer, having been published multiple times by the *Daily Journal* and co-authored papers and presentations with some of the firm's senior attorneys.  Further, Mr. Safyan published a law review comment titled *A Call for International Regulation of the Thriving "Industry" of Death Tourism*, which has been cited by multiple other publications.  Mr. Safyan earned his Bachelor of Arts degree, *cum laude*, in political science from the University of Southern California in 2008.  He earned his Juris Doctorate, *cum laude*, from Loyola Law School Los Angeles in 2011, graduating as a member of the Order of the Coif.

**Current Cases:**
- *In re CytRx Corporation Securities Litigation (and related cases)* (C.D. Cal.)
- *In re KIND LLC "Healthy and All Natural" Litigation* (S.D.N.Y.)
- *Sciortino, et al. v. PepsiCo, Inc.* (N.D. Cal.)

**Education:**
- Loyola Law School Los Angeles, Los Angeles, California – J.D., *cum laude* – 2011
- University of Southern California, Los Angeles, California – B.A., *cum laude* – 2008

**Recent Publications:**
- Class Certification Procedure, Ch. V, ABA Antitrust Class Actions Handbook (3d ed.), with Bruce L. Simon (forthcoming)
- *Should Offers Moot Claims?*, Daily Journal, Oct. 10, 2014, with Bobby Pouya

PEARSON, SIMON & WARSHAW, LLP

- *Central District Local Rules Hinder Class Certification*, Daily Journal, April 9, 2013, with Bobby Pouya
- *Brantley v. NBC Uni: Tying Consumers' Hands in Bringing Antitrust Tying Claims*, Daily Journal, April 12, 2012, with Clifford H. Pearson
- *A Call for International Regulation of the Thriving "Industry" of Death Tourism*, 33 LOY. L.A. INT'L & COMP. L. REV. 287 (2011)

**Bar Admissions:**
- California
- Ninth Circuit Court of Appeals
- U.S. District Court, Central District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California

**Professional Associations and Memberships:**
- American Bar Association
- Association of Business Trial Lawyers, Young Lawyers Division
- Los Angeles County Bar Association (Serves as Liaison to the Executive Committee of the Antitrust and Unfair Business Practices Section)

## MICHAEL H. PEARSON

Michael H. Pearson is an associate in the firm's Los Angeles office, focusing on antitrust, personal injury, and business litigation.  Mr. Pearson has represented clients in high-stakes personal injury, mass tort, and product liability cases.

Mr. Pearson received his Bachelor of Science degree from Tulane University in 2008, majoring in Finance with an Energy Specialization.  He received his Juris Doctorate from Loyola Law School Los Angeles in 2011.  Mr. Pearson is an active member in a number of legal organizations, including the American, Los Angeles County and San Fernando Valley Bar Associations, Consumer Attorneys of California, the Consumer Attorneys Association of Los Angeles and the Association of Business Trial Lawyers.

**Current Cases**:
- *Senne, et al. v. Office of the Commissioner of Baseball, et al.* (N.D. Cal.)

**Education**:
- Loyola Law School Los Angeles, Los Angeles, California – J.D. – 2011
- Tulane University, New Orleans, Louisiana – B.S., *magna cum laude* – 2008

**Bar Admissions**:
- California
- Ninth Circuit Court of Appeals
- U.S. District Court, Central District of California

PEARSON, SIMON & WARSHAW, LLP

- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California

**Professional Associations and Memberships:**
- American Bar Association
- Association of Business Trial Lawyers
- Consumer Attorneys Association of Los Angeles
- Consumer Attorneys of California
- Los Angeles County Bar Association
- San Fernando Valley Bar Association

**BENJAMIN E. SHIFTAN**

Benjamin E. Shiftan is a litigator in the firm's San Francisco office. Since joining the firm in 2014, Mr. Shiftan has focused on complex class action litigation, including antitrust, product defect, and consumer protection cases.

Prior to joining the firm, Mr. Shiftan litigated complex bad faith insurance cases for a national law firm. Before that, Mr. Shiftan served as a law clerk to the Honorable Peter G. Sheridan, United States District Court for the District of New Jersey, and worked for a mid-sized firm in San Diego.

Mr. Shiftan graduated from the University of San Diego School of Law in 2009. While in law school, he served as Lead Articles Editor of the San Diego International Law Journal and competed as a National Team Member on the Moot Court Board. Mr. Shiftan won the school's Paul A. McLennon, Sr. Honors Moot Court Competition. At graduation, he was one of ten students inducted into the Order of the Barristers. Mr. Shiftan graduated from the University of Virginia in 2006.

**Current Cases**:
- *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation* (N.D. Cal.)
- *Senne, et al. v. Office of the Commissioner of Baseball, et al. (N.D. Cal.)*
- *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation* (N.D. Cal.)

**Education**:
- University of San Diego School of Law, San Diego, CA – J.D. – 2009
- University of Virginia, Charlottesville, VA – B.A. – 2006

**Bar Admissions**:
- California
- Ninth Circuit Court of Appeals
- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California

PEARSON, SIMON & WARSHAW, LLP

- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California

**Professional Associations and Memberships:**
- San Francisco County Bar Association

## MATTHEW A. PEARSON

Matthew A. Pearson is an associate in the firm's Los Angeles office focusing on antitrust, personal injury, and business litigation. Mr. Pearson has represented clients in a variety of different matters, including toxic tort litigation, business litigation, products liability, and high-stakes personal injury matters.

Mr. Pearson received his Bachelor of Science degree from the University of Arizona in 2010, majoring in Business Management. He received his Juris Doctorate from Whittier Law School in 2013. Mr. Pearson is an active member in a number of legal organizations, including the American Bar Association, American Association for Justice, Association of Business Trial Lawyers, Consumer Attorneys Association of Los Angeles, Consumer Attorneys of California, and the Los Angeles County Bar Association.

**Current Cases:**
- *L.A. Taxi Cooperative, Inc., et al. v. Uber Technologies, Inc., et al.* (N.D. Cal.)

**Education:**
- Whittier Law School, California – J.D. – 2013
- University of Arizona: Eller College of Management – B.S.– 2010

**Bar Admissions:**
- California
- Ninth Circuit Court of Appeals
- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California

**Professional Associations and Memberships:**
- American Bar Association
- American Association for Justice
- Association of Business Trial Lawyers
- Consumer Attorneys Association of Los Angeles
- Consumer Attorneys of California
- Los Angeles County Bar Association

## ALEXANDER L. SIMON

PEARSON, SIMON & WARSHAW, LLP

Alexander L. Simon is a litigator in the firm's San Francisco office.  Since joining the firm as a law clerk in 2013 and an attorney in 2015, Mr. Simon has focused on complex class action litigation, including antitrust, product defect, and consumer protection cases.

Mr. Simon graduated from Loyola Law School in 2015.  While in law school, he served as the Chief Production Editor of the *Loyola of Los Angeles Entertainment Law Review* from 2014-2015.  His comment titled *With Great Power Comes Great Responsibility: Gary Friedrich's Battle with Marvel For Artist Rights* was published by the law review that same year.  In 2014, Mr. Simon also participated in Loyola Law School's Copyright Moot Court.  Mr. Simon graduated from the University of California, Berkeley in 2009 where he was a member of Freshman Men's Crew during the 2005-2006 season.  During his senior year of high school, he was the "two" seat of the Saint Ignatius College Preparatory Varsity 8 boat that won the US Rowing Youth Invitational National Championship.

**Current Cases:**
- *Senne, et al. v. Office of the Commissioner of Baseball, et al.* (N.D. Cal.)
- *In re Lithium Ion Batteries Antitrust Litigation* (N.D. Cal.)
- *L.A. Taxi Cooperative, Inc., et al. v. Uber Technologies, Inc., et al.* (N.D. Cal.)

**Education:**
- Loyola Law School, Los Angeles, California – J.D. – 2015
- University of California, Berkeley, Berkeley, California – B.A. – 2009

**Recent Publications:**
- *With Great Power Comes Great Responsibility: Gary Friedrich's Battle with Marvel For Artist Rights*, 35 Loy. L.A. Ent. L. Rev. 211 (2015)

**Bar Admissions:**
- California
- U.S. District Court, Southern District of California
- U.S. District Court, Central District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Eastern District of California

**Professional Associations and Memberships:**
- San Francisco County Bar Association
- California Young Lawyers Association

**Community Service:**
- Prime Time Mock Trial Coach at Ralph Waldo Emerson Middle School in Los Angeles (2014)

PEARSON, SIMON & WARSHAW, LLP

- Volunteer at the Theatre of Terror (2013) and Raymond Hill Mortuary (2014) Haunted Houses benefiting the South Pasadena Arts Council and South Pasadena Educational Foundation

## MEREDITH C. DOYLE

Meredith C. Doyle is an associate in the firm's San Francisco office, focusing on antitrust, consumer, and business litigation.

Ms. Doyle earned her Bachelor of Arts degree, *cum laude*, from Claremont McKenna College in 2011, majoring in Government with a Leadership focus. She was a member of the varsity women's soccer team all four years, and contributed to two SCIAC League Championship wins. She received her Juris Doctorate from Pepperdine Law School in 2014. In law school, Ms. Doyle served as an Executive Editor of Pepperdine's *Dispute Resolution Law Journal* from 2013 to 2014. The Journal published her article, *Circles of Trust: Using Restorative Justice to Repair Organizations Marred by Sex Abuse*, in 2014. Ms. Doyle was also co-chair of Pepperdine Law School's Honor Board from 2013 to 2014. Ms. Doyle is an active member in a number of legal organizations, including the American Bar Association, Los Angeles County Bar Association, and the Association of Business Trial Lawyers.

**Current Cases**:
- *Senne, et al. v. Office of the Commissioner of Baseball, et al.* (N.D. Cal.)
- *In re Lithium Ion Batteries Antitrust Litigation* (N.D. Cal.)

**Education**:
- Pepperdine University School of Law, Los Angeles, California – J.D. – 2014
- Claremont McKenna College, Claremont, California – B.A., *cum laude* – 2011

**Bar Admissions**:
- California
- U.S. District Court, Southern District of California (pending)
- U.S. District Court, Central District of California (pending)
- U.S. District Court, Northern District of California (pending)
- U.S. District Court, Eastern District of California (pending)

**Professional Associations and Memberships:**
- American Bar Association
- Association of Business Trial Lawyers
- Los Angeles County Bar Association
- San Francisco County Bar Association (forthcoming)

# EXHIBIT 2

LAW OFFICES

# PEARSON, SIMON & WARSHAW, LLP

15165 VENTURA BOULEVARD, SUITE 400

SHERMAN OAKS, CALIFORNIA 91403

(818) 788-8300

FAX (818) 788-8104

WWW.PSWLAW.COM

July 20, 2016

Re:    *Sciortino v. PepsiCo, Inc*.
       Case No.: 3:14-cv-00478-EMC

|  | Hours | Rate | Lodestar |
|---|---|---|---|
| **Case Management** | | | |
| Amanda Lunzer | 0.70 | $225.00 | $157.50 |
| Alex Safyan | 54.10 | $475.00 | $25,697.50 |
| Ben Shiftan | 1.30 | $495.00 | $643.50 |
| Bobby Pouya | 38.70 | $635.00 | $24,574.50 |
| Daniel Warshaw | 71.50 | $870.00 | $62,205.00 |
| Ellowene Grant | 7.50 | $225.00 | $1,687.50 |
| Michael Pearson | 4.50 | $475.00 | $2,137.50 |
| **TOTAL** | **178.30** | | **$117,103.00** |
| | | | |
| **Discovery** | | | |
| Alex Safyan | 0.60 | $475.00 | $285.00 |
| Bobby Pouya | 13.10 | $635.00 | $8,318.50 |
| Daniel Warshaw | 2.30 | $870.00 | $2,001.00 |
| **TOTAL** | **16.00** | | **$10,604.50** |
| | | | |
| **Pleadings / Motions** | | | |
| Amanda Lunzer | 4.50 | $225.00 | $1,012.50 |
| Alex Safyan | 233.30 | $475.00 | $110,817.50 |
| Ben Shiftan | 1.90 | $495.00 | $940.50 |
| Bobby Pouya | 66.30 | $635.00 | $42,100.50 |
| Daniel Warshaw | 246.70 | $870.00 | $214,629.00 |
| Ellowene Grant | 4.10 | $225.00 | $922.50 |
| Michael Pearson | 36.50 | $475.00 | $17,337.50 |
| Richard Clay Stockton | 3.80 | $475.00 | $1,805.00 |
| **TOTAL** | **597.10** | | **$389,565.00** |

Law Offices
PEARSON, SIMON & WARSHAW, LLP

July 20, 2016
Page 2

|  | Hours | Rate | Lodestar |
|---|---|---|---|
| **Settlement** | | | |
| Amanda Lunzer | 6.70 | $225.00 | $1,507.50 |
| Alex Safyan | 5.30 | $475.00 | $2,517.50 |
| Bobby Pouya | 51.50 | $635.00 | $32,702.50 |
| Daniel Warshaw | 53.10 | $870.00 | $46,197.00 |
| **TOTAL** | **116.60** | | **$82,924.50** |
| | | | |
| **Investigation** | | | |
| Bobby Pouya | 12.30 | $635.00 | $7,810.50 |
| Daniel Warshaw | 26.20 | $870.00 | $22,794.00 |
| **TOTAL** | **38.50** | | **$30,604.50** |
| | | | |
| **GRAND TOTAL** | **946.50** | | **$630,801.50** |

870538.1

# EXHIBIT 3

1   Bruce L. Simon (State Bar No. 96241)
    **PEARSON, SIMON, WARSHAW & PENNY, LLP**
2   44 Montgomery Street, Suite 2450
    San Francisco, California 94104
3   Telephone: (415) 433-9000
    Facsimile:  (415) 433-9008
4

5   Richard M. Heimann (State Bar No. 63607)
    **LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
6   275 Battery Street, 30th Floor
    San Francisco, California 94111
7   Telephone: (415) 956-1000
    Facsimile:  (415) 956-1008
8

9   *Co-Lead Counsel for the Direct Purchaser Plaintiffs*

10

11                      **UNITED STATES DISTRICT COURT**

12          **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

13

14
    IN RE: TFT-LCD (FLAT PANEL)            Case No. MDL 3:07-md-1827 SI
15  ANTITRUST LITIGATION
                                           **CLASS ACTION**
16  ————————————————————————
17  This Document Relates to:              **[AMENDED PROPOSED] ORDER
                                           GRANTING DIRECT PURCHASER**
18  ALL DIRECT PURCHASER CLASS            **CLASS PLAINTIFFS' MOTION FOR
    ACTIONS                                ATTORNEYS' FEES, REIMBURSEMENT**
19                                         **OF EXPENSES, AND INCENTIVE
                                           AWARDS**
20  ————————————————————————
21                                         Date:      December 19, 2011
                                           Time:      4:00 p.m.
22                                         Crtrm.:  10, 19th Floor
                                           The Honorable Susan Illston
23

24

25

26

27

28

[AMENDED PROPOSED] ORDER GRANTING DIRECT PURCHASER CLASS PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

The Court, having considered Direct Purchaser Class Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards (the "Motion") and the memorandum and declarations in support thereof, and after a duly noticed hearing, hereby finds that:

1. The Motion seeks an award of attorneys' fees of 30% of the $405,022,242 Settlement Fund, which is comprised of the settlement payments from the Chimei, Chunghwa, Epson, Hannstar, Hitachi, LG Display, Mitsui, Samsung, Sanyo, and Sharp Defendants (collectively, the "Settling Defendants"). Co-Lead Class Counsel for the Direct Purchaser Plaintiffs ("Direct Purchasers") also seek reimbursement of $6,055,335.31 in unreimbursed litigation costs and expenses, a $1,000,000 advance of litigation costs through trial, and incentive awards of $15,000 each for the 11 court-appointed class representatives.

2. The amount of attorneys' fees requested is fair and reasonable under the "percentage-of-the-fund" method. This is confirmed by a lodestar "cross-check," which reveals a fair and reasonable lodestar multiplier of 1.096, based on over 250,000 hours of work. Even if the lodestar compiled by law firms other than Co-Lead Class Counsel were to be reduced by 20% to account for potential inefficiencies, the result is a lodestar multiplier of 1.25, which is reasonable as well. Multiples of 1.25 and under are well within the ranges approved by the Ninth Circuit and the courts in this District. *See e.g.*, *Vizcaino v. Microsoft*, 290 F.3d 1043, 1050-1051 (9th Cir. 2002) (upholding a 28% fee award that constituted a 3.65 multiple of lodestar); *id.,* at 1052-54 (noting district court cases in the Ninth Circuit approving multipliers as high as 6.2, and citing only 3 of 24 decisions with approved multipliers below 1.4).

3. The attorneys' fees requested were entirely contingent upon success. Co-Lead Class Counsel risked time and effort and advanced significant costs and expenses with no ultimate guarantee of compensation. The award of 30% is warranted for reasons set out in Co-Lead Class Counsel's moving papers, including but not limited to the following: the excellent result obtained for the class – payment by the Settling Defendants of over $405 million in cash; the quality and quantity of work performed by all the firms representing Direct Purchasers (collectively,

1  "Plaintiffs' Counsel") - including extensive motion practice, discovery, trial preparation, and

2  mediation, all involving complex and difficult issues of fact and law; the risks faced throughout

3  the litigation, including at the outset; and, a reasonable lodestar "cross-check," discussed above.

4      4.     Given the high risks involved in this case, the effort put forth by Plaintiffs'

5  Counsel, the level of sophistication of the work done, and the extraordinary results achieved for

6  the Class, an upward departure from the Ninth Circuit's benchmark of 25% is justified.  *See e.g.*,

7  *Vizcaino*, 290 F.3d at 1047-1050; *In re Heritage Bond Litig.*, 2005 WL 1594403, at *18-23 (C.D.

8  Cal. June 10, 2005).

9      5.     The Court has received the objections that have been received from two Class

10  Members, Barry Himmelstein and Michael Rinis.  They include objections to the attorneys' fees

11  requested by Co-Lead Class Counsel.  Those objections are overruled by separate order.

12      6.     The expenses sought were incurred in connection with the prosecution of the

13  litigation for the benefit of the Class and were reasonable and necessary.  ~~An additional~~

14  ~~$1,000,000 advance of funds to cover expenses that will be incurred through trial is reasonable~~

15  ~~and will be necessary to the further prosecution of this action.~~

16      7.     The 11 class representatives are entitled to the requested incentive awards, in the

17  amount of $15,000 each, in recognition of their work performed for the benefit of the Class and

18  the risks undertaken.

19      8.     Therefore, upon consideration of the Motion and the accompanying declarations,

20  and based upon all matters of record including the pleadings and papers filed in this action and

21  oral argument given at the hearing on this matter, the Court hereby finds that: (i) the attorneys'

22  fees requested are reasonable and proper; (ii) the expenses requested were necessary, reasonable

23  and proper; ~~(iii) a further $1,000,000 advance is a fair estimate of expenses that will be incurred~~,

24  ~~and is a reasonable and proper request; and~~ (iv) the incentive awards requested are warranted.

25      9.     Accordingly, it is hereby ORDERED and DECREED that:

26            (a)     Co-Lead Class Counsel are awarded attorneys' fees for distribution to

27                 Plaintiffs' Counsel in the amount of $121,506,672.60, equal to 30% of the

28

[PROPOSED] ORDER GRANTING DIRECT PURCHASER CLASS PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

1  Settlement Fund.

2      (b)    Co-Lead Class Counsel are awarded reimbursement of their unreimbursed

3          costs and expenses in the amount of $6,055,335.31.

4      (c)   ~~Co-Lead Class Counsel are awarded an additional $1,000,000.00 to cover~~

5          ~~costs and expenses reasonably incurred in prosecuting this action through~~

6          ~~trial against the remaining Defendants.~~

7      (d)    The 11 class representatives are awarded incentive payments of $15,000.00

8          each, for a total of $165,000.00.

9      (e)    The attorneys' fees, reimbursement of expenses, ~~advance of expenses,~~ and

10         incentive awards shall be paid from the Settlement Fund.

11     (f)    The attorneys' fees and expenses shall be allocated amongst Plaintiffs'

12         Counsel by Co-Lead Class Counsel (Pearson, Simon, Warshaw & Penny,

13         LLP; and Lieff, Cabraser, Heimann & Bernstein, LLP) in a manner which,

14         in Co-Lead Class Counsel's good-faith judgment, accurately reflects each

15         of such Plaintiff's Counsel's contributions to the establishment,

16         prosecution, and resolution of this litigation.

17   **IT IS SO ORDERED.**

18

19 Date:__ 12/27/11 _____

20                                   _____

21                       THE HONORABLE SUSAN ILLSTON
                        UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

# EXHIBIT 4

Bruce L. Simon (State Bar No. 96241)
**PEARSON, SIMON, WARSHAW & PENNY, LLP**
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

Richard M. Heimann (State Bar No. 63607)
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 30th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Co-Lead Counsel for the Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Case No. MDL 3:07-md-1827 SI |
| | <u>**CLASS ACTION**</u> |
| This Document Relates to:<br><br>ALL DIRECT PURCHASER CLASS ACTIONS | **DECLARATION OF BRUCE L. SIMON IN SUPPORT OF DIRECT PURCHASER CLASS PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS** |
| | Date: December 19, 2011<br>Time: 4:00 p.m.<br>Crtrm.: 10, 19th Floor<br>The Honorable Susan Illston |

I, Bruce L. Simon, declare as follows:

1.      I am an attorney duly admitted to practice before this Court.  I am a partner in the firm of Pearson, Simon, Warshaw & Penny, LLP ("PSWP"), and one of the attorneys of record for the Direct Purchaser Class Plaintiffs ("Direct Purchasers").  I submit this declaration in support of Direct Purchasers' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards.  I make this declaration based on my own personal knowledge.  If called as a witness, I could and would competently testify to the matters stated herein.

2.      This declaration summarizes the work performed by PSWP, Lieff, Cabraser, Heiman and Bernstein ("LCHB") (PSWP and LCHB are referred to herein as "Co-Lead Class Counsel"), and the two groups of law firms that have performed work at the direction of PSWP and LCHB as set forth in Direct Purchaser Plaintiffs' Separate Statement Regarding Organization of Plaintiffs' Counsel filed on September 19, 2007 (Doc. No. 288) (collectively, "Plaintiffs' Counsel").[1]  My firm has been intimately involved in all aspects of this litigation from the outset

---

[1]  The first group of firms was chosen to "assist Interim Co-Lead Counsel in performing work in substantive areas of the litigation," while the remainder of the firms involved were to "assist Interim Co-Lead Counsel as needed to perform work concerning particular defendants, including discovery."  *Id.*  The first group included: Berger & Montague, PC; Berman, DeValerio, Pease & Tabacco, PC; Cohen, Milstein, Sellers & Toll, PLLC and Hausfeld, LLP (formerly Cohen, Milstein, Hausfeld & Toll, PLLC); Hagens Berman Sobol Shapiro; Heins, Mills & Olson, PLC; Moscone, Emblidge & Quadra, LLP (now Moscone, Emblidge & Sater, LLP); Saveri & Saveri, Inc.; and Polsinelli, Shughart, PC (formerly Shughart Thomson & Kilroy, PC).  *Id.*

The second set of firms involved include: Cafferty Faucher, LLP; Chimicles & Tikellis, LLP; Cohn, Lifland, Pearlman, Herrman & Knopf, LLP; Criden & Love, P.A.; Edelson & Associates, LLC; Fine, Kaplan & Black, R.P.C.; Finkelstein Thompson LLP; Freed, Kanner, London & Millen, LLC; Garcia Law Firm; Goldman, Scarlato and Karon, P.C.; Grant & Eisenhofer, P.A.; Hadsell, Stormer, Keeny, Richardson & Renick, LLP;  Kaplan, Fox & Kilsheimer, LLP; Labaton, Sucharow & Rodoff, LLP; Law Offices of Bernard M. Gross, P.C.; Levin, Fishbein, Sedran & Berman; Lockridge, Grindal, Nauen, PLLP; Meredith, Cohen, Greenfogel & Skirnick, P.C.; Nussbaum, LLP, Taus, Cebulash & Landau, LLP; Provosty & Grankendorff, LLC; Sarraf Gentile, LLP; Spector, Roseman & Kodroff PC; Sutton Law Firm; Trujillo, Rodriguez & Richards, LLC; Weinstein, Kitchenoff & Asher, LLC; and, Zwerling, Schachter & Zwerling, LLP.

2                                    MDL 3:07-md-1827 SI

1  to the present, along with LCHB, including before and after our appointment as Co-Lead Class

2  Counsel.

3          3.      Filed concurrently herewith is the Declaration of Elizabeth C. Pritzker, Liaison

4  Counsel for the Direct Purchasers, which provides a summary of total hours and lodestar in this

5  matter through August 31, 2011, broken down by firm.  The Pritzker Declaration also includes a

6  summary of total litigation costs and expenses incurred through October 15, 2011, including the

7  amounts reimbursed, unreimbursed, and pending, as well as anticipated trial expenses.

8          4.      As demonstrated below, Co-Lead Class Counsel have taken a lead role in

9  performing and coordinating all manner of tasks related to this matter at each phase of the

10  litigation, including initial case investigation, filing of complaints, discovery, class certification,

11  dispositive motion practice, settlement negotiation, motions for settlement approval, dissemination

12  of notice to the Class Members, and trial preparation.  During the course of this litigation, Co-

13  Lead Class Counsel have supervised and directed the work performed by the other counsel from

14  the two sets of firms listed above to ensure that the work they have performed has been done as

15  efficiently as possible.

16          5.      From the beginning, this action presented substantial risk as well as the potential

17  for a large recovery for the Class.  Co-Lead Class Counsel were faced with the enormous

18  challenge of proving that Defendants participated in a price-fixing cartel conspiracy that was

19  alleged to have gone on for at least 7 years.  The conspiracy encompassed numerous

20  manufacturers and producers, some that sold only TFT-LCD panels, others that only sold TFT-

21  LCD finished products, and many that sold both.  Most of the Defendants are international

22  conglomerates with complex structures and distribution systems.  Since December 2006,

23  Plaintiffs' Counsel have dedicated their time, money, and energy into litigating this case on behalf

24  of Direct Purchasers, all without any guarantee of payment for their time or reimbursement for

25  their out-of-pocket expenses.  This work has occupied a substantial percentage of Plaintiffs'

26  Counsel's time, energy, and resources which could have been dedicated to other cases.

27          6.      Since the transfer of the MDL action to this court on April 20, 2007, over 4000

28  entries have been made to case 07-1827 on the ECF system. Upon review of the docket, and

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

1   exclusion of peripheral administrative filings and entries unrelated to the class actions, 1866 of the

2   docket entries are substantively related to the Direct Purchaser Plaintiff and/or Indirect Purchaser

3   Plaintiff cases. Attached hereto as Exhibit A is a reduced version of the docket, containing only

4   the related entries.

5         7.     As a result of these efforts, Plaintiffs' Counsel have reached settlement agreements

6   with ten different Defendant groups, as outlined below, that provide for payment of $405,022,242

7   in cash (the "Settlement Fund") for the benefit of the Class Members.

8         8.     For their years of as-yet uncompensated hard work on behalf of the Class

9   Members, including over 250,000 hours and a total lodestar of $110,825,798.18, Plaintiffs'

10   Counsel seek an award of attorney's fees in the amount of 30% of the Settlement Fund, or

11   $121,506,672.60.  As a cross-check for reasonableness, this requested fee would amount to a

12   lodestar multiplier of approximately 1.096.

13         9.     Plaintiffs' Counsel also seek reimbursement from the Settlement Fund of their

14   remaining unreimbursed out-of-pocket litigation costs and expenses, as well as an advance of

15   anticipated trial expenses.  To date, there are $6,055,335.31 in unreimbursed costs and expenses,

16   and Co-Lead Class Counsel anticipate trial expenses in the amount of $1,000,000.00, for a total of

17   $7,055,335.31.  On February 18, 2011 the Court issued an Order Granting Direct Purchaser

18   Plaintiffs' Motion for the Advancement of Litigation Expenses from Settlement Funds (Doc. No.

19   2474).  Direct Purchasers are <u>not</u> requesting reimbursement for any expenses which have been

20   paid from the $3,000,000.00 that the Court ordered to be used exclusively for litigation expenses

21   incurred by Plaintiffs' Counsel on behalf of Direct Purchasers in this case (Doc. No. 2474), or

22   which can be paid from amounts remaining from those funds.  As detailed in the Pritzker

23   Declaration, $471,549.19 of those funds remain unspent.

24         10.    Finally, Co-Lead Class Counsel seek incentive awards for the eleven court-

25   appointed Class Representatives in this case in the amount of $15,000 each.  The work performed

26   by the court-appointed Class Representatives for whom incentive payments are sought is

27   described later in this Declaration.

28         11.    This Declaration describes the following general topics:  Section I of this

1    Declaration describes the substantial risk involved in litigating such a large antitrust class action.

2    Section II describes the extraordinary result that was achieved for Class Members.  Section III is a

3    detailed procedural history which describes all of the work that was required to achieve the

4    settlements that have been reached with most of the Defendants in this case.  The procedural

5    history section is divided into the following sub-sections:  (A) Appointment of Co-Lead and

6    Liaison Counsel and Pre-Trial Orders; (B) Document Production and Review; (C) Written

7    Discovery Propounded by Direct Purchasers and Served by Defendants; (D) Depositions Taken

8    and Defended; (E) Defendants' Motions to Dismiss and Discovery Disputes; (F) Class

9    Certification; (G) Motion to Compel Arbitration and Dismiss; (H) Additional Discovery Issues

10   and Disputes; (I) Expert Discovery; (J) Settlements: (K) Summary Judgment Motions; (L) Trial;

11   (M) Class Representatives; and, (N) Fees and Costs Incurred by PSWP.

## I.        SUBSTANTIAL RISK INVOLVED

13       12.        Despite the indictments and guilty pleas that the Department of Justice ("DOJ")

14   obtained, this is not a case where the Direct Purchasers simply relied on what the government

15   uncovered. The government's case is different from the Direct Purchasers' case in many

16   significant respects, not the least of which is the time period for the conspiracy (the class period in

17   the Direct Purchaser action predates the government's conspiracy period by 2 years), the products

18   included in the conspiracy (the Direct Purchaser case includes panels and finished products

19   whereas the government's case focuses solely on panels), and, the scope of the alleged conduct

20   (Direct Purchasers allege an overarching conspiracy with respect to all Defendants whereas the

21   government obtained guilty pleas only from certain Defendants often on a more discrete set of

22   conduct). Thus, rather than riding the government's coattails, Plaintiffs' Counsel used the DOJ

23   investigation as a starting point, but had to develop much of the Direct Purchaser case on their

24   own.

25       13.        Defendants have resisted the Direct Purchasers' action, despite the DOJ's

26   prosecution of the criminal case.  This process started with Direct Purchasers negotiating a

27   settlement with Defendant Chunghwa  and obtaining substantial cooperation during a period of

28   time when the case was stayed because of the government investigation.  It continued with

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

1   fighting motions to dismiss wherein Defendants attempted to leverage the differences in the

2   government and civil case.  Plaintiffs' Counsel dedicated enormous effort to reviewing documents

3   and taking depositions to obtain proof that was either unnecessary or irrelevant to the government

4   case; Plaintiffs' Counsel were drawn into a continued debate about what one DOJ attorney meant

5   when he described the Crystal conspiracy as being separate from the other parts of the conspiracy;

6   Defendants consistently argued that adverse inferences could not be drawn from the guilty pleas

7   and assertions of the Fifth Amendment; and, Plaintiffs' Counsel had to build an entire econometric

8   study of the TFT-LCD industry which included elements far beyond what the government alleged

9   or has to prove in the criminal case. The Defendants here, most of whom have pled guilty, have

10  continued to defend this case under the apparent belief that their guilty pleas hurt, rather than

11  helped, Direct Purchasers' case.  They have done so despite the fact that any restitution to the

12  Direct Purchasers must come from this civil case, and not the criminal case.

13          14.     There were multiple legal issues that presented risk in the Direct Purchasers' case

14  as well. Every conceivable argument about the scope and nature of the conspiracy was thrown at

15  Plaintiffs' Counsel including, but not limited to: arguments that there was not one overarching

16  conspiracy, but rather separate conspiracies; that the FTAIA barred some of the Direct Purchasers'

17  claims; that the TFT-LCD Products were so differentiated that a common damage methodology

18  could not apply and the Class should not be certified; and that the Direct Purchaser class suffered

19  no damages (in fact, one defense expert said there were negative damages). Of course, many of

20  these arguments fly in the face of the fact that Defendants chose voluntarily to conspire for many

21  years, and repeatedly participated in group meetings and bi-lateral discussions, at great risk of

22  criminal prosecution. Common sense dictates they would not have done so unless there was some

23  benefit to be achieved.  Nonetheless, Defendants continued to deny their responsibility in this civil

24  case.

25          15.     All of these issues, whether colorable or not, required substantial legal research and

26  briefing, and presented potential appellate issues. The Court need only take note of the recently

27  filed motions for summary judgment to see that the non-settling Defendants, and even some of the

28  settling Defendants in motions against the IPP class, still assert many of these same arguments,

1 and are throwing everything but the kitchen sink into avoiding responsibility for their actions in

2 this case.

3       16.    The Defendants also built multiple procedural issues into their defenses as

4 described in the procedural history section set forth below. However, one deserves special note, in

5 light of how late in the case it was made and the risk presented by it. On March 8, 2011, certain

6 Defendants made a Motion to Stay Direct Purchaser Plaintiffs' Claims That Are Subject to

7 Arbitration and to Dismiss Direct Purchaser Plaintiffs' Claims That Are Subject to Litigation in a

8 Foreign Court (Doc. No. 2529). As originally fashioned, that motion seemed to argue that the

9 entire Direct Purchaser case should be stayed, and Class Members with contracts containing

10 arbitration provisions should be compelled to arbitrate. In light of *AT&T Mobility LLC v.*

11 *Concepcion*, 131 S.Ct. 1740 (2011), which came out during the time that this motion was to be

12 decided, this motion presented a real risk of derailing the Direct Purchasers' case. Although the

13 Court denied the motion, it found that Defendants had not waived their right to arbitrate against

14 unnamed Class Members. (Doc. No. 2731). The Court also gave Defendants until June 3, 2011 to

15 (1) produce a comprehensive list of every Class Member against which Defendants would move to

16 compel arbitration; (2) identify every arbitration agreement that they intended to assert against

17 unnamed members of the Direct Purchaser Class; and (3) file an omnibus motion to compel

18 arbitration regarding each Plaintiff listed. *Id.* Although Defendants did not subsequently file such

19 a motion, this is one example of what Direct Purchasers had to overcome to obtain the outstanding

20 recovery achieved here.

21       17.    Lastly, the legal landscape for antitrust cases has been in a state of flux both before

22 this case was brought and during its pendency. The motions to dismiss were based on *Bell Atlantic*

23 *Corp. v. Twombly*, 127 S.Ct. 1955 (2007), a case that did not exist when many of the antitrust

24 class settlements referenced in the accompanying brief occurred, and yet the settlements here

25 achieved a higher percentage recovery than in many of those cases. *Twombly* presented a

26 significant pleading hurdle in this case. During the pendency of this case,  *In re Hydrogen*

27 *Peroxide Antitrust Litigation,* 552 F.3d 305 (3rd Cir. 2008), came out of the Third Circuit, and

28 created a dynamic on class certification whereby expert reports necessarily had to be much more

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

1  extensive than previously was done in other major antitrust cases. Of course, Co-Lead Class

2  Counsel argued that *Hydrogen Peroxide* did not apply, but could not take the risk that the Court

3  might find guidance in that opinion.

4      18.    During the pendency of this case, the U.S. Supreme Court came out with

5  *Concepcion*, as noted above, which potentially changed the landscape on arbitration, and also

6  issued the *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), opinion on class certification.

7  Just this small sampling of cases speaks volumes about the risks of prosecuting one of the biggest

8  antitrust cases ever brought in this District.  Moreover, Plaintiffs' Counsel are keenly aware that

9  there are many cases where plaintiffs prevail at the trial court level but lose on appeal, after years

10  of time, effort and expense.

11             **II.**      **AN EXTRAORDINARY RESULT WAS ACHIEVED**

12      19.    I have litigated antitrust cases for the better part of my career of 31 years. The

13  Court is familiar with the cases in which I have been involved as well as the cases prosecuted by

14  my Co-Lead Class Counsel, LCHB. Both firms have a unique perspective built on decades of

15  experience in litigating the biggest and most complex antitrust cases in the United States. Both

16  firms have litigated the hard issues presented throughout the years, and have been involved in

17  many of the settlements cited in the accompanying brief.

18      20.    Based on the experience of Co-Lead Class Counsel, and as set forth in the pertinent

19  authorities on the subject, one of the most important measures of an antitrust settlement is the

20  percentage of the recovery compared to the commerce involved in the case. In this case, using the

21  commerce numbers from the mediations, the percentage of the recovery in the individual

22  settlements ranged from 9% (Samsung) to as high as 727% (Chunghwa), after the Epson and

23  Chunghwa percentages have been recalculated to account for opt-outs.  In total, the $405 million

24  Settlement Fund totals almost 15% of the overall commerce with Settling Defendants, as

25  described below.

26      21.    The relevant percentages were previously provided to the Court in the motion for

27  preliminary approval of settlements that was heard on October 4, 2011, and in the Motion for

28  Final Approval of Settlement With Chunghwa Picture Tubes, Ltd., Epson Imaging Devices Corp.,

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

and Epson Electronics America, Inc. (Doc. No. 2394). They are as follows:

- The $10,000,000 settlement from Chunghwa amounts to a payment of over 727% of its sales to class members during the class period, which were roughly $1,375,072.

- The $7,000,000 settlement from Epson constitutes over 57% of its sales to class members during the class period, which were roughly $12,222,178.

- The $78,000,000 settlement amount from Chimei is compared to a commerce number of $464 million that was used for settlement purposes. That settlement represents 17% of the volume of commerce.

- The $14,900,000 settlement amount from HannStar is compared to a commerce number of $27.5 million that was used by Direct Purchasers for settlement purposes. That settlement represents 54% of the volume of commerce.

- The $28,000,000 settlement amount from Hitachi is compared to a commerce number of $167 million that was used for settlement purposes. That settlement represents 16% of the volume of commerce.

- The $75,000,000 settlement amount from LG Display is compared a commerce number of $200 million that was used for settlement purposes. That settlement represents 37% of the volume of commerce.

- The settlement amount for Mitsui is $950,000. Mitsui data did not show any sales to Class members during the Class Period.

- The $82,672,242 settlement amount from Samsung is compared to a commerce number of $900 million that was used for settlement purposes. That settlement represents 9% of the volume of commerce.

- The Settlement amount from Sanyo is $3,500,000. The LCD assets of Sanyo CE were contributed to a joint venture between SANYO Electric Co., Ltd. and Seiko Epson Imaging Devices ("SEID") effective October 1, 2004. The joint venture was controlled by SEID (an Epson affiliate). Epson subsequently purchased the remaining interests of the joint venture in December 2006. All of the data and sales

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

records pertaining to the LCD business were also transferred to Epson in October 2004. Additionally, Sanyo CE sold most of its panels through trading companies in Japan.

- The $105,000,000 settlement amount from Sharp is compared to a commerce number of $950 million which was used for settlement purposes. That settlement represents 11% of the volume of commerce.

- The total average volume of commerce being settled between Settling Defendants and Direct Purchasers is roughly $2,722,109,250. The total settlements of $405,022,242 represents 14.9% of that amount.

22. The amount of commerce was calculated based on the numbers agreed upon between Direct Purchasers and Defendants for purposes of settlement, with the exception of Defendants Epson and Chunghwa. The commerce numbers agreed upon for purposes of settlement with Epson and Chunghwa have been re-calculated to take opt-outs into account. Those numbers are $1,375,072 for Chunghwa, and $12,222,178 for Epson. Adding these to the total commerce used as the basis for settlement purposes with the other Settling Defendants, we arrive at a total commerce number of $2,722,109,250. The total of all ten settlements, $405,022,242, is approximately 15% of that total settled commerce.

23. Moreover, these settlements preserve Direct Purchasers' right to litigate against the non-settling Defendants for the entire amount of Direct Purchasers' damages based on joint and several liability.

24. These recoveries compare favorably to settlements approved in other price-fixing cases. *See, e.g.*, *In Re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, No. M-02-1486 PJH, slip. op. (N.D. Cal. Nov. 1, 2006) (approving settlements of 10.53% to 13.96% of sales); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (recovery represented approximately 2% of sales); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) (granting final approval to settlement where recovery was 1.62% of sales); *In re Plastic Tableware Antitrust Litig.*, Case No. 94-CV-3564, 1995 WL 723175, at *1 (E.D. Pa. Oct. 25, 1995) (granting final approval to settlement

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

where recovery was 3.5% of sales); *In re Shopping Carts Antitrust Litig.*, 1983 WL 1950, at *9

(S.D.N.Y. Nov. 18, 1983) (3% of sales); *Fisher Bros. v. Phelps Dodge Industries, Inc.*,

604 F.Supp. 466, 451 (E.D. Pa. 1985) (3% of sales); *Fisher Bros. v. Mueller Brass Co.*,

630 F.Supp. 493, 499 (E.D. Pa. 1985) (recoveries equal to 0.1%, 0.2%, 0.3%, 0.65%, 0.88%, and

2.4% of defendants' total sales). Additionally, in *In re Rubber Chemicals Antitrust Litigation*, 232

F.R.D. 346 (N.D. Cal. 2005), a horizontal price fixing case in which some of the defendants had

entered guilty pleas in a related criminal proceeding, the Court, in the course of granting final

approval of the settlement, characterized a settlement representing 4% of the defendants' sales as

an "excellent recovery."

25.    Based on my experience, participation in other antitrust cases both in this District

and outside of it, and my review of those cases in which I have not been involved, the percentage

recovered in this case is at or near the top of antitrust cases. Given the risks described below, the

fact that a large amount of the Direct Purchaser class opted out, and the fact that the cases included

both panels and finished products, I have no hesitation in representing to this Court that Co-Lead

Class Counsel obtained the best possible result for the Direct Purchasers. Compared to other

antitrust class settlements, the result is no less than extraordinary. The incredible amount of work

required to achieve such a tremendous result is set forth below.

### III.    <u>PROCEDURAL HISTORY</u>

26.    This multidistrict litigation arises from a global conspiracy to fix the prices of Thin

Film Transistor-Liquid Crystal Display panels ("TFT-LCDs") and products that incorporate those

panels. The conspiracy is alleged to have transpired as early as 1996 and continued until at least

mid-2006. Defendants' documents record hundreds of lengthy, orchestrated, illegal meetings

during that time period, in which the cartel members discussed and agreed on price increases and

production restraints, and exchanged confidential competitive information. Despite such

evidence, and the related guilty pleas entered by several Defendants, Defendants have spared no

expense in litigating this matter and all of them have thrown their considerable individual and

collective resources into a vigorous defense.

27.    Defendants have hired some of the largest and best firms in the country to contest

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

1  the merits at each and every stage of the litigation. Defendants herein are represented by such

2  large firms as Baker Hostetler (Mitsui), Cleary Gottlieb Steen & Hamilton (LG Display),

3  Covington & Burling (Samsung), Davis Wright Tremaine (Sanyo), K&L Gates (HannStar),

4  Morgan Lewis & Bockius (Hitachi), Morrison & Foerster (Epson), Nossaman (AUO), Pillsbury

5  Winthrop Shaw Pittman (Sharp), Wilmer Cutler Pickering Hale and Dorr (Chimei), and White &

6  Case (Toshiba), amongst others.  Some Defendants have two or more firms representing them and

7  their executives.

8  **A.  <u>Appointment of Interim Co-Lead and Liaison Counsel and Pre-trial Orders</u>**

9  28.  The Direct Purchaser class action complaints were filed after December 1, 2006 in

10  five separate federal judicial districts.  On April 17, 2007, the Judicial Panel on Multidistrict

11  Litigation granted a motion for pretrial coordination of the actions pursuant to 28 U.S.C. § 1407,

12  and transferred all actions to this Court

13  29.  On July 10, 2007, the Court held a Status Conference at which time it appointed

14  me and Richard Heimann of LCHB as Interim Lead Counsel in this case.  *See* Pretrial Order No. 3

15  (Doc. No. 224).  In its Order, the Court noted that:  "These firms have demonstrated an ability to

16  work with other firms, including the various other firms representing clients in these cases, in an

17  expeditious and cooperative manner.  The substantive legal talent present in this case must be

18  effectively marshaled so as to best represent the interests of the clients; it will be the responsibility

19  of the Interim Lead Counsel to coordinate that effort with the assistance of Liaison Counsel." *Id.*

20  at 1:25-2:4.  The Court appointed Elizabeth Pritzker of Girard Gibbs as Interim Liaison Counsel

21  for Direct Purchasers.  The Court also appointed the Honorable Fern Smith as a Special Master to

22  assist the Court in this litigation (Doc. No. 223).  On April 12, 2010, the Court appointed Martin

23  Quinn of JAMS as Special Master in these proceedings given the resignation of Judge Smith.

24  30.  In Pretrial Order No. 3, dated July 13, 2007, the Court described the duties of

25  Interim Lead Counsel as follows:

26  a.  Supervise all pretrial, trial and post-trial proceedings on behalf of plaintiffs;

27  b.  Sign any pleadings, motions, briefs, discovery requests or objections, subpoenas or
       notice on behalf of plaintiffs;

28

c.   Determine and present in motions, briefs, oral argument, meetings with the Special Master, or such other fashion as may be appropriate, the position of all of the plaintiffs as to all matters arising during pretrial and trial proceedings;

d.   Designate attorneys to act as spokespersons at pretrial conferences and meetings with the Special Master;

e.   Negotiate and enter into stipulations with defense counsel with respect to all matters in this litigation, including discovery and settlement matters. In particular, Interim Lead Class counsel are directed to meet and confer with defendants' counsel and submit a stipulation as to the filing of consolidated amended complaints for the two classes;

f.   After the resolution of the United States' upcoming motion to stay or limit discovery, develop and propose to the Court schedules for the commencement, execution and completion of discovery. After the current stay on discovery is lifted, conduct or coordinate discovery on behalf of plaintiffs consistent with the requirements of the Federal Rules of Civil Procedure, including the preparation of joint interrogatories, requests for production of documents, requests for admissions and the examination of witnesses in depositions;

g.   Coordinate the activities of plaintiffs' counsel and implement procedures to ensure that schedules are met and unnecessary expenditures of time and funds are avoided;

h.   Employ and consult with experts;

i.   Call meetings of plaintiffs' counsel when deemed appropriate;

j.   Delegate tasks to counsel for plaintiffs and otherwise coordinate the work of all plaintiffs' counsel, and perform such other duties as the Interim Lead Class Counsel deem necessary or as authorized by further order of the Court; and

k.   Work with plaintiffs' Liaison Counsel to ensure that all plaintiffs' counsel are kept informed of the progress of this litigation as necessary.

As set forth below, Co-Lead Class Counsel have performed all of these duties during the course of this litigation.

31.   This Court partially stayed discovery from the outset on September 25, 2007 (Doc. No. 306), because of a pending criminal investigation by the DOJ. Direct Purchasers were not allowed access to the documents the Defendants had produced to the DOJ, and were not allowed to take any depositions, exchange initial disclosures, or propound any discovery requests regarding the conspiracy's operations, participants, and effects. Direct Purchasers were only permitted to propound limited interrogatories to determine the amount of Defendants' sales, and to identify their officers and executives.

32.   On September 25, 2007, in its Pretrial Order No. 5 (Doc. No. 301), the Court set

November 5, 2007 as the last day for Direct Purchasers to file their consolidated amended complaint.  The Court also set out parameters for the service of papers and pleadings, the parties' respective disclosures, discovery, and other pretrial matters. The parties were ordered to meet with Judge Smith no later than October 26, 2007 to discuss the status of the case and any outstanding issues or disputes.

33.     On October 22, 2007, the parties met with Judge Smith with respect to the matters specified in the Court's Pretrial Order No. 5.  Certain Defendants contended that service of process on Taiwanese Defendants could only be effectuated by means of letters rogatory.  Thus, Interim Liaison Counsel for both the Direct and Indirect Purchaser Plaintiffs presented the Court with requests for issuance of letters rogatory to the following Taiwanese Defendants:  AU Optronics; Chi Mei Corporation; Chi Mei Optoelectronics Corporation; Chunghwa Picture Tubes; and HannStar Display Corporation.  Judge Smith found it appropriate to issue the letters rogatory in the form requested by Plaintiffs' Liaison Counsel.

34.     On October 30, 2007, the Court issued an order granting Direct Purchasers' request for the issuance of letters rogatory for the purpose of effecting service on the Defendants listed in the preceding paragraph.  Effectuating service on all of the Taiwanese Defendants was a lengthy and time consuming process that took several months to complete.

35.     On November 5, 2007, the Direct Purchasers filed their First Consolidated Complaint on behalf of all persons and entities that purchased TFT-LCD panels or products containing a TFT-LCD panel in the United States from the Defendants, and subsidiaries or affiliates thereof, or any co-conspirator.  In their complaint, Direct Purchasers allege a horizontal conspiracy among Defendants to raise, fix, maintain and stabilize artificially the price of TFT-LCD panels from January 1, 1996 through December 31, 2006, in violation of Section 1 of the Sherman Act.  The named Plaintiffs are eleven corporations located throughout the United States that purchased TFT-LCD panels and products during the class period.

**B.      Document Production and Review**

36.     On December 7, 2007, the Court entered a Stipulated Protective Order (Doc. No. 408).  The protective order was the result of protracted negotiations between counsel for

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

Defendants and Co-Lead Class Counsel in November and early December of 2007.

37.     On May 27, 2008, the Court entered a stipulated order providing for the phased lifting of the discovery stay.  This stipulation and order resulted from extensive, time-consuming negotiations among Co-Lead Class Counsel, the DOJ, and Defendants.  The DOJ expressed its preference for an indefinite stay, but eventually agreed to negotiate a mutually agreeable arrangement for the civil and criminal cases to proceed concurrently.

38.     On February 26, 2008, pursuant to stipulation between the parties, the Court entered an Order Regarding Preservation of Documents (Doc. No. 494).  The stipulation was the result of meet and confer efforts between Co-Lead Class Counsel and counsel for Defendants regarding issues in dispute concerning preservation and production of electronically stored information ("ESI") and other documents.  The Order modified the Court's previous order regarding preservation of documents and allowed the parties to resume ordinary document retention practices effective January 1, 2008.  The Court ordered the parties to continue to preserve all ESI and other documents that they had preserved to date, and to promptly exchange initial requests for production; however, the parties' obligation to respond to the initial requests for production or to produce documents in response to such requests remained stayed pursuant to the Court's stay order of September 25, 2007.  The Court also ordered the parties to promptly meet and confer regarding their initial requests for production of documents, preservation practices and electronic systems, with a view to identifying and resolving or narrowing any issues regarding preservation, search, and production of documents in litigation.

39.     Upon the expiration of the discovery stay, Defendants began producing documents to Direct Purchasers that they had produced to the DOJ and/or the grand jury.  The Defendants' document productions have since occurred on a rolling basis.  At the inception of this case, Co-Lead Class Counsel knew that Defendants' documents would be critical in helping Direct Purchasers establish their claims.  The document review required careful and advanced planning to insure that analysis of the documents was completed in the most efficient manner possible.  Failing to build efficiencies into the review process would have made the monumental task of reviewing 7,927,892 documents, consisting of 40,252,422 pages, impossible.  With that in mind,

1   Co-Lead Class Counsel mapped out the document review plan early in the litigation. Document

2   review was complicated by the production of documents and ESI in multiple languages from

3   several Defendants, all containing different data sets, and each with their own complexities. As a

4   result of the meticulous development of the review platform and work flow, and the management

5   of 136 reviewers,[2] Co-Lead Class Counsel were able to identify and utilize the best documents

6   produced.

7         40.     The first step in developing the document review protocol necessitated analyzing

8   and understanding Defendants' ESI. Co-Lead Class Counsel conducted several ESI meetings with

9   each Defendant. Co-Lead Class Counsel retained a technical consultant to assist us in identifying

10   and handling the several layers of complexity involved in each of the Defendants' ESI. The

11   protocol was critical to the case because it established a uniform format for the production of ESI,

12   and required the parties to produce essential metadata along with their ESI, which enabled the use

13   of complex searching to assist in establishing Direct Purchasers' claims. These ESI meetings

14   eventually culminated in a negotiated process by which ESI was produced and handled amongst

15   the parties. *See* Pretrial Order No. 5: Case Management, ¶ 9 (Doc. No. 307).

16         41.     From June 2008 until December 2008, Co-Lead Class Counsel and counsel for the

17   Indirect Purchaser Plaintiffs transmitted requests for proposals and interviewed approximately

18   eight on-line document review hosting companies. We knew it was imperative to retain a vendor

19   that employed state of the art technology to handle the large volume of documents to be produced

20   by Defendants and that had the processing power to conduct simultaneous complex searches and

21   seamlessly integrate foreign language documents into the review platform, as discussed in detail

22   below. The foreign language component of the document review platform was important as Co-

23   Lead Class Counsel knew that Defendants were producing documents in multiple Asian languages

24   and that the ability to search these documents in their native language was the only efficient way

25

26

27   [2] At the height of the review process, Co-Lead Class Counsel utilized 136 reviewers at one time. This number fluctuated based upon the demands of the litigation.

28

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

1  to conduct a careful and targeted analysis.  After several meetings and demonstrations of the top

2  document review vendors, in December 2008 Co-Lead Class Counsel and counsel for the Indirect

3  Purchaser Plaintiffs executed a contract with Autonomy to host the on-line document review.

4       42.     Co-Lead Class Counsel then focused on developing the review platform and

5  process.  This was not a typical document review in which simple key word searches were run

6  against a database and reviewers simply turned pages looking for relevant documents.  Rather, Co-

7  Leads designed and implemented a system to identify the best documents relating to all facets of

8  the litigation simultaneously.  For example, Co-Lead Class Counsel organized discrete review

9  teams tasked to analyze documents relating to depositions, class certification, and numerous

10  merits issues.  These teams focused on their particular assignments but also coded for other critical

11  portions of the litigation.  If an attorney reviewer marked a document as interesting, it would then

12  automatically move up the chain for review by a more senior attorney.  This process insured that

13  the best documents got into the hands of Co-Lead Class Counsel to effectively prosecute the case.

14  Moreover, the cross-training of the attorney review team enabled Co-Lead Class Counsel to

15  quickly shift resources to adjust for the demands of the litigation.

16       43.     From December 2008 through March 2009, Co-Lead Class Counsel assigned

17  attorneys from other firms to assist in the review process.  Co-Lead Class Counsel provided these

18  attorneys with detailed memoranda regarding the theory of the case, the existing facts and

19  evidence supporting that theory, and other materials necessary to prepare them for the document

20  review.  These attorneys were then trained by Co-Lead Class Counsel and Autonomy personnel to

21  utilize the custom on-line review platform designed specifically for this case.

22       44.     Management of the document review required the daily commitment of two

23  partners, one from each of the two Co-Lead Class Counsel firms.  The day to day adjustments to

24  allocation of staffing, searching and assigning documents, and conducting quality control was a

25  vital component to the success of the review.

26       45.     Although the ESI protocols were negotiated and agreed upon by the parties, Co-

27  Lead Class Counsel experienced numerous issues relating to loading data into the Autonomy

28  database.  While the majority of these issues were technical in nature, they required extensive

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

1  meet and confers with Defendants and Autonomy to make sure that the data could be properly

2  integrated into the system to insure that all documents produced by Defendants were searchable

3  and reviewable by Co-Lead Class Counsel.  By way of example, due to the ongoing quality

4  control, Co-Lead Class Counsel identified issues with Chi Mei's production and secured Chi

5  Mei's agreement to produce replacement data.  This resulted in updating 728,000 TIFF images,

6  41,000 native files, and 1.1 million text files.  The significance of remaining diligent in the data

7  loading process ensured that all documents were fully capable of being searched and reviewed in

8  the Autonomy platform.

9      46.    The foreign language documents were not produced with any particular coding to

10  identify the language contained in the document.  Further, Autonomy did not have the technology

11  to automatically identify foreign language documents.  Co-Lead Class Counsel developed a

12  methodology to identify, segregate, and assign these documents to attorneys who were fluent in

13  the given language.  This methodology required running numerous complex searches across the

14  entire database.  Each search was further refined based upon the search results.

15      47.    Next, Co-Lead Class Counsel assembled a team of foreign language speaking

16  attorneys to review the documents produced in Japanese, Chinese, and Korean.  Utilizing the

17  foreign language search capability developed for this case, Co-Lead Class Counsel were able to

18  filter through the foreign documents based upon discrete searches.  Approximately 1,483,701

19  foreign language documents were identified by the review team and approximately 701,420 of

20  those were reviewed substantively by the foreign language team.  Co-Lead Class Counsel worked

21  with the foreign language reviewers and analyzed the documents to determine whether a certified

22  translation was needed for use in depositions.  When necessary, we would coordinate with

23  translation companies to obtain certified translations of key documents to be used as deposition

24  exhibits.  We would then arrange for the certified translated documents to be imported back into

25  the Autonomy system and related to the original document for future use and analysis.

26      48.    Because most Defendants refused to voluntarily provide the document translations

27  in their possession, Plaintiffs' Counsel have spent considerable time, effort, and expense to locate,

28  prioritize and translate Defendants' relevant documents.  Plaintiffs' Counsel have paid substantial

1    sums to third-party translation agencies for such translations, many of which have been marked in

2    the depositions taken.  Moreover, where Defendants had indices of their productions to the DOJ,

3    they refused to give them to Direct Purchasers.

4    49.    In July 2009, Co-Lead Class Counsel began negotiating a contract with LexisNexis

5    to utilize their CaseMap suite of software to become a repository for all of the key documents,

6    deposition transcripts, exhibits, and attorney work product in the litigation.  Co-Lead Class

7    Counsel built a bridge between the Autonomy and CaseMap systems to enable the exchange of

8    documents and attorney work product between the two discrete platforms.  Co-Lead Class

9    Counsel then trained senior level attorneys, who worked as supervisors in Autonomy, to work in

10   CaseMap on a variety of projects, including the creation of tables relating to facts, witnesses,

11   documents, events (such as crystal meetings), and other critical components in the case.  This

12   enabled Co-Lead Class Counsel to manage and utilize the data from the Autonomy document

13   review and CaseMap coding to respond to Defendants' voluminous contention discovery, oppose

14   Motions for Summary Judgment, and prepare for settlement discussions.

15   50.    This case presented some of the most challenging document review issues Co-Lead

16   Class Counsel have faced in all of their combined years of practicing law.  The use of cutting edge

17   technology, coupled with the assistance of counsel performing not only document review but

18   careful analysis of the over 40 million pages of documents produced by Defendants, enabled Co-

19   Lead Class Counsel to prosecute this case in a fashion resulting in the extraordinary result

20   achieved herein.

21   C.    **Written Discovery Propounded by Direct Purchasers and Served by Defendants**

22   51.    Direct Purchasers have served comprehensive discovery requests on Defendants

23   that were the result of weeks of drafting and analysis.  Direct Purchasers served Defendants with

24   56 sets of interrogatories, 15 sets of requests for admission and 113 sets of requests for document

25   production.  Direct Purchasers also conducted three written depositions consisting of 757

26   deposition questions.  Co-Lead Class Counsel were forced to undertake repeated efforts to enforce

27   these requests, prevailing on motions by Defendants to stay or delay discovery of both liability

28   and damages evidence.  In response to written discovery, Co-Lead Class Counsel learned of the

1  key people involved in or knowledgeable about Defendants' illegal cartel activity, and obtained

2  critical evidence supporting Direct Purchasers' claims.

3       52.     Direct Purchasers have also responded to many fact and contention discovery

4  requests served by Defendants.  Responding to these requests with evidence gleaned from the

5  evidence to support Direct Purchasers' claims involved weeks of work and detailed analysis.

6  During the course of this litigation Defendants have propounded on Direct Purchasers 31 sets of

7  interrogatories, 13 sets of requests for admissions and 31 sets of requests for document production.

8  Direct Purchasers performed extensive research to locate responsive information and spent a

9  substantial amount of time organizing their responses in the manner prescribed in the Special

10 Master's November 3, 2010 Order re Motion for Protective Order by Direct Purchaser Plaintiffs re

11 Contention Discovery Requests Served by Certain Defendants. Where Defendants were

12 dissatisfied with Direct Purchasers' discovery responses, Direct Purchasers met and conferred with

13 Defendants and, in some instances, provided Defendants with supplemental responses.

14      53.     Attached hereto as Exhibit B is a chart that lists all of the written discovery Direct

15 Purchasers propounded in this matter  Attached hereto as Exhibit C is a chart that lists all of the

16 discovery Defendants propounded in this matter.

17 **D.**    **Depositions Taken and Defended**

18      54.     More than 130 depositions have been taken to date, of which 50 took place in San

19 Francisco, 40 elsewhere across the country, and 41 outside of the United States. 113 of these

20 depositions were of Defendants' witnesses, 14 were of the Direct Purchaser Class Representatives,

21 and 4 of Direct Purchasers' experts. Plaintiffs' Counsel either attended, defended, or took the lead

22 position for 110 of these depositions. The depositions described have yielded more than 3300

23 deposition exhibits and required more than 160 days to complete in total. Details for each of these

24 depositions, including the identity of the witness, date and span of the deposition, role of

25 Plaintiffs' Counsel during the deposition, and location of the deposition, are summarized in the

26 charts attached hereto as Exhibit D (Depositions of Defendants' Witnesses), and Exhibit E

27 (Depositions of Direct Purchasers' Witnesses).

28      55.     In addition to merits depositions, many depositions of Defendants were taken under

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

1    Rule 30(b)(6) in February and March of 2009.  Plaintiffs' Counsel traveled on several occasions to

2    Taiwan, South Korea, China and Hawaii, and across the continental United States to take these

3    depositions.  Although many depositions were taken for the purposes of class certification, the

4    depositions resulted in key evidence supporting Direct Purchasers' claims, including evidence of

5    antitrust impact that will be valuable to Direct Purchasers at trial.  For example, deposition

6    testimony established that the conspiracy was relatively easy to implement and enforce, given the

7    standardization of pricing practices among Defendants, including centralized decision-making, set

8    price floors and pricing formulas.  Some of this evidence has been submitted to the Court in

9    support of Direct Purchasers' oppositions to the motions for summary judgment filed by

10   Defendants, discussed below.

11   **E.**     **Defendants' Motions to Dismiss and Discovery Disputes**

12          56.     In March of 2008, certain Defendants filed motions to dismiss the Direct

13   Purchasers' Consolidated Amended Complaint. The Court issued orders which modified the

14   briefing schedule for the motions, enabling Direct Purchasers to conduct limited jurisdictional

15   discovery for the purpose of opposing the motions to dismiss.

16          57.     On August 25, 2008, the Court granted and denied in part the first wave of motions

17   to dismiss (Doc. No. 666).   The Court concluded that Direct Purchasers' consolidated complaint

18   met the standard enunciated in *Twombly* because it alleged parallel conduct in addition to a

19   number of other facts plausibly suggesting an agreement to fix prices.  However, the Court agreed

20   that the complaint lacked sufficient allegations specific to each Defendant, and therefore granted

21   the motions in that respect with leave to amend.  The Court found that the Direct Purchasers had

22   sufficiently alleged antitrust standing and fraudulent concealment, such that it was inappropriate to

23   dismiss any claims as time-barred.

24          58.     While these initial motions to dismiss were pending, Direct Purchasers and

25   Defendants held various calls, meetings and conferences in order to "meet and confer" over

26   conflicting interpretations of the limits on document discovery set forth in the Court's Stay Order

27   of September 25, 2007.  The parties were unable to reach agreement on several items.  On May 15,

28   2008, Judge Smith issued an Order Clarifying Discovery Limits Allowed Under Court's Stay

Order Dated September 25, 2007 (Doc. No. 618).

59.     On October 10, 2008, the Court issued an Order Regarding Procedures Governing Expert Discovery.  The Order was pursuant to stipulation which was the result of negotiations among counsel regarding the timing and parameters of expert witness discovery.

60.     On October 21, 2008, Judge Smith presided over a discovery status conference to discuss a proposed new pre-trial schedule and the location at which depositions of the Rule 30(b)(6) witnesses for certain Defendants would take place.  A new pre-trial schedule was proposed by all parties due to the lengthy delays that occurred due to the discovery stay, as well as numerous disputes that had arisen between the parties.  The disagreement over the location of the Rule 30(b)(6) depositions was between Direct Purchasers and certain Japanese Defendants.  Both sides briefed the matter and argued orally.  On November 10, 2008, Judge Smith concluded that the depositions should take place in the United States and that the Direct Purchasers should pay reasonable travel and subsistence expenses for the deponents only.   The Court entered an order on November 19, 2008, affirming the Special Master's recommendation and approving the revised pre-trial schedule.

61.     On November 24, 2008, Toshiba filed a petition for writ of mandamus in the Ninth Circuit.  Toshiba requested a stay of all discovery directed at Toshiba until the District Court found that Direct Purchasers had filed a complaint that satisfies the pleading requirements set forth in *Twombly*.  Toshiba also moved this Court to stay discovery pending the Ninth Circuit's resolution of their writ.  The Direct Purchasers opposed the motion and filed an opposition thereto.  On December 5, 2008, this Court denied the motion to stay (Doc. No. 125).

62.     On December 15, 2008, the Ninth Circuit granted Toshiba's emergency motion to stay all discovery directed at Toshiba pending ruling on their petition for writ of mandamus.

63.     On December 18, 2008, the parties participated in a lengthy in-person hearing with Judge Smith in order to reach resolution on some remaining discovery requests. The parties submitted letter briefs to Judge Smith, who  issued an order on January 13, 2009, ruling on the disputed requests (Doc. No. 787).

64.     On December 29, 2008, Direct Purchasers opposed the writ petition filed by

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

Toshiba, noting, *inter alia*, that an amended consolidated complaint had been filed on December 5, 2009 naming the Toshiba entities as Defendants, and pointing out that the District Court has the discretion to order discovery to proceed following the granting of a motion to dismiss with leave to amend. On January 28, 2009, the Ninth Circuit denied Toshiba's petition for writ of mandamus.

65. On February 27, 2009, the Court heard oral argument on Defendants' motions to dismiss the Direct Purchasers' First Amended Consolidated Complaint. Defendants argued that the complaint did not adequately allege each Defendant's participation in the alleged conspiracy, and that the case should be limited to the 2001-2006 time period, the same period covered by the related criminal pleas. Notwithstanding the fact that they had entered guilty pleas to felony violations of 15 U.S.C. § 1, Defendants LG Display Co. Ltd., LG Display America, Inc. and Sharp Corporation joined in the motions to dismiss for failure to meet the pleading requirements of the Federal Rules of Civil Procedure. Direct Purchasers concurrently sought leave to amend to file a second amended consolidated complaint to add a new plaintiff, Texas Digital Systems, Inc.

66. On March 3, 2009, the Court issued its order denying the Defendants' motions to dismiss the Direct Purchasers' First Amended Complaint. The Court found, *inter alia*, that the complaint more than adequately alleged the involvement of each Defendant and put the Defendants on notice of the claims against them. Moreover, the Court found that the complaint sufficiently alleged anticompetitive conduct during the 1996-2001 time period and therefore did not limit the class period at that stage in the litigation. (Doc. No. 870). The Court also ordered the Direct Purchasers to file their amended complaint by March 13, 2009. *Id.*

67. On March 3, 2009, the Court issued a separate order on Defendant Tatung Company of America's Motion to Dismiss. The Court denied the motion for the reasons described above. The Court also rejected Tatung's argument that Direct Purchasers were indirect purchasers under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

**F.** **Class Certification**

68. On April 3, 2009, Direct Purchasers filed their motion for class certification (Doc.

No. 933).   The moving papers, accompanying declarations, and proposed order comprised in excess of 1,400 pages.  Direct Purchasers' motion included over 86 exhibits, most of which was obtained either through depositions and/or extensive searches of documents.  Defendants filed numerous oppositions to the class certification motion, comprising over 680 pages and 87 exhibits. (Doc. Nos. 1077, 1081).  Direct Purchasers replied to the various oppositions, again comprising numerous pages and extensive legal argument.  (Doc. No. 1214).  Hearings on the class certification motion involved extensive oral argument by Co-Lead Class Counsel and Defense Counsel, followed by supplemental briefing and expert reports.

69.     The motion for class certification was hard fought.  In addition to establishing the requirements for class certification under Federal Rule 23, Direct Purchasers addressed and prevailed on the arguments proffered by Defendants in opposition to class certification, including: that plaintiffs who purchased TFT-LCD products cannot represent class members who purchased TFT-LCD panels (which the Court addressed by certifying two separate classes); Defendants' assertion that purchasers of finished products face unique *Illinois Brick* defenses, rendering those plaintiffs atypical; and, Defendants' contention that some purchasers of TFT-LCD products would face a jurisdictional defense under the Foreign Trade Antitrust Improvement Act ("FTAIA") not faced by certain purchasers of TFT-LCD panels, thus allegedly presenting typicality problems. Co-Lead Class Counsel fought hard to prevail at the class certification stage and to overcome the various arguments posed by Defendants.

70.     On March 28, 2010, the Court certified the two Direct Purchaser classes, one for panels and the other for finished products.  Those classes are defined as:

> All persons and entities, who, between January 1, 1999 and December 31, 2006, directly purchased a TFT-LCD panel from any defendant or any subsidiary thereof, or any named affiliate or any named co-conspirator.  Specifically excluded from the Class are Defendants; the officers, directors, or employees of any defendant; the legal representatives and heirs or assigns of any defendant; and the named affiliates and co-conspirators.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

> All persons and entities who, between January 1, 1999 and December 31, 2006 directly purchased a television, computer monitor, or notebook computer

containing a TFT-LCD panel, from any defendant or any subsidiary thereof, or any named affiliate or any named co-conspirator. Specifically excluded from the Class are Defendants; the officers, directors, or employees of any defendant; the legal representatives and heirs or assigns of any defendant; and the named affiliates and co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

The Court also appointed the Class Representatives and designated PSWP and LCHB as Co-Lead Class Counsel for the Direct Purchasers.

71.     Certain Defendants then appealed class certification. On June 17, 2010, the Ninth Circuit denied Defendants' Rule 23(f) petition for review.

72.     On July 16, 2010, the Court issued an order denying Defendants' Motion for Leave to File a Motion to Reconsider the Court's Class Certification Orders in Light of *Dukes v. Wall Mart* (Doc. No. 1882). The Court ruled that reconsideration was not warranted, because the Court conducted a rigorous analysis to ensure that all of the prerequisites of Rule 23 have been satisfied, and that Direct Purchasers' experts had sufficiently shown that antitrust injury could be shown on a class-wide basis.

73.     On September 27, 2010, the Court issued an Order re Class Notice for Direct Purchaser Plaintiffs (Doc. No. 2057) which resolved issues pertaining to the notice to the Direct Purchaser Classes.

74.     Direct Purchasers issued notice to Class Members on November 5, 2010. The opt-out period closed on January 4, 2011, with numerous direct purchasers opting out and filing direct actions. It is estimated that 90% of the panel purchasers and 50% of the finished product purchasers opted out of the Direct Purchaser classes. *See* Direct Purchaser Class Plaintiffs' Notice of Class Member Exclusions (Doc. No. 2384).

**G.     Motion to Compel Arbitration and Dismiss**

75.     On March 8, 2011, long after the motions to dismiss were decided and even after the classes had been certified, certain Defendants made a Motion to Stay Direct Purchaser Plaintiffs' Claims That Are Subject to Arbitration and to Dismiss Direct Purchaser Plaintiffs' Claims That Are Subject to Litigation in a Foreign Court (Doc. No. 2529). As originally

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

fashioned, the motion seemed to argue that the entire Direct Purchaser case should be stayed, and Class Members with contracts containing arbitration provisions should be compelled to arbitrate. In light of the *Concepcion* decision which came out during the time that this motion was pending, this motion presented a real risk of derailing the Direct Purchasers' case.  Direct Purchasers opposed the motion.  (Doc. No. 2597.)  The Court denied the motion, but found that Defendants had not waived their right to arbitrate against unnamed Class Members (Doc. No. 2731). The Court gave Defendants until June 3, 2011 to (1) produce a comprehensive list of every Class Member against which Defendants would move to compel arbitration; (2) identify every arbitration agreement that they intended to assert against unnamed members of the Direct Purchaser Class; and (3) file an omnibus motion to compel arbitration regarding each Plaintiff listed.  *Id.*  Defendants did not file such a motion.

**H.     Additional Discovery Issues and Disputes**

76.     While the motion for class certification was pending, various other issues arose. On May 13, 2009, after briefing by the parties and submission of competing proposed orders to the Special Master, Judge Smith issued recommendations regarding the number of depositions that would be permitted in this litigation.  The Special Master ruled, *inter alia*, that Direct Purchasers and Indirect Purchasers may depose up to 100 percipient witnesses as part of the joint, coordinated discovery in this case, with a maximum of 12 depositions for any single defendant group.  This limitation was presumptive and did not include Rule 30(b)(6) depositions, depositions of third parties, depositions of experts, or depositions of records custodians regarding authentication of documents.

77.     During this time period, Direct Purchasers also obtained information and documents from third-party sources and consulted with experts.

78.      On May 19, 2009, the Court denied Direct Purchasers' motion to compel the amnesty applicant to comply with the Antitrust Criminal Penalty Enhancement and Reform Act (ACPERA), but noted it would take into account after a trial the applicant's amount of cooperation (Doc. No 128).

79.     On August 12, 2009, the parties appeared at a hearing before the Special Master regarding the responses of the Toshiba Defendants to Direct Purchasers' Interrogatories Re Witness Identification.  On September 9, 2009, the Special Master issued an Order Re Direct Purchaser Plaintiffs' Motion to Compel Responses to Witness Interrogatories.  (Doc. No. 1247). Among other things, the Special Master found that:  " . . . Toshiba defendants' ambiguous answers may defeat the purpose of the limits on depositions previously ordered."  *Id.*  The Special Master therefore ordered that plaintiffs shall be authorized to depose various witnesses identified by Toshiba; and that, should any of those depositions turn out to be irrelevant, they shall be stricken from the record and not count against the presumptive deposition limits established by the Court's prior order.  The depositions were ordered to occur in the United States.  Toshiba was ordered to pay all reasonable costs associated with any depositions that are deemed stricken and to bear all costs of any successful motion to strike the subject depositions.

80.     On September 2, 2009, the Special Master heard the Plaintiffs' Motion to Enforce the Stipulated Protocol Governing the Production of Electronically Stored Information ("ESI Protocol") and to compel Defendants LG Display Co., Ltd and LG Display America, Inc. to produce "multi-page searchable text (.TXT) files" for all ESI as required by the ESI Protocol.  The Special Master found that there was ambiguity in the ESI Protocol regarding whether the requirement that all documents are to be provided with multi-page searchable text (.TXT) files applied to MS-Excel spreadsheets and MS-Access databases.  The Special Master therefore found that LG Display's offer of compromise to produce extracted-text files for Word documents and e-mails but to produce Power Point and Excel documents only in native format was reasonable.

81.     The above-described discovery disputes and issues are only a sampling of what has transpired in this case.  Co-Lead Class Counsel have performed extensive factual investigation and economic analysis surrounding Direct Purchasers' claims, requiring millions of dollars of attorney time and massive out-of-pocket expenses. Co-Lead Class Counsel have participated in multiple hearings on discovery matters before the Court and the Special Masters.

82.     Since the inception of this case, the Court has held 3 teleconferences and 30 hearings dealing with the management of and issues presented by the Direct and Indirect

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

Purchaser Plaintiff actions, as summarized on the attached chart. In addition to proceedings before the Court, the appointed Special Masters have issued 49 reports, recommendations, orders, or proposed orders impacting the Direct and Indirect Purchaser Plaintiff actions, as summarized on the attached charts.  Attached hereto as Exhibit F is a chart showing all of the hearings and conferences with the Court.  Attached as Exhibit G is a chart showing all of the reports, orders, or proposed orders issued by the Special Masters in this case.

## I.      **Expert Discovery**

83.     As the Court is aware, thorough expert analysis is necessary to prevail in complex antitrust litigation.  Here, Plaintiffs' Counsel retained and conducted significant work with class and liability experts and consultants to prosecute this case.  Plaintiffs' Counsel have advanced substantial fees and expenses to their experts and consultants for analysis of the global TFT-LCD market, the TFT-LCD price-fixing conspiracy, and the impact of the price-fixing conspiracy on Class Members.  Working with experts has entailed hundreds of hours of attorney time as well. Experts had to be prepared for depositions, were consulted on damages and liability theories, and helped Plaintiffs' Counsel to understand economic principles that drove the TFT-LCD market.

84.     Dr. Kenneth Flamm prepared a series of expert reports regarding Direct Purchaser Plaintiffs' Motion for Class Certification, requiring extensive time and effort. Dr. Flamm's April 3, 2009 expert report required the review of 18 pleadings, transcripts, and reports, 73 publicly available documents, and 143 documents produced by Defendants. The finished report totaled nearly 140 pages in length, and included 28 exhibits. Dr. Flamm's Reply Report, dated August 19, 2009, required the review of 13 pleadings, transcripts, and reports, 50 publicly available documents, and 168 documents produced by Defendants. The finished Reply Report totaled more than 140 pages in length, and included 24 exhibits.  Dr. Flamm also produced a Sur-Reply Report, dated October 16, 2009, which required the review of 3 pleadings and reports, and 17 publicly available documents. The finished Sur-Reply Report totaled more than 30 pages in length, and included 2 exhibits.

85.     Direct Purchasers and Defendants have also completed the exchange of expert reports for liability purposes.  Direct Purchasers served initial liability expert reports from Dr. Ed

Leamer, Dr. Ken Flamm, and Dr. Adam Fontecchio on May 25, 2011.  All three of Direct

Purchasers' experts have been deposed.  Dr. Flamm was deposed on June 24, 2011.  Dr.

Leamer was deposed on July 8, 2011.  Dr. Fontecchio was deposed on August 3, 2011.  On July

22, 2011, Defendants served the rebuttal reports of their experts, Dr. Dennis Carlton and Dean

Edward Snyder.  On July 27 and 28, 2011, Defendants served the rebuttal reports of Kenneth

Werner and Dr. Barry Harris.  Direct Purchasers took the depositions of Defendants' experts as

follows:  Dean Snyder on August 9, 2011; Dr. Carlton on August 17, 2011;  Mr. Werner on

August 18, 2011; Dr. Harris on August 19, 2011.  Direct Purchasers served reply reports for Dr.

Leamer and Dr. Flamm on August 22, 2011.  Defendants served sur-rebuttal reports for Dr. Harris

on September 9, 2011; Dr. Carlton on September 12, 2011; and Mr. Snyder on September 13,

2011.

      86.      The expert reports submitted in this case are voluminous in size and extensive in

detail.  Dr. Kenneth Flamm's May 25, 2011 expert report required the review of 33 pleadings,

transcripts, and reports, 137 publicly available documents, and 679 documents produced by

Defendants.  The finished report totaled nearly 200 pages in length, and included 35 exhibits.  Dr.

Flamm also produced a Reply Report, dated August 29, 2011, which required the review of 30

pleadings, transcripts, and reports, 43 publicly available documents, and 61 documents produced

by Defendants.  The finished Reply Report totaled more than 60 pages in length, and included 1

exhibit.  The May 25, 2011 expert report of Dr. Edward Leamer required the review of 14

pleadings, transcripts, and reports, 145 publicly available documents, and 602 documents

produced by Defendants.  The finished report totaled more than 200 pages in length, and included

42 exhibits.  Dr. Leamer also produced a Reply Report, dated August 29, 2011, which required the

review of 7 pleadings, transcripts, and reports, 14 publicly available documents, and 21 documents

produced by Defendants, and the technical specifications for 1064 LCD finished product models.

The finished Reply Report totaled nearly 80 pages in length, and included 1 exhibit.  The expert

report of Dr. Adam Fontecchio required the review of 32 pleadings, transcripts, and reports, 25

publicly available documents, and 131 documents produced by Defendants.  The finished report

totaled nearly 90 pages in length, and included 23 exhibits.  Dr. Fontecchio did not produce a

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

Reply Report.

**J.**     **Settlements**

87.     On April 14, 2010, the Court preliminarily approved a $10,000,000 settlement with Defendant Chunghwa Picture Tubes, Ltd.  The Court certified a settlement class which is defined as follows:

> All persons and entities who, between January 1, 1996 and December 11, 2006, directly purchased a TFT-LCD Product in the United States from any defendant or any subsidiary or affiliate thereof, or any co-conspirator listed in the Notice. Excluded from the Class are defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

For purposes of the Chunghwa Settlement Class only, "TFT-LCD Product" means TFT-LCD panels and all products containing TFT-LCD panels. The Court's Order appointed PSWP and LCHB as Class Counsel for the Settlement Class and Rust Consulting as the Claims Administrator.

88.     On October 6, 2010, the Court preliminarily approved a $7,000,000 settlement with Defendants Epson Imaging Devices Corporation and Epson Electronics America, Inc. (collectively "Epson") (Doc. No. 2078).  The Court certified a settlement class which is defined as follows:

> All persons and entities who, between January 1, 1999 and December 21, 2006, directly purchased a TFT-LCD Product in the United States from any defendant or any subsidiary or named affiliate thereof, or any named co-conspirator.  Excluded from the Class are defendants, their parent companies, subsidiaries, named affiliates, any named co-conspirators, all governmental entities, and any judicial officer presiding over this action and the members of his/her immediate family and judicial staff.

For purposes of the Epson Settlement Class only, "TFT-LCD Product" means TFT-LCD panels and televisions, computer monitors, and notebook computers containing TFT-LCD panels.  The Court's Order appointed Co-Leads as Class Counsel for the Settlement Class and Rust Consulting as the Claims Administrator.

89.     On November 5, 2010, a joint Notice was published and mailed to notify Class members of the Chunghwa and Epson settlements and the certified litigation classes, with the opt-out period set to expire on January 4, 2011.  On February 17, 2011, the Court granted final approval of the Chunghwa and Epson settlements (Doc. Nos. 2476 and 2475).

90.     On October 3, 2011, the Court preliminarily approved settlements with Defendants Chimei Innolux Corporation, Chi Mei Corporation, Chi Mei Optoelectronics Corporation; CMO Japan Co., Ltd., Chi Mei Optoelectronics USA, Inc., Nexgen Mediatech, Inc., and Nexgen Mediatech USA, Inc. ("Chimei"); HannStar Display Corporation; Hitachi, Ltd., Hitachi Displays, Ltd., and Hitachi Electronic Devices (USA), Inc. ("Hitachi"); LG Display Co. Ltd. and LG Display America, Inc. ("LG Display"); Mitsui & Co. (Taiwan), Ltd. ("Mitsui"); Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Semiconductor, Inc. ("Samsung"); Sanyo Consumer Electronics Co., Ltd. ("Sanyo"); and Sharp Corporation ("Sharp") on October 3, 2011. (Doc. No. 3817).  Those settlements total $388,022,242.

91.     Settlement discussions in this case vis-à-vis the settling Defendants commenced as early as March of 2009.  Settlement discussions involving a mediator commenced pursuant to the Court's order that the first mediation session be completed by February 14, 2011. (*See* Order Re: Pretrial and Trial Schedule, Doc. No. 2165)  There was a preliminary mediation session in San Francisco conducted by Professor Eric D. Green on January 13, 2011.  Professor Green is the Co-Founder and Principal of Resolutions, LLC, a mediation, arbitration and ADR provider in Boston, MA, and is one of the most highly respected and competent mediators in the country.  All Defendants and all Plaintiffs—including Indirect Purchaser Plaintiffs and Direct Action Plaintiffs—attended the initial mediation session.  This process was very helpful in organizing this large, complex case for resolution.  The next sessions took place on February 15 and 16, 2011 in San Francisco. Thereafter, in March of 2011, a series of mediations occurred between Plaintiffs and specific Defendants.

92.     The negotiations which resulted in these settlements therefore consisted of mediation sessions, and multiple telephonic and face-to-face conferences as well as email messages on an arm's-length and non-collusive basis among counsel for Direct Purchasers and Defendants.  Part of the mediation process included the exchange of commerce information about panels and finished products in an effort to have an agreed upon basis to negotiate.  In some instances, the commerce numbers presented by Direct Purchasers and Defendants were relatively close, and in other situations they were far apart.  Counsel were assisted in this process by the

1    mediator, Professor Green, who was very effective in assisting the parties in coming to a fair and

2    equitable resolution of this matter despite the strong positions taken by counsel and their clients.

3            93.     The protracted settlement negotiations between Co-Lead Class Counsel and each

4    of the settling Defendants have been previously described in detail for the Court in my declaration

5    filed with the Court in support of Direct Purchasers' Motion for Preliminary Approval of

6    Settlements With Defendants Chimei, HannStar, Hitachi, LG Display, Mitsui, Samsung, Sanyo

7    and Sharp (Doc. No. 3407).  As the Court may recall, the settlement negotiations occurred over

8    many months, and in some cases years, with the individual Defendants.  They consisted of in-

9    person sessions, telephone calls and other communications conducted both with and without the

10   assistance of the mediator.  The mediation sessions occurred in San Francisco and in Boston,

11   Massachusetts.  These settlements were the result of hard-fought negotiations with both sides

12   holding firm on their respective positions.

13           94.     Subsequent to reaching settlements with each of the Settling Defendants, Co-Lead

14   Class Counsel were charged with drafting the Settlement Agreements, Class Notices and Claim

15   Form that were previously submitted to the Court with Direct Purchasers' motion for preliminary

16   approval of those settlements.  The drafting of these document took significant amounts of time

17   and effort on the part of Co-Lead Class Counsel.  Notably, each of the Settlement Agreements

18   requires the settling Defendants to continue to assist Direct Purchasers in the prosecution of their

19   case against the remaining Defendants.

20           95.     On October 4, 2011, the Court heard the Direct Purchasers' Motion for Preliminary

21   Approval of Direct Purchaser Class Settlements with Defendants Chimei, HannStar, Hitachi, LG

22   Display, Mitsui, Samsung, Sanyo and Sharp.  On that same day, the Court issued an order

23   preliminarily approving the settlements and approving the proposed forms of notice and claim

24   form (Doc. No. 3817).  The Court scheduled a Fairness Hearing on December 19, 2011 and

25   established November 28, 2011 as the deadline for Class Members to file written objections.

26           96.     Since the Preliminary Approval hearing, Co-Lead Class Counsel have been

27   working with the Claims Administrator to ensure that the notices are disseminated to the Class

28   Members and that the www.tftlcdclassaction.com website contains all necessary information

1   regarding the status of this case, the settlements that have been reached, and the process for

2   making a claim, including an on-line claim form.

3   **K.      Summary Judgment Motions**

4          97.      On September 8, 2011, the Toshiba Defendants filed Motions for Summary

5   Judgment in both the Indirect and Direct Purchaser actions, on the grounds that they claim not to

6   have participated in the conspiracy.  (Doc. No. 3581).  In their brief in the Direct Purchaser action,

7   Toshiba incorporated by reference the entire brief filed (by Sharp) in the Indirect Purchaser action.

8   Thus, in effect, Direct Purchasers had to respond to both. On September 14, 2011, the Toshiba

9   Defendants filed a Motion for Partial Summary Judgment Under *Illinois Brick*. (Doc. No. 3575).

10  In addition, also on September 14, Toshiba and AUO filed a joint Motion for Partial Summary

11  Judgment Regarding Production and Capacity.  (Doc. No. 3578).  Each of the Defendants'

12  motions either referenced, or incorporated by reference motions filed in the Indirect Purchaser

13  action, so Direct Purchasers' burden in responding was not limited to the motions filed in this

14  action.

15         98.      Direct Purchasers filed Opposition briefs on October 3, 2011.  (Doc. Nos. 3792,

16  3800, 3803).  The oppositions included extensive briefing, declarations, and literally thousands of

17  pages of exhibits, much of which was culled through review of the documents coded over the

18  course of the case.  The oppositions entailed hundreds of hours of work by attorneys and staff.

19         99.      The Defendants' reply briefs were filed on October 24, 2011.  (Doc. Nos. 3999,

20  4043, 4052).  The Motions for Summary Judgment will be heard by this Court on November 4,

21  2011 at 9:00 a.m.  Co-Lead Class Counsel will attend and present oral argument.

22  **L.      Trial**

23         100.     A trial against the non-settling Defendants is currently scheduled to begin on

24  February 13, 2012.  The criminal trial against defendant AUO and its executives was recently

25  continued by the Court and will begin on January 9, 2012.  Presumably, the Direct Purchaser trial

26  date will be continued to follow shortly after the completion of the criminal case.

27         101.     Substantial work will need to be completed in advance of trial, including:

28  preparing trial exhibits, preparing video from depositions for presentation at trial, writing and

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

responding to motions *in limine*, drafting proposed *voire dire* questions, jury instructions and verdict forms, identifying and preparing witnesses, addressing admissibility issues, and other matters.  Trial is anticipated to involve substantial time and expense.  Appeals may follow as well.

**M.**     **Class Representatives**

102.  The class representatives in this action devoted substantial amounts of time and energy to assisting in the prosecution of this matter.  Their help was essential to the success of this case.  The class representatives each participated in this action, and all are deserving of an incentive award.

103.  Plaintiff A.M. Photo & Imaging Center, Inc. participated in the action by, *inter alia*, preparing for and attending a one-day deposition, reviewing, preparing, and producing over 1939 pages of documents, preparing responses to over 110 interrogatories, and consulting extensively with Plaintiffs' Counsel regarding, *inter alia*, the preparation of complaints and class certification papers. In addition, A.M. Photo & Imaging, Inc. is prepared to present testimony at trial.

104.  Plaintiff CMP Consulting Services, Inc. ("CMP") participated in the action by, *inter alia*, preparing for and attending a one-day deposition, reviewing, preparing, and producing at least 5512 pages of documents, preparing responses to over 110 interrogatories, and consulting extensively with Plaintiffs' Counsel regarding, *inter alia*, the preparation of complaints and class certification papers.  CMP also submitted a verification for class certification.  In addition, CMP Consulting Services, Inc. is prepared to present testimony at trial.

105.  Plaintiff Crago, Inc. ("Crago") was the first-filed case in the country.  Crago was extremely important to our early understanding of the case, and the drafting of the Consolidated Amended Complaint.  The principal owner of Crago, Dave Allen, had operated the company and its predecessors since the 1970s, and had been a direct purchaser of many electronic components, including TFT-LCDs.  He had been to Korea to meet with Samsung sales and manufacturing people, and had a very deep understanding of the Asian manufacturers.  He continuously sent us materials and provided information to deepen our understanding of the case, and helped us write the research memo that was one of the bases for the Consolidated Amended Complaint.  Mr. Allen

34
MDL 3:07-md-1827 SI

1   gave an excellent deposition.  He has a tremendous level of personal involvement and

2   commitment to the case.  He is eager to testify at trial, and will make a good witness, especially

3   regarding the pretextual explanations for price increases that were given by the Defendants

4   throughout the class period.

5       106.    Plaintiff Home Technologies Bellevue, LLC ("HTB") prepared for and attended a

6   one-day deposition, reviewed, prepared, and produced over 1200 pages of documents, prepared

7   responses to over 110 interrogatories, and consulted extensively with Plaintiffs' Counsel regarding

8   the preparation of complaints and class certification papers. Executives from HTB met with

9   Plaintiffs' Counsel on at least five occasions and HTB is prepared to present testimony at trial.

10      107.    Plaintiff Nathan Muchnick, Inc. participated in the action by, *inter alia*, preparing

11  for and attending a one-day deposition, reviewing, preparing, and producing at least 265 pages of

12  documents, preparing responses to over 110 interrogatories, and consulting extensively with

13  Plaintiffs' Counsel regarding, *inter alia*, the preparation of complaints and class certification

14  papers. In addition, Nathan Muchnick, Inc. is prepared to present testimony at trial.

15      108.    Plaintiff Omnis Computer Supplies, Inc. participated in the action by, *inter alia*,

16  preparing for and attending a one-day deposition, reviewing, preparing, and producing documents,

17  preparing responses to over 110 interrogatories, and consulting extensively with Plaintiffs'

18  Counsel regarding, *inter alia*, the preparation of complaints and class certification papers. In

19  addition, Omnis Computer Supplies, Inc. is prepared to present testimony at trial.

20      109.    Plaintiff Orion Home Systems, LLC participated in the action by, *inter alia*,

21  preparing for and attending a one-day deposition, reviewing, preparing, and producing at least 75

22  pages of documents, preparing responses to over 110 interrogatories, and consulting extensively

23  with Plaintiffs' Counsel regarding, *inter alia*, the preparation of complaints and class certification

24  papers. In addition, Orion Home Systems, LLC is prepared to present testimony at trial.

25      110.    Plaintiff Royal Data Services, Inc. prepared for and attended a one-day deposition,

26  reviewed, prepared, and produced a comprehensive collection of accounting and purchase records,

27  prepared responses to over 110 interrogatories, and consulted regularly and extensively with

28  Plaintiffs' Counsel regarding the preparation of complaints, class certification papers and

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

1  additional responses to discovery. In addition, Royal Data is prepared to present testimony at trial.

2  111.    Plaintiff Texas Digital Systems, Inc. ("TDS") was the sole representative for the

3  entire sub-class of panel purchasers.  A substantial amount of what we know and will be able to

4  prove about those purchases comes from TDS.  Its CFO, Brian Gray, gave a long deposition that

5  comprehensively described the specification and purchasing processes.  Mr. Gray and the

6  President of TDS, Dennis Davidson, are both ready to testify at trial regarding their TFT-LCD

7  purchases from Sharp, and the explanations of price increases that were given to them.  TDS'

8  participation is a key to the recovery for panel purchasers.

9  112.    Plaintiff Univisions-Crimson Holding, Inc. ("UCH") prepared for and attended a

10  one-day deposition, in which two company representatives were deposed.  UCH also reviewed,

11  prepared, and produced over 11,000 documents from two locations (comprising more than 78,000

12  pages), prepared responses to over 110 interrogatories, assisted in analyzing and compiling

13  purchase records for more than 10,000 LCD purchases, and consulted extensively with Plaintiffs'

14  Counsel regarding the preparation of complaints, class certification papers, and settlements. In

15  addition, UCH is prepared to present testimony at trial.

16  113.    Plaintiff Weber's World Company participated in the action by, *inter alia*,

17  preparing for and attending a one-day deposition, reviewing, preparing, and producing documents,

18  preparing responses to over 110 interrogatories, and consulting extensively with Plaintiffs'

19  Counsel regarding, *inter alia*, the preparation of complaints and class certification papers. In

20  addition, Weber's World Company is prepared to present testimony at trial.

21  **N.    Fees and Costs Incurred by PSWP**

22  114.    I am familiar with the Court's Pretrial Order No. 3, entered on July 13, 2007 (Doc.

23  No. 224) which sets forth the record keeping requirements of Direct Purchaser Class Plaintiffs'

24  Liaison Counsel in this case; and, the requirement to submit to Liaison Counsel, on a monthly

25  basis, contemporaneously-prepared attorney and paralegal-time and expense reports and expense

26  records.  The time and expenses that have been reported to Liaison Counsel by my firm have

27  complied with the reporting requirements of the Court's Pretrial Order No. 3.

28  115.    The tasks which have been performed by my firm are described above.  The total

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

1    hours and lodestar reported by firm, at historical rates, is $21,739,658.25 and is summarized on

2    Exhibit H hereto.  All work reported by attorneys and paralegals on behalf of Direct Purchasers in

3    this matter was performed on a wholly contingent basis.  The historical rates set forth in Exhibit H

4    are the applicable hourly rates in effect at the time work was performed.  These rates are the same

5    rates charged to hourly clients.

6         116.    My firm incurred costs in multiple categories totaling $267,193.54.  A description

7    of the costs and the amounts is summarized in Exhibit I hereto.  These costs were incurred on

8    behalf of Direct Purchasers by my firm on a contingent basis, and have not been reimbursed.

9         117.    I have reviewed the time and expenses reported by my firm in this case which are

10   included in the Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards,

11   and I affirm that the they are true and accurate.

12        I declare under penalty of perjury under the laws of the United States of America that the

13   foregoing is true and correct.

14        Executed on October 28, 2011 at San Francisco, California.

15

16

17                                               _____/s/  Bruce L. Simon_____
                                                      BRUCE L. SIMON
18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

# EXHIBIT H

**Exhibit H**
**Re TFT-LCD (Flat Panel) Antitrust Litigation**
**Pearson, Simon, Warshaw & Penny, LLP.**
**Reported Hours and Lodestar Report thru 8/31/11**

| Name: | Total Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| **PARTNERS:** | | | |
| Clifford Pearson | 49.80 | $500.00 | $24,900.00 |
| Clifford Pearson | 76.60 | $650.00 | $49,790.00 |
| Clifford Pearson | 567.20 | $750.00 | $425,400.00 |
| Clifford Pearson | 507.10 | $780.00 | $395,538.00 |
| Clifford Pearson | 817.80 | $795.00 | $650,151.00 |
| Gary Soter | 3.20 | $500.00 | $1,600.00 |
| Gary Soter | 65.60 | $650.00 | $42,640.00 |
| Gary Soter | 0.50 | $750.00 | $375.00 |
| Daniel Warshaw | 47.00 | $500.00 | $23,500.00 |
| Daniel Warshaw | 81.80 | $550.00 | $44,990.00 |
| Daniel Warshaw | 844.30 | $650.00 | $548,795.00 |
| Daniel Warshaw | 1356.50 | $675.00 | $915,637.50 |
| Daniel Warshaw | 583.50 | $685.00 | $399,697.50 |
| Bruce Simon | 388.30 | $500.00 | $194,150.00 |
| Bruce Simon | 317.20 | $650.00 | $206,180.00 |
| Bruce Simon | 1735.50 | $750.00 | $1,301,625.00 |
| Bruce Simon | 1005.20 | $780.00 | $784,056.00 |
| Bruce Simon | 886.90 | $795.00 | $705,085.50 |
| **OF COUNSEL:** | | | |
| Alan Berg | 13.50 | $750.00 | $10,125.00 |
| Alan Berg | 411.25 | $650.00 | $267,312.50 |
| Alan Berg | 1161.00 | $660.00 | $766,260.00 |
| Alan Berg | 444.00 | $700.00 | $310,800.00 |
| Jonathan Watkins | 1007.35 | $455.00 | $458,344.25 |
| Jonathan Watkins | 381.00 | $625.00 | $238,125.00 |
| Jonathan Watkins | 119.40 | $650.00 | $77,610.00 |
| Jonathan Watkins | 599.40 | $660.00 | $395,604.00 |
| George Trevor | 0.30 | $650.00 | $195.00 |
| George Trevor | 0.20 | $700.00 | $140.00 |
| Robert Retana | 748.30 | $660.00 | $493,878.00 |
| Aaron Sheanin | 462.60 | $660.00 | $305,316.00 |
| **ASSOCIATES:** | | | |
| Esther Klisura | 168.90 | $350.00 | $59,115.00 |
| Esther Klisura | 128.40 | $425.00 | $54,570.00 |
| Esther Klisura | 1141.70 | $455.00 | $519,473.50 |
| Esther Klisura | 669.00 | $525.00 | $351,225.00 |
| Esther Klisura | 9.50 | $570.00 | $5,415.00 |
| Bobby Pouya | 69.90 | $350.00 | $24,465.00 |
| Bobby Pouya | 19.60 | $425.00 | $8,330.00 |
| Bobby Pouya | 1142.90 | $455.00 | $520,019.50 |

| | | | |
|---|---|---|---|
| Bobby Pouya | 1607.00 | $475.00 | $763,325.00 |
| Akane Tanaka | 66.50 | $90.00 | $5,985.00 |
| Akane Tanaka | 187.95 | $455.00 | $85,517.25 |
| Ashlei Vargas | 238.85 | $425.00 | $101,511.25 |
| Ashlei Vargas | 690.65 | $455.00 | $314,245.75 |
| Ashlei Vargas | 92.80 | $475.00 | $44,080.00 |
| Veronica Glaze | 429.80 | $355.00 | $152,579.00 |
| Veronica Glaze | 1849.80 | $365.00 | $675,177.00 |
| Veronica Glaze | 1566.40 | $375.00 | $587,400.00 |
| Alan Cyrlin | 1617.60 | $455.00 | $736,008.00 |
| Alan Cyrlin | 3210.90 | $545.00 | $1,749,940.50 |
| Alan Cyrlin | 1161.60 | $640.00 | $743,424.00 |
| Alex Turan | 273.70 | $455.00 | $124,533.50 |
| Jessica Grant | 340.60 | $625.00 | $212,875.00 |
| Jessica Grant | 2200.60 | $650.00 | $1,430,390.00 |
| William Newsom | 23.90 | $365.00 | $8,723.50 |
| William Newsom | 131.80 | $375.00 | $49,425.00 |
| Kyoko Yamada | 1142.50 | $455.00 | $519,837.50 |
| Katsuya Nishikawa | 1628.80 | $455.00 | $741,104.00 |
| Thomas Boardman | 876.80 | $375.00 | $328,800.00 |
| Brittany Kelley | 1232.80 | $375.00 | $462,300.00 |
| **PARALEGALS:** | | | |
| Natalie Halpern | 1.50 | $175.00 | $262.50 |
| Matthew Lusich | 84.80 | $125.00 | $10,600.00 |
| Matthew Lusich | 630.90 | $150.00 | $94,635.00 |
| Matthew Lusich | 1108.10 | $175.00 | $193,917.50 |
| Teri Harris | 30.70 | $125.00 | $3,837.50 |
| Lauren McAdams | 21.40 | $125.00 | $2,675.00 |
| Lauren McAdams | 9.90 | $150.00 | $1,485.00 |
| Alex Safyan | 7.00 | $175.00 | $1,225.00 |
| Steven Simon | 107.25 | $125.00 | $13,406.25 |
| | | | |
| **TOTALS** | 40605.10 | | $21,739,658.25 |

# EXHIBIT 5

1
2
3
4
5
6
7
8 **UNITED STATES DISTRICT COURT**

9 **NORTHERN DISTRICT OF CALIFORNIA**

10

11 IN RE: WARNER MUSIC GROUP CORP.          CASE NO. CV 12-0559-RS
DIGITAL DOWNLOADS LITIGATION

12                                          **[~~PROPOSED~~] ORDER AS MODIFIED BY
THE COURT GRANTING PLAINTIFFS'
MOTION FOR ATTORNEY FEES,
LITIGATION COSTS, AND INCENTIVE
AWARDS**

13

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Court, having reviewed Plaintiffs Kathy Sledge Lightfoot, Ronee Blakley, and Gary Wright's (collectively, "Plaintiffs") Motion for Attorneys' Fees, Litigation Costs, and Incentive Awards, the pleadings and other papers on file in this action, and the statements of counsel and the parties, hereby finds that Plaintiffs' motion should be GRANTED.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. For purposes of this Order, except as otherwise set forth herein, the Court adopts and incorporates the definitions contained in the Stipulation and Agreement of Settlement (Dkt. No. 96-1, Ex. A) ("Settlement Agreement").

2. The Court finds that Plaintiffs' requested fee award of $2,875,000 is fair and reasonable in light of the results obtained by Plaintiffs' counsel in this case; the risks and complex issues involved, and the skill and high-quality work required to overcome them; the burdens borne by counsel in pursuing this litigation on a pure contingency basis; and the range of awards made in similar cases. The Court finds that the requested fee award, which represents the Ninth Circuit's benchmark of 25% of the Fund created by the Settlement Agreement, comports with the applicable law and is justified by the circumstances of this case.

3. The Court has confirmed the reasonableness of Plaintiffs' fee request by conducting a lodestar cross-check. The Court finds that Plaintiffs' counsel's reasonable lodestar as of December 31, 2014, the date they filed their Supplemental Declaration in Support of Plaintiffs' Motion for Attorney Fees, Litigation Costs, and Incentive Awards was $1,995,780.50 based on their historical hourly rates, and $2,063,274.00 based on their current hourly rates. Accordingly, Plaintiffs' requested fee award represents a multiplier of 1.44 based on counsel's historical hourly rates and 1.39 based on their current hourly rates. This multiplier is within the range of multipliers awarded in similar complex class action cases and is well-justified here, given the novelty and difficulty of this litigation, counsel's skillful handling of the difficult factual and legal issues presented, the significant contingent risks in this case, and the quality of the result achieved.

4. The Court finds that Plaintiffs' counsel incurred a total of $97,429.54 in litigation costs and expenses in prosecuting this litigation as of December 31, 2014. The Court finds that

1  these costs and expenses were reasonably incurred in the ordinary course of prosecuting this case

2  and were necessary given the complex nature and nationwide scope of the case.  Accordingly, the

3  Court approves a payment to Plaintiffs' counsel in the amount of their total costs and expenses

4  incurred to reimburse them for such costs and expenses.

5       5.       Finally, the Court approves an incentive award of $10,000 each to current class

6  representatives Kathy Sledge Lightfoot, Ronee Blakley, and Gary Wright, and to former class

7  representatives Debra Sledge, Joan Sledge, and Kim Sledge Allen.  In *Radcliffe v. Experion

8  Information Solutions,* 715 F.3d 1157 (9th Cir. 2013), the Ninth Circuit instructed that making

9  incentive awards, while permissible when not conditioned on class representatives' support for the

10  settlement, "should not become routine practice."  They must be "scrutinize[d]" carefully, so that

11  they "do not undermine the adequacy of the class representatives."  715 F. 3d at 1160.  Plaintiffs'

12  application for incentive awards was carefully considered in light of these principles, and deemed

13  reasonable and justified given: (1) the risks—reputational, financial, and otherwise—faced by the

14  class representatives in bringing this lawsuit; and (2) the work performed and the active

15  participation in the litigation and settlement processes by the class representatives on behalf of

16  members of the class.

17       6.       The attorneys' fees, costs, and incentive awards set forth in this Order shall be paid

18  by Defendant Warner Music Group Corp. in accordance with the terms of the Settlement

19  Agreement.

20

21       **IT IS SO ORDERED.**

22

23  DATED:  January 12, 2015

24

25

26  Honorable Richard Seeborg
    United States District Judge

27

28

# EXHIBIT 6

1  DANIEL L. WARSHAW (Bar No. 185365)
   dwarshaw@pswlaw.com
2  **PEARSON, SIMON & WARSHAW, LLP**
   15165 Ventura Boulevard, Suite 400
3  Sherman Oaks, CA 91403
   Telephone: (818) 788-8300
4  Facsimile: (818) 788-8104

5  JAMES J. PIZZIRUSSO (admitted *pro hac vice*)
   jpizzirusso@hausfeldllp.com
6  **HAUSFELD, LLP**
   1700 K Street NW
7  Washington, DC 20006
   Telephone: (202) 540-7200
8  Facsimile: (202) 540-7201

9  Attorneys for Plaintiffs and the Class

10

11  **UNITED STATES DISTRICT COURT**

12  **NORTHERN DISTRICT OF CALIFORNIA**

13

14  IN RE: WARNER MUSIC GROUP CORP.  |  CASE NO. CV 12-0559-RS
   DIGITAL DOWNLOADS LITIGATION

15  **DECLARATION OF DANIEL L.**
   **WARSHAW IN SUPPORT OF**
   **PLAINTIFFS' MOTION FOR**
16  **ATTORNEYS' FEES, LITIGATION**
   **COSTS, AND INCENTIVE AWARDS**

17

18  Date:    October 2, 2014
   Time:    1:30 p.m.
19  Crtrm.:  3, 17th Floor
   Judge:  Hon. Richard Seeborg

20

21

22

23

24

25

26

27

28

859389.1

Daniel L. Warshaw declares:

1. I am an attorney duly admitted to practice before this Court. I am a partner in the firm of Pearson, Simon & Warshaw, LLP ("PSW"), attorneys of record for Plaintiffs Kathy Sledge Lightfoot, Ronee Blakley, and Gary Wright ("Plaintiffs") and the putative Class in this case.

2. I am one of the attorneys principally responsible for the handling of this matter. I am personally familiar with the facts set forth in this declaration. If called as a witness, I could and would competently testify to the matters stated herein.

3. I make this declaration in support of Plaintiffs' Motion for Attorneys' Fees, Litigation Costs, and Incentive Awards.

# I. **THE WORK PERFORMED BY PEARSON, SIMON & WARSHAW, LLP**

## A. **Background and Experience**

4. PSW has been involved in litigating, trying, and settling dozens of complex class action cases in California and elsewhere. PSW has offices in Los Angeles and San Francisco, California, and handles national and multi-national class actions that present cutting-edge issues in both substantive and procedural areas.

5. Attached hereto as Exhibit A is a true and correct copy of the firm resume for PSW, which reflects the experience and accomplishments of the firm and the attorneys working on this case. PSW's firm resume reflects that the attorneys in this case have successfully adjudicated some of the largest and most important class action lawsuits in the United States.

6. I have recently served as one of the court-appointed interim lead counsel in several complex class actions, including in this district. For example, I served as co-lead counsel in *Wolph v. Acer America Corp.*, No. C 09-1314 (N.D. Cal.), a nationally certified class action involving defective Acer computers that resulted in a classwide settlement. I also served as co-lead counsel and played an integral role in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.) ("*TFT-LCD*"), where I negotiated the ESI protocol and managed a document review process that featured nearly 8 million documents in multiple languages and 136 reviewers. I currently serve as interim co-lead counsel in *In re Carrier IQ Consumer Privacy Litigation*, No. C-12-md-2330-EMC (N.D. Cal.) ("*Carrier IQ*"), a putative nationwide class action on behalf of

2
CASE NO. 12-CV-0559-RS

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS AND INCENTIVE AWARDS

1  consumers who allege privacy violations arising from software installed on their mobile devices

2  that was logging text messages and other sensitive information.

3        7.     Of particular relevance here, I currently serve as interim co-lead counsel and

4  counsel of record in two other putative class actions pending in this district involving the payment

5  of royalties to recording artists for Downloads/Mastertones.  *See James v. UMG Recordings, Inc.,*

6  *et al.*, No. 11-cv-1613-SI (interim co-lead counsel); *Davis v. Capitol Records, LLC, et al.*, No. 12-

7  cv-1602-YGR (counsel for plaintiffs).  In the *James* case in particular, thousands of recording

8  contracts have been produced and reviewed, multiple dispositive and non-dispositive motions

9  have been filed, and numerous depositions of key personnel have been taken.  In *Davis*, over 6,000

10  contracts have recently been produced and will require analysis by counsel.

11        8.     PSW attorneys have extensive experience in the litigation, trial, and settlement of

12  other complex class actions, as well.  Some significant cases in which PSW attorneys have served,

13  or currently serve, as Class Counsel include the following:

14        a.     *TFT-LCD.*  PSW served as co-lead counsel for the direct purchaser

15  plaintiffs in *TFT-LCD*, a multidistrict litigation arising from the price-fixing of thin film transistor

16  liquid crystal display panels.  In *TFT-LCD*, after reaching settlements with several defendants

17  totaling over $405 million, PSW partner Bruce L. Simon and his trial team tried the case to an $87

18  million dollar verdict (before trebling) against Toshiba.  Mr. Simon served as co-lead trial counsel,

19  successfully marshaled numerous witnesses, and presented the opening argument.  Another $68

20  million was recovered for class members though settlements with Toshiba after trial and another

21  defendant on the eve of trial, for a total recovery of $473 million for the direct purchaser class.

22        b.     *In re Potash Antitrust Litigation (No. II)* ("*Potash*"), MDL No. 1996 (N.D.

23  Ill.).  PSW partner Bruce L. Simon served as interim co-lead counsel for the plaintiffs in this

24  multidistrict litigation arising from the price-fixing of potash sold in the United States.  After

25  defeating a motion to dismiss, Defendants appealed, and Mr. Simon argued before an *en banc*

26  panel of the Seventh Circuit Court of Appeals.  In an 8-0 decision, the *en banc* panel reversed the

27  first panel decision and affirmed the denial of Defendants' motion to dismiss.  *Minn-Chem, Inc. v.*

28

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, LITIGATION COSTS AND INCENTIVE AWARDS

1   *Agrium Inc.*, 683 F. 3d 845 (7th Cir. 2012).  On June 12, 2012, the Court approved a $90 million

2   class settlement on behalf of direct purchaser plaintiffs.

3             c.     *In re Credit Default Swaps Antitrust Litigation*, MDL No. 2476 (S.D.N.Y.).

4   PSW has been appointed as interim co-lead counsel in this multidistrict class action arising from

5   antitrust violations in the trading market for credit default swaps (CDS).  The case alleges that

6   some of the largest banks and financial institutions in the world conspired to restrain trade and

7   eliminate competition in the CDS market in order to artificially inflate and maintain the

8   transaction costs of CDS trading.

9              d.     *In re Lithium Ion Batteries Antitrust Litigation*, MDL No. 2420 (N.D. Cal.).

10   PSW attorneys currently serve as interim co-lead counsel for direct purchaser plaintiffs in this

11   multidistrict class action litigation arising from the price-fixing of lithium ion batteries.  The case

12   involves allegations of collusive activity by a cartel made up of the world's largest manufacturers

13   of lithium ion batteries, which are used in everything from cellular phones to cameras, laptops and

14   tablet computers.

15       For a more complete list of the notable cases in which PSW attorneys have held a

16   leadership role, please see the firm resume attached hereto as Exhibit A.

17           **B.**     **Litigation and Settlement of the Warner Action**

18       9.     As stated above, PSW is counsel of record in two analogous class action lawsuits

19   pending in this district,  *James* and *Davis*.  Prior to filing this action, PSW attorneys drew on their

20   experience from the *James* litigation to develop a theory of the case and determine whether a class

21   action was viable.  The experience gained from *James* allowed PSW and the other firms

22   composing Class Counsel (identified below) to conduct pointed research and investigation into

23   this matter and to approach settlement negotiations with a wealth of knowledge.

24       10.     From the outset, PSW assumed an active role in leading this litigation.  PSW

25   helped draft, review, and finalize Plaintiffs' initial complaint (Dkt. No. 1), engaged in multiple

26   meet and confer conferences with defense counsel, and coordinated with the other firms involved

27   in this case to create a cohesive leadership group to represent the Class.

28       11.     On June 1, 2012, facing competing motions for lead counsel, this Court

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, LITIGATION COSTS AND INCENTIVE AWARDS

1  consolidated five related actions in this litigation and appointed Pearson, Simon & Warshaw, LLP;

2  Lieff, Cabraser, Heimmann & Bernstein LLP; Phillips, Erlewine & Given LLP; Hausfeld LLP;

3  and Kiesel Law LLP as Interim Co-Lead Class Counsel (Dkt. No. 48).  The Court appointed PSW

4  partner Bruce L. Simon as chairman of the leadership group.  *Id.*

5       12.     The firms comprising Lead Counsel and their supporting law firms (collectively,

6  "Class Counsel") have significant combined experience in class action and music and

7  entertainment litigation, and their expertise helped inform the settlement negotiations in this case.

8  It was particularly important in forming the group of attorneys to represent the Class to include

9  attorneys who are familiar with the music industry and have experience litigating similar class

10  action lawsuits.  I believe it was the skill and reputation of Class Counsel that facilitated an early

11  settlement dialogue with counsel for WMG.  This dialogue served as the catalyst for the multiple

12  mediations that resulted in the extraordinary Settlement, which provides relief for past damages

13  and prospective relief in the form of increased royalty rates for Class Members in perpetuity.  The

14  Settlement avoided protracted motion practice, discovery, and the risks of litigation.

15       13.     I and other counsel for the parties in this case first participated in a face-to-face

16  meeting at defense counsel's office on October 10, 2012.  That meeting subsequently led to the

17  parties retaining the Honorable Daniel Weinstein (Ret.) as a third party neutral and, over a period

18  of many months, holding three mediation sessions and multiple smaller sessions.  Those meetings,

19  and many other meetings, telephone calls, and correspondence (with and without the presence of

20  Judge Weinstein) ultimately resulted in the Settlement Agreement now before the Court.

21       14.     I understand that the other firms composing Lead Counsel and the supporting law

22  firms of Johnson &  Johnson LLP, the Law Offices of Elliot Cahn, and the Law Offices of

23  Leonard B. Simon will also be submitting time and expenses in this case on behalf of the work

24  that their respective law firms performed.  All time and expenses submitted on behalf of PSW are

25  separate and non-duplicative of any time and expenses submitted by the other law firms.

26       15.     PSW played a prominent role in this case.  The majority of PSW's attorneys' time

27  was spent on the following tasks:

28

a.    **Settlement Related Activities:**  From October 2012 until the Settlement Agreement was finalized and executed in December 2013, I and the attorneys at my firm participated in extensive, hard-fought negotiations with defense counsel.  The attorneys at PSW spent many hours participating in meetings, telephone conversations, and correspondence with defense counsel trying to craft a settlement that was simultaneously beneficial to the Class Members and fair to WMG.  I attended three mediation sessions, multiple smaller sessions, and numerous informal telephonic and personal meetings with defense counsel.  Notably, the negotiations did not end at the broad terms of relief.  Virtually every term of the Settlement was hard fought and separately negotiated.

b.    Even after executing the Settlement in December 2013, PSW attorneys continued to work diligently on behalf of the Class.  PSW retained Rust Consulting as Settlement Administrator; helped create a comprehensive notice plan that would reach as many Class Members as possible; met and conferred with defense counsel regarding their royalty systems in an effort to facilitate direct notice to Class Members through their royalty accounts; supervised the distribution of notice; and identified and dealt with any issues or questions relating to the notice and claims process.  In total, PSW spent 520.60 hours working on settlement related activities.

c.    **Pleadings/Motions:**  PSW helped draft, review, and finalize Plaintiffs' initial complaint (Dkt. No. 1), Plaintiffs' Motion for Appointment of Interim Co-Lead Counsel (Dkt. No. 17), Plaintiffs' draft Opposition to WMG's Motion to Dismiss the Third, Fourth, and Fifth Causes of Action (unfiled), Plaintiffs' first and second amended consolidated complaints (Dkt. Nos. 56 and 95, respectively), and Plaintiffs' Motion for Preliminary Approval (Dkt. No. 96).  In total, PSW spent 404.30 hours working on pleadings, motions, and supporting documents in this case.

d.    **Attorney Meeting/Strategy:**  PSW was instrumental in engaging and facilitating meetings of counsel to discuss litigation, management, and settlement strategy.  In the early stages of the case, PSW worked tirelessly to build a consensus on a structured leadership group of five firms to represent the Class.  Also throughout the early stages of the case, PSW served as the point-firm in meet and confer and litigation communications with defense counsel.

Once settlement negotiations began in earnest, PSW took the lead in discussions with defense counsel and coordinated with the other firms regarding those discussions. In total, PSW spent 99.30 hours working on attorney meeting and strategy.

        e.      **Case Management:** PSW managed Class Counsel to ensure the case was handled efficiently and no duplicative work was performed. PSW handled the case management duties in this case, including preparing for case management and status conferences with the Court, coordinating efforts among Class Counsel to move the case toward resolution, and making sure that deadlines and tasks were handled in an efficient and economical manner. In total, PSW spent 58.20 hours working on case management.

        f.      **Client Meeting:** I and the attorneys at PSW prepared for and participated in multiple meetings with the class representatives and their professional representatives. This included in-person meetings and travel/attendance by me personally at an all-day meeting with several of the class representatives and defense counsel in Arizona. Client meetings featured discussions relating to the progress of the case, the status of settlement negotiations, and the impact of the proposed settlement Plaintiffs' and other Class Members' rights. In total, PSW spent 33.80 hours working on client meeting.

        16.     Below is a comprehensive breakdown of the number of hours and attorneys' fees expended by PSW on various tasks in this case:

| Category | Hours | Lodestar |
|---|---|---|
| Attorney Meeting / Strategy | 99.30 | $66,887.50 |
| Case Management | 58.20 | $38,561.00 |
| Court Appearances | 13.10 | $9,366.50 |
| Discovery | 2.10 | $1,603.50 |
| Document Review | 3.70 | $2,645.50 |
| Experts - Work or Consult | 8.60 | $6,473.00 |
| Client Meeting | 33.80 | $24,031.00 |

| Research | 13.70 | $9,659.50 |
|----------|-------|-----------|
| Pleadings / Motions | 404.30 | $220,471.50 |
| Settlement | 520.60 | $367,960.00 |
| **Total** | **1,157.40** | **$747,659.00** |

17.     While no formal discovery was served in this action, significant information was exchanged as part of the mediation process.  For example, Class Counsel requested and reviewed internal WMG documentation in order to evaluate the strengths and weaknesses of Plaintiffs' claims and determine the fairness of the Settlement amount.  In addition, the Settlement Agreement allowed Class Counsel to engage in confirmatory discovery to verify the information provided by WMG throughout the mediation process.  To that end, Class Counsel has engaged a forensic accounting firm, Prager Metis CPAs, LLC, to assist in confirmatory discovery.

18.     In creating a Fund of up to $11,500,000 available to Class Members, the parties agree that the Settlement in this case is worth at least $11,500,000.  I believe that the value of the prospective relief, in the form of increased royalty payments to Settlement Class Members *in perpetuity*, is the most important and substantial aspect of the Settlement.  The prospective relief makes the Settlement worth potentially much more than $11,500,000, as the Class Members and their heirs will benefit from the increased royalty rates for as long as their music is being purchased.

19.     Attached hereto as Exhibit B is a true and correct copy of the Amended Stipulation and Agreement of Settlement in *Shropshire v. Sony Music Entm't*, No. 06-cv-3252-GBD (S.D.N.Y.).  Attached hereto as Exhibit C is a true and correct copy of the Amended Stipulation and Agreement of Settlement in *Youngbloods v. BMG Music*, No. 07-cv-2394-GBD (S.D.N.Y.).  Collectively, these cases will be referred to herein as the "Sony digital downloads" litigation.

20.     The Settlement in this case even more outstanding when compared to the settlement in the Sony digital downloads litigation.  That settlement created a fund of $7.95 million, less attorneys' fees of $2.65 million for a net sum of $5 million.  With respect to prospective relief, artists with at least 28,500 total U.S. downloads on iTunes received a 3%

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES. LITIGATION COSTS AND INCENTIVE AWARDS

1    increase in their applicable royalty rate, with no floor or cap.  Artists with under 28,500 total U.S.

2    downloads on iTunes must have had at least $18,000 in royalty earnings within two consecutive

3    royalty accounting periods *and* notified Sony in writing of their right to prospective relief.  The

4    settlement provided no prospective relief for foreign sales.

5         21.     By contrast, the Settlement here created a Fund of $11.5 million, which even after

6    subtracting Plaintiffs' proposed fee award and all other administrative and legal costs, has a net

7    value of approximately $8 million.  This is significant given that WMG's share of the digital

8    music market in 2013 was 17.1%, while Sony's share was 22.3%.[1]  The prospective relief in the

9    Settlement has no restrictions based on the number of downloads and provides a 5% increase in

10   Class Members' U.S. sales royalty rate, with a floor of 10% and a cap of 14%, and a 2.5% increase

11   (based on a formula) in Class Members' foreign sales royalty rate, subject to the 14% cap.

12   **II.**      **PSW'S LODESTAR FOR WORK PERFORMED IN THIS LITIGATION**

13        22.     A true and correct summary of the total hours billed on this case and the hourly

14   rates for PSW's employees through present is attached in a Summary Report as Exhibit D.  The

15   report indicates a total lodestar of $747,659.00, reflecting a total of 1,157.40 hours.  This summary

16   was prepared from contemporaneous time records reflecting the historical rates of PSW attorneys

17   and paralegals.  These rates are the same rates charged by PSW to hourly clients in this district and

18   elsewhere.  All work reported by attorneys and paralegals on behalf of the Class Members in this

19   case was performed on a wholly contingent basis.

20        23.     Based on current hourly rates, PSW's total lodestar is $790,541.00.  Combined,

21   Class Counsel's total lodestar, based on historical hourly rates, is $1,767,712.50.  Based on current

22   hourly rates, Class Counsel's total lodestar is $1,835,206.00.  Class Counsel's requested fees in

23   this case represent a modest multiplier on their lodestar of 1.567 based on their current hourly

24   rates, and 1.626 based on their historical hourly rates.

25

26   --------

27   [1] *See* http://musicandcopyright.wordpress.com/2014/05/06/umg-and-wmg-see-gains-in-recorded-
     music-market-share-in-2013-while-sonyatv-dominates-music-publishing/#more-1166.

28

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, LITIGATION COSTS AND INCENTIVE AWARDS

24.     I personally billed 697.3 hours to this matter at an average (weighted) hourly rate of $720.53 per hour.  Partner Bruce L. Simon billed 54.7 hours at an average (weighted) hourly rate of $837.74.  Partner Clifford H. Pearson billed 100.2 hours at an hourly rate of $835.  Associates Alexander R. Safyan billed 216.0 hours at an average (weighted) hourly rate of $376.81 per hour; William J. Newsom billed 73.9 hours at an hourly rate of $375; and Bobby Pouya billed 13.2 hours at an hourly rate of $475.  Finally, paralegal Ellowene Grant billed 2.1 hours to this matter at an hourly rate of $175 per hour.

25.     I anticipate that PSW will incur additional attorneys' fees in this matter by conducting ongoing confirmatory discovery and working with experts related to that discovery; drafting and revising Plaintiffs' Motion for Final Approval; responding to Class Member objections (if any); continuing to supervise the claims process; and preparing for and attending the Fairness Hearing on October 2, 2014.

26.     The hourly rates charged by PSW in this case are the standard hourly fees charged by our attorneys and paralegals.  These hourly rates have been approved by courts presiding over actions brought by PSW, including cases reflected in the firm resume.  Of particular note are two decisions, *TFT-LCD* and *Potash*, approving the hourly rates for the work performed by PSW attorneys.

27.     Attached hereto as Exhibit E is a true and correct copy of the Amended Order Granting Direct Purchaser Class Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards in *TFT-LCD*.  The Court in *TFT-LCD* approved the application of PSW for a 30% fee award representing over $120 million in attorneys' fees and approved the hourly rates of attorneys Clifford H. Pearson, Bruce L. Simon, Daniel L. Warshaw, Bobby Pouya, William J. Newsom, and Alexander R. Safyan.  These hourly rates were set forth and attached to the Declaration of PSW partner Bruce L. Simon, a true and correct copy of which is attached in relevant part hereto as Exhibit F.[2]

---

[2] Unrelated exhibits have been removed from the Declaration of Bruce L. Simon.

28.     Attached hereto as Exhibit G is a true and correct copy of the Amended Order Granting Direct Purchaser Class Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Class Representative Incentive Awards in *Potash*.  The Court in *Potash* approved the application of PSW for over $30 million in attorneys' fees and approved the hourly rates of attorneys Clifford H. Pearson, Bruce L. Simon, Daniel L. Warshaw, Bobby Pouya, William J. Newsom, and Alexander R. Safyan.  These hourly rates were set forth and attached to the Declaration of PSW partner Bruce L. Simon, a true and correct copy of which is attached in relevant part hereto as Exhibit H.

29.     Based on my experience and practice, I believe the hourly rates charged by PSW are consistent with the rates charged in the San Francisco legal community for attorneys of similar caliber and experience.

## III.     THE EXPENSES INCURRED BY PSW

30.     A true and correct summary of the expenses incurred by PSW during the course of this litigation is attached in a Summary Report as Exhibit I.  The expenses pertaining to this case are reflected in the books and records of my firm.  The expense summary was prepared based on expense vouchers, check records, and other documents and are an accurate record of the firm's out of pocket expenses.

31.     The expense summary indicates a total of $40,960.60 in expenses incurred by PSW to date in connection with the prosecution of this litigation.  I believe these expenses were reasonable and necessary given the complex nature and nationwide scope of the case.  Class Counsel are currently incurring additional expert costs relating to confirmatory discovery.  I will submit a supplemental declaration in advance of the hearing on Plaintiffs' motion indicating the final accounting of costs.

32.     PSW established a litigation fund for this matter.  As indicated in Lead Counsel's declarations filed concurrently herewith, $25,000 was contributed to the litigation fund.  The litigation fund was used to make $4,826.25 in payments to JAMS for mediation services; $10,000 to Prager Metis CPAs, LLC for expert fees; and $165.72 for banking fees associated with establishing the litigation fund account.  The account currently has a balance of $10,008.03.  I

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS AND INCENTIVE AWARDS

1  anticipate that the account will have a zero balance before the October 2, 2014 hearing due to

2  expert fees relating to confirmatory discovery.  I will provide the Court with a supplemental

3  declaration updating the accounting in advance of the hearing.

4  **IV.**     **THE INCENTIVE AWARDS SOUGHT BY PLAINTIFFS**

5         33.     Plaintiffs in this litigation request an incentive award of $10,000 each for current

6  class representatives, Kathy Sledge Lightfoot, Gary Wright, and Ronee Blakley, and former class

7  representatives, Debra Sledge, Joan Sledge, and Kim Sledge Allen.  I believe an incentive award

8  of $10,000 each for the current and former class representatives is reasonable.  These awards are

9  especially justified in this case by the time and effort the class representatives dedicated to the

10 Class and the reputational risks they faced in associating their names with a well-publicized class

11 action lawsuit against a major record company.  More than a typical class representative, the class

12 representatives here faced significant risks in pursuing a class action lawsuit against a major music

13 label like WMG.  Moreover, the class representatives were actively engaged in the litigation,

14 commented on and participated in the settlement process, and were advocates for the Class

15 Members throughout the process.

16 **V.**     **CLASS MEMBERS' REACTION TO THE SETTLEMENT AND CURRENT**
   **CLAIM STATISTICS**
17

18        34.     PSW has received periodic status reports of the claims and settlement statistics

19 from the Settlement Administrator throughout the claims period.  Although the claims period will

20 not be completed until May 31, 2014, the reaction to the Settlement Agreement has been

21 exceedingly positive.  As of May 14, 2014 (with more than two weeks left in the claims period),

22 the Settlement Administrator had received 749 Claim Forms, 9 opt-out requests, and 0 objections.

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS'
FEES, LITIGATION COSTS AND INCENTIVE AWARDS

35.     Based on my professional experience, and taking into consideration the risks of continued litigation as compared to the relief granted by the Settlement, I believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the Class.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.

Executed on May 15, 2014, in Sherman Oaks, California.


/s/ Daniel L. Warshaw
Daniel L. Warshaw

# EXHIBIT D

Law Offices

Law Offices
**PEARSON, SIMON & WARSHAW, LLP**
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403
(818) 788-8300
FAX (818) 788-8104
WWW.PSWLAW.COM

SAN FRANCISCO OFFICE
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104
(415) 433-9000
FAX (415) 433-9008

WRITER'S DIRECT CONTACT
(818) 205-2805
DWARSHAW@PSWLAW.COM

May 15, 2014

Re:  IN RE: WARNER MUSIC GROUP CORP. DIGITAL DOWNLOADS
LITIGATION
Case No.:        C12-00559 RS

**Pearson, Simon & Warshaw, LLP Lodestar By Category Using Historic Rates**

| Category | Hours | Total |
|---|---|---|
| Attorney Meeting / Strategy | 99.3 | $66,887.50 |
| Case Management | 58.2 | $38,561.00 |
| Court Appearance | 13.1 | $9,366.50 |
| Discovery | 2.1 | $1,603.50 |
| Document Review | 3.7 | $2,645.50 |
| Experts - Work or Consult | 8.6 | $6,473.00 |
| Client Meeting | 33.8 | $24,031.00 |
| Research | 13.7 | $9,659.50 |
| Pleadings / Motions | 404.3 | $220,471.50 |
| Settlement | 520.6 | $367,960.00 |
| **TOTAL** | **1157.4** | **$747,659.00** |

LAW OFFICES
# PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403
(818) 788-8300
FAX (818) 788-8104
WWW.PSWLAW.COM

SAN FRANCISCO OFFICE
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104
(415) 433-9000
FAX (415) 433-9008

WRITER'S DIRECT CONTACT
(818) 205-2805
DWARSHAW@PSWLAW.COM

May 15, 2014

Re:   IN RE: WARNER MUSIC GROUP CORP. DIGITAL DOWNLOADS
      LITIGATION
      Case No.:            C12-00559 RS

## Pearson, Simon & Warshaw, LLP Lodestar Using Historical Rates

| Timekeeper | Title | Hours | Rate | Total |
|---|---|---|---|---|
| Clifford H. Pearson | Senior Partner | 100.2 | $835.00 | $83,667.00 |
| Daniel L. Warshaw | Senior Partner | 633 | $715.00 | $452,595.00 |
| Daniel L. Warshaw | Senior Partner | 64.3 | $775.00 | $49,832.50 |
| Bruce L. Simon | Senior Partner | 52.2 | $835.00 | $43,587.00 |
| Bruce L. Simon | Senior Partner | 2.5 | $895.00 | $2,237.50 |
| Bobby Pouya | Associate | 13.2 | $475.00 | $6,270.00 |
| William J. Newsom | Associate | 73.9 | $375.00 | $27,712.50 |
| Alexander R. Safyan | Associate | 177 | $375.00 | $66,375.00 |
| Alexander R. Safyan | Associate | 39 | $385.00 | $15,015.00 |
| Ellowene Grant | Paralegal | 2.1 | $175.00 | $367.50 |
| **TOTAL (Historical)** | | **1157.4** | | **$747,659.00** |

LAW OFFICES
**PEARSON, SIMON & WARSHAW, LLP**
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403
(818) 788-8300
FAX (818) 788-8104
WWW.PSWLAW.COM

SAN FRANCISCO OFFICE
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104
(415) 433-9000
FAX (415) 433-9008

WRITER'S DIRECT CONTACT
(818) 205-2805
DWARSHAW@PSWLAW.COM

May 15, 2014

Re:   IN RE: WARNER MUSIC GROUP CORP. DIGITAL DOWNLOADS
      LITIGATION
      Case No.:          C12-00559 RS

**Pearson, Simon & Warshaw, LLP Lodestar Using Current Rates**

| Timekeeper | Title | Hours | Rate | Total |
|---|---|---|---|---|
| Clifford H. Pearson | Senior Partner | 100.2 | $835.00 | $83,667.00 |
| Daniel L. Warshaw | Senior Partner | 697.3 | $775.00 | $540,407.50 |
| Bruce L. Simon | Senior Partner | 54.7 | $895.00 | $48,956.50 |
| Bobby Pouya | Associate | 13.2 | $475.00 | $6,270.00 |
| William J. Newsom | Associate | 73.9 | $375.00 | $27,712.50 |
| Alexander R. Safyan | Associate | 216 | $385.00 | $83,160.00 |
| Ellowene Grant | Paralegal | 2.1 | $175.00 | $367.50 |
| **TOTAL (Current)** | | **1157.4** | | **$790,541.00** |

859440.1

# EXHIBIT I

Case 3:12-cv-00559-RS Document 103 Filed 05/15/14 Page 92 of 92

Law Offices
# Pearson, Simon & Warshaw, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA  91403
(818) 788-8300
FAX  (818) 788-8104
WWW.PSWLAW.COM

SAN FRANCISCO OFFICE
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA  94104
(415) 433-9000
FAX (415) 433-9008

WRITER'S DIRECT CONTACT
(818) 205-2805
DWARSHAW@PSWLAW.COM

May 15, 2014

Re:   IN RE: WARNER MUSIC GROUP CORP. DIGITAL DOWNLOADS
      LITIGATION
      Case No.:            C12-00559 RS

## Pearson, Simon & Warshaw, LLP Litigation Expenses

| | |
|---|---|
| Assessment to Litigation Fund | $  1,000.00 |
| Conference Call Charges | $         1.35 |
| Court Call Fee | $       30.00 |
| Delivery services/messengers | $     983.87 |
| Meals | $     910.67 |
| Mediation Fees | $32,529.25 |
| Online research | $     635.65 |
| Photocopy Charges | $     617.50 |
| Postage | $         6.83 |
| Travel | $  4,245.48 |
| **TOTAL EXPENSES** | **$40,960.60** |

859435.1

# EXHIBIT 7

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 28 2015

Sherri R. Carter, Executive Officer/Clerk
By: B. Burns Tucker, Deputy

FILED
Superior Court of California
County of Los Angeles

DEC 28 2015

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
   B. Burns Tucker

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# COUNTY OF LOS ANGELES, CENTRAL CIVIL WEST

| | |
|---|---|
| COLIN HIGGINS PRODUCTIONS, LTD.,<br><br>Plaintiff,<br><br>vs.<br><br>UNIVERSAL CITY STUDIOS, LLC, and DOES 1-100,<br><br>Defendant. | CASE NO. BC499180 (related to BC499179, BC499181, BC499182, BC500040, and BC540146)<br><br>**CLASS ACTION**<br><br>~~[PROPOSED]~~ **ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS**<br><br>Assigned to the Honorable Hon. Elihu M. Berle (Dept. CCW-323)<br><br>[Complaint Filed: January 16, 2013] |

865710.2

1   This matter came on for review on December 11, 2015.  The Court, having considered the

2   proposed Settlement Agreement; Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive

3   Awards; the points and authorities and declarations in support thereof as well as the arguments of

4   counsel; and good cause appearing, HEREBY ORDERS THE FOLLOWING:

5   1.   The Court, for purposes of this Order, adopts the terms and definitions set forth in

6   the Settlement Agreement, as modified herein.

7   2.   The Court finds that Pearson, Simon & Warshaw, LLP, Johnson & Johnson LLP,

8   Kiesel Law LLP and Boucher LLP's ("Class Counsel") lodestar, based on their historical hourly

9   rates, is $1,278,122.03.  The Court finds that this amount is reasonable based upon the amount of

10   work performed by Class Counsel.  In light of the novelty and difficulty of this action; Class

11   Counsel's skill and effort in dealing with the complex issues presented by this case; and the

12   substantial benefit obtained for the Class, the Court finds that Class Counsel is entitled to a

13   lodestar multiplier of 3.39 for an award of attorneys' fees in this case of $4,333,333.33.

14   3.   The Court also finds that Class Counsel have incurred $19,893.20 in litigation costs

15   in connection with this litigation.  These costs were reasonably incurred in the ordinary course of

16   prosecuting this case and necessary given the complex nature and scope of the case.  The Court

17   finds that Class Counsel are entitled to be reimbursed for these costs.

18   4.   The Court further approves an incentive award of $10,000.00 to each of the class

19   representatives, Colin Higgins Productions, Ltd., Indigo, Inc. and Lynn Unger Children's Trust

20   (collectively, "Plaintiffs").  These incentive awards are justified by: (1) the risks Plaintiffs faced in

21   bringing this lawsuit, financial and otherwise; (2) the amount of time and effort spent on this case

22   by Plaintiffs; and (3) the benefits Plaintiffs helped obtain for the Class Members under the

23   Settlement Agreement.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1       5.     The attorneys' fees, costs and incentive awards set forth in this Order shall be paid

2 and distributed in accordance with the terms of the Settlement Agreement.

4      **IT IS SO ORDERED.**

6 DATED: ___Dec 28___, 2015         **ELIHU M. BERLE**

7                          HONORABLE ELIHU M. BERLE

8                          Judge of the Superior Court

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

COLIN HIGGINS PRODUCTIONS, LTD. V. UNIVERSAL CITY STUDIOS, LLC.

Case No. BC499180

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of LOS ANGELES, STATE OF CALIFORNIA. My business address is 15165 Ventura Boulevard, Suite 400, Sherman Oaks, California 91403. I am over the age of eighteen years and am not a party to the within action;

On December 16, 2015, I served the following document(s) entitled **[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS** on ALL INTERESTED PARTIES in this action by the method(s) described below:

**BY ELECTRONIC MAIL VIA CASE ANYWHERE:** In accordance with the Court's ruling governing Los Angeles Superior Court Case No. BC499179 and related actions requiring all documents to be served upon interested parties via Case Anywhere Service system. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 16, 2015, at Sherman Oaks, California.

_Mel S. Well_

Melissa S. Williams

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS

# EXHIBIT 8

1   Clifford H. Pearson (Bar No. 108523)
    cpearson@pswlaw.com
2   Daniel L. Warshaw (Bar No. 185365)
    dwarshaw@pswlaw.com
3   Bobby Pouya (Bar No. 245527)
    bpouya@pswlaw.com
4   **PEARSON, SIMON & WARSHAW, LLP**
    15165 Ventura Boulevard, Suite 400
5   Sherman Oaks, California 91403
    Telephone: (818) 788-8300
6   Facsimile:  (818) 788-8104

7   *Attorneys for Plaintiffs and the Class*

8           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9           **COUNTY OF LOS ANGELES, CENTRAL CIVIL WEST**

10  COLIN HIGGINS PRODUCTIONS, LTD.,          CASE NO. BC499180 (related to BC499179,
                                              BC499181, BC499182, BC500040, and
11              Plaintiff,                    BC540146)

12       vs.                                  **CLASS ACTION**

13  UNIVERSAL CITY STUDIOS, LLC, and          **DECLARATION OF DANIEL L.**
    DOES 1-100,                               **WARSHAW IN SUPPORT OF**
14                                            **PLAINTIFFS' MOTIONS FOR FINAL**
                Defendant.                    **APPROVAL OF CLASS ACTION**
15                                            **SETTLEMENT AND ATTORNEYS'**
                                              **FEES, COSTS AND INCENTIVE**
16                                            **AWARDS**

17                                            Assigned to the Honorable Hon. Elihu M.
                                              Berle (Dept. CCW-323)
18
                                              [Complaint Filed: January 16, 2013]
19
                                              Date:      December 11, 2015
20                                            Time:      10:00 a.m.
                                              Dept.:     323
21

22

23

24

25

26

27

28
    865592.1

    DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFFS' MOTIONS FOR FINAL
    APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, COSTS AND INCENTIVE
    AWARDS

1       I, Daniel L. Warshaw, hereby declare:

2       1.      I am an attorney duly admitted to practice before this Court.  I am a partner in the

3   firm of Pearson, Simon & Warshaw, LLP ("PSW"), one of the law firms representing Plaintiffs

4   Colin Higgins Productions, Ltd. ("CHP"), Indigo, Inc. ("Indigo") and Lynn Unger Children's

5   Trust ("LUCT") (collectively, "Plaintiffs") and the Class in this action.

6       2.      I submit this declaration in support of the Plaintiffs' Motion for Final Approval of

7   Class Action Settlement and Motion for Attorneys' Fees, Costs and Incentive Awards.  I am

8   personally familiar with the facts set forth in this declaration.  If called as a witness I could and

9   would competently testify to the matters stated herein.

10      3.      I believe that the Settlement in this case adequately addresses and remedies the

11  claims of Class Members arising from Universal City Studios, LLC's ("Universal") home video

12  accounting practices, and is fair, reasonable and adequate.  This Settlement would not have been

13  possible without the substantial efforts of Plaintiffs and Class Counsel (identified below), and

14  therefore justifies the payment of reasonable attorneys' fees, litigation costs and incentive awards.

15      4.      This was a novel and complex class action lawsuit that attacked the method by

16  which Universal accounted for and paid home video profit participation on numerous motion

17  pictures to Plaintiffs and Class Members.  The lawsuit against Universal was filed concurrently

18  with similar class action lawsuits against other major motion picture studios that have been related

19  and are currently pending before this Court.  Recognizing the challenging issues and contingent

20  risks involved in this litigation, PSW associated with co-counsel from Johnson & Johnson LLP,

21  Kiesel Law LLP and Boucher LLP (together with PSW, "Class Counsel") all of whom have

22  experience in entertainment, complex and class action litigation.  Johnson & Johnson LLP, in

23  particular, is an entertainment-focused law firm, with substantial experience in representing clients

24  with disputes relating to profit participation.

25      5.      The law firms comprising Class Counsel essentially functioned as an executive

26  committee that managed the litigation and assigned specific tasks to the appropriate responsible

27  attorneys.  Class Counsel took steps to avoid the duplication of labor, including limiting attorney

28

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFFS' MOTIONS FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, COSTS AND INCENTIVE
AWARDS

1  assignments, appearances and other tasks to only those necessary.  A partner from each Class

2  Counsel firm was responsible for managing the attorney work in this case to ensure there was no

3  duplicative work and that maximum efficiency was achieved.  This meant that where appropriate,

4  only one attorney among the four firms had primary responsibilities relating to specific projects.

5  Based on these protocols, which were implemented by Class Counsel throughout the litigation, I

6  believe that the hours and work performed by PSW in this litigation were reasonable and

7  necessary.

8         **A.**    **The Work Performed by PSW in This Litigation**

9         6.       During the course of this litigation, PSW participated in each facet of the case,

10  including:

11              a.       Pre-litigation investigation, research, interviews and preparation for the

12  lawsuit;

13              b.       Drafting the relevant pleadings, including Plaintiffs' initial, First Amended

14  and Second Amended Complaints, and Plaintiffs' oppositions to Universal's demurrer and motion

15  to strike;

16              c.       Handling hearings, including on Universal's demurrer and motion to strike,

17  status conferences and preliminary approval of the Settlement;

18              d.       Conducting discovery, including drafting Plaintiffs' discovery to Universal,

19  preparing for and defending Plaintiffs' depositions and reviewing documents produced by

20  Universal;

21              e.       Settlement related activities, including taking the primary responsibility in

22  settlement discussions and participating in mediation sessions, drafting the Settlement Agreement,

23  drafting the class notice documents and responding to Class Member inquiries;

24              f.       Drafting Plaintiffs' Motion for Preliminary Approval of the Settlement and

25  Motion for Attorneys' Fees, Costs and Incentive Awards; and

26              g.       Case management and litigation strategy, including the distribution of

27  assignments and development of a litigation plan.

28

865592.1

3

7.     Since Universal does not openly disclose its accounting methodologies, the pre-litigation phase of this lawsuit required a significant amount of investigation and analysis. Additional pre-litigation investigation and analysis focused on determining the common issues that made this case suitable for class adjudication.

8.     PSW and its co-counsel drafted the original complaint against Universal on behalf of Plaintiff CHP, which was filed on January 16, 2013.  Universal challenged the complaint by filing a demurrer and motion to strike.  PSW worked with its co-counsel to oppose these motions and prepare for the hearing on June 24, 2013.  The Court overruled Universal's demurrer and denied its motion to strike, both in their entirety.  PSW then assisted with the filing of Plaintiffs' subsequent complaints by reviewing and revising Plaintiffs' First Amended Complaint, filed on December 17, 2013, and the operative Second Amended Complaint, filed on June 4, 2014.

9.     PSW drafted Plaintiffs' discovery to Universal, including Special Interrogatories, Requests for Admissions and Requests for Production of Documents.  Universal objected to these requests and sought to limit the production of class discovery.  PSW participated in the necessary meet and confer efforts and motion practice to obtain this discovery, then reviewed and analyzed Universal's responses and documents once they were produced.

10.     Universal's production included more than 9,000 pages of documents encompassing all contracts, profit participation statements and correspondence relating to the named Plaintiffs' films and documents relating to a random sample of other films in the Class. PSW participated in the negotiation of the parameters of Universal's production relating to the random sample of films in the Class, attempting to ensure that the production was fairly representative of all of the films in the Class.

11.     PSW prepared for and defended class representative depositions of the President and Chief Executive Officer of Plaintiff Indigo, Jennifer Lee Pryor, and the Co-Trustee of Plaintiff LUCT, James L. Caskey.

12.     On June 6, 2014, Universal filed a motion for summary adjudication as to Plaintiffs' conversion cause of action.  PSW sought discovery including depositions and written

1   discovery in support of the opposition to Universal's motion, and worked on the motion to compel

2   the discovery when Universal resisted producing it.  Universal withdrew its motion for summary

3   adjudication on August 27, 2014, after the Court held that Plaintiffs could depose Universal's

4   employees in support of their opposition to Universal's motion.

5       13.     PSW participated in the initial settlement discussions with Universal, which

6   resulted in a face-to-face meeting at PSW's office on October 20, 2014.  During this meeting, the

7   parties exchanged information regarding their respective claims and defenses.  The parties did not

8   exchange settlement proposals or discuss settlement figures during this initial conference.

9       14.     After the first meeting, the parties retained the Hon. Louis M. Meisinger (Ret.) of

10  ADR Services to serve as a mediator.  PSW prepared for and participated in the parties' all-day

11  mediation with Judge Meisinger on November 21, 2014.  The parties could not reach a settlement

12  during this initial session, but agreed to continue their settlement negotiations.  In the months

13  following the initial session, PSW participated in multiple smaller sessions, meetings and

14  correspondence both with and without Judge Meisinger.  These negotiations involved all aspects

15  of the settlement, and were conducted by PSW and its co-counsel at all times with the interests of

16  the Class Members in mind.

17      15.     Once the parties reached an agreement on the settlement terms, PSW worked on

18  drafting the detailed Class Action Settlement Agreement.  Given the complex nature of this class

19  action, drafting the Settlement Agreement took significant care and effort.  The parties finally

20  executed a Stipulation and Agreement of Settlement on April 30, 2015.

21      16.     PSW researched and drafted Plaintiffs' Motion for Preliminary Approval of the

22  Settlement Agreement and supporting documents.  PSW also took the lead in handling the hearing

23  on Plaintiffs' Motion for Preliminary Approval.

24      17.     At the July 15, 2015 preliminary approval hearing, the Court instructed the parties

25  to make certain changes to the Settlement Agreement and notice documents; set a schedule for

26  implementation of the Settlement; and set a further preliminary approval hearing on August 11,

27  2015.  Plaintiffs submitted a supplemental report to the Court in advance of the August 11, 2015

28

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFFS' MOTIONS FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, COSTS AND INCENTIVE
AWARDS

1   hearing, and the Court granted preliminary approval to the Settlement at the hearing.  A true and

2   correct copy of the final Settlement Agreement is attached hereto as Exhibit A.

3         18.     PSW reviewed and revised the notice documents and ensured that the notice was

4   distributed by the Settlement Administrator in accordance with the notice plan.  PSW also handled

5   multiple inquiries from Class Members and their representatives regarding the Settlement.

6         19.     PSW researched and drafted Plaintiffs' Motion for Attorneys' Fees, Costs and

7   Incentive Awards.  PSW intends to argue the final approval and fairness hearing, and perform

8   additional tasks as necessary to obtain final approval of the Settlement.

9         20.     PSW worked on additional tasks and projects throughout the course of this

10  litigation, which are reflected in PSW's detailed time and billing records being lodged with the

11  Court.

12        **B.**        **The Attorneys' Fees and Costs Incurred by PSW**

13        21.     Attached hereto as Exhibit B is a true and correct summary of the hours[1] spent by

14  attorneys and other staff at PSW during the course of this litigation.  This summary was prepared

15  from contemporaneous time records reflecting the historical rates of PSW attorneys and other

16  staff, which are being lodged with the Court.  All work reported by PSW in this case was

17  performed on a wholly contingent basis.  All of the work performed and the time expended was

18  reasonable and necessary for the prosecution and ultimate settlement of the claims in the case.

19  The summary report attached as Exhibit B indicates a total lodestar of $433,900.53 through

20  October 11, 2015, which was calculated based on the hourly rate in effect at the time the work was

21  performed.

22        22.     PSW maintained its time records in this litigation by various task codes.  Below is a

23  breakdown of the number of hours and attorneys' fees expended by PSW on the various categories

24  of tasks in this case:

25  / / /

26  ─────────────────────

27  [1] PSW's contemporaneous time records are being lodged with the Court.

28  

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFFS' MOTIONS FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, COSTS AND INCENTIVE
AWARDS

| Category | Hours | Lodestar |
|---|---|---|
| Attorney Meeting / Strategy | 37.625 | $21,627.88 |
| Case Management | 39.22 | $21,992.45 |
| Court Appearance | 44.175 | $32,052.63 |
| Discovery | 83.56 | $42,353.24 |
| Document Review | 2.2 | $1,666.00 |
| Experts | 1.3 | $889.50 |
| Pleadings / Motions | 240.495 | $147,528.83 |
| Research | 14 | $6,250.50 |
| Settlement | 203.3 | $159,539.50 |
| **TOTAL** | **665.875** | **$433,900.53** |

23.     The hourly rates charged by PSW in this case are the standard hourly rates charged by our attorneys and paralegals.  These hourly rates have been approved by courts presiding over actions brought by PSW, including cases reflected in the firm resume (referenced below).  Of particular note are two decisions, *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.) and *In re Potash Antitrust Litigation (II)*, MDL No. 1996 (N.D. Ill.), approving the hourly rates for the work performed by PSW attorneys.  A description of these and other cases can be found in PSW's firm resume and in more detail below.

24.     Attached hereto as Exhibit C is a true and correct summary of the expenses incurred by PSW during the course of this litigation.  The expenses pertaining to this case are reflected in the books and records of my firm.  The expense summary was prepared based on expense vouchers, check records and other documents and is an accurate record of the firm's out-of-pocket expenses.  The summary report attached as Exhibit C indicates a total of $3,422.48 in costs incurred directly by PSW.  Not included in this total are the shared expenses which were paid from a common litigation fund maintained by all of the firms. Those sums, such as for transcripts, filing fees, service, etc., are reflected in the expense report of Johnson & Johnson,

1  LLP.  I believe that all of the litigation expenses incurred were reasonable and necessary given the

2  complex nature and scope of the case.

3        **C.**     **PSW's Experience, Qualifications and Views on the Settlement**

4       25.     Attached hereto as Exhibit D is a true and correct copy of PSW's firm resume,

5  which reflects the experience and accomplishments of the firm and the attorneys working on this

6  case.  PSW's firm resume reflects that the attorneys in this case have successfully adjudicated

7  some of the largest and most important class action lawsuits in the United States and have

8  obtained approximately ***three billion dollars*** in settlements and verdicts in a wide range of

9  complex cases.

10       26.     For example, PSW currently serves as Co-Lead Counsel in *In re Credit Default*

11  *Swaps Antitrust Litigation*, MDL No. 2476 (S.D.N.Y.), an antitrust class action alleging an

12  anticompetitive conspiracy by the largest international banks and financial institutions in the world

13  to fix the price of credit default swaps.  That case recently resulted in $1.86 billion in settlements

14  that are pending approval by the trial court, making it one of the largest civil lawsuit settlements in

15  history.

16       27.     PSW also served as Co-Lead Counsel on behalf of the Direct Purchaser Plaintiffs in

17  *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.).  In that case, we

18  helped secure a settlement of over $400 million for the Class and obtained an $87 million verdict,

19  before trebling, following a five-week trial against the only remaining defendant in the case,

20  Toshiba Corporation and its related entities.  The court in that case approved PSW's hourly rates

21  and granted their full request for a 30% fee award, which was higher than the Ninth Circuit's

22  benchmark of 25%.

23       28.     PSW attorneys served as class counsel in *James v. UMG Recordings, Inc.,* Case

24  No. 11-cv-01613-SI (N.D. Cal.) and *In re Warner Music Group Corp. Digital Downloads*

25  *Litigation*, Case No. CV 12-0559-RS (N.D. Cal.) ("*WMG*"), nationwide class actions brought on

26  behalf of recording artists and producers who alleged that they were systematically underpaid

27  royalties by the record companies UMG and Warner Music Group.  In groundbreaking class

28

8

1    action settlements, PSW helped secure both past relief and future relief in perpetuity for eligible

2    class members who receive royalties from the defendant record companies.

3         29.    In addition to those listed above, PSW has served as lead or co-lead counsel in

4    some of the most advanced and cutting-edge class actions in the country, including: *In re Lithium*

5    *Ion Batteries Antitrust Litigation*, MDL No. 2420 (N.D. Cal.); *In re Potash Antitrust Litigation*

6    *(II)*, MDL No. 1996 (N.D. Ill.); *In re Carrier IQ Consumer Privacy Litigation*, MDL No. 2330

7    (N.D. Cal.); and *Senne v. Office of the Commissioner of Baseball et al.*, Case No. 3:14-cv-00608

8    (N.D. Cal.).

9         30.    Based on my experience and practice, I believe the hourly rates charged by PSW

10    are consistent with the rates charged in the Los Angeles legal community for attorneys of similar

11    caliber and experience.

12         31.    Based further on my experience in similar class action litigation, I believe that the

13    proposed settlement in this case is fair, reasonable and adequate and in the bests interests of the

14    Class Members.

15         32.    The Settlement here provides $26 million in total compensation to the Class by

16    creating: (1) a $13 million Settlement Fund, which will be used to credit the accounts of Recouped

17    Class Members; and (2) a separate $13 million Accounting Relief Fund, which will be used to

18    credit the accounts of Unrecouped Class Members.  Because the Class Members will receive the

19    full benefits of the Settlement ($13 million in cash and $13 million in accounting credits), I

20    believe that the value of the Settlement can be accurately monetized at $26 million.

21         33.    The Settlement only calls for a *cy pres* distribution to the Motion Picture &

22    Television Fund of uncashed settlement checks if the amount does not justify the cost of a second

23    distribution.  I and my co-counsel have carefully considered the proposed *cy pres* remedy, and the

24    goal in formulating this proposal was to make a grant to an organization that represents the

25    interests of absent Class Members. Here, those Class Members are individuals who were alleged

26    to not have been paid the amounts of money due to them for their work in the film industry over

27    multiple decades.  The proposed *cy pres* recipient, the Motion Picture & Television Fund, has

28

DECLARATION OF DANIEL L. WARSHAW IN SUPPORT OF PLAINTIFFS' MOTIONS FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, COSTS AND INCENTIVE
AWARDS

1   requested funds to support and maintain long-term projects that will provide substantial benefits
2   and a variety of services to economically disadvantaged Class Members who worked in the
3   entertainment industry. Neither I nor my firm have any interest or involvement in the governance
4   or work of the Motion Picture & Television Fund.

5        34.    I believe that the requested incentive awards of $10,000 to each of the class
6   representatives are reasonable and justified by, *inter alia*, the time and effort the class
7   representatives dedicated to this case and the risks they faced in associating their names with a
8   high-profile class action lawsuit against a major movie studio. In the *WMG* class action that
9   alleged the underpayment of royalties to professionals in the music industry, a California federal
10  district court recently approved $10,000 incentive awards to each of the six current and former
11  class representatives. I served as co-lead counsel in the *WMG* case, and believe that there are
12  significant parallels to this case that warrant these incentive awards to the class representatives. A
13  true and correct copy of the Court's Order approving the incentive awards in *WMG* is attached
14  hereto as Exhibit E.

15       I declare under penalty of perjury under the laws of the State of California that the
16  foregoing is true and correct.

17       Executed on October 13, 2015, at Sherman Oaks, California.

18
19                                                    Daniel L. Warshaw
20
21
22
23
24
25
26
27
28

# EXHIBIT B

# PEARSON, SIMON & WARSHAW, LLP

15165 Ventura Boulevard
Suite 400
Sherman Oaks, CA  91403-3373
818-788-8300
Fax:  (818) 788-8104
Tax I.D. # 04-3832496

Statement Date: October 12, 2015
Account No.: 5408.00001

*Colin Higgins Productions, Ltd. v. Universal City Studios, LLC*

| Timekeeper | Hours | Rate | Lodestar |
|---|---|---|---|
| Alexander L. Simon - Law Clerk | 0.475 | $175.00 | $83.13 |
| Alexander R. Safyan - Associate | 31.975 | $375.00 | $11,990.63 |
| Alexander R. Safyan - Associate | 12.600 | $385.00 | $4,851.00 |
| Alexander R. Safyan - Associate | 70.400 | $475.00 | $33,440.00 |
| Benjamin E. Shiftan - Associate | 6.300 | $395.00 | $2,488.50 |
| Bobby Pouya - Associate | 65.700 | $475.00 | $31,207.50 |
| Bobby Pouya - Associate | 71.300 | $495.00 | $35,293.50 |
| Bobby Pouya - Associate | 102.520 | $635.00 | $65,100.20 |
| Clifford H. Pearson - Senior Partner | 2.900 | $835.00 | $2,421.50 |
| Clifford H. Pearson - Senior Partner | 63.300 | $895.00 | $56,653.50 |
| Clifford H. Pearson - Senior Partner | 7.800 | $985.00 | $7,683.00 |
| Daniel L. Warshaw - Senior Partner | 40.525 | $715.00 | $28,975.38 |
| Daniel L. Warshaw - Senior Partner | 80.020 | $775.00 | $62,015.50 |
| Daniel L. Warshaw - Senior Partner | 104.060 | $870.00 | $90,532.20 |
| Ellowene J. Grant - Paralegal | 3.700 | $175.00 | $647.50 |
| Ellowene J. Grant - Paralegal | 2.300 | $225.00 | $517.50 |
| **TOTAL** | **665.875** | | **$433,900.53** |

# EXHIBIT C

# PEARSON, SIMON & WARSHAW, LLP

15165 Ventura Boulevard
Suite 400
Sherman Oaks, CA  91403-3373
818-788-8300
Fax:  (818) 788-8104
Tax I.D. # 04-3832496

Statement Date: October 12, 2015
Account No.: 5408.00001

*Colin Higgins Productions, Ltd. v. Universal City Studios, LLC*

| Category | Amount |
| --- | --- |
| Photocopies | $834.30 |
| Telephone Conference Calls | $16.74 |
| Online Research - Westlaw | $1,534.81 |
| Delivery Service / Messengers | $177.13 |
| Postage | $6.90 |
| Mileage | $246.46 |
| Travel  / Parking | $134.73 |
| Meals | $237.64 |
| Hearing Transcripts | $19.73 |
| Litigation Support Vendors (Case Anywhere / Court House News) | $44.80 |
| Court Fees | $169.24 |
| **TOTAL** | **$3,422.48** |

# EXHIBIT 9

Law Offices

**Pearson, Simon & Warshaw, LLP**

15165 VENTURA BOULEVARD, SUITE 400

SHERMAN OAKS, CALIFORNIA  91403

(818) 788-8300

FAX (818) 788-8104

WWW.PSWLAW.COM

July 20, 2016

Re:   *Sciortino v. PepsiCo, Inc*.
      Case No.: 3:14-cv-00478-EMC

## COSTS AND EXPENSES

| | |
|---|---:|
| Copies | $430.80 |
| Telephone | $16.44 |
| Online Research | $662.12 |
| Delivery Services / Messengers | $609.54 |
| Postage | $502.63 |
| Mileage | $13.56 |
| Travel | $6,396.55 |
| Meals | $1,010.23 |
| Court Fees | $400.00 |
| Hearing Transcripts | $169.60 |
| Litigation Support Vendor | $2,250.00 |
| Experts | $1,500.00 |
| Arbitrators / Mediators | $7,300.00 |
| Miscellaneous | $112.55 |
| **TOTAL** | **$21,374.02** |

870541.1