1

2

3

4

5

6

7

8

9

10

11

12

13

14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

15

16

17

18

19

20

21

22

| | |
|---|---|
| STACY SCIORTINO, *et al.*,<br><br>          Plaintiffs,<br><br>   v.<br><br>PEPSICO, INC.,<br>          Defendant. | Case No. 14-CV-478-EMC, *consolidated for pretrial purposes with* Case Nos. 14-713, 14-1099, 14-1105, 14-1192, 14-1193, 14-1316, 14-2023<br><br>**[PROPOSED] ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT** |

23

24

25

26

27

28

The Court has considered the Class Action Settlement Agreement ("Settlement Agreement"), dated April 19, 2016, the Parties' motion for an order finally approving the Settlement Agreement, the record in this Action, the arguments and recommendations made by counsel, and the requirements of the law.  The Court finds and orders as follows:

## I.   FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

1.      The Settlement Agreement is approved under Rule 23 of the Federal Rules of Civil Procedure.  The Court finds that the Settlement Agreement and the Settlement it incorporates appear fair, reasonable, and adequate, and its terms are within the range of reasonableness.  The Settlement Agreement was entered into at arm's-length by experienced counsel after extensive negotiations spanning months, including with the assistance of a third-party mediator, the Hon. Ronald M. Sabraw (Ret.).  The Court finds that the Settlement Agreement is not the result of collusion.[1]

## II.   DEFINED TERMS

2.      For purposes of this Final Judgment and Order ("Order"), the Court adopts all defined terms as set forth in the Settlement Agreement.

## III.   NO ADMISSIONS

3.      Neither this Order nor the Settlement Agreement constitutes or shall be used as an admission of wrongdoing by any of the Released Persons or to establish a violation of any law or duty, nor shall it constitute an admission that the 4-methylimidazole ("4-MEI") in the Covered

---

[1] There is a separate statute in California governing approval of Proposition 65 settlements.  *See* Cal. Health & Safety Code § 25249.7(f)(4).  The parties reported at the final approval hearing on August 25, 2016, that the Office of the Attorney General of the State of California requested that Plaintiff's counsel request that this Court make findings related to Section 25249.7 in connection with this settlement.  The Court observes that the Hon. Judge George C. Hernandez, Jr. already considered and applied those factors when approving the *CEH* settlement, and the Court does not believe it is necessary to revisit those findings here.  Moreover, if the Court were to consider and apply those findings, it would agree with Judge Hernandez's conclusions.  Two of the provisions—subsection (f)(4)(A) governing warnings and subsection (f)(4)(C) regarding penalties—are not applicable here because the settlement does not provide for this relief.  As for the third factor, Rule 23 and Ninth Circuit precedent independently require this Court to consider the third and final factor—that "[t]he award of attorney's fees is reasonable under California law."  Cal. Health & Safety Code § 25249.7(f)(4)(B).

Products (or in other foods or beverages) poses any risk to human health or requires any disclosure or warning to consumers.

## IV.    JURISDICTION

4.    For purposes of the Settlement of the Action, the Court finds it has subject matter and personal jurisdiction over the Parties, including all Settlement Class Members, and venue is proper.

## V.    CLASS CERTIFICATION OF RULE 23(B)(2) CLASS FOR SETTLEMENT PURPOSES ONLY

5.    The Court finds and concludes that, for the purposes of approving this Settlement only, the proposed Rule 23(b)(2) Settlement Class meets the requirements for certification under Rule 23 of the Federal Rules of Civil Procedure:  (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class; (c) the claims or defenses of Plaintiff are typical of the claims or defenses of the Settlement Class; (d) Plaintiff and Class Counsel will fairly and adequately protect the interests of the Settlement Class because Plaintiff has no interests antagonistic to the Settlement Class, and has retained counsel who are experienced and competent to prosecute this matter on behalf of the Settlement Class; and (e) the Defendant has acted on grounds that apply generally to the Settlement Class, so that final injunctive relief is appropriate respecting the Settlement Class as a whole.

6.    The Settlement Agreement was reached after extensive investigation and motion practice in the Action, and was the result of protracted negotiations conducted by the Parties, over the course of several months, including with the assistance of a mediator, the Hon. Ronald M. Sabraw (Ret.).  Plaintiff and Class Counsel maintain that the Action and the claims asserted therein are meritorious and that Plaintiff and the Class would have prevailed at trial.  Defendant denies the material factual allegations and legal claims asserted by Plaintiff in this Action, maintains that a class would not be certifiable under any Rule, and that Plaintiff would not prevail at trial.  Notwithstanding the foregoing, the Parties have agreed to settle the Action pursuant to the provisions of the Settlement Agreement, after considering, among other things:  (a) the substantial benefits to Plaintiff and the Settlement Class under the terms of the Settlement Agreement; (b) the uncertainty of being able to prevail at trial; (c) the uncertainty relating to Defendant's defenses and the expense of additional

Gibson, Dunn &
Crutcher LLP

1    motion practice in connection therewith; (d) the issues relating to proving damages on an individual

2    Class Member basis; (e) the attendant risks of litigation, especially in complex actions such as this, as

3    well as the difficulties and delays inherent in such litigation; and (f) the desirability of consummating

4    the Settlement promptly in order to provide effective relief to Plaintiff and the Settlement Class.

5            7.    The Court accordingly certifies, for settlement purposes only, a Class under Rule

6    23(b)(2), consisting of all individuals in the United States and all U.S. territories (including, but not

7    limited to, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, the

8    Northern Mariana Islands, and the other territories and possessions of the United States), who

9    purchased one or more of the Covered Products from January 23, 2010, until the date of the

10   preliminary approval of the settlement of this litigation.  Excluded from the Class are:  (a) persons or

11   entities who purchased the Covered Products for the purpose of resale or distribution; (b) persons

12   who are employees, directors, officers, and agents of Defendant or its parent or subsidiary companies;

13   (c) governmental entities; and (d) any judicial officer hearing this Action, as well as their immediate

14   family members and employees.

15           8.    Additionally, the Court finds that there are inherent risks in certifying a Rule 23(b)(3)

16   damages class and that were Plaintiff to seek certification of a Rule 23(b)(3) damages class, she

17   would face challenges that include, but are not limited to, the difficulties caused by individual

18   variances in the consumption of PepsiCo products, proving a violation of Proposition 65 on a class-

19   wide basis, proving economic injury on a class-wide basis, and the absence of any affirmative

20   statements by PepsiCo on the Product labels about 4-MEI during the Class Period.

                                        **VI.    <u>NOTICE</u>**

22           9.    Because the provision of notice is discretionary for a settlement class certified under

23   Rule 23(b)(2) and because Settlement Class Members are not releasing claims for personal injury,

24   wrongful death, or damages, no notice is required for the Class.  *See*, *e.g.*, *Lilly v. Jamba Juice Co.*,

25   No. 13-cv-02998-JST, 2015 WL 1248027, at *9 (N.D. Cal. Mar. 18, 2015); *Kim v. Space Pencil, Inc.*,

26   No. 11-cv-03796-LB, 2012 WL 5948951, at *4 (N.D. Cal. Nov. 28, 2012).

27

28

Gibson, Dunn &
Crutcher LLP

## VII.   CLAIMS COVERED AND RELEASES

10.     This Order constitutes a full, final and binding resolution between Plaintiff on behalf of herself and the Settlement Class Members and PepsiCo, and its parents, subsidiaries, affiliates, joint venturers, directors, officers, employees, and attorneys and each entity to whom they directly or indirectly distribute or sell the Covered Products, including but not limited to distributors, wholesalers, customers, retailers, franchisees, cooperative members, licensors, and licensees (together, "Released Persons") of any claims based on or relating in any way to the alleged presence of, or labeling for, 4-MEI and/or caramel color in any Covered Products that could have been brought prior to the Effective Date.  This Release shall be applied to the maximum extent permitted by law.

11.     Upon the Effective Date and by operation of this Order, Plaintiff will fully, finally, and forever release any and all claims, including personal injury and damages, known and unknown, as well as provide a waiver under California Civil Code Section 1542.  Plaintiff is forever enjoined from taking any action seeking injunctive and/or declaratory relief against PepsiCo based on the Released Claims.

12.     Upon the Effective Date and by operation of this Order, the Settlement Class Members will fully, finally, and forever release any and all claims for injunctive and/or declaratory relief of any kind or character, at law or equity, known or unknown, preliminary or final, under Federal Rule of Civil Procedure 23(b)(2) or any other federal or state law or rule of procedure, from the beginning of the Class Period until and including the Effective Date, based on or relating in any way to the alleged presence of, or labeling for, 4-MEI and/or caramel color in any Covered Products.  Settlement Class Members do not release claims for personal injury, wrongful death, or damages.

13.     Upon the Effective Date and by operation of this Order, PepsiCo will release, waive, and discharge all legal claims, causes of action, cross-claims, or counter-claims against Plaintiff, the Settlement Class Members, Class Counsel, the attorneys of record in any of the actions consolidated in the Action, arising from or related to the Covered Products and claims at issue in the Action or in any of the actions consolidated into the Action.

14.     Compliance with the terms of this Order, including the Target Levels, resolves any issue during the Class Period concerning compliance by the Released Persons with any law relating

in any way to the alleged presence of, or labeling for, 4-MEI and/or caramel color in any Covered

Products.  The Settlement Agreement and this Order shall be the exclusive remedy for any and all

Released Claims of Plaintiff and Settlement Class Members.  Accordingly, Settlement Class

Members shall be forever enjoined by this Order from initiating, asserting, or prosecuting against

Released Persons in any federal or state court or tribunal any and all Released Claims.

### VIII.   INJUNCTIVE RELIEF

15.   <u>Specification Levels</u>.  On or before May 5, 2016, PepsiCo shall ensure that the

specifications it provides to its supplier(s) of caramel coloring require that, in order for any individual

shipment to be accepted by PepsiCo for use in the Covered Products shipped for sale in the United

States on or after July 5, 2016, the level of 4-MEI in the caramel coloring must fall within a minimum

and maximum range such that the midpoint of that range shall be a level of 4-MEI that—taking into

account the caramel color content in the formulation of each Individual Covered Product—results in

a 4-MEI concentration of no more than 81 parts per billion for all Covered Products, measured by the

weighted average pursuant to the protocol described below in paragraph 17.  PepsiCo shall continue

its program of research, development, and implementation of technologies and methods intended to

reduce the presence of 4-MEI in the Covered Products shipped for sale in the United States.

16.   <u>Target Level and Target Date</u>.  Specifically, PepsiCo shall ensure that the level of

4-MEI in its Covered Products shipped for sale in the United States on or after the Target Date is no

more than the level of 100 parts per billion, measured by the weighted average pursuant to the

protocol described below in paragraph 17.  PepsiCo shall not be considered to have achieved the

Target Level if, as of the Target Date:

(a)   The weighted average (pursuant to the protocol described in paragraph 17(e))

of the 4-MEI in Group I of the Covered Products exceeds the Target Level; or

(b)   The weighted average (pursuant to the protocol described in paragraph 17(e))

of the 4-MEI in Group II of the Covered Products exceeds the Target Level; or

(c)   The average of the 4-MEI concentration in any Individual Covered Product, as

determined in accordance with the protocol described in paragraph 17, exceeds the Target

Level by more than 15 percent; or

(d)     The 4-MEI concentration in any single unit of any Individual Covered Product exceeds the Target Level by more than 50 percent.

17.     Testing.

(a)     Testing for 4-MEI shall be performed using High-Performance Liquid Chromatography coupled with Tandem Mass Spectrometry (HPLC-MS/MS).  To compensate for matrix effects, the test method shall use deuterated 4-MEI surrogate, solid phase extraction (SPE) to isolate 4-MEI and the deuterated surrogate from the carbonated soft drink matrix, and standard addition calibration.  PepsiCo shall utilize the test methodology described in "Simultaneous Quantitation of 2-Acetyl-4-tetrahydroxybutylimidazole, 2- and 4-Methylimidazoles, and 5-Hydroxymethylfurfural in Beverages by Ultrahigh-Performance Liquid Chromatography-Tandem Mass Spectrometry" by Jinyuan Wang and William C. Schnute (60 J. Agric. Food Chem. 917-921 (2012)).

(b)     Representative samples of each of the ten units of Individual Covered Products to be tested for purposes of demonstrating compliance with the Target Level shall be taken pursuant to the Sampling Methodology.

(c)     The weighted average for all Covered Products shall be calculated by the following formula:  Multiply the unweighted average of the 4-MEI concentration (established by the Sampling Methodology) of all Individual Covered Products within a Group by that Group's fraction of total sales volume (net of returns) for both Groups to be included in the weighted average of the Covered Products, and thereafter sum the two adjusted concentrations for both.

(d)     The weighted average for a Group of Covered Products shall be calculated by the following formula:  Multiply the average of the 4-MEI concentration (established by the Sampling Methodology) of each Individual Covered Product within a Group by that Individual Covered Product's fraction of the total sales volume (net of returns) for all Individual Covered Products within the Group, and thereafter sum the adjusted concentrations for each Individual Covered Product.

(e)     The average for an Individual Covered Product shall be calculated by the following formula:  Sum the 4-MEI concentration (established by the Sampling Methodology) of each sample of the Individual Covered Product and divide by the number of samples.

(f)     For purposes of determining the concentration in a single unit of any Individual Covered Product, the testing protocol set forth in this paragraph 17 shall be used on one single-size can or bottle in a case containing 24 such units, with the remaining 23 units in such case retained for no less than 60 days following communication of the test result to the opposing Party so that, should a dispute arise concerning the validity of the testing, the opposing Party, on request, may test up to 12 of such units at its own expense.

(g)     For the purposes of computing weighted averages, sales volume for each Group and for total sales volume for the Covered Products shall be based upon the most current 52-week IRI InfoScan data (in dollars, net of returns) for the United States available to PepsiCo as of the date of sampling.

(h)     All specifications, formulations, and test results of 4-MEI concentrations, including sales volumes of any or all of the Covered Products, shall be considered confidential information that is proprietary to PepsiCo and not subject to public disclosure.

(i)     Testing of Covered Products to demonstrate compliance with this Paragraph shall be conducted and/or supervised by either (i) a third party under contract to and paid by PepsiCo, or (ii) PepsiCo itself under a protocol previously agreed upon by the Parties.

(j)     A weighted average of the samples that is at or below the Target Level with a 95% confidence level, i.e., $p < 0.05$, using stratified random sampling, shall be deemed in compliance with the terms of this Order.

18.     Extension of Target Date.  PepsiCo shall endeavor in good faith, using commercially and technologically reasonable efforts to achieve the Target Level in the Covered Products shipped for sale in the United States by the Target Date.  However, at least 60 days prior to the Target Date, PepsiCo may initiate a meet and confer session with Class Counsel and Plaintiff regarding a possible extension of the Target Date.  Upon timely application to the Court prior to the passing of the Target Date, and for good cause shown based on PepsiCo's diligence and good faith efforts as well as

reported progress to date, the Settlement Agreement shall be then modified to extend the Target Date by no more than 2 months.

19.     <u>Duration of Injunction</u>.  Nothing in this Order shall prevent PepsiCo from implementing the changes referenced in paragraphs 15-17 of this Order (or other product changes) prior to the Effective Date.  The terms and requirements of the injunctive relief described in paragraphs 15-17 of this Order shall expire on the earliest of the following dates:  (a) five (5) years after the Effective Date; or (b) the date upon which there are changes to any state and/or federal statute, regulation, policy, and/or code in the future that would impose other, further, different and/or conflicting obligations or duties on PepsiCo with respect to the Covered Products.

20.     <u>Additional Changes to Covered Products</u>.  This Order shall not preclude PepsiCo from making further changes to the Covered Products:  (a) that PepsiCo reasonably believes are necessary to comply with any statute, regulation, or other law of any kind; and/or (b) that are necessitated by product and/or ingredient changes, and/or that are necessary to ensure that PepsiCo provides accurate descriptions of its products.

21.     <u>Verification</u>.  Within 60 days following the Target Date, PepsiCo shall provide Class Counsel with a verification that PepsiCo has achieved the Target Level for the Covered Products by the Target Date.  During the remaining term of this injunction as provided in Paragraph 19, Class Counsel shall have the right to request two (2) additional verifications that PepsiCo has complied with its obligations to meet the Target Level for the Covered Products.

## IX.     ATTORNEYS' FEES AND EXPENSES

22.     The Court's decision regarding the payment of attorneys' fees and expenses to Class Counsel is addressed in a separate order.

## X.     AUTHORIZATION TO PARTIES TO IMPLEMENT AGREEMENT AND MODIFICATIONS OF AGREEMENT

23.     By this Order, the Parties are hereby authorized to implement the terms of the Settlement Agreement.  After the date of entry of this Order, the Parties may by written agreement effect such amendments, modifications, or expansions of the Settlement Agreement and its implementing documents (including all exhibits thereto) without further notice to the Settlement

Gibson, Dunn &
Crutcher LLP

Class or approval by the Court if such changes are consistent with terms of this Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under the Settlement Agreement.

## XI.   RETENTION OF JURISDICTION

24.     The Court shall retain jurisdiction over any claim relating to the Settlement Agreement (including all claims for enforcement of the Settlement Agreement and/or all claims arising out of a breach of the Settlement Agreement) as well as any future claims by any Settlement Class Member relating in any way to the Released Claims.

## XII.   FINAL JUDGMENT AND DISMISSAL WITH PREJUDICE

25.     By operation of this Order, this Action is hereby dismissed with prejudice.  A separate judgment shall be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED**.

DATED:_____8/30_____, 2016    _____



The Honorable Edward M. Chen
UNITED STATES DISTRICT JUDGE